

April 24, 2024

William T. Walsh
212-969-3908
wwalsh@proskauer.com

**_Via ECF_**

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse

      Re:    *CarePoint Health Management Assocs. LLC. v. RWJ Barnabas Health Inc.*, 2:22-cv-05421-EP-CLW

Dear Judge Waldor:

      We write in response to CarePoint's request for a six month stay. This is CarePoint's *third* request for a six-month delay in less than two months. ECF 77-78, 80, 87. Indeed, CarePoint's request is even more extreme than its prior ones. It is not merely seeking an extension of discovery, or relief from specific deadlines that it cannot meet. It seeks to halt the case dead in its tracks. The Court should deny the request. CarePoint presents no new grounds for a stay, other than its desire not to respond to discovery. That is no basis for a stay.

      Barnabas has been diligently litigating this case. It substantially complied with CarePoint's extensive document requests over three months ago, having produced over 1.5 million pages of documents. It has also been engaged in extensive third-party discovery, issuing over 24 subpoenas to CarePoint's Founders and business partners, as well as other entities expressly named in the Complaint. Barnabas is finally seeing the light at the end of the tunnel, and looks forward to completing discovery and presenting its defense to Judge and Jury. It should not be hobbled in its efforts just because CarePoint does not want to devote the same level of resources to prosecuting its claims as every other litigant who asserts an antitrust claim.

      Contrary to CarePoint's assertion, a stay would cause significant prejudice to Barnabas. As Barnabas previously explained (ECF 77 at 3):

> "The delay CarePoint seeks prejudices Barnabas in several ways. *First*, because Barnabas substantially completed its production within the current schedule, CarePoint can sift through Barnabas's documents to develop its case and prepare for depositions, while Barnabas must wait.
>
> *Second*, every month that this case remains pending, Barnabas must incur legal fees in defending the case, including costs in hosting its own documents [and those of CarePoint and third-parties].
>
> *Third*, any delay will postpone Barnabas's ability to seek dismissal of the case on summary judgment, extending the overhang on Barnabas of a case it believes has no merit. CarePoint should not be allowed to bring an antitrust case against Barnabas and then string Barnabas along because CarePoint is unwilling or unable to spend the necessary time and money to move the case along. If CarePoint cannot prosecute this case, it should drop it and focus instead on righting its own ship."

Proskauer

Page 2

Indeed, the prejudice from a stay is even more severe. Unlike with an extension, CarePoint can use the six months to finish preparing its own productions and continue to ready its case at its own leisurely pace, while Barnabas's own efforts will come to a screeching halt. It will have no ability to follow up with CarePoint on discovery issues. And its ability to complete the *critical* third-party discovery record will be seriously impaired. Indeed, two of the Founders – Garipalli and Lawler – have already used CarePoint's request for a stay to delay any response to Barnabas's motion to compel. ECF 88 at 2. They have also withdrawn any offers of production based on CarePoint's request. *Id*.

If third-party discovery grinds to a halt, it will be difficult to restart. This Court previously urged Barnabas to bring third-party disputes to a head and raise them with the Court if need be. Barnabas heeded this Court's directive. If it has to abandon all third-party discovery efforts for the next six months, third parties will be reluctant to start over, especially since they will have incurred unnecessary document preservation costs during the hiatus. More importantly, how is Barnabas supposed to respond when third-parties say: "If CarePoint can get a six month stay of the litigation because it doesn't want to participate in discovery, why can't we?"

