

400 Crossing Boulevard
8th Floor
P.O. Box 5933
Bridgewater, NJ 08807
T: 908-722-0700
F: 908-722-0755

Writers Direct Dial: 908-252-4164
Email: nfpellitta@nmmlaw.com

May 3, 2024

**Via ECF**
Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse

    Re:    **CarePoint v. RWJ Barnabas**
           **Docket No. 2:22-cv-5421-EP-CLW**

Dear Judge Waldor:

    This letter is submitted on behalf of non-parties James Lawler and Vivek Garipalli in connection with subpoenas issued by defendant RWJ Barnabas Health Inc. ("Barnabas") in the above-referenced matter and Barnabas' letter motion for an order compelling production of documents from non-parties Lawler and Garipalli. (ECF 85, the "Motion").[1] While Lawler and Garipalli disagree with many of the points raised by Barnabas, we will focus this response on the most salient issues.

    This Motion is a red herring. As the record will show, Barnabas was never interested in engaging in a good faith effort to discover relevant information. Instead, Barnabas has used these subpoenas (and this Motion to enforce them) to harass these individuals and deflect from its own alleged wrongdoing. Neither Lawler nor Garipalli are parties to the antitrust action between CarePoint and Barnabas (the "Action") and have no interest in its outcome. Yet, Barnabas devotes much of its Motion to irrelevant and false personal attacks on Lawler and Garipalli in an apparent effort to distract the Court from the substantive issues that the Court must decide.

    Barnabas' refusal to work cooperatively or engage with substance has carried on throughout the subpoena negotiation process as well. Rather than any good faith effort to work through the expansive and voluminous requests set forth in the subpoena, Barnabas created a fictitious scenario in which Lawler and Garipalli are "strawmen" responsible for the financial distress of CarePoint. CarePoint's documents will show that the opposite is true: since at least the

---

[1] Barnabas twice refers to its April 18, 2024 submission to the Court as a "motion to compel" in its April 24, 2024, letter to Your Honor. (ECF 89).



**Norris McLaughlin, P.A.**
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 2

beginning of 2019, Lawler and Garipalli receive no management or other service fees in connection with their role at CarePoint. To distract from this crucial fact, Barnabas crafted the subpoenas to include completely baseless requests for personal financial information from the non-parties, together with vague and ambiguous demands concerning issues that are completely unrelated to the facts or claims asserted by CarePoint. For example, set forth more fully below, Barnabas seeks documents related to Lawler's and Garipalli's charitable donation of their interests in CarePoint. Such information has nothing to do with CarePoint's allegations or any conceivable defense thereto. Tellingly, Barnabas' Motion contains not one citation to applicable Federal Rules of Civil Procedure or the antitrust laws that govern the case. Rather than working with the non-parties, Barnabas has acted as an aggressor, devoting its time and energy towards propounding unnecessary and overbroad subpoenas, filing an unnecessary motion to compel, embroiling Lawler and Garipalli in the litigation initiated on behalf of CarePoint. Just prior to and since filing its Motion, Barnabas has continued to throw its weight around, subpoenaing other businesses associated with Lawler and Garipalli for irrelevant documents. This aggressive behavior is consistent with the aggressive and anticompetitive conduct that is alleged in the complaint.

Barnabas' Motion is so devoid of substantive argument or any clear request for relief, that it is difficult to respond. To the extent the motion seeks to compel document production on a certain time frame, it is inexplicable because—until Barnabas filed the Motion threatening to wholly upend the document review process that they were undertaking—Lawler and Garipalli had told Barnabas that they expect to produce documents by May 13, 2024, the same date that Your Honor ordered CarePoint's production to be completed.[2] Having non-party discovery precede first party discovery would defy principles of proportionality and logic. To the extent the motion is about the scope of production, it is also without merit. The Motion seeks documents that are completely irrelevant to the Action. On multiple occasions, counsel for Garipalli and Lawler asked Barnabas to explain the legal relevance of the documents it sought, and, on multiple occasions, Barnabas dodged the question.

