William T. Walsh
PROSKAUER ROSE LLP
11 Times Square
New York, NY. 10036
(212) 969-3908
wwalsh@proskauer.com

*Attorney for RWJ Barnabas Health, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAREPOINT HEALTH SYSTEMS INC.**, *et al*. ) | 2:22-cv-05421-EP-CLW |
| ) | |
| Plaintiffs, ) | Hon. Evelyn Padin, USDJ |
| ) | |
| v. ) | Hon. Cathy L. Waldor, USMJ |
| ) | |
| **RWJ BARNABAS HEALTH, INC.**, ) | |
| ) | |
| Defendant. ) | |

## BARNABAS'S OPPOSITION TO SCI'S MOTION
## FOR A PROTECTIVE ORDER AND CROSS-MOTION TO COMPEL

## **TABLE OF CONTENTS**

I.     INTRODUCTION. ................................................................................. 1

II.    SCI POSSESSES CRITICAL INFORMATION RELATING TO
       BARNABAS'S DEFENSE. ................................................................... 6

III.   SCI IS NOT ENTITLED TO BLANKET IMMUNITY FROM
       DISCOVERY. ...................................................................................... 9

       A.    The SCI Enabling Act Does Not Bar Discovery in Judicial
             Proceedings. .............................................................................. 9

       B.    Federal Common Law Does Not Recognize any Blanket
             Immunity for Government Agency Investigations. ............................ 18

       C.    The Court Should Reject SCI's Request to Create a "New
             Privilege" Based on SCI's Enabling Act. ......................................... 20

IV.    SCI SHOULD BE COMPELLED TO PRODUCE ITS ENTIRE
       INVESTIGATION FILE ....................................................................... 25

V.     CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES[1]

**CASES**

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*,
110 F. Supp. 3d 215 (D.D.C. 2015) ................................................... 11

*Anderson v. LA Dep't of Transp. & Dev.*,
2019 WL 12536018 (W.D. La. 2019) ................................................ 19

*Armstrong v. Hy-Vee, Inc.*,
2016 WL 1228577 (D. Neb. 2016) .................................................... 10

*Beckwith v. Blair Cty*,
2019 WL 343248 (W.D. Pa. 2019) .................................................... 22

*Cali v. SCI*,
63 N.J. 310 (1973) ........................................................................ 16

*Cameron v. City of El Segundo*,
2021 WL 3466324 (C.D. Cal. 2021) ................................................. 11

*Canal Auth. v. Froehlke*,
81 F.R.D. 609 (M.D. Fla.1979) ........................................................ 11

*Carchietta v. Russo*,
2014 WL 1789459 (D.N.J. 2014) (Waldor, J.)............................*passim*

*Chladek v. Commonwealth*,
1998 WL 126915 (E.D. Pa. 1998) .................................................... 19

*Crawford v. Dominic*,
469 F. Supp. 260 (E.D. Pa. 1979)............................................... 16, 23

*Douglas Oil Co. of California v. Petrol Stops Nw.*,
441 U.S. 211 (1979) ...................................................................... 15

*Dunn v. Commodity Futures Trading Comm'n*,
519 U.S. 465 (1997) ...................................................................... 12

---

[1] Unless otherwise noted, all emphasis added, initial capitalizations conformed without brackets, and in all internal citations and quotation marks omitted.

*E.S. v. Elizabeth Bd. of Educ.*,
2022 WL 2106382 (D.N.J. 2022) ........................................................................ 19

*Everitt v. Brezzel*,
750 F. Supp. 1063 (D. Colo. 1990) ............................................................... 19, 20

*Frankenhauser v. Rizzo*,
59 F.R.D. 339 (E.D. Pa. 1973) ............................................................... 4, 16, 23

*G-69 v. Degnan*,
130 F.R.D. 326 (D.N.J. 1990) .......................................................................... 22

*Gaison v. Scott*,
59 F.R.D. 347 (D. Haw. 1973) ......................................................................... 19

*Gov't Emps. Ins. Co. v. Koppel*,
2023 WL 5526809 (D.N.J. 2023) ..................................................................... 19

*Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*,
91 F.R.D. 84 (E.D.N.Y. 1981) .................................................................... 10, 11

*Harper v. Travis Cty. Emergency Servs. Dist. 5*,
2019 WL 96311 (W.D. Tex. 2019) ................................................................... 20

*Ibew-Neca Ret. Plan v. Strickland & Sons Elec.*,
LLC, 2014 WL 988473 (E.D. Mo. 2014) ........................................................ 10

*In re Resolution of the SCI*,
108 N.J. 35 (1987) ........................................................................................... 13

*In re U.S. Dept. of Homeland Sec.*,
459 F.3d 565 (5th Cir. 2006) ........................................................................... 22

*Keeley v. Loomis Fargo & Co.*,
183 F.3d 257 (3d Cir. 1999) ............................................................................ 12

*Mercy v. Suffolk Cnty*,
93 F.R.D. 520 (E.D.N.Y. 1982) ...................................................................... 22

*Paisley v. C.I.A.*,
712 F.2d 686 (D.C. Cir. 1983) ........................................................................ 23

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .............................................................................. 17

iii

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000) ..........................................................*passim*

*Reid v. Cumberland Cty.*,
    34 F. Supp. 3d 396 (D.N.J. 2013) ............................................19, 23

*Scouler v. Craig*,
    116 F.R.D. 494 (D.N.J. 1987) ...........................................................23

*Spell v. McDaniel*,
    591 F. Supp. 1090 (E.D.N.C. 1984) .................................................22

