# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAREPOINT HEALTH MANAGEMENT ASSOCIATES LLC, HUDSON HOSPITAL OPCO LLC d/b/a CAREPOINT HEALTH – CHRIST HOSPITAL, IJKG, LLC, IJKG PROPCO LLC and IJKG OPCO LLC d/b/a CAREPOINT HEALTH – BAYONNE MEDICAL CENTER, and HUMC OPCO LLC d/b/a CAREPOINT HEALTH – HOBOKEN UNIVERSITY MEDICAL CENTER<br><br>         Plaintiffs,<br><br>v.<br><br>RWJ BARNABAS HEALTH, INC.<br><br>         Defendant. | Hon. Evelyn Padin, U.S.D.J<br><br>Hon. Cathy L. Waldor, U.S.M.J.<br><br>Civil Action No.<br>2:22-cv-05421-EP-CLW<br><br><br>**Return Date: September 3, 2024**<br><br>**Oral Argument Requested** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISQUALIFY COUNSEL

                **DILWORTH PAXSON LLP**
                Lisa J. Rodriguez
                Douglas M. Weck
                457 Haddonfield Road, Suite 700
                Cherry Hill, NJ  08002
                lrodriguez@dilworthlaw.com
                Telephone: (856) 675-1900
                Facsimile: (856) 663-8855

                *Attorneys for Plaintiffs*
                *Additional counsel on signature page*

#124539805v1

## TABLE OF CONTENTS

I.   Proskauer has now turned against its former client CarePoint. ..........................1

II.   RPC 1.9(a) protects attorney-client loyalty and confidentiality. ........................7

III.   Proskauer must demonstrate why it is not disqualified under RPC 1.9(a). .......10

IV.   Proskauer cannot meet its burden of showing informed consent. .....................11

V.   There is no waiver due to purported undue delay...............................................12

VI.   Conclusion..........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. R.J. Reynolds Tobacco Co.*, 246 N.J. Super. 348 (App. Div. 1991) .......13
*Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996) .............................8
*Celgene Corp. v. KV Pharm.*, No. 07-4819SDW, 2008 WL 2937415 (D.N.J. July 29, 2008)................................................................................................................12
*City of Atlantic City v. Trupos*, 201 N.J. 447 (2010)........................................ *passim*
*Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC*, 471 N.J. Super. 184 (App. Div. 2022)................................................................................................10
*Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201 (1988) ...............................8, 13
*H & H Mfg. Co., Inc. v. Tomei*, No. A-4209-19, 2021 WL 6132769, at *6 (N.J. Super. Ct. App. Div. Dec. 29, 2021) .........................................................................9
*Herbert v. Haytaian*, 292 N.J. Super. 426 (App. Div. 1996)...................................10
*In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3d Cir. 1984) .....................12
*In re Est. of Krivulka*, No. A-0803-21, 2022 WL 3693103 (N.J. Super. Ct. App. Div. Aug. 26, 2022) ................................................................................................11
*Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264 (2012) ................................................................................................................................13

**Rules**

L.Civ.R. 103.1......................................................................................................7
RPC 1.4 ...............................................................................................................12
RPC 1.0 ...............................................................................................................12
RPC 1.9 ............................................................................................... 7, 8, 10, 12

Plaintiffs, CarePoint Health Management Associates, LLC d/b/a CarePoint Health ("CarePoint Health"); Hudson Hospital OPCO, LLC d/b/a CarePoint Health – Christ Hospital ("Christ Hospital"); IJKG, LLC, IJKG PROPCO, LLC and IJKG OPCO, LLC d/b/a CarePoint Health – Bayonne Medical Center ("Bayonne Medical") and HUMC OPCO, LLC d/b/a CarePoint Health – Hoboken University Medical Center ("HUMC") (together "Plaintiffs" or "CarePoint"), respectfully submit this Motion to Disqualify Proskauer Rose LLP as counsel for Defendant, RWJ Barnabas Health, Inc. ("Defendant" or "Barnabas").

## I. Proskauer has now turned against its former client CarePoint.

In April 2020, as the first wave of the pandemic hit New Jersey amidst its ongoing financial troubles, CarePoint turned to Proskauer for legal help. Although the representation initially concerned CarePoint's eligibility for and spending of federal dollars from the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281, it grew beyond that. (*See* CarePoint-Proskauer Engagement Letter, attached as Exhibit A.) Proskauer was retained by CarePoint Founder Vivek Garipalli. (*Id.*) Proskauer would come to advise CarePoint regarding the permissibility of rent payments, loans, and related-party transactions in the midst of its financial troubles and receipt of federal dollars. (*See* Certification of Lisa Rodriguez ¶ 7.) Proskauer was involved in the drafting of forbearance and loan documents for CarePoint and participated in discussions about related party

1

payments with at least two of the Founders, Garipalli and James Lawler, as well as accounting firm BDO USA, LLP. (*Id.* ¶ 7.) It turns out that Proskauer was given open access to CarePoint's confidential financial information and confidences. Now, Proskauer has switched sides against its former client and has strategically zeroed in on information at the heart of its prior confidential representation of CarePoint. That it cannot do.

At the time that Proskauer entered this litigation in October 2022, CarePoint counsel, James Rodgers, communicated to Proskauer that they had been advised that Proskauer had previously done work for CarePoint and that Proskauer could have learned information related to this matter. In response, Barnabas counsel, Colin Kass, represented that he "confirmed that Proskauer's previous representation of CarePoint, a former client, was unrelated to the RWJ matter," and that "Proskauer also learned nothing during the course of that matter that could be related to CarePoint's suit against RWJ." (*See* 10/2022 Rodgers-Kass Correspondence, attached as Exhibit B.)[1] Discovery that Proskauer now aggressively seeks has revealed that not to be true.

---

[1] Based on Proskauer's representation that the prior representation was not related and its representation that it would put a screen in place, CarePoint did not move to disqualify. (*See* 10/11/22 Rodgers-Kass Correspondence, attached as Exhibit C.)

In the course of this Court reopening discovery last month, (ECF 102), and a July 10, 2024 conference with the Court, Proskauer and Barnabas have pushed CarePoint to answer interrogatories and document demands regarding payments made, directly or indirectly, to related-parties, specifically Founder-related parties connected to Vivek Garipalli, James Lawler, and Jeffrey Mandler. (ECF Nos. 97, 113; *see* 7/8/24 Proskauer Correspondence, attached as Exhibit D.) Proskauer has also demanded information concerning what CarePoint did to determine the permissibility of such payments, including assessments of fair market value, (ECF Nos. 97, 113), forgetting that one thing that CarePoint did was hire Proskauer for advice on the matter.

Against its former client, Proskauer explicitly aims to prove that Barnabas's anti-competitive conduct did not cause harm to CarePoint by trying to uncover evidence that CarePoint and its Founders were separately misusing its funds. Although CarePoint has objected to the relevance of that inquiry, Proskauer has not relented. (*E.g.*, ECF Nos. 97, 113.) In seeking to cede to Proskauer's demands to resolve the discovery dispute, CarePoint counsel investigated the matter. In the course of doing so, CarePoint counsel determined that responses to Proskauer's discovery demands directly implicate Proskauer's prior representation of CarePoint, in direct contrast with Proskauer's assertion at the outset that this case was not

3

related at all to its earlier representation. Proskauer did not reveal that Proskauer's work for CarePoint included advice on related-party payments, including attorney-client communications with Founders Garipalli and Lawler (the very people they are trying to blame) about related-party payments. (*See* Rodriguez Certification, ¶ 7.)

Proskauer has served a number of discovery requests, including third-party subpoenas, that implicate the scope of its representation of CarePoint. For example, a Proskauer subpoena to BDO, specifically requests 5 and 6, relates to the subject-matter of the prior representation. (*See* 7/9/24 BDO Subpoena, attached as Exhibit E; Rodriguez Certification ¶ 7.)

Proskauer's focus on discovery of the Founders and information about payments made to them is now all over the record. Just yesterday, Proskauer wrote to the Court demanding immediate entry of an order compelling CarePoint, within two weeks, to provide answers to interrogatories seeking granular information about every single payment ever made by CarePoint to any Founder or any "direct or indirect" entity related to them. (ECF 113; *see also* Barnabas First and Second Interrogatories, attached as Exhibit F.) Proskauer claimed in the letter not to have heard anything about a response to the interrogatories since a July 10 conference with the Court. Not so.

On July 12, 2024, CarePoint counsel informed Proskauer by letter that the interrogatories require CarePoint to provide information from Proskauer's CarePoint representation and demanded Proskauer's CarePoint client file. (*See* 7/12/24 Rodriguez-Kass Correspondence, attached as Exhibit G.) Proskauer has failed to acknowledge the seriousness of the conflict and claims that it was somehow resolved two years prior when Proskauer misrepresented that the prior representation was unrelated. (*See* 7/19/24 Kass-Rodriguez Correspondence, attached as Exhibit H.) It took Proskauer's general counsel until August 6 to make a limited production of emails from Proskauer's files.

By pursuing their strategy of blaming CarePoint's Founders, several of whom Proskauer apparently had attorney-client communications, including Garipalli and Lawler, Proskauer has now caused this litigation to be substantially related to Proskauer's prior representation of CarePoint. Proskauer's discovery strategy is also forcing CarePoint into a situation where it has to make decisions about whether to waive attorney-client confidentiality with its former counsel, Proskauer, to respond to discovery demands. CarePoint would not have put its trust in Proskauer in 2020-2021 if it knew that Proskauer would come back to breach that trust after the fact.

An email from Proskauer's general counsel, sent to CarePoint's counsel on August 8, 2024 highlights the conflict for Proskauer and the strategy it is employing

5

#124539805v1

against CarePoint. In response to a letter for CarePoint's counsel asking for an explanation of the scope of Proskauer's limited client-file production, Proskauer's general counsel wrote:

> It appears that your request for this information is not for purposes of furthering CarePoint's legal interests with respect to the subject matter of the prior representation, but rather to obtain "evidence" in support of your threatened disqualification motion. The use of a request for Carepoint's "client file" is not the appropriate vehicle for such litigation-oriented discovery requests. To the extent you seek discovery relating to your disqualification motion – or are otherwise seeking information beyond that to which Carepoint is entitled pursuant to RPC 1.16(e) or relevant case law, the request is better addressed to the specific lawyers who have entered appearances in the case, where issues such as scope, mutuality, waiver of privilege, and any modifications of the applicable agreed-upon screen can be appropriately addressed before any such production occurs. In short, you are conducting discovery and should do so in compliance with standard discovery procedures and the Federal Rules governing discovery.

(*See* 7/8/24 Proskauer Email, attached as Exhibit I.) That is, Proskauer is acknowledging that information from the prior representation is within the scope of discovery in this case. And, Proskauer's position is that CarePoint must let Proskauer's litigation attorneys climb through the screen in order for CarePoint to respond to Proskauer's discovery demands.

6

Accordingly, CarePoint is now initiating the disqualification process described in *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010). CarePoint hereby moves to disqualify Proskauer as counsel for Barnabas.

## II. RPC 1.9(a) protects attorney-client loyalty and confidentiality.

Attorneys practicing in this Court must comply with the New Jersey Rules of Professional Conduct. *See, e.g.*, L.Civ.R. 103.1(a) ("The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court . . . .").

> Under RPC 1.9,
>
> (a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.
>
> . . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known . . . .

RPC 1.9(a), (c)(1).

The Rule reflects two discrete ethical duties that a lawyer owes to a former client. First, the duty of loyalty prohibits lawyers from turning against their clients in substantially-related matters. Second, the duty of confidentiality prohibits lawyers from using their former client's confidential information to their detriment. *See, e.g.*, *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 975 (D.N.J. 1996) ("At the heart of every 'side-switching attorney' case is the suspicion that by changing sides, the attorney has breached a duty of fidelity and loyalty to a former client, a client who had freely shared with the attorney secrets and confidences with the expectation that they would be disclosed to no one else."); *Trupos*, 201 N.J. at 450–51 ("In the shifting of allegiances that arises when lawyers 'change sides' in their representation of new clients, the confidences of prior clients must be preserved. The propriety of a lawyer representing a current client adverse to the interests of a former client generates a tension — between fealty to a former client and zealousness in favor of a current client . . . .").

The New Jersey jurisprudence regarding RPC 1.9 reflects a "weighing [of] the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 218 (1988) (citation and internal quotation marks omitted). However, "a person's right

8

to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Id.* (citation and internal quotation marks omitted).

The "prohibition [of RPC 1.9(a)] is triggered when two factors coalesce: the matters between the present and former clients must be 'the same or substantially related,' and the interests of the present and former clients must be 'materially adverse.'" *Trupos*, 201 N.J. at 462. The *Trupos* Court articulated a disjunctive two-prong test to determine whether attorney-client matters are "substantially related":

> [M]atters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation. [single space the quote]

201 N.J. at 451-52; *see also H & H Mfg. Co., Inc. v. Tomei*, No. A-4209-19, 2021 WL 6132769, at *6 (N.J. Super. Ct. App. Div. Dec. 29, 2021) ("By using disjunctive phrasing including the word 'or,' the *Trupos* Court made clear that an attorney's knowledge of confidential information is not necessary for disqualification under RPC 1.9(a).").

9

New Jersey courts "strictly construe[] RPC 1.9." *Herbert v. Haytaian*, 292 N.J. Super. 426, 438 (App. Div. 1996) (citation omitted). "If there be any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." *Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC*, 471 N.J. Super. 184, 193 (App. Div. 2022) (citation and internal quotation marks omitted).

**III.   Proskauer must demonstrate why it is not disqualified under RPC 1.9(a).**

It is not disputed that CarePoint is a prior client of Proskauer, and that Proskauer has now switched sides against CarePoint. Accordingly, the burden shifts to Proskauer to demonstrate why it should not be disqualified pursuant to RPC 1.9(a).

New Jersey courts have adopted a "burden-shifting approach" to address potential violations of RPC 1.9. To initiate the disqualification process, CarePoint needs only to demonstrate that (1) "the lawyer(s) for whom disqualification is sought formerly represented their present adverse party," and (2) "that the present litigation is materially adverse to the former client." *Trupos*, 201 N.J. at 462. Then, the "burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they represented the former client are not the same

10

or substantially related to the controversy in which the disqualification motion is brought." *Id.*

## IV. Proskauer cannot meet its burden of showing informed consent.

Proskauer has claimed that CarePoint provided informed consent to its breaches of loyalty and confidentiality, referencing its pre-appearance email correspondence in which it misrepresented that there was no relationship with the prior representation. (*See* Exhibit B.) CarePoint has never provided informed consent to Proskauer's defending Barnabas by directing discovery to matters within the scope of Proskauer's prior representation and would not have provided consent had Proskauer provided adequate information. The responsibility was on Proskauer, not CarePoint, to adequately inform CarePoint of what it needed to know to determine whether the prior representation was substantially related. *See, e.g.*, *In re Est. of Krivulka*, No. A-0803-21, 2022 WL 3693103, at *12 (N.J. Super. Ct. App. Div. Aug. 26, 2022) ("[A] client's consent is not informed until her attorney adequately explains 'a matter to the extent reasonably necessary to permit the client to make informed decisions,' RPC 1.4(c), as well as the material risks and reasonable alternatives, RPC 1.0(e) . . . .").

The burden is on Proskauer to demonstrate that CarePoint provided informed consent. *See, e.g.*, *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3d Cir.

11

#124539805v1

1984) (holding that burden of showing informed consent on attorney opposing disqualification under RPC 1.9 once issue is raised); *Celgene Corp. v. KV Pharm. Co.*, No. 07-4819SDW, 2008 WL 2937415, at *7 (D.N.J. July 29, 2008) (holding that attorney bears burden of proving informed consent).

To satisfy that burden, Proskauer would somehow have to demonstrate that it "communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct," RPC 1.0(e), and that CarePoint gave "informed consent confirmed in writing," *id.* 1.9(a). *See also id.* 1.4(c) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). There is no evidence of that. To be sure, Proskauer never disclosed that it would seek information from its prior representation of CarePoint or put that representation at issue.

### V.   There is no waiver due to purported undue delay.

Proskauer claims that CarePoint has waived the conflict by delaying seeking disqualification. (*See* Exhibit H.) That is false. First, had Proskauer discharged its ethical responsibility of adequately advising CarePoint of the conflict in the first place, CarePoint counsel would not have only discovered the issue recently in addressing Proskauer's insistence on discovery regarding related-party payments.

Second, the New Jersey Supreme Court has rejected the notion that a Rule 1.9(a) conflict can be "waived" by delay absent demonstration that "extraordinary circumstances" require ongoing representation by conflicted counsel. *See Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 278 nn.4-6 (2012) (noting that waiver is not basis to deny motion for disqualification absent "extraordinary circumstances"). Those extraordinary circumstances are not present here. And, in cases where "extraordinary circumstances" were found, conflicted counsel was forced to continue to represent the new client without compensation because the extraordinary circumstances were the result of its own ethical lapse. *See Dewey*, 109 N.J. at 219-20 (declining to disqualify firm on "eve of trial" in yearslong multi-party litigation but requiring representation without compensation because "we can prevent those responsible for this sorry state of affairs from profiting from their disregard of the RPCs"); *Barnes v. R.J. Reynolds Tobacco Co.*, 246 N.J. Super. 348, 357 (App. Div. 1991) (finding "extraordinary circumstances" preventing disqualification where plaintiffs' case could not proceed without conflicted firm, but requiring conflicted firm to continue representation without compensation).

Because CarePoint is a former client of Proskauer, and Proskauer is now materially adverse to CarePoint, Proskauer must demonstrate that Proskauer should not be disqualified.

13

#124539805v1

## VI. Conclusion

CarePoint respectfully requests that this Court grant the Motion to Disqualify and enter the attached Proposed Order.

Respectfully submitted,

Date: August 9, 2024        By:    */s/ Lisa J Rodriguez*

Lisa J Rodriguez
Douglas M. Weck
**DILWORTH PAXSON LLP**
457 Haddonfield Road, Suite 700
Cherry Hill, NJ  08002
lrodriguez@dilworthlaw.com
Telephone: (856) 675-1900
Facsimile: (856) 663-8855

 – and –

Ira N. Richards, Esq.*
**DILWORTH PAXSON LLP**
1500 Market St., Suite 3500E
Philadelphia, PA 19102
irichards@dilworthlaw.com
Telephone: (215) 575-7100
Facsimile: (215) 764-4603
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*