**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey  08002
(856) 488-7700
*Special Counsel for New Jersey State Commission of Investigation*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAREPOINT HEALTH SYSTEMS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RWJ BARNABAS HEALTH, INC. <br><br> Defendant. | Civil Action No. 2:22-cv-05421-EP-CLW <br><br> Hon. Evelyn Padin, U.S.D.J. <br><br> Hon. Cathy L. Waldor, U.S.M.J. <br><br> Return Date:  September 16, 2024 <br><br> **Oral Argument Requested** |

**MEMORANDUM IN SUPPORT OF NON-PARTY NEW JERSEY STATE COMMISSION OF INVESTIGATION'S MOTION FOR RECONSIDERATION OF THE COURT'S JULY 31, 2024 DENIAL OF MOTION FOR PROTECTIVE ORDER [D.E. 111] AND TO STAY ENFORCEMENT OF SUBPOENA**

# TABLE OF CONTENTS

                                        **Page**

INTRODUCTION .................................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND............................................................ 3

1. The SCI Plays a Critical Role in Conducting Confidential Investigations within New Jersey's Criminal Justice and Law Enforcement System. .................................................. 3

2. The SCI Conducted a Confidential Investigation of Hospital Oversight Issues in New Jersey. ........................................................................................................................ 4

3. RWJ Subpoenas the SCI's Entire Investigative File and SCI Moves for Entry of a Protective Order. ................................................................................................................ 4

ARGUMENT........................................................................................................................... 5

    I.    The Court Committed Clear Legal Error by Misinterpreting the New Jersey Statute that Protects the SCI's Investigative Materials.............................. 8

    II.    The Court Erred in Denying the SCI's Motion for Protective Order by Failing to Apply a Balancing Test in Determining whether to Enforce RWJ's Subpoena Duces Tecum, and by Failing to Account for and Protect the Compelling Third-Party and Public Interests mplicated by Granting RWJ Access to its Investigative File. .................................................................. 10

CONCLUSION...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*ABC Great Stores, Inc. v. Globe Ticket Company*,
 309 F. Supp. 181 (E.D. Pa. 1970) .............................................................................................. 13

*ABS Brokerage Servs. v. Pension Fin. Servs., Inc.*,
 2010 WL 3257992 (D.N.J. Aug. 16, 2010) .................................................................................. 6

*Actelion Pharmaceuticals Ltd. V. Apotex Inc.*,
 2013 WL 5524078 (D.N.J. Sept. 6, 2013) ...................................................................................15

*Andreyko v. Sunrise Senior Living*,
 993 F. Supp. 2d 475 (D.N.J. 2014) ............................................................................................... 2

*Barton v. Mid-Atlantic Flooring Ventures*,
 2017 WL 119470 (D.N.J. Jan. 12, 2017) ...................................................................................... 6

*Bowers v. NCAA*,
 130 F. Supp. 2d 610 (D.N.J. 2001) ............................................................................................... 6

*Brackett v. Ashcroft*,
 2003 WL 22303078 (D.N.J. Oct. 7, 2003) .................................................................................... 5

*Cipollone v. Liggett*,
 785 F.2d 1103 (3d Cir. 1986) ...................................................................................................... 10

*Danise v. Saxon Mortg. Servs. Inc.*,
 738 F. App'x 47 (3d Cir. 2018) ..................................................................................................... 5

*DIK Drug Co. v. Altana Pharma AG*,
 2008 WL 2264586 (D.N.J. June 2, 2008) ..................................................................................... 7

*Disability Rights N.J. v. Velez*,
 2010 WL 5055820 (D.N.J. Dec. 2, 2010) ..................................................................................... 2

*Douglas Oil Co. v. Petrol Stops Northwest*,
 441 U.S. 211 (1979) .................................................................................................................... 13

*G-69 v. Degnan*,
 130 F.R.D. 326 (D.N.J. 1990) ..................................................................................................... 14

*In re Lord Abbott Mutual Funds Fee Litig.*,
 463 F. Supp. 2d 505 (D.N.J. 2006) ............................................................................................... 6

*In re Resolution of State Comm'n of Investigation*,
 527 A.2d 851 (N.J. 1987) ....................................................................................................... 4, 11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) .................................................................................. 6

*Munich Reins. Am. v. American Natl. Insurance*,
  936 F. Supp. 2d 475, 490-91 (D.N.J. 2013) ........................................................... 1

*P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*,
  161 F. Supp. 2d 349 (D.N.J. 2001) ........................................................................ 6

*Pearson v. Miller*,
  211 F.3d 57 (3d Cir. 2000) ..................................................................... 7, 8, 10, 14

*Perdomo v. Berryhill*,
  2020 WL 3819212 (D.N.J. July 7, 2020) ............................................................... 6

*Puricelli v. Borough of Morrisville*,
  136 F.R.D. 393 (E.D. Pa. 1991) ........................................................................... 12

*State v. Doliner*,
  475 A.2d 552 (N.J. 1984) ..................................................................................... 11

*Torres v. Kuzniasz*,
  936 F. Supp. 1201 (D.N.J. 1996) ......................................................................... 14

*United States v. Patel*,
  2022 WL 227469 (D.N.J. June 23, 2022) .............................................................. 3

*United States v. Proctor & Gamble*,
  356 U.S. 677 (1958) ....................................................................................... 11, 13

*White v. City of Trenton*,
  848 F. Supp. 2d 497 (D.N.J. 2012) ........................................................................ 2

Statutes

N.J.S.A. 52-9M ........................................................................................... passim

Rules

Fed.R.Civ.Pro. 26 ................................................................................. 7, 8, 10, 16

Fed.R.Crim.P. 6(e)(3) .................................................................................. 12, 14

## INTRODUCTION

The New Jersey State Commission of Investigation ("SCI"), through its Special Counsel, Montgomery McCracken Walker & Rhoads, LLP, respectfully requests that the Court reconsider its July 31, 2024 Order (D.E. 111) denying SCI's Motion for a Protective Order (D.E. 99) related to the *subpoena duces tecum* that Defendant RWJ Barnabas ("RWJ") served on the SCI, a State investigative body and non-party to this litigation, seeking production of SCI's entire confidential investigative file relating to its March 19, 2019 Report regarding health-care matters in the State of New Jersey. As set forth in detail below, reconsideration is warranted here because, *inter alia*, (1) the Court misinterpreted the statute governing SCI's operations and thus the underlying Order relied on a clear error of law, (2) significant interests of third parties, the public, and the State of New Jersey were overlooked during the Court's initial consideration of the motion, and (3) the failure to fully consider such interests will result in injustice. The Court's Order granting RWJ unprecedented access to investigative materials subject to statutory confidentiality protections equivalent to that of grand jury proceedings has profound legal implications that were not fully accounted for, and therefore, reconsideration is warranted.

## PRELIMINARY STATEMENT

SCI respectfully requests that this Court reconsider its denial of SCI's Motion for a Protective Order relating to the subpoena that RWJ served on SCI, a state entity and non-party to this action, requesting the production of SCI's entire confidential investigative file. While reconsideration is an extraordinary remedy, it is warranted in this instance because, *inter alia*, significant third party and public interests in protecting the confidentiality of the requested materials were overlooked during the original adjudication of the motion. *Munich Reins. Am. v. American Natl. Insurance*, 936 F. Supp. 2d 475, 490-91 (D.N.J. 2013) (Wolfson)

(reconsideration warranted where court "did not appreciate" significance of one aspect of legal argument).

Specifically, reconsideration is appropriate because (i) N.J.S.A. 52-9M-15, the New Jersey statute that vests SCI proceedings and materials with confidentiality protections that both the New Jersey Supreme Court and the New Jersey Attorney General's Office have described as equivalent to grand jury proceedings, was misinterpreted, and the Court should correct the legal error underlying its disposition of the motion; (ii) the Court failed to balance the interests of SCI and RWJ in adjudicating the motion, as SCI argued it should, and account for SCI's function within New Jersey's law enforcement apparatus – which RWJ mischaracterized as a "legislative research agency" in its briefing – including but not limited to SCI's power to subpoena records and witness testimony and immunize witnesses, its authority to share intelligence with State and Federal law enforcement, its exemption from state public records laws, and overall role as an entity authorized to investigate public corruption in society and across State government; (iii) the Court overlooked the interests of third parties, including witnesses subpoenaed by the SCI to provide documents and testimony in confidential executive sessions; and (iv) failed to appreciate the strong public interest in maintaining the confidentiality of SCI's investigative files.

While an extraordinary remedy, other courts in this district have granted reconsideration where, as here, the court's decision overlooked or did not fully consider important legal interests that, had they received proper consideration, would have impacted the court's decision. *See, e.g.*, *Andreyko v. Sunrise Senior Living*, 993 F. Supp. 2d 475 (D.N.J. 2014) (Debevoise) (granting reconsideration of initial ruling on motion to dismiss upon the Court acknowledging it had erroneously read regulations in reaching its prior decision); *White v. City of Trenton*, 848 F. Supp. 2d 497 (D.N.J. 2012) (Wolfson) (granting reconsideration of denial of summary judgment motion based on a "legal issue that could have significant implications"); *Disability Rights N.J.*

-2-

*v. Velez*, 2010 WL 5055820 (D.N.J. Dec. 2, 2010) (Thompson) (finding manifest injustice and reconsidering interpretation of statute); *United States v. Patel*, 2022 WL 227469 (D.N.J. June 23, 2022) (Bumb) (granting reconsideration of order enforcing Government's trial subpoena on non-party New Jersey county vicinage and Superior Court judge because of misunderstanding regarding vicinage's consent to subpoenas and fact that non-parties had produced all material not prohibited from disclosure under New Jersey Court Rules).  For these and other reasons raised herein, the Court should grant reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

**1.     The SCI Plays a Critical Role in Conducting Confidential Investigations within New Jersey's Criminal Justice and Law Enforcement System.**

The SCI – a non-party to this case – was served with a subpoena from RWJ in this antitrust case with CarePoint Health Systems ("CarePoint").  In arguing for enforcement of its subpoena, RWJ mischaracterized the function of the SCI within New Jersey's law enforcement system and the protections afforded SCI records under New Jersey law.

Contrary to RWJ's characterization, the SCI is not merely "a research arm of the legislative branch, no different than any other legislative agency."  (D.E. 105, Opp. Brf. at p. 14). The SCI was created upon recommendation of the New Jersey Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey alongside the Division of Criminal Justice ("DCJ"), and was given an explicit mandate to investigate, analyze, and report on organized crime and corruption across State government as an investigative entity outside the authority of the executive branch.  To perform their respective roles, the New Jersey legislature gave the DCJ grand jury powers and the SCI comparable powers to, *inter alia*, subpoena records and witnesses, take confidential testimony, and immunize witnesses from criminal prosecution. *See* N.J.S.A. 52:9M-1, *et seq.*  The New Jersey Supreme Court has explicitly acknowledged that, "[t]he State's interest in the secrecy of SCI investigations [is] manifestly analogous to the State's

-3-

interest in Grand Jury secrecy." *In re Resolution of State Comm'n of Investigation*, 527 A.2d 851 (N.J. 1987). Notably, the New Jersey Supreme Court that authored the *Resolution* opinion included Associate Justice Stewart G. Pollock, who served as a Commissioner of the SCI before being appointed to the State's highest bench. Similarly, former New Jersey Attorney General George F. Kugler, Jr. (who served as Attorney General during the establishment of the Division of Criminal Justice), in *amicus* briefing before the New Jersey Supreme Court expressly noted that SCI's investigative proceedings are governed by statutory "provisions similar to Rule 6(e)" and, therefore, pursuant to N.J.S.A. 52:9M-15 and 16, are as inaccessible to outside authorities as grand jury materials. Zoubek Cert., Ex. B.

2. **The SCI Conducted a Confidential Investigation of Hospital Oversight Issues in New Jersey.**

SCI conducted a confidential investigation of hospital-related oversight and accountability issues over a period of several years using, among other things, the issuance of subpoenas on individuals and entities to produce documents and testimony in closed SCI executive sessions. SCI's investigation resulted in a public Report issued on March 19, 2019, that described a web of entities controlled by CarePoint and its founders, among other findings. (D.E. 99-2, Ex. B). While the SCI's Report identified certain individuals publicly, it did not reveal the identities of numerous individuals that provided documents and testimony to SCI confidentially. (*See id.*). Like its other investigative files, the SCI's file related to its March 19, 2019 Report is confidential pursuant to N.J.S.A. 52:9M-1, *et seq.*

3. **RWJ Subpoenas the SCI's Entire Investigative File and SCI Moves for Entry of a Protective Order.**

Counsel for RWJ Barnabas served a subpoena on SCI dated April 18, 2024, calling for the production of essentially the entirety of the SCI's investigative file related to its March 19, 2019 Report. In response to the subpoena, the SCI's then-Deputy Director contacted counsel for

RWJ Barnabas and explained that SCI's records are confidential and protected from disclosure by New Jersey statute and requested that RWJ withdraw the subpoena. (D.E. 99-2, pp. 9-10). RWJ refused to withdraw its subpoena, however, and the SCI subsequently filed a Motion for Entry of a Protective Order. (D.E. 99). RWJ opposed the SCI's motion (D.E. 105). SCI filed a reply brief (D.E. 106), to which RWJ filed a sur-reply (D.E. 107).

The Court held oral argument on July 31, 2024. At argument, SCI requested that the Court recognize, as the New Jersey courts have based on SCI's enabling statute, a federal privilege for SCI's investigative files, which would thus provide SCI records and information broad immunity from discovery. In considering SCI's request, the Court observed that N.J.S.A. 52:9M-15(c) appears to "say nothing [that] shall prevent the SCI from furnishing information pursuant to a duly authorized subpoena duces tecum[.]" Zoubek Cert., Ex. C, Tr. 6:7-10. The Court further noted that it was "not concerned with [SCI's] overall function[,]" but rather was "concerned with this case." *Id.*, Tr. 7:21-22. The Court then "den[ied] the motion for a protective order, completely[,]" on the basis that the Court would not recognize a federal privilege and there was nothing before the Court suggesting that a qualified privilege should apply. *Id.*, Tr. 15:19-22. Critically, for purposes of this motion for reconsideration, the Court did not apply a balancing test weighing the public and third-party interests implicated by RWJ's subpoena – as SCI had requested in its briefs – before denying the motion for protective order.

## ARGUMENT

A motion for reconsideration is authorized by L.Civ.R. 7.1(i). Reconsideration is an extraordinary remedy, and "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 52 (3d Cir. 2018); *see also Brackett v. Ashcroft*, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003). Generally, a motion for reconsideration may not be used to relitigate

old matters or raise arguments or evidence that could have been raised prior to entry of judgment.  *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001).  Rather, motions for reconsideration are reserved for instances "where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion[.]"  *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

To prevail on a motion for reconsideration, the moving party must demonstrate at least one of the following:  "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or prevent manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  A court commits a clear error of law if the record cannot support the findings that led to the ruling.  *ABS Brokerage Servs. v. Pension Fin. Servs., Inc.*, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010).  "Thus, a party must … demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed."  *Id.*  In the context of motions for reconsideration, "manifest injustice" is construed as meaning "that the Court overlooked some dispositive factual or legal matter that was presented to it."  *Barton v. Mid-Atlantic Flooring Ventures*, 2017 WL 119470 (D.N.J. Jan. 12, 2017) (Bumb).

As with other rules, the court may relax application of L.Civ.R. 7.1(i) in appropriate circumstances to, *e.g.*, permit *de novo* a new motion or additional briefing to address issues raised in a prior motion.  *See*, *e.g.*, *In re Lord Abbott Mutual Funds Fee Litig.*, 463 F. Supp. 2d 505, 508 (D.N.J. 2006) (Martini) (although reconsideration was denied on grounds that controlling case was "overlooked," court granted Defendant's alternative request to brief the issue for *de novo* consideration and ultimately reversed); *Perdomo v. Berryhill*, 2020 WL 3819212 (D.N.J. July 7, 2020) (McNulty) (declaring "this Court will not cling to a ruling if it is

convinced that it was erroneous," and stating that "strict application of the reconsideration standard would not be a provident exercise of the Court's discretion"); *DIK Drug Co. v. Altana Pharma AG*, 2008 WL 2264586 (D.N.J. June 2, 2008) (Linares) (although no grounds for reconsideration present, court reconsidered its decision, ultimately ordering cases consolidated and coordinated). Further, pursuant to L.Civ.R. 83.2(b), "any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice."

The SCI is seeking reconsideration to correct clear errors of law and fact underlying the Court's denial of SCI's motion for protective order, to allow the Court to address overlooked and unaddressed arguments raised by SCI, and to prevent a manifest injustice. Reconsideration is appropriate for several reasons.

*First*, the Court's ruling resulted from a clear error of law by relying on an erroneous interpretation of the New Jersey statute that protects SCI's investigative materials. That statute – N.J.S.A. 52:9M-15(c) – only allows disclosure in limited circumstances necessary for the SCI to perform its investigative function; specifically, to the Legislature or a legislative committee. A related section – N.J.S.A. 52:9M-15(a) – criminalizes the disclosure of witness names and SCI evidence except under limited circumstances that are, again, necessary for the SCI to perform its statutory duties. Despite this clearly restrictive language, the Court interpreted the statute as allowing the disclosure of SCI evidence in response to a subpoena issued in a federal civil case. This was a manifestly erroneous reading of the law, and the Court should grant reconsideration to correct the error.

*Second*, the Court erred by not addressing SCI's argument that even if the Court found that SCI's investigative records were not privileged, it should conduct an *in camera* review of the requested documents and find that the weight of the interests supports nondisclosure. Under Rule 26 and *Pearson v. Miller*, a party may claim that information is subject to an evidentiary

-7-

privilege *or* seek a protective order limiting discovery based on the weight of the various interests in the records and information sought. 211 F.3d 57, 67 (3d Cir. 2000). Here, the Court only addressed SCI's argument requesting that it recognize "a new federal privilege," but erred by not then applying a balancing test to determine whether entry of a protective order was nevertheless warranted under Rule 26 and *Pearson*. The Court should order reconsideration so that it can address this overlooked argument.

*Third*, the Court's decision overlooked SCI's critical role as an investigative body within New Jersey's criminal justice and law enforcement system, and the full extent of third party and public interests were not adequately considered by the Court in resolving the motion for protective order. Due to the compelling public interest in maintaining the confidentiality of SCI's investigative records, which routinely focus on organized crime, public corruption, and other criminal conduct, and include the identification of witnesses, the Court should consider the included affidavit of SCI's Chair, Tiffany Williams Brewer. Zoubek Cert., Ex. E., Chair Brewer Certification. A more comprehensive and accurate understanding of the facts should lead the Court to appreciate the significant public interest and legal issues implicated by ordering the production of the SCI's investigative file to RWJ and ultimately find that the subpoena should not be enforced based on the interests in the case at this time.

### I.     The Court Committed Clear Legal Error by Misinterpreting the New Jersey Statute that Protects the SCI's Investigative Materials.

The Court's ruling resulted from a clear error of law because its decision relied on an erroneous interpretation of the controlling New Jersey statute, which treats SCI investigative materials with a degree of confidentiality analogous to that of a grand jury and makes the unauthorized disclosure of such materials a crime. *See* N.J.S.A. 52:9M-15(a). Specifically, the Court misinterpreted N.J.S.A. 52:9M-15(c) as permitting the SCI to disclose confidential information pursuant to a subpoena *duces tecum* issued by private parties in civil litigation, when

-8-

in fact this provision clearly restricts disclosure of such information only "to the Legislature, or to a standing reference committee thereof[.]" *Id.* RWJ is not "the Legislature or a standing reference committee thereof," and therefore RWJ has no authority to subpoena SCI's confidential records under the governing statute.

Similarly, in its opposition brief, RWJ argued that N.J.S.A. 52:9M-15(a) allows parties in civil litigation to acquire confidential SCI information using third-party subpoenas, as such discovery would be "authorized or required by law." (D.E. 105, at p. 10). There is no authority supporting RWJ's interpretation, however, and a reading of the provision in its entirety shows that RWJ omitted from its briefing two very important words—"other than." Contrary to RWJ's reading, N.J.S.A. 52:9M-15(a) ***imposes mandatory criminal penalties*** on individuals that disclose "the name of any witness examined, or any information obtained or given upon such examination" of said witness, "***other than*** as authorized or required by law." *Id.* That is, subpart (a) only permits the SCI to share certain intelligence with law enforcement entities and engage in other activities relating to the investigative responsibilities of the Commission. Interpreting SCI's enabling statute as imposing criminal penalties on an SCI commissioner or employee for leaking confidential information, while simultaneously allowing a private litigant to subpoena the very same information in a civil court proceeding, would be in gross contravention of the statute's intent.

The Court therefore committed clear legal error by misinterpreting the statute by reading it too broadly. Such an interpretation would eviscerate the statute's stated purpose of enabling SCI to function as an investigative body and harm the public's interest in protecting the integrity of an investigatory process intended for the public's benefit. SCI's enabling statute does not authorize the disclosure of an SCI investigative file pursuant to a subpoena issued in a civil case, it was clear error to rule otherwise, and the Court should reconsider its ruling to correct the error.

**II.     The Court Erred in Denying SCI's Motion for Protective Order by Failing to Apply a Balancing Test in Determining whether to Enforce RWJ's Subpoena *Duces Tecum*, and by Failing to Account for and Protect the Compelling Third-Party and Public Interests Implicated by Granting RWJ Access to its Investigative File.**

"Rule 26 [] allows for two approaches to seeking the protection of sensitive – but relevant – information" subject to an otherwise valid subpoena. *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000). A party may (1) claim that the information is subject to an evidentiary privilege, which if applicable necessary precludes production, or (2) seek a protective order under Federal Rule of Civil Procedure 26(c) limiting discovery based on the weight of the parties' respective interests in the records and information at issue. *Id.* Courts enjoy broad discretion under Rule 26(c), including the power to "issue umbrella protective orders protecting classes of documents," *id.* at 73 (citing *Cipollone v. Liggett*, 785 F.2d 1103, 1121 (3d Cir. 1986)), and to order "that the disclosure or discovery not be had." *Id.* (quoting Fed.R.Civ.P. 26(c)).

In opposing production of the documents subpoenaed by RWJ, the SCI invoked both approaches. (D.E. 99, Brf. at pp. 13-22 ("Point I" – asking the Court to find the subpoenaed records privileged), pp. 22-27 ("Point II" – arguing that the public interest outweighed RWJ's need for the documents); D.E. 106, Reply at p. 11 (arguing that the documents are "absolutely privileged," but also that if "this Court disagrees," it conduct an *in camera* review and find that the weight of the interests supports nondisclosure)). In denying SCI's motion, the Court only resolved the privilege argument. But that did not end the matter. The Court was required to then address SCI's alternative argument by applying a balancing test to the classes of documents subpoenaed by RWJ, weigh the interests, and determine whether production was warranted. SCI respectfullyrequests that the Court grant reconsideration and address this unresolved argument, and ultimately find that the balance of the interests here does not support disclosure of the records sought by RWJ.

The Court's analysis should begin with a determination of the type of documents subpoenaed and an assessment of the public and third-party interests implicated by turning them over in this litigation. For decades, New Jersey courts have recognized that the SCI's institutional role, and the materials it gathers in the execution of that role, are equivalent to the work and records of a grand jury. *In re Resolution of the State Comm'n of Investigation*, 527 A.2d 851, 855 (N.J. 1987) ("[t]he State's interest in the secrecy of SCI investigations is manifestly analogous to the State's interest in Grand Jury secrecy"); Zoubek Cert. Ex. E, Chair Brewer Cert. ¶¶ 6, 14. The Court should employ this same principle in assessing the SCI's interest in keeping the records subpoenaed by RWJ confidential.

The SCI's interests are paramount here. And because they largely overlap with those underlying the importance of grand jury secrecy, *In re Resolution of the State Comm'n of Investigation*, 527 A.2d at 855, consideration of the principles governing grand secrecy are significant here:

(1) To prevent the escape of those whose indictment may be contemplated;

(2) to insure the utmost freedom … in … deliberations, and to prevent persons subject to indictment or their friends from importuning [those who are engaged in deliberations] …;

(3) to prevent subornation of perjury or tampering with the witnesses who may testify [both at the investigatory stage and later during a prosecution];

(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

(5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation.

*Id.* (quoting *State v. Doliner*, 475 A.2d 552, 558 (N.J. 1984) quoting *United States v. Proctor & Gamble*, 356 U.S. 677, 681 n.6 (1958)).

SCI incorporates by reference the interests discussed in SCI Chair Tiffany Williams-Brewer's Certification in support of this motion for reconsideration. *See generally* Zoubek Cert.

-11-

Ex. E, Chair Brewer Cert. As stated in the Certification, to carry out its mission of investigating organized crime and similar misconduct in New Jersey, the Legislature gave SCI the power to subpoena witnesses and records and immunize witnesses from criminal prosecution should they refuse to testify. SCI also often works with confidential informants. *See id.* Exposing the identities of these witnesses poses grave risk to their health, safety, and livelihoods. SCI records are also exempt from New Jersey's Open Public Records Act and Open Public Meetings Act, thus further insulating them from public disclosure. *See id.* These statutory protections enable SCI to gather evidence from sources that would be unavailable without them.

Regarding the disclosure of records and information gathered in an SCI investigation, as part of its role in New Jersey's law enforcement apparatus, the SCI is required to turn over evidence of criminal activity to state and federal law enforcement agencies. Otherwise, when the SCI intends to publicly identify witnesses that appear at its confidential executive sessions in a report or public hearing, it must provide them with notice and an opportunity to respond to the substance of the disclosure, as due process requires. Chair Brewer Cert, ¶ 17. To allow such disclosure to RWJ here via enforcement of its subpoena without this requisite notice would trample on these third parties' due process rights in direct contravention of the enabling statute, as well as fundamental principles of fairness and justice.

Because the records subpoenaed by RWJ should enjoy the same protections as grand jury records, in weighing the interests here, this Court should also consider how the federal courts determine whether to allow the production of grand jury materials subpoenaed in civil litigation. Applying federal common law, the federal courts provide the same protection to discovery sought from state grand jury proceedings as afforded federal grand jury proceedings. *Puricelli v. Borough of Morrisville*, 136 F.R.D. 393, 397 (E.D. Pa. 1991) (compiling cases). Attempts to access grand jury materials in a civil matter are handled under Fed.R.Crim.P. 6(e)(3). *Id.* at 398.

The party seeking the records bears the burden of demonstrating that their need for the materials outweighs the public interest in grand jury secrecy. *Id.* (citing *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 682 (1958)). Specifically, they must show (1) that the materials are necessary to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that their request is structured to cover only materials that are truly needed. *Id.* (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)).

RWJ has come nowhere near demonstrating a particularized need for the SCI's investigative records targeted by their subpoena. Indeed, having failed to yet obtain records in support of its case from CarePoint, RWJ has turned from that effort and attempts to make the SCI into its discovery partner in this litigation. But RWJ has not yet carried through with its obligations to pursue evidence in support of its case against CarePoint through established discovery procedures before seeking evidence from the SCI. The law does not condone such tactics, and RWJ is not entitled to the SCI's records in these circumstances. *ABC Great Stores, Inc. v. Globe Ticket Company*, 309 F. Supp. 181, 183 (E.D. Pa. 1970) ("the law requires that before the veil of grand jury secrecy may be lifted" – these same grand jury secrecy principles apply to the work of the SCI – "the party seeking disclosure must demonstrate a more compelling and particularized need than merely expediting civil discovery").

Although RWJ offered scant discussion on its interest in obtaining the SCI's investigative file, its claim of "need" amounted to nothing more than a claim that such materials may be relevant to its case (D.E. 105, Opp. Brf. at pp. 7-8), which is not the sort of basis that can overcome the compelling public interest in maintaining the confidentiality of these records or the fact that they may be available from CarePoint and other means of discovery. In addition, RWJ

has subpoenaed essentially *all* of the SCI's investigative file, and thus has not met the particularity requirement that it only seek the records it can show are needed.

If at some point later in this litigation RWJ establishes that specific records in the SCI's files are necessary to its case *and* that they are not available from CarePoint or some alternative source, *then* it may have established the requisite particularized need for this Court to consider directing the SCI to produce them, with sufficient protections on their use in place. Absent such compelling circumstances, however – which RWJ has not shown – enforcement of the subpoena is not justifiable under governing law.

In opposing the SCI's motion for a protective order and against recognition of a privilege for SCI records, RWJ argued that recognition of a new privilege was unnecessary because the qualified law enforcement privilege already applied to the records in question. (*See* D.E. 105, Opp. Brf. at pp. 21-25). While the Court should have recognized an absolute privilege for SCI records and information, and weighing the interests of the parties warrants not enforcing the subpoena regardless of any privilege, application of the law enforcement privilege provides additional grounds *not* to compel production of the subpoenaed records, thus countering RWJ's contention to the contrary.

The federal "law enforcement" privilege is a qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209 (D.N.J. 1996). Like the analysis under *Pearson*, application of the law enforcement privilege requires a court to weigh the government's interest in ensuring the secrecy of the documents in question against the need of the adverse party to obtain the discovery. *Id.* (citing *G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J. 1990)). Regardless of which analytical model is considered, the same interests and

rationale apply, *see infra*, pp. 12-15, and the Court should reconsider the underlying order and decline to enforce RWF's subpoena.

Finally, in light of the above, we respectfully request that operation of the Court's July 31, 2024 Order [D.E. 111] be stayed pending disposition of this motion for reconsideration. *See Actelion Pharmaceuticals Ltd. V. Apotex Inc.*, 2013 WL 5524078 (D.N.J. Sept. 6, 2013).

## CONCLUSION

For the foregoing reasons, SCI respectfully requests that the Court grant its motion to reconsider the Court's July 31, 2024 Order [ECF 111] denying SCI's motion for a protective order [D.E. 111], stay operation of the July 31, 2024 Order pending the Court's determination of SCI's Motion for Reconsideration, and ultimately enter a protective order, pursuant to Rule 26 and applicable case law barring discovery of SCI's confidential investigative files.

Dated: August 14, 2024       MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

By: *s/Paul H. Zoubek*
   Paul H. Zoubek
   pzoubek@mmwr.com
   Ethan Hougah
   ehougah@mmwr.com

   *Special Counsel to Non-Party the New Jersey State Commission of Investigation*