

Proskauer Rose LLP  Eleven Times Square  New York, NY 10036-8299

William T. Walsh
212-969-3908
WWalsh@proskauer.com

October 31, 2024

<u>**Via ECF**</u>

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse

> Re:   *CarePoint Health Management Assocs. LLC. v. RWJ Barnabas Health Inc.*,
>       2:22-cv-05421-EP-CLW

Dear Judge Waldor:

We write in response to CarePoint's request to adjourn the November 7th conference, and to bring several issues to the Court's attention regarding outstanding discovery. Barnabas objects to CarePoint's continued efforts to delay this litigation. Barnabas sees this litigation as wholly frivolous and needs to get to the end of the tunnel. Yet, CarePoint has dragged its feet, either actively seeking extension after extension or by passively refusing to engage in discovery. We request that the conference be held as scheduled, and that an appropriate order issue to get the case back on track.

### A. The Conference Should Not Be Adjourned.

The Court should be aware that discovery has come to a virtual standstill since the Court ordered a temporary stay on May 21, 2024. ECF 102. When the stay ended on July 8th, the case was supposed to go "back into full discovery mode." Hrg. Tr. at 34 (ECF 103). As the Court warned CarePoint back in May:

> "You've got 45 days to find some funding or whatever you're going to do. But I'm going to move the case. You filed the case. I'm disappointed that you can't prosecute it. I'm willing to give you a little bit of time to figure things out. ***But that's it***."

*Id.* Since the temporary stay lifted almost *four months* ago, CarePoint has not produced a single document. CarePoint now requests an adjournment of the November 7th conference of unspecified duration. It should be denied.

CarePoint points to unconsummated potential transactions that are "in flux" and "fluid." It says it is not in a position to inform Barnabas or the Court how these transactions, if consummated, might impact its claims, if at all, but CarePoint does not say it is somehow rendered unable to proceed. Nor does it provide any reason its Motion to Disqualify cannot be argued and resolved on November 7th. There is no reason the case cannot proceed until CarePoint chooses to drop it, or loses the right to prosecute it.

**Proskauer**

As when CarePoint sought a six-month stay, it appears CarePoint is seeking delay simply to avoid engaging in further discovery, while Barnabas has been diligently trying to move the case forward. CarePoint's adjournment request is just a request for a stay in sheep's clothing. As we have previously explained, these delays cause significant prejudice to Barnabas, including: increased fees and costs, further delay in obtaining critical third-party discovery from the Founders and SCI, further delay in commencing depositions, and further delay in Barnabas's ability to seek dismissal on summary judgment. ECF 77, 90. CarePoint is again simply asking to be relieved of the case it filed while keeping it on the books. That is not an appropriate basis for a stay.

### B. CarePoint's Improper Withholding of Lou Modugno's Third-Party Documents.

Lou Modugno was an outside business consultant, and sometimes lawyer, for CarePoint during the relevant period. He was intimately involved in evaluating CarePoint's strategic alternatives and guiding the sales process. He was also involved in setting up the management fee structure that ultimately funneled millions of dollars from CarePoint to the Founders. Barnabas subpoenaed Mr. Modugno on April 19, 2024, and he produced his documents to CarePoint for purposes of conducting a privilege review on or about July 12, 2024. Under the Protective Order in this case (ECF 73), CarePoint had two weeks to review the production and assert any privilege claims. CarePoint did not abide by this deadline.

CarePoint has represented that Mr. Modugno's production consists of more than 91,000 documents, and that CarePoint is asserting privilege over "the bulk" of them, without specifying the number or otherwise identifying them. Nor has CarePoint produced a single document to Barnabas from Mr. Modugno's files or served any privilege log.

Despite numerous promises that it would get its privilege log together, on October 23rd CarePoint claimed that suddenly, "[a]fter discussion with [its] ESI vendor, due to some technical issues, it is not possible to create a privilege log at this time." Ex. 13. But it is not an ESI vendor's job to create a privilege log; it is CarePoint's and its counsel's job. Certainly, they had to have reviewed the documents in order to assert privilege. It can't be the case that they can't tell Barnabas what documents they are withholding. Nor is it conceivable that an ESI vendor can't produce the documents for which CarePoint is not asserting privilege.

Given that CarePoint has not complied with its obligations to properly and timely assert privilege, the Court should find that CarePoint has waived privilege and should be ordered to immediately produce to Barnabas *all* of the documents Mr. Modugno produced to CarePoint.[1]

---

[1] Correspondence relating to this issue is reflected in Exs. 1-13.

**Proskauer**

    **C.**    ***CarePoint's Failure to Respond to the CarePoint Health Management Associates Subpoena ("CPHMA").***

On April 19, 2024, Barnabas served a subpoena on CPHMA, one of CarePoint's management service organizations and client of CarePoint's counsel at Dilworth Paxson. CPHMA failed to respond to the subpoena by its deadline.

Despite writing to CarePoint prior to the stay noting that CPHMA waived its objection by failing to respond by the deadline, and requesting production of responsive documents within two weeks, CarePoint never responded. So, on July 8th, Barnabas resumed where it had left off, requesting that CPHMA produce all responsive documents: a fruitless request.

In the weeks and months since, Barnabas has sent CarePoint *seven* letters in an effort to get some understanding of when, or if, CPHMA would produce its documents. CarePoint did not always respond, but when it did, it was with variations on the same non-response:

- <u>Aug. 14th</u>: "CPHMA is ascertaining what documents exist that are responsive to the CPHMA Subpoena." Ex. 5.

- <u>Aug. 30th</u>: "CPHMA is ascertaining what documents it possesses and we should be able to advise of what documents exist next week, with the actual documents to be produced in short order thereafter." Ex. 7.

- <u>Sept. 18th</u>: "CPHMA is still ascertaining what documents it possesses and I hope to be able to advise soon of what documents exist, with the actual documents to be produced in short order thereafter." Ex. 9.

- <u>Oct. 1st</u>: "CPHMA remains in the process of identifying and collecting documents." Ex. 11.

- <u>Oct. 23rd</u>: "CPHMA remains in the process of identifying and collecting documents." Ex. 13.

Enough is enough. Barnabas requests an order compelling CPHMA to produce all responsive documents within seven days.

    **D.**    ***CarePoint's Missing Operating Documents and Custodial Files.***

The same is true of operating documents and custodial files that are missing from CarePoint's productions. Since the stay lifted in July, Barnabas has been asking for operating agreements and amendments for certain relevant entities, including IJKG, LLC, IJKG Propco, HUMC Opco, and Bayonne Medical Center. CarePoint has also failed to produce documents for two crucial custodians agreed to over a year ago: Richard Sarli (CFO) and William Pelino (former CFO). As to the operating documents, the responses since July have been the same as for CPHMA, with CarePoint's most recent response being: "CarePoint remains in the process of identifying and collecting documents." Ex. 13. As to its CFO documents, CarePoint has similarly been stringing Barnabas along. CarePoint told Barnabas on August 30th that the files had "been obtained from

**Proskauer**

CarePoint," "are being reviewed for production of relevant documents," and would be produced "on or around September 13." Ex. 7. September 13th came and passed, and CarePoint told Barnabas during a meet and confer that it should expect production by September 27th. September 27th, however, came and passed, and CarePoint's latest promise was production this week. Ex. 13. As of yet, however, no documents have been produced.

Barnabas requests an order compelling CarePoint to produce such documents within seven days.

### E. *Barnabas's Interrogatories Nos. 1-3.*

Barnabas previously moved to compel responses to its Interrogatories 1, 2, and 3, which the Parties fully briefed (*see* ECF 97, 98). At the July 10th status conference, CarePoint represented to the Court that it was working on a proposal to respond to the interrogatories, and the Court asked the Parties to advise it if the Parties were able to reach agreement. CarePoint has yet to provide any proposal. It should be ordered to respond to Barnabas's Interrogatories.[2]

### F. *Potential Change of Ownership and Control of the Real Parties in Interest to the Relevant Claims.*

As this Court is aware, CarePoint has experienced significant financial difficulties and has been exploring potential sales of assets, bankruptcy proceedings, and other strategic alternatives. These transactions have the potential to significantly impact CarePoint's ability and rights to control this action.

Importantly, CarePoint has already entered definitive agreements in which ownership of, and rights to manage, Bayonne Hospital will be transferred to HRH. According to a consent decree filed by CarePoint and HRH in Delaware Chancery Court, "CarePoint agreed to 'surrender the operating license and assets of Defendants' [BMC hospital]." *29 E 29 St. Holdings LLC, et al. v. IJKG OpCo LLC, et al.*, Case No. 2020-0480, Dkt. No. BL-557 (Del. Ch. 2020). HRH has further confirmed that it has "agreed to partner in a joint venture management services organization to support a four-hospital system consisting of HRH's Secaucus facility, Bayonne, as well as Hoboken and Christ and CarePoint's other affiliated entities," which will give HRH control or involvement over those hospitals' operations, and presumably over this litigation as well. Ex. 14.

Since reports of these impending transactions were made public, Barnabas has sought information about the ownership and control of the claims at issue, so that it can ensure that it is dealing with the real parties in interest (as required by Federal Rule Civ. P. 17), and can appropriately address any potential for claim splitting or conflicts of interest among the entities that now or soon will control the three CarePoint hospitals.

CarePoint's only response has been that the situation is in flux. But whether CarePoint is in "flux" or not, it certainly has the definitive agreements it entered into with HRH, as well as other

---

[2] We note that in addition the above open issues, the Parties are currently engaged in the process of meeting and conferring regarding the mutual production of structured data (e.g., patient discharge data). Barnabas merely notes that this process is ongoing, and is not asserting any deficiency at this time.

**Proskauer**

documents relating to these transactions. Those documents will show whether or not CarePoint is, as of today and under the operative agreements will remain, a real party in interest. CarePoint should, therefore, be compelled to produce all documents relating to its actual or potential change of ownership, control, or management of CarePoint or the CarePoint hospitals within seven days.

                                                 Respectfully submitted,

                                                 */s/ William T. Walsh*