The prejudice extends far beyond document production. We are now on the cusp of depositions, largely waiting for CarePoint to complete its promised production. These depositions will have to be put on hold. For example, there are many former CarePoint employees that Barnabas would like to get on record, such as CarePoint's former CFO who laid all of the blame for CarePoint's woes at the Founders' feet in an 11-page declaration:

> "[Under the Founder's leadership], the Hospitals suffered from poor administration and offered limited services with few payer participation agreements. … [They] entered into numerous harmful contracts that severely limited the ability of the Hospitals to deliver quality care and significantly contributed to the Hospitals' financial duress …. [They also] caused patients to pay extreme costs of out pocket, [which though] lucrative … became increasingly unsustainable" "as the regulatory environment changed. … [Their] various failures … left the hospital in ruins[,] [in part due to] millions in fees that were unaccounted for …. Over time, this mismanagement added up with disastrous consequences[,] [with] debt totaling over $433 million."[1]

Barnabas is sure there is more to the story. It should not be forced to wait, risking the possibility that memories will fade. Moreover, CarePoint's financial turmoil means that key personnel may look for greener pastures in the ensuing months, at which point, they will be beyond CarePoint's control and potentially outside this Court's jurisdiction. Difficulties in securing their cooperation will only increase the costs and burdens of discovery.

More importantly, CarePoint itself may no longer look the same in six months' time. If it is broken up and sold for parts, some surviving entity or – even a third-party – may end up owning its lawsuit as its sole asset. What is Barnabas to do then, when the party-in-interest no longer has access to the people and documents who lived through the events at issue? And even if CarePoint

---

[1] *Strategic Ventures LLC, et al. v. Garipalli, et al.*, C.A. No. 2021-1040-KSJM (Del. Ch. 2021).

**Proskauer**

Page 3

does hang on for the next six months, the issues – and the costs of the litigation – are not going away. If the Court enters a stay, CarePoint might be temporarily insulated from having to respond to any discovery requests, but once the stay lifts, it will have to respond to all the pent-up deficiencies that Barnabas was prevented from raising in a more timely manner. For that reason, CarePoint's request may kick the can down the road, but it will not solve the underlying problem.

Nor has CarePoint shown good cause for a stay. "[T]he stay of civil proceedings constitutes an extraordinary remedy." *State Farm Fire. & Cas. Co. v. Hines*, 2021 WL 3668206 (D.N.J. 2021). None of the traditional grounds for a stay are present. There are no dispositive motions pending that may reduce the scope of discovery.[2] Nor are there any auxiliary proceedings before other courts or agencies that may dispose of, or alter, plaintiffs' claims. CarePoint is simply asking for more time to satisfy its own discovery obligations. But failure to prosecute a case is reason for its dismissal, not a reason for delay.

It is usually the defendant seeking a stay, rather than the other way around. But either way, courts reject financial hardship as grounds for a stay. The City of Newark once made a virtually identical argument: "that good cause existed for [a stay] given that the City had advised all of its vendors, including outside counsel, that it had imposed a spending freeze," citing "unprecedented financial hardship." *Parker v. City of Newark*, 2020 WL 13891019 (D.N.J. 2020). **Stay denied.** It "would clearly prejudice" the opposing party, "who remains unable to complete discovery and prepare this case for disposition." *Id.* As here, there is no "suggest[ion] that [the financial] hardships are likely to resolve in the near future, and the Court cannot stay this case indefinitely due to the City's financial situation." *Id.* And "a stay would directly delay any trial in this matter by pushing off necessary, outstanding discovery." *Id.* All the same considerations apply here.

Moreover, this Court has already made numerous allowances to account for CarePoints' financial predicament. This Court previously granted *two* extensions in this case, first extending discovery by three months in December (ECF 67), and then extending it again by four-and-a-half months just a few weeks ago (ECF 81). Indeed, CarePoint previously represented that it could substantially complete its document production by May 13th (two months from the last status conference hearing). CarePoint has not identified any reason – let alone supported it by declaration – why it can't meet that deadline, or why it needs an additional six months to produce its next batch of documents.

CarePoint's only new complaint is that Barnabas sent six letters since the last status conference over six weeks ago to address CarePoint's various discovery deficiencies. One letter related to CarePoint's failure to produce documents prior to 2016, which CarePoint ultimately admitted was a mistake it needed to rectify. Three letters related primarily to CarePoint's failures to (i) respond to Barnabas's interrogatory concerning payments made to the Founders; (ii) produce pleadings and deposition transcripts and exhibits from CarePoint's prior litigations against its business partners, concerning events that feature prominently in its Complaint here; and (iii)

---

[2] Barnabas notes that its own request for a stay (pending the outcome of its motion to dismiss) was denied, presumably because the Court felt that discovery costs were not a sufficient basis for staying discovery. ECF 62. To grant CarePoint's request now would create an impermissible double standard.

**Proskauer**

Page 4

provide documents other than emails. CarePoint does not dispute that it was obligated to produce these materials, and does not claim any particular burden in doing so.

The remaining letters related to a single *third-party* production, after one of the Founders (Jeffrey Mandler) produced his documents after apparently conducting only a cursory privilege review. Because CarePoint apparently never demanded that Mandler return his work files to CarePoint when he left CarePoint, we provided notice to Mandler and CarePoint pursuant to the Protective Order that Mandler's production may contain privileged information. Contrary to CarePoint's contention, we did not demand that CarePoint review these documents "by a deadline of Barnabas's choosing." ECF 87 at 2. Rather, we asked CarePoint to assert its privilege claims, if any, within two weeks, the deadline specified by Paragraph 13 of the Protective Order. That deadline balances a privilege holder's need for time to review the documents with the prejudice to the receiving party of having to halt its own case preparation. Other than to say that it wants to put the protection of privilege at the end of its review queue, CarePoint does not explain why it can't comply with the Court's Protective Order. Privilege is a privilege; it is not an inalienable right. Neither Mandler nor CarePoint responded to Barnabas's notice in the two weeks required by the Protective Order to identify any privilege they wished to assert. Any privilege is, therefore, now waived.[3]

Ultimately, the problems confronting CarePoint are of its own making. Its Founders extracted **half a billion** dollars from the system, creating the financial difficulties it now uses as an excuse to delay the case. Indeed, the Founders withdrew more cash from the system than the system's **total** liabilities. With limited funds remaining, CarePoint then chose not to retain an ESI vendor, instead opting for a make-shift discovery process. But there is a reason why litigants in virtually every antitrust case use ESI vendors. Doing so is more efficient, saving both time and money. In contrast, CarePoint's *ad hoc* discovery process – in which only one document collection at a time is accessible – was bound to create more problems than it solves. Indeed, as Barnabas presciently explained before CarePoint embarked on this path:

> "Your production plan of removing data from your in-house processing tool after each production also raises numerous practical concerns relating to follow-up discovery. For example, you would have no ability to investigate or remediate any potential deficiencies once you have taken down the data without having to restore the data (again in batches), which would be unduly time consuming. Similarly, if we raise an issue spanning multiple or all of CarePoint's custodians, you have no way of investigating or remedying the issue without undergoing your entire time-consuming process of loading and reloading the data all over again."

---

[3] To be clear, Barnabas's position is that the information is either not privileged or the privilege has been waived. Barnabas's letter specifically identified 5 documents and noted the potential that there may be more in the production. As to the 5 documents, neither CarePoint nor Mandler has asserted any privilege, even though the deadline to do so was yesterday, April 23rd. As to the remaining documents, Barnabas reserves the right to assert waiver of privilege based on (i) CarePoint's failure to demand the return of privileged documents when Mandler left CarePoint, (ii) Mandler's disclosure of information in this litigation; (iii) the crime-fraud exception; and/or (iv) CarePoint's failure to timely review the production and assert privilege. CarePoint's request for a stay only implicates the last of these four grounds.



Page 5

Despite these warnings, CarePoint nevertheless proceeded with its plan. It did so with its eyes open, and should live with the consequences of its choices. The case should not be stayed.

> Respectfully submitted,
>
> /s/ *William T. Walsh*