Moreover, the subpoenas seek documents that Barnabas could have, and should have, obtained directly from CarePoint—the plaintiff responsible for prosecuting this Action. And even if the requested documents were relevant—which they are not—Barnabas' overbroad requests have been and will continue to impose an undue and unnecessary burden on Lawler and Garipalli, who have been undertaking an extensive review of documents to work cooperatively with Barnabas. Federal Rule of Civil Procedure 45, which governs subpoenas issued to third parties, imposes an obligation on an attorney responsible for issuing a subpoena to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Barnabas asserts that there "can be no question" that it is "meeting Rule 45's obligations," but offers little to explain how insisting a non-party review of almost half a million

---

[2] The May 13, 2024 date corresponds with Your Honor's March 11, 2024 text order which states, in part, that "Parties engaged in complex production. Plaintiff production should conclude by May 13, 2024." (ECF 79).

**Norris McLaughlin, P.A.**
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 3

documents, almost all of which are in a party's possession, and refusing to make any effort to compromise, satisfies Rule 45. (ECF 85, at 4). As set forth below, Lawler and Garipalli respectfully submit that Barnabas, despite its blanket statement to the contrary, has failed to satisfy this obligation.

It is evident that this Motion reflects nothing more than an attempt to unnecessarily burden Lawler and Garipalli, and waste judicial resources. For this reason and because Barnabas has failed to provide any reasonable basis for granting the ambiguous and unspecified relief that it seeks, we respectfully ask your Honor to deny the Motion.[3]

### A. Barnabas' motion to compel is overly broad in seeking documents that are irrelevant to this Action.

As the party moving to compel compliance with a subpoena, Barnabas bears the initial burden to "show[] the documents sought to be relevant." *Custin v. Wirths*, 2017 WL 517789, at *2 (D.N.J. Feb. 8, 2017). "The standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Korotki v. Cooper Levenson, Apr., Niedelman & Wagenheim, P.A.*, 2022 WL 2191519, at *3 (D.N.J. June 17, 2022).

The Action involves Barnabas' anticompetitive conduct in violation of the Sherman Act. Barnabas' document requests, however, go well beyond the claims asserted in the Action. In particular, Request Nos. 27-29 seek documents relating to Plaintiff CarePoint's decision to transition to a non-profit entity, including the "effect" on Lawler and Garipalli of the conversion to a non-profit. CarePoint's allegations relating to Barnabas' anticompetitive conduct have nothing to do with the non-profit conversion process which took place after the conduct alleged by CarePoint in this Action. Nor is there an allegation in CarePoint's complaint relating to the conversion or claiming that Barnabas' anticompetitive conduct caused the conversion to a non-profit. Garipalli's and Lawler's interests in leaving a legacy to their community has absolutely nothing to do with the antitrust case. Despite Lawler's and Garipalli's objections, there has been no support provided by Barnabas for these vague and overbroad requests. The legal relevance of these requests for production remains entirely unclear.

The request for documents relating to an investigation by the New Jersey Special Commission of Investigation ("SCI") is yet another instance of Barnabas' efforts to harass and vilify Lawler and Garipalli. First, the SCI report and investigation was closed with no findings of liability and is otherwise irrelevant to the Action. To the contrary, the SCI report explained that it was "important to recognize that" if not for Lawler and Garipalli "including [their] investments

---

[3] In addition to failing on the merits, Barnabas' motion is also procedurally defective. Barnabas has failed to comply with Your Honor's Civil Case Management Order, which directs that "counsel must obtain leave of Court before filing any" motion to secure enforcement of a subpoena by directly seeking an order to compel. *See* Civ. Case Mgmt. Order ¶ 7.

**Norris McLaughlin, P.A.**
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 4

and assumption of pre-existing liabilities," the "formerly bankrupt [CarePoint] hospitals could have closed." Instead, because of Lawler and Garipalli, the hospitals "remain operational and servicing patients, including many who do not have the means to pay for treatment." While the SCI report made certain recommendations to the New Jersey Department of Health regarding oversight improvements, it has resulted in no liability or finding of wrongdoing from the SCI, the Department of Health, or otherwise. Barnabas' request for all documents relating to the SCI investigation is clearly overreaching as it only seeks to duplicate information obtained during the investigation. Barnabas should not be permitted to re-litigate or challenge the findings of the State in further effort to distract from the claims asserted by CarePoint.

   **B. Party Discovery in the Action is sufficient to provide Barnabas with any relevant information it seeks.**

  As courts in this District have held, "an undue burden is often created where the material sought from a nonparty is easily available from a party[.]" *Korotki*, 2022 WL 2191519, at *3; *see also Arthrex, Inc. v. Parcus Med., LLC*, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents.").

  Here, despite having boiled the ocean with their discovery of Plaintiff CarePoint, Barnabas seeks aimless discovery from two third parties. It is our understanding that CarePoint expects to produce (or has produced) over two million documents in this action. In a March 6, 2024, letter to the Court, CarePoint noted that it has already produced 183,654 documents spanning 960,685 pages, apparently representing documents from a "single custodian" of CarePoint's agreed upon 23 custodians. (*See* ECF 78, at 1-2; ECF 77, at 1). We understand that—at least until Barnabas flooded it with discovery letters (ECF 87, at 1-2)—CarePoint had since been producing additional documents on a weekly basis.

  Barnabas fails to note in its motion whether (and to what extent) it has reviewed the documents CarePoint produced and/or identified relevant documents missing from CarePoint's production. That is Barnabas' obligation under Rule 45. Asking Lawler and Garipalli to review and produce hundreds of thousands of documents that have been or will be produced by CarePoint based on a speculative concern that Lawler and Garipalli may have "relevant CarePoint communications that, because of employee departures or some other reason, are no longer in CarePoint's files" is overly burdensome and not proportional. (ECF 85). In an effort to better understand the scope of documents being produced by CarePoint and avoid the burden of producing duplicative discovery, Garipalli's counsel contacted CarePoint's counsel directly. CarePoint's counsel confirmed that the CarePoint document production would include Garipalli emails to/from/cc/bcc anyone with a CarePoint domain. We presume that the same holds true for Lawler and Barnabas has not indicated otherwise. As a result, Lawler and Garipalli have taken the position that these emails should be excluded because there is no need for them, as non-parties, to bear the burden of reviewing and producing documents the Plaintiff will produce.

**Norris McLaughlin, P.A.**
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 5

Barnabas further argues that CarePoint "has not agreed to produce from all custodians that ever had a relevant communication with the Founders." (ECF 85, at 5). But, as with its other arguments, this is unbounded by any relevant legal standard. Barnabas has not (i) identified those hypothetical custodians, (ii) clarified why their documents would be relevant to the litigation (assuming CarePoint has excluded them), (iii) indicated whether Barnabas has asked CarePoint to produce those custodial documents, or (iv) explained why Lawler or Garipalli should bear the burden of producing email communications that are otherwise available to Plaintiff.

Barnabas has not cited a single document or category of documents that Lawler or Garipalli would uniquely possess that would not also be in CarePoint's possession (and, therefore produced by CarePoint if responsive and not privileged). For example, as noted in its letter, Barnabas seeks documents such as: "payments from CarePoint to the founders or entities they control," "[t]he financial performance of the hospitals," and "CarePoint's participation or non-participation in insurance networks." (ECF 85, at 3). These are all documents that identify a connection to CarePoint—they are in CarePoint's possession and should be produced by it as a party to the litigation. *See Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) ("When an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.").

Lawler and Garipalli respectfully request that the Court deny Barnabas' Motion to the extent that it calls for these non-parties to produce documents that are otherwise available from Plaintiff CarePoint.

    **C.**    **Efforts to Comply with the Subpoenas.**

        i.    <u>Garipalli</u>

After Barnabas served the Subpoena, Garipalli engaged with Barnabas to negotiate a reasonable scope of review and production of documents. Barnabas and Garipalli initially expressed a mutual desire to work together pragmatically in hopes of obviating the need for Garipalli to serve formal responses and objections to the Subpoena. The first two meet-and-confer calls, which occurred on November 3 and November 10, 2023, were constructive towards that end.

Barnabas sent proposed search terms to Garipalli on November 22, 2023, the Wednesday before Thanksgiving. Garipalli ran Barnabas' proposed search terms and scheduled a meet-and-confer just a few days later, on November 28, 2023. The search terms provided by Barnabas are so broad that they do not present a meaningful starting point for us to try to narrow them without Barnabas' input. For example, Barnabas' proposal contains 33 search strings with wildly broad terms like "CarePoint," "Jimmy," "in-network," or "valu*," connected by the limitlessly disjunctive "or." It was clear that Barnabas had made no effort to limit its proposal to Garipalli, a non-party.

Norris McLaughlin, P.A.
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 6

During the November 28 call, Garipalli's counsel explained that Barnabas' proposed search terms "hit" on approximately 460,000 documents, which was unworkable, and that counsel was willing to discuss ways to modify the terms and reduce the burden on Garipalli. In response, Barnabas stated that (1) Barnabas may press for Garipalli to review hundreds of thousands of documents over a fifteen-year time-period, and (2) determining how to modify the search terms and reduce burden was the responsibility of Garipalli, not Barnabas. That response made clear that Barnabas' approach to the discovery process would be contentious and non-cooperative (and in violation of Barnabas' obligations under Rule 45).

Garipalli emailed Barnabas on November 30, 2023, and explained that, as stated on the call two days prior, the approximately 460,000 hits were unworkable, but, in a good faith effort to compromise and reach agreement, Garipalli was willing to run revised proposed terms. Garipalli further confirmed that he would serve his formal responses and objections on or about December 19. Barnabas never sent any proposed revised terms.

After a short agreed-upon extension, Garipalli served his responses and objections on December 22, 2023. Barnabas then went radio silent for over a month, until Sunday, January 28, 2024. Barnabas' January 28 letter offered one date (February 1, 2024) for a meet-and-confer and demanded production of documents "within two weeks." Garipalli's responses and objections premised Garipalli's agreement to produce documents on Barnabas and Garipalli working together to create a search protocol to gather, search, and review potentially responsive electronically stored documents in his possession, custody, or control, but Barnabas has failed to work cooperatively.

On March 5, 2024, Garipalli sent narrowed search terms to Barnabas, explaining that Garipalli would move forward with same given the fact that Barnabas has refused to engage (or make a counter proposal) on the suggested search terms. Garipalli moved forward with an initial targeted production on March 22, while Barnabas declined to propose revised search terms.

As Garipalli previously indicated to Barnabas, it is Garipalli's position that the ball was in Barnabas' court to propose modifications to the vastly overbroad search terms it provided in November 2023. Barnabas refused to do so and should not be rewarded for its refusal to even engage in constructive discussions. Garipalli was willing to run proposed revised search terms but has now moved forward with his review process in light of silence and lack of cooperation from Barnabas.

    ii**.**  <u>Lawler</u>

Barnabas served the Subpoena on Lawler on October 19, 2023. At the first meet-and-confer call, which occurred on November 3, 2023, Lawler's counsel explained that the subpoenas were overly broad but that they may be willing to move forward if they could come to an agreement on reasonable search terms, and asked Barnabas to send search terms. At the November 10, 2023 meet-and-confer call, Garipalli and Lawler again informed Barnabas' counsel that the broad search

**Norris McLaughlin, P.A.**
Hon. Cathy L. Waldor, U.S.M.J.
May 3, 2024
Page 7

terms (like "CarePoint" and "Hospital") each were returning hundreds of thousands of documents, so Barnabas should endeavor to make its search terms targeted. Barnabas agreed that it would send search terms and that Garipalli and Lawler did not need to serve formal responses and objections at that time.

Barnabas finally then sent proposed search terms on November 22, 2023 (the day before Thanksgiving). At the November 28, 2023 meet-and-confer call, Barnabas completely rejected Garipalli's counsel's and Lawler's counsel's request to engage in a meaningful discussion to narrow search terms. Barnabas made it known that its approach to the discovery process would be contentious and non-cooperative.

Lawler served his responses and objections on December 22, 2023. On February 8, 2024, Barnabas sent a letter to Lawler attempting to discuss Lawler's responses and objections to the Subpoena. Barnabas' letter offered to meet and confer the week of February 12, and the letter repeatedly demanded production of documents "within two weeks." As with Garipalli, Lawler's responses and objections premise Lawler's agreement to produce documents on Barnabas and Lawler working together to create a search protocol to gather, search, and review potentially responsive electronically stored documents in his possession, custody, or control.

On March 13, 2024, Lawler sent narrowed search terms to Barnabas, explaining that Lawler would move forward with same given the fact that Barnabas has refused to engage (or make a counter proposal) on the suggested search terms. While Barnabas declined to propose revised search terms, on March 15, 2024, Lawler produced 41 documents spanning 785 pages.

\* \* \*

In conclusion, we ask that the Court deny Barnabas' baseless and incendiary motion. Barnabas seeks no specific relief and proffers no legal basis for the Court to grant the limitless discovery it seems to be seeking. Barnabas should not be rewarded for making repeated unreasonable demands followed by refusals to cooperate. We thank the Court for its time in considering this matter and remain available to Your Honor with any questions or concerns.

Sincerely,
NORRIS McLAUGHLIN, P.A.

*s/Nicholas F. Pellitta*
Nicholas F. Pellitta

NFP/men

cc: Alex Spiro, Esq. – Quinn Emanuel Urquhart & Sullivan, LLP