*Torres v. Kuzniasz*,
    936 F. Supp. 1201 (D.N.J. 1996) ...........................................*passim*

*Trammel v. United States*,
    445 U.S. 40 (1980) .............................................................................18

*Tri-State Hosp. Supply Corp. v. U.S.*,
    2005 WL 3447890 (D.D.C. 2005) .....................................................20

*U.S. v. King*,
    73 F.R.D. 103 (E.D.N.Y. 1976) ........................................................24

*United States v. Lischewski*,
    2023 WL 2600451 (N.D. Cal. 2023) .................................................13

*United States v. Nixon*,
    418 U.S. 683 (1974) .............................................................................1

*Urseth v. City of Dayton*,
    110 F.R.D. 245 (S.D. Ohio 1986) ......................................................23

*Williams v. City of Chicago*,
    672 F. Supp. 3d 599 (N.D. Ill. 2023) ...............................................20

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.*,
    671 F.2d 100 (3d Cir. 1982) ........................................................3, 18

*Zicarelli v. SCI*,
    406 U.S. 472 (1972) ...........................................................................16

iv

**STATUTES**

N.J.S.A. 2C:43-13(f) .......................................................................................... 12, 13

N.J.S.A. 52:9M-1, *et seq* ...................................................................................*passim*

**OTHER AUTHORITIES**

N.J. Local Civ. R. 16C ............................................................................................ 23

Fed. R. Civ. P. 26 ...................................................................................5, 14, 23, 24

Fed. R. Civ. P. 45 .................................................................................................... 11

Fed. R. Crim. P. 6 ................................................................................................... 15

Fed. R. Evid. 501 ..............................................................................................*passim*

N.J.R.E. 515 ............................................................................................................ 17

## I.      INTRODUCTION.

"The public ... has a right to every man's evidence." *United States v. Nixon*, 418 U.S. 683, 709-10 (1974).  That is true of documents held by government agencies just as it for others.  Disregarding this fundamental tenet, SCI seeks to quash Barnabas's subpoena, claiming an ironclad immunity from discovery.  But, as the Supreme Court explains, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Id*.  The search for truth compels compliance with the subpoena.

Barnabas's subpoena seeks evidence of the Founders' fraud and cash extractions from the CarePoint System, which this Court already found to be critically important when it compelled the Founders to "comply with all the requests that were given, ***including the SCI documents that were turned over***."  May 21, 2024 Hrg. Tr. 33.  SCI does not dispute the relevance of the subpoenaed evidence.  Nor does it deny it has information that CarePoint and the Founders may not have, either because they did not preserve it or because they never had it in the first place.  Over a three-year investigation, SCI compiled evidence from numerous sources all in one place as a discrete collection of documents.  It does not claim any burden in producing it.

Instead, SCI argues that its "investigatory files are absolutely privileged" in perpetuity.  S. Br. 14 (ECF 99-2).  But it concedes that "there is no federal case law

interpreting … the SCI's operating statute and determining affirmatively that a privilege exists." *Id*. 12.  So, it implores the Court to "recognize a ***new*** evidentiary privilege." *Id*.  But "with *very limited exceptions*, federal courts have generally declined to grant requests for new privileges." *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000).  For that reason, "***only the most compelling candidates*** will overcome the law's weighty dependence on the availability of relevant evidence." *Id*. (refusing to recognize privilege for Child Protective Services investigatory files, despite state confidentiality laws).  This case is not even close.

*New Jersey Law Allows Disclosure.*  SCI grounds its plea for privilege in the anti-leak and confidentiality provisions of its enabling statute, N.J.S.A. § 52:9M-8. That statute prohibits witnesses, targets, and SCI employees from *publicly* disclosing – or leaking – the existence or particulars of an SCI investigation, and exempts SCI from the New Jersey Open Records Act.  *See* S. Br. 17.  But the statute does not preclude compliance with otherwise valid discovery requests in state or federal judicial proceedings.  To the contrary, it *expressly* permits disclosures "authorized or required by law."  § N.J.S.A. 52:9M-15(a).  Case law is clear:  disclosures pursuant to subpoena or court order are disclosures "authorized by law."  SCI cites no contrary case.

*Federal Law Does Not Recognize Any Absolute Investigatory Privilege.* Even if the Enabling Act's confidentiality provision created a discovery or

evidentiary privilege, it would not matter. This is a federal question antitrust case governed by the federal common law of privilege, not state law. As SCI concedes, the "federal common law of privilege *favors the admission of probative evidence over any state law privilege*." S. Br. 12 (citing *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982)).

There is no blanket or absolute federal investigatory privilege for state or federal agencies. Not only are absolute discovery privileges exceedingly rare, *see Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996) (noting that "broadside invocations of privilege" are contrary to Third Circuit law), but courts routinely compel production of evidence and evaluative materials compiled by police departments, internal affairs departments, child protective service departments, and other investigative or law enforcement agencies. *See*, *e.g.*, *Carchietta v. Russo*, 2014 WL 1789459 (D.N.J. 2014) (Waldor, J.) (rejecting privilege claim over Internal Affairs investigatory files).

SCI points to nothing unique about its own operations that would drive a different result. It says it is tasked with investigating organized crime. But so are police departments, and their files are not privileged. Moreover, SCI concedes that it has no law enforcement authority. It is a government watchdog agency. Existing within the legislative branch, not the executive, it is responsible for "keep[ing] the public informed as to the operations of organized crime" and recommending ways

3

other state agencies can improve their regulatory oversight to combat that problem. N.J.S.A. § 52:9M-11.  Those activities are no more deserving of a blanket privilege than any other government investigative agency.

Nor is there any need to create a new privilege.  Federal common law already recognizes a limited, qualified law enforcement privilege.  *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 343 (E.D. Pa. 1973).  SCI does not invoke it because that "privilege is not absolute."  *Id*.  It does not bar discovery of SCI's investigative files for several reasons:  SCI is not a law enforcement agency; its investigation concluded long ago; most responsive evidence consists of underlying, *non-privileged* business records; SCI already published a public report revealing many of the salient facts and extensively citing witness transcripts; and there has been no showing that additional disclosure would harm on any current or future SCI investigation.

But whether SCI seeks its protection or not, the existence of a qualified privilege strongly militates against creating a new, broader privilege based on SCI's (strained) interpretation of the Enabling Act.  Courts have carried out their Congressional mandate to develop a federal "common law" of privilege based on their "reason and experience."  Fed. R. Evid. 501.  It would serve no purpose to disregard decades of well-reasoned decisional law defining the metes and bounds of investigatory privilege just to create a new privilege for SCI's sole benefit.  To do

so would be to invite the very dis-uniformity Congress sought to eliminate through the development of a unified federal common law of privilege.

**SCI Is Already Sufficiently Protected.**    Nor is there any reason to create a new privilege to address SCI's confidentiality concerns.   The creation of a new privilege is a last resort.   It should be chosen only where more limited intrusions on the court's truth-seeking function are insufficient.   *Pearson*, 211 F.3d at 67; *Carchietta*, 2014 WL 1789459, at *7 (noting the importance of investigatory files to the "fair pursuit of plaintiff's allegations" and the sufficiency of "attorney's eyes only" designation).   But the Protective Order in this case (ECF 73) is more than sufficient to safeguard any valid confidentiality interests.   Indeed, the Protective Order here goes *beyond* the Court's Model Protective Order by presumptively designating *all* information Attorneys' Eyes Only.   No one but *outside* counsel in this litigation is permitted to see the documents.   And to the extent anything is filed on the docket to which SCI wishes to maintain secrecy, it has every right to seek to maintain it under seal.

*   *   *

With no blanket immunity from discovery, SCI's effort to shield its investigatory file from discovery falls flat.   Other than its (flawed) claim of absolute privilege, SCI has not asserted – and therefore has waived – any objection to the subpoena.   But even as to privilege, SCI opted – in derogation of Rule 26(b)(6) and

5

this Court's local rules – for an all-or-nothing approach, rather than asking for a document-by-document or request-by-request privilege determination.  SCI made that tactical choice because the subpoena only seeks five types of documents, none of which are entitled to special protection:

    (i)     Business records collected by SCI, which are not privileged;

    (ii)    Communications with CarePoint or the Founders, the production of which this Court has already ordered;

    (iii)   Communications with other agencies and third-parties that produced relevant factual information;

    (iv)   Transcripts, including those extensively cited in SCI report; and

    (v)    SCI's summaries and analyses of the facts.

Courts have routinely ordered production of such materials from other agencies.  SCI should be compelled to do the same.

## II.   SCI POSSESSES CRITICAL INFORMATION RELATING TO BARNABAS'S DEFENSE.

In September 2016, SCI opened a three-year investigation into "possible waste, fraud and abuse" of the CarePoint Health System.  ECF 99-2, Ex. A, at 1.  During that investigation, SCI obtained business records from CarePoint, the Founders, the Department of Health, the Department of Labor, and others.  It also took sworn testimony of the Founders.

At the conclusion of the investigation, SCI published a detailed report.  The report revealed *to the public* that the Founders had engaged in "self-dealing" and

"related-party" transactions to extract, in just four years, at least $157 million in "questionable management fees and allocations" from the CarePoint system.  ECF 99-2, Ex. B, at 1-2.

The public report detailed how the Founders' scheme operated, and how the money was channeled from CarePoint to the Founders.  *Id.*  As the report explained, shortly after acquiring control of the hospitals, the Founders established an elaborate web of shell companies – including Sequoia Healthcare Management and IJKG – that had "no employees," minimal "operating expenses," and no discernable activities.  *Id.* at 1.  These management companies extract 4% of the gross revenues – before paying expenses (such as the cost of bandages, medication, or equipment) – for Hoboken and Christ Hospitals, and 95% of the profits of Bayonne hospital, equating to 14% of patient revenues.  *Id.* at 8-9.

SCI also investigated the Founders' claims that these payments were justified by valid management services.  Despite three years of investigatory work, SCI was unable to verify the "nature of [the] operations" of the Founders' management companies, whether they had the capacity to perform such services, or whether they did, in fact, provide them.  *Id.* at 1.  SCI noted that the Founders' testimony was internally "inconsistent," and had changed over time after being "confronted" with the relevant evidence.  *Id.* at 6.  The Founders' testimony and credibility will be

central at trial here as well, and the importance of their prior sworn testimony on the same evidence, closer in time to the events at issue cannot be overstated.

Following the publication of the SCI report, the CarePoint hospitals ran into financial difficulties, which continue to this day.  On September 6, 2022, CarePoint sued Barnabas, claiming that it was responsible for CarePoint's turmoil because it had opened a competing emergency facility in Bayonne five years earlier.  But the SCI report shows that the Founders extraction of virtually every available cent (and then some) from the system *actually* caused the hospitals' misfortunes.

During discovery, Barnabas sought evidence to *prove* at trial the facts uncovered by SCI.  It issued discovery to CarePoint and the Founders.  But CarePoint disclosed that it had failed to preserve the Founders' documents as "discrete custodial files."  The Founders also resisted discovery, claiming they had engaged in no wrongdoing and so their information was irrelevant.  Though this Court rejected that argument and ordered the Founders to produce their documents, including all materials turned over to SCI, the Founders have not yet done so or confirmed that they still possess them.  In any event, SCI clearly has materials CarePoint and the Founders do not, and those documents exist in one discrete place.

Barnabas, therefore, subpoenaed SCI to obtain the documents it had collected, analyzed, and synthesized during its three-year investigation, including witness testimony; underlying business records, financial reports, and other factual

documents; internal analyses, assessments and summaries; and other submissions from CarePoint, the Founders, or others.  After receiving an extension of time to respond, SCI declined to serve any formal objections.  It did not contest relevance or identify any burden in complying with the subpoena.[2]

## III.    SCI IS NOT ENTITLED TO BLANKET IMMUNITY FROM DISCOVERY.

SCI concedes, as it must, that federal law, not state law governs any privilege in this case.  S. Br. 12; *Carchietta v. Russo*, 2014 WL 1789459, *5 (D.N.J. 2014) (Waldor, J.) ("privilege in federal court is governed by [Rule] 501, which provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege").  Instead, it says that "the SCI's files are absolutely privileged" under state law, and asks this Court to recognize that immunity as a matter of federal common law.  S. Br. 14.  But state law confers no such immunity, and there is no basis to take the extraordinary step of creating a new federal privilege.

### A.    *The SCI Enabling Act Does Not Bar Discovery in Judicial Proceedings.*

SCI boldly asserts that, "never before in [its] fifty-year history, has the SCI been subjected to discovery or had to disclose a single document to a private

---

[2] SCI twice claims that RWJ Barnabas agreed to limit the subpoena to exclude internal memoranda and internal analysis if SCI would produce the other requested documents.  S. Br. 8 n.1.  Not quite. We expressed a willingness to compromise if it would avoid "court involvement."  *See* ECF 99-2, Ex. D, at 1.  SCI rejected that offer, and it is no longer on the table.  SCI should be required to produce all documents responsive to the subpoena as written.

litigant." S. Br. 7.  But SCI does not cite a single case – state or federal – quashing a subpoena directed to SCI.  Nor does SCI cite a single case – state or federal – recognizing a discovery or evidentiary privilege for SCI's investigatory files.  In fact, it concedes there "there is no federal case law interpreting the confidentiality provisions expressed in SCI's operating statute and determining affirmatively that a privilege exists." S. Br. 12.

Nor does the Enabling Act's express language *purport* to create such a privilege.  The Enabling Act speaks of confidentiality, not of privilege or exemption from discovery.  Confidentiality is not the same as privilege.  Nor can SCI's argument – that the legislature must have intended to create a privilege when it imposed "serious consequences" on leakers, *see* S. Br. 17 – be squared with the statute's text.  The statute, by its own terms, does ***not*** apply to "disclosures authorized or required by law."  N.J.S.A. 52-9M-15(a).

It is well-settled that disclosures pursuant to an otherwise valid subpoena or court order are "authorized by law." *Armstrong v. Hy-Vee, Inc.*, 2016 WL 1228577, *2 (D. Neb. 2016) (denying motion to quash Department of Labor's "confidential" investigatory file protected by State statute because a subpoena constitutes disclosure "authorized by law."); *Ibew-Neca Ret. Plan v. Strickland & Sons Elec.*, LLC, 2014 WL 988473, *3 (E.D. Mo. 2014) (same); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) ("Disclosure

pursuant to the discovery rules is disclosure 'authorized by law'"); *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 229 (D.D.C. 2015) ("It is clear that information which is otherwise discoverable under [the Federal Rules] is information which the Government is authorized by law to disclose."), (*citing Canal Auth. v. Froehlke*, 81 F.R.D. 609, 613 (M.D.Fla.1979); *cf. Cameron v. City of El Segundo*, 2021 WL 3466324, *15 (C.D. Cal. 2021) (Rule 45 constitutes contact "authorized by law" for purposes of ethical rules).

SCI does not cite any case holding that discovery pursuant to compulsory process is not "authorized by law." Instead, it argues that the "authorized by law" proviso should be "limited by the authorized disclosures enumerated in the SCI's enabling statute and by case law recognizing those limitations." S. Br. at 18. But that is not what the statute says. The statute permits certain enumerated disclosures, and prohibits other non-enumerated disclosures "*unless* otherwise authorized by law" – full stop. This proviso does not reference or incorporate any other provisions of the Act, and it does not say that the word "law" is limited to the Enabling Act. It does not say, for example, as authorized by "*this*" section, "*this*" Chapter, or "*this*" law. The obvious inference is that the legislature intended no such limitation.

Moreover, by offsetting the "authorized by law" proviso with commas, the statute makes clear that it is an independent exception to confidentiality. Reading the "authorized by law" language to cover only later enumerated disclosures would

also render the proviso superfluous, violating a cardinal rule of statutory construction. *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("legislative enactments should not be construed to render their provisions mere surplusage."). SCI's interpretation also makes no sense, as it would mean non-enumerated disclosures that ***are*** authorized by law are prohibited. That cannot be.

SCI also tries to find solace in the Enabling Act's express "exemption from Open Public Records Act requests." S. Br. 18 (citing N.J.S.A. § 52:9M-15(d)). From this, it surmises that the legislature meant to *imply*, but not expressly say, that *judicial* disclosures should also be prohibited. But the failure to exempt judicial proceedings suggests the opposite: that the legislature never intended to confer such blanket immunity. *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 265-66 (3d Cir. 1999) ("Under the well-established principle of … *expressio unius* [], the legislature's explicit expression of one thing – here, certain exceptions … – indicates its intention to exclude other exceptions.").[3]

Indeed, where the New Jersey legislature wants to create a privilege, it knows how to do it. Take, for example, the state's Pretrial Intervention Program, which provides that "no statement or other disclosure [as part of the program] be admitted

---

[3] SCI claims that a judicial subpoena poses an "even greater threat" than an OPRA requests for the *same* material. S. Br. 18. But anyone can make an OPRA requests for any purpose, including (as SCI speculates) to retaliate against witnesses and cooperators. In contrast, subpoena responses are subject to Protective Orders, which here *presumptively* limits all discovery materials to outside counsel and prohibit use for any purpose other than advancing the litigation.

as evidence in any civil or criminal proceeding against the participant." N.J.S.A. § 2C:43-13(f). That is a privilege against use in civil litigation. SCI's statute contains nothing of the kind.

Nor is there merit to SCI's argument that New Jersey case law limits the scope of the "authorized by law" proviso. SCI cites no case discussing this proviso. Instead, it cites to *In re Resolution of the SCI*, 108 N.J. 35, 44 (1987). But that case is inapposite. It did not address whether the Enabling Act immunizes SCI from compulsory process. It simply held that there is no private right of action to remedy a breach of the Act's confidentiality provision. Barnabas, of course, is not seeking to enforce that provision; it simply seeks to enforce a duly-authorized subpoena.

Though factually inapposite, SCI offers two reasons why *Resolution* supports its argument that the Enabling Act's confidentiality provision should be interpreted more broadly than its express language. Neither has merit.

*First*, SCI notes that *one* (of many) reasons the court gave for declining to recognize a private right of action was that *party* discovery requests might interfere with an active confidential investigation, and thus, "could be misused as a dilatory tactic by parties who seek to obstruct official proceedings." *Resolution*, 108 N.J. at 44. In the court's view, a target of an SCI investigation could sue SCI, claiming improprieties with the investigation and burdening it with investigation-chilling discovery requests. That is not the case here, nor could it be. That concern is not

present when SCI is a third-party, because it is unlikely that a target of an SCI investigation could file a random suit against someone *else* as a ruse to propound discovery on SCI.

Moreover, Rule 26's limits on proportionality and the use of discovery for "annoyance … or oppression" can certainly guard against that remote possibility. Fed. R. Civ. P. 26(b), (c). More importantly, SCI concedes that its investigation of the Founders has long since concluded; that Barnabas was never a party to it; and that Barnabas has never had any interest in obstructing SCI's proceedings. Put simply, there is no suggestion that Barnabas has acted in bad faith in seeking discovery of SCI's investigation of the Founders. As such, the *Resolution* rationale does not support SCI's attempt to nullify the "authorized by law" proviso.

*Second*, SCI notes that the *Resolution* court suggested that the state legislature may have been animated by some of the same principles that govern grand jury secrecy. S. Br. 22. But SCI is not a grand jury. Grand juries have a unique and storied history in our criminal justice system, dating back to colonial times and operating independently of the executive, legislative, or judicial branches of government. In contrast, SCI has no criminal or even civil law enforcement authority, and no power to indict wrongdoers.[4] It is a research arm of the legislative branch, no different than any other legislative agency.

---

[4] SCI says it may disclose "criminal wrongdoing or misconduct of a ***public official*** to appropriate

But even if SCI were deemed analogous to a grand jury, that would not immunize it from compulsory process. Grand jury secrecy is not absolute. It is governed by the Federal Rules of Criminal Procedure. Under Rule 6(e), grand jury materials can be disclosed pursuant to court order "preliminarily to or in connection with a judicial proceeding," including civil litigation, when the need for disclosure outweighs the need for "continued secrecy." *U.S. v. Lischewski*, 2023 WL 2600451, *4 (N.D. Cal. 2023) (citing Fed. R. Crim. P. 6(e)(3)(E); *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979)). SCI's grand jury analogy, therefore, negates rather than supports its restrictive read of the "authorized by law" proviso.[5]

In any event, SCI makes no showing that "continued secrecy" of its now-public and long-concluded investigation outweighs the need for discovery of the Founders' scheme. SCI's investigation file consists of underlying business records; witness testimony; and SCI's own internal factual assessments. Because business records are not privileged, producing parties cannot reasonably expect that they won't be produced in subsequent litigation. Nor does SCI argue its ability to compel documents in future cases will be hampered if ordered to reproduce documents in

---

authorities." S. Br. 16. But the CarePoint investigation did not involve any investigation of public officials. Nor would disclosure to a law enforcement agency make SCI a law enforcement agency.

[5] The internal inconsistency of SCI's grand jury analogy is readily apparent. It admits that grand jury secrecy diminishes upon the completion of its duties, but it says the Enabling Act does not "extinguish the SCI's duty to maintain confidentiality at the conclusion of the case." S. Br. 21-22. SCI cannot have it both ways. The only proper reading is that the Enabling Act is limited to *public* disclosures, for which there is no expiration date, and not discovery in judicial proceedings.

this case.  It will, after all, have the same subpoena power it always had.  Indeed, much of the evidence SCI compiled came from other state agencies, which certainly won't stop cooperating with the SCI in future cases.

The same is also true for testimony.  As SCI admits, its ability to compel testimony is aided by its ability to grant *immunity* from prosecution, not from any reasonable expectation that such testimony, once given, will not be further disclosed in a future proceeding.  *See Cali v. SCI*, 63 N.J. 310, 318 (1973) (recognizing that witnesses' names and testimony may become public in a variety of ways and that SCI has no "authority" to promise absolute confidentiality).

As courts have recognized, the argument that such judicial disclosure would chill others from testifying is wholly speculative.  *Crawford v. Dominic*, 469 F. Supp. 260, 264 (E.D. Pa. 1979) ("I do not accept the general proposition that citizens … will be less likely to give information … because in a few instances that information may be used in a later lawsuit."); *Frankenhauser*, 59 F.R.D. at 344 ("[W]e do not believe that rare instances of disclosure pursuant to a court order … would deter citizens from revealing information to the police.").[6]

---

[6] SCI's cite to *Zicarelli v. SCI*, 406 U.S. 472 (1972), is inapposite.  There, the Supreme Court upheld a contempt citation for a witness "cloaked with immunity."  SCI infers from this that immunity is insufficient and that it also needs recourse to the confidentiality provision to secure compliance witness testimony.  S. Br. 16.  But the *Zicarelli* witness did not refuse to testify because of concerns about civil litigation.  He argued that "use" immunity was too limited, and he needed "full transactional immunity."  That has nothing to do with civil litigation or confidentiality.

Moreover, here, the identities of the witnesses, and much of their testimony, has already been publicly disclosed in the SCI's report.[7]  SCI does not identify any additional information the disclosure of which would chill its investigatory efficacy. Moreover, SCI's investigation ended more than *five years* ago.  SCI concedes that the conclusion of an investigation diminishes the need for protection, *see* S. Br. 22. Nor does it identify any residual harm to any current or future investigation that would occur from disclosure of this historic information.

Ultimately, SCI offers nothing but lawyer argument and speculation to support its claim that its disclosure of its investigation file would "cripple" SCI's effectiveness in the future.  This does not meet SCI's burden to, as it describes it, "demonstrate[] that disclosure of the documents sought will cause a clearly defined and serious injury."  S. Br.  11 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing.")).[8]

---

[7] SCI's argument that it should not "surrender its privileged investigatory files when RWJ Barnabas could conceivably get them from" third parties belies the existence of any privilege.  S. Br. 24.  It is not privileged – and it is certainly not SCI's privilege – if third parties can disclose the documents.  Barnabas should not be forced to try to reinvent the wheel.  SCI is the source that "is more convenient, less burdensome, [and] less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

[8] SCI also points to the "Official Acts" privilege of the New Jersey Rules of Evidence.  *See* S. Br. 20 (citing N.J.R.E. 515).  But Congress rejected any statutory "official acts" privilege when it promulgated Federal Rule of Evidence 501.  *See* Fed. R. Evid. 501, Advisory Committee Notes. In any event, N.J.R.E. 515 does not apply.  It only prohibits disclosure "(a) if disclosure is forbidden by or pursuant to any Act of Congress or of this State, or (b) if the judge finds that disclosure of the information in the action will be harmful to the interests of the public."  N.J.R.E. 515.  The first prong does not apply because the Enabling Act permits disclosure "authorized by

**B.     Federal Common Law Does Not Recognize any Blanket Immunity for Government Agency Investigations.**

Even if the Enabling Act created privilege under *state* law, it cannot in a federal antitrust case. As this Court has held, and SCI concedes, "privilege in federal court is governed by [Rule] 501, which provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege." *Carchietta v. Russo*, 2014 WL 1789459, *5 (D.N.J. 2014) (Waldor, J.); S. Br. 12.

Federal common law does not recognize any blanket or absolute immunity for government investigatory files. As the Supreme Court explained, a privilege is recognized only to the extent the need for it "transcend[s] the normally *predominant* principle of utilizing **all rational means** for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980). As such, under Rule 501, "when there are federal law claims in a case … the federal rule **favoring admissibility**, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3d Cir. 1982).

Although SCI concedes that the "federal law of privilege favors the **admission** of probative evidence **over any state law of privilege**," it nonetheless argues that the court should "look" to the Enabling Act as "persuasive" evidence of what the federal privilege law of privilege should be. *See* S. Br. 11-12. But the fact that the New

---

law," and the second prong merely mirrors the federal qualified common law "law enforcement" privilege's balancing test, which SCI eschews.

Jersey legislature saw fit to create a zone of privacy for SCI's investigations does not mean that it should be "absorbed" into the federal common law of privilege. Because Rule 501 *preempts* state confidentiality laws in federal question cases, the argument that the Court "must apply New Jersey law prohibiting disclosure of [agency] records … ***contravenes*** Third Circuit precedent concerning the interplay between the Federal Rules of discovery and any asserted state-law privilege." *E.S. v. Elizabeth Bd. of Educ.*, 2022 WL 2106382, *3 (D.N.J. 2022).

Nor is there any need to look to the Enabling Act to determine the scope of federal privilege law.  SCI is hardly the only government agency with investigatory authority.  There are thousands of federal, state, and municipal agencies throughout the country with such powers, including law enforcement agencies, administrative agencies, and – ***as here*** – mere legislative research agencies without any enforcement powers at all.  All these agencies could make the same argument—that disclosure of past investigations could hamper future investigations.  Yet discovery from these agencies is commonplace, even where those investigations, like here, are protected by state confidentiality and anti-leak statutes.[9]

---

[9] *See*, *Everitt v. Brezzel*, 750 F. Supp. 1063, 1068 (D. Colo. 1990) ("Broad invocations of official information privilege as to entire files … will result in an order compelling production of all such files…"); *Gov't Emps. Ins. Co. v. Koppel*, 2023 WL 5526809 (D.N.J. 2023) (ordering disclosure of New Jersey Office of the Insurance Fraud Prosecutor files); *Chladek v. Commonwealth*, 1998 WL 126915 (E.D. Pa. 1998) (Office of Inspector General files); *Gaison v. Scott*, 59 F.R.D. 347 (D. Haw. 1973) (police department files); *Carchietta*, 2014 WL 1789459 (D.N.J.) (Waldor, J.) (same); *Reid v. Cumberland Cty.*, 34 F.Supp.3d 396 (D.N.J. 2013) (Department of Corrections files); *Anderson v. LA Dep't of Transp. & Dev.*, 2019 WL 12536018 (W.D. La. 2019) (Department

Given the pervasiveness of the modern administrative state, it is telling that SCI cites no case conferring any investigatory agency – state or federal – with blanket immunity from discovery under Rule 501. *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208-09 (D.N.J. 1996) (ordering disclosure of police files, and noting that the "Third Circuit has rejected 'broadside invocation[s] of privilege."); *Everitt*, 750 F. Supp. at 1068 ("Broad invocations of official information privilege as to entire files … will result in an order compelling production of all such files."); *Williams v. Chicago*, 672 F. Supp. 3d 599, 610 (N.D. Ill. 2023) ("Blanket protection is not justified on grounds that a law enforcement agency conducted the investigation.").

### C.    The Court Should Reject SCI's Request to Create a "New Privilege" Based on SCI's Enabling Act.

Recognizing that no existing federal privilege law confers immunity over SCI's investigatory files, SCI implores the Court to "recognize a *new* evidentiary privilege." S. Br. 12.  But SCI cannot overcome the high hurdle for creating a new federal privilege.

SCI recognizes that, because "privileges are disfavored …, courts should recognize a new privilege **only** where the interests of the party seeking the privilege are so important that they outweigh the need for the evidence." S. Br. 12.  But the

---

of Transportation files); *Tri-State Hosp. Supply Corp. v. U.S.*, 2005 WL 3447890 (D.D.C. 2005) (Department of Justice files); *Harper v. Travis Cty. Emergency Servs. Dist. 5*, 2019 WL 96311 (W.D. Tex. 2019) (Fire Department and Emergency Services Department files).

"*principal* feature of the federal approach is that the considerations against the recognition of new privileges that would impede access to probative evidence are granted very significant weight." *Pearson*, 211 F.3d at 67.   As such, "with *very limited exceptions*, federal courts have generally declined to grant requests for new privileges." *Id.*  So, while courts may *consider* creating new privileges on a case-by-case basis, "they are to conduct that assessment with a recognition that ***only the most compelling candidates*** will overcome the law's weighty dependence on the availability of relevant evidence." *Id*.

SCI presents no compelling reason to recognize a new blanket privilege immunizing agency investigatory files from discovery.  To the extent a privilege is needed to protect the integrity of agency investigations, that privilege already exists under federal law.  As this Court has recognized,

> "The federal 'law enforcement' privilege, sometimes referred to as an "executive" privilege or "official information" privilege, is a qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement."

*Torres*, 936 F. Supp. at 1209.

This privilege is a far cry from the blanket protection and wholesale immunity SCI seeks, which is why SCI does not invoke it.  *See Carchietta*, 2014 WL 1789459, at *7 ("Broad invocations of a privilege are unacceptable").  The established law enforcement privilege is subject to a "balancing test" that "must be conducted with

an eye towards disclosure." *Torres*, 936 F. Supp. at 1210; *Carchietta*, 2014 WL 1789459, at *7 (same). Under this test, the "head of the agency" must "personally review" each document and certify that disclosure of each one would irreparably injure an active investigation, and that no lesser protections – such as a confidentiality order – would suffice to protect the integrity of the investigation. *Torres*, 936 F. Supp. at 1210. And even then, the court must "weigh the government's interest in ensuring the secrecy of the documents in question against the need of the adverse party to obtain the discovery." *Id.* at 1209.

Here, SCI is not a law enforcement agency;[10] its investigation ended long ago;[11] its findings have already been made public; most if not all of the witnesses who provided sworn testimony – including the Founders – have already been disclosed in the SCI's public report; there has been no showing that disclosure of the underlying evidence or even the SCI's evaluation materials will chill any future

---

[10] *Compare Beckwith v. Blair Cty*, 2019 WL 343248, *3 (W.D. Pa. 2019) ("The law enforcement investigatory privilege is a form of executive privilege…") *with* S. Br. 6 ("The New Jersey Treasury classifies the SCI as an agency within the Legislative Branch.").

[11] *Spell v. McDaniel*, 591 F. Supp. 1090, 1119 (E.D.N.C. 1984) ("no privilege for police investigative files other than to files relating to ongoing investigations") (citing cases); *In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006) ("[T]he privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document."); *G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J. 1990) (claim for privilege is stronger with "respect to protecting ongoing investigations as contrasted with closed files"); *Mercy v. Suffolk Cnty*, 93 F.R.D. 520, 522 (E.D.N.Y. 1982) (rejecting claim of executive privilege over Internal Affairs investigation because it was doubtful that "police officer [would be] more likely to be untruthful if they know potential plaintiffs might receive their reports").

investigation;[12] the documents at issue are, for the most part, underlying business records that are not entitled to any special protection; there is no "affidavit" from the head of SCI supporting the claim for protection on a document-by-document basis;[13] and there is no question that evidence of the Founders' fraud and mismanagement is highly relevant to this case.[14]

Because each of these factors individually and collectively bar application of the *qualified* law enforcement privilege, SCI asks the court to find that "SCI's investigatory files are *absolutely* privileged." S. Br. 14. It bases its request on *Pearson*'s passing observation that the "the case for recognizing a particular privilege is stronger … where the information sought is protected by a state privilege." *Id.* (citing *Pearson*, 211 F.3d at 67). But this was pure *obiter dicta*.

*Pearson declined* to recognize a federal privilege for information gathered by Child Protective Services based on state privilege law.[15] As the court explained,

---

[12] *Crawford v. Dominic*, 469 F. Supp. at 264; *Frankenhauser*, 59 F.R.D. at 343; *Paisley v. C.I.A.*, 712 F.2d 686, 699 (D.C. Cir. 1983) ("[I]n most situations factual summaries prepared for informational purposes … should be disclosed."); *Scouler v. Craig*, 116 F.R.D. 494, 496-97 (D.N.J. 1987) (ordering disclosure of evaluative documents because the moving party failed to make a "strong showing" that the public interest would be "substantially harm[ed]" by disclosure); *Urseth v. Dayton*, 110 F.R.D. 245, 256 (S.D. Ohio 1986) (same); *Reid*, 34 F.Supp.3d at 409 (same).

[13] *Torres*, 936 F. Supp. at 1208 ("This District's Local Rules also require parties to assert a claim of privilege with specificity.") (citing L.Civ.R. 16C); *see also* Rule 26(b)(5) (requiring that privilege claims be accompanied by a log, setting for the facts necessary enable the requesting party to "assess the claim.").

[14] *See* ECF 102 (order); May 21, 2024 Hrg. Tr. 33 ("I want you to comply with **all the requests** that were given, including the SCI documents that were turned over.").

[15] The Pennsylvania Child Protective Services law was animated by the same concerns that SCI advances here. *Pearson*, 211 F.3d at 70 n.15 (noting that the law was designed to "encourage

while protecting confidentiality is "crucial to [the program's] maximal effectiveness" and "essential" to encourage people to report child abuse, Rule 501 does not allow state agencies to withhold relevant information from discovery based on state confidentiality laws. *Id*. at 70.[16] The same is true for SCI.

Moreover, all SCI's imagined dangers are addressed by the existing Protective Order. As the Third Circuit explained, there is no need to recognize ***any privilege*** under Rule 501, because a confidentiality order under Rule 26 would suffice to protect the interests of the agency. In such circumstances, the court noted, that any protection would "focus less on the letter of the [state confidentiality] statutes than on an accommodation of plaintiff's legitimate discovery interests with the legitimate interests of [the agency] in the confidentiality of portions of the requested material." *Id*. at 73. Picking up on this principle, this Court has similarly noted that "the protection of a confidentiality order and the release of these materials for attorney's

---

reporting of abuse by ensuring that persons … are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution;" "to facilitate the investigation of abuse by assuring potential witnesses that [their] information … will not be made public;" "to [encourage] open, frank communications with agency…,and to prevent the innocent victims of abuse from also becoming victims of public stigma by guarding information about the intimate details of their lives from the prying eyes of outsiders.").

[16] SCI misplaces reliance on *U.S. v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976), for the proposition that state privileges should be absorbed into the federal law if it can "be accomplished at no substantial cost to federal substantive and procedural policy." *First*, *King* is an out-of-circuit 40-year-old district court decision decided shortly after Rule 501 was enacted and before the case law had fully developed. *Second*, the "substantial cost" standard is not grounded in and is inconsistent with Rule 501. *Third*, *King*, like *Pearson*, declined to recognize the state law privilege because it would be improper to adopt a state privilege based only on the "implicated local interest."

eyes only will go a long way to protect [informants] from loss of privacy." *Carchietta*, 2014 WL 1789459, at *7.

## IV.    SCI SHOULD BE COMPELLED TO PRODUCE ITS ENTIRE INVESTIGATION FILE.

Barnabas propounded five simple document requests to SCI: (i) documents; (ii) communications and submissions from the Founders or CarePoint; (iii) communications with other third-parties or state agencies; (iv) transcripts; and (v) analyses or memos, relating to SCI's investigation of CarePoint and the Founders. SCI did not object to producing any of these materials on grounds of relevance or burden. Because its sole objection – blanket privilege based on the Enabling Act – lacks merit, it should be compelled to produce all documents responsive to the subpoena as written.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny SCI's Motion for a Protective Order and grant Barnabas's Cross-Motion to Compel.

Dated: June 3, 2024                    Respectfully submitted,

_/s/ William T. Walsh_
William T. Walsh
David A. Munkittrick*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
dmunkittrick@proskauer.com

Colin R. Kass*
Erica T. Jones*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
(202) 416-6800
ckass@proskauer.com
ejones@proskauer.com

_Attorneys for Defendant_
_RWJ Barnabas Health, Inc._

_* Admitted Pro Hac Vice_

## **CERTIFICATE OF SERVICE**

I, William T. Walsh, hereby certify that on June 3, 2024, I caused the foregoing document and accompanying proposed order to be filed and served via the Court's CM/ECF filing system on all counsel of record, including counsel for Movant.

*/s/ William T. Walsh*
William T. Walsh