

Proskauer Rose LLP | 11 Times Square | New York, NY 10026

William T. Walsh
212-969-3908
WWalsh@proskauer.com

October 31, 2024

***Via ECF***

Hon. Cathy L. Waldor, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse

      Re:    *CarePoint Health Management Assocs. LLC v. RWJ Barnabas Health Inc.,*
           *2:22-cv-05421-EP-CLW*

Dear Judge Waldor:

CarePoint has done virtually nothing to protect or assert privilege, yet it now seeks to "claw back" 60,000 documents produced by Jeffrey Mandler, one of the three co-founders who extracted half-a-billion dollars from the system through capital withdrawals and bogus management fees. Mr. Mandler did not assert privilege over these documents, and CarePoint has evaded its obligation to timely or properly assert privilege. Accordingly, this Court should find that CarePoint has waived privilege.

### A.    *A Poster Child Example.*

We open this letter with an example. As this Court may recall, last May, Barnabas moved for an order compelling production from two of CarePoint's Founders, Garipalli and Lawler. In connection with that motion practice, Barnabas cited a smoking gun document produced by Mandler, in which he acknowledged that the fraudulent scheme of extracting money from the system would continue despite promises to the SCI that the bogus management fees would cease. As he wrote:

> "Let's throw the big issue out there for comment – that is, should we assume that, starting July [2019], we will replace management fees with an equal income stream based on a 'profit distribution.'" ECF 95, at 4 (*quoting* Mandler0347948).

This document was submitted to the Court, which ultimately granted Barnabas's motion. Neither CarePoint nor any of the Founders objected to the use of this document at the time; nor did they assert privilege. ***It is now part of the Court record***. Now, more than four months after the fact, CarePoint seeks to claw back this document (and over 60,000 others), depriving Barnabas of its use forevermore. That is improper, and would violate a fundament tenet of privilege: that privilege must be zealously guarded. As set forth below, CarePoint did anything but act reasonably to protect its purported privileges.

### B.    *Barnabas Notified Mandler and CarePoint of Potentially Privileged Documents; Neither Made a Timely Privilege Claim.*

On October 16, 2023, Barnabas served a subpoena to Mr. Mandler, seeking documents relating to his role at CarePoint. Despite receiving notice of the subpoena, CarePoint did not raise

**Proskauer》**

any privilege concerns or otherwise seek to prevent Mr. Mandler from producing any potentially privileged documents.  The subpoena is identical to the one served on the other two Founders, Lawler and Garipalli, which the Court enforced in full on May 21st.  ECF 102.  Following discussions with Barnabas, Mr. Mandler eventually produced nearly 150,000 documents to Barnabas, and on March 27, 2024, Barnabas promptly made the production available to CarePoint.  CarePoint still failed to raise any privilege concerns.

As Barnabas began its review of the Mandler production, it identified a few documents that might arguably contain privileged information.  Pursuant to Paragraph 13 of the Discovery Confidentiality Order ("Protective Order"), ECF 73, Barnabas provided notice, on April 9, 2024, to counsel for CarePoint and Mr. Mandler, noting "it is possible that other [privileged] documents are contained in the production" and "[i]f either of your clients wish to assert privilege, you should do so 'promptly,' as required by Fed. R. Evid. 502(b)(3), and no later than two weeks, as required by Paragraph 13 of the Protective Order."  Ex. 1.  Mr. Mandler has not asserted any privilege.

As for CarePoint, it too initially refused to engage in any privilege review.  It first asked Barnabas to conduct CarePoint's privilege review for it.  Ex. 2.  Barnabas declined, noting that such an "attempt to shift the burden onto Barnabas for conducting [CarePoint's] own privilege review has no merit," and CarePoint is "on notice that [Barnabas] will be asserting waiver for any document you have not attempted to claw back by April 23, 2024," the deadline under the Protective Order.  Ex. 3.  In response, on April 23rd, CarePoint again cited its financial difficulties, declined to conduct a privilege review, and attempted to "clawback … the entirety of Mr. Mandler's production…."  Ex. 4.

Barnabas objected to that approach because it would "result in Barnabas having to incur costs of sequestering" and would "prevent Barnabas from preparing its defense based on information it subpoenaed from third-parties."  Ex. 5.

After Barnabas offered to raise the issue with the Court, CarePoint relented, ultimately agreeing that Barnabas can review and make use of Mandler's documents, ***including*** potentially privileged documents without the need to sequester any documents or provide further notification.  Specifically, CarePoint stated:

> "CarePoint just reserves its rights based upon Barnabas's representation that Barnabas believes some documents may be privileged to assert such privilege, but is not asking Barnabas 'to incur costs of sequestering the documents,' and certainly does not seek to interfere or 'prevent Barnabas from preparing its defense based on information it subpoenaed from third parties.'…  So there is no confusion on your part, ***CarePoint withdraws its sequestering demand***."

Exs. 5, 6.  CarePoint further confirmed that it "will not claim that the failure to identify specific additional documents in the future by bates number violates Barnabas's obligations under the Protective Order."  Ex. 8.[1]  Based on this representation, Barnabas continued to review and make use of the Mandler documents.

---

[1] Barnabas repeatedly made clear that CarePoint had already waived privilege by failing to timely assert a privilege claim, and that such waiver was not cured by CarePoint's decision to permit Barnabas to review and use the Mandler documents.  *See* Exs. 1, 3.

**Proskauer»**

Several months later, on August 14th, CarePoint served a "privilege log" purporting to assert privilege over 60,080 documents.[2]  Ex. 9.  The "log" includes only limited fields that do not include or suggest a basis for clawing back the documents.  Specifically, the "log" provided four fields of information related to Bates Numbers (BegDoc; EndDoc; BegAttach; EndAttach); one date field; and three fields regarding the sender, recipient, and any cc'd email addresses (From; To; CC).  Numerous fields on the "log", including Sender and Recipient, are blank.[3]  This fails to meet the requirements of the Protective Order and Rule 26(b)(5) because it does not "set[] forth the basis for its withholding" or "describe the nature of the documents … in a manner that … will enable other parties to assess the claim."  More fundamentally, CarePoint waived its privilege long ago, in numerous ways.

### C.    CarePoint Failed to Reasonably Guard Any Privilege It May Have Had.

Federal Rule of Evidence 502 governs waiver through inadvertent disclosure.  To avoid waiver, the proponent of the privilege must show it "took reasonable steps to prevent disclosure" and "took reasonable steps to rectify the error…."  Fed. R. Evid. 502(b).  The burden to meet these elements lies with CarePoint.  *Dubler v. Hangsterfer's Labs.*, 2011 WL 90244, *5 (D.N.J. 2011) ("The disclosing party has the burden to prove that the elements of FRE 502(b) have been met.").  This is not a small responsibility.  "[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels."  *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, *7 (W.D. Pa. 2015) (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)).  "Accordingly, the confidentiality of communications covered by a privilege must be jealously guarded by the holder of the privilege lest it be waived," and the privilege holder "tak[e] all reasonable steps to prevent … disclosure."  *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C. 2004).  CarePoint failed to do so.

### 1.    CarePoint Failed to Prevent Disclosure By Allowing Mr. Mandler to Retain the Documents After He Left CarePoint Two Years Ago.

CarePoint knew Mr. Mandler used personal email accounts to conduct CarePoint business, including potentially privileged communications.  To reasonably prevent disclosure of these privileged communications, CarePoint was required to take the reasonable step of requiring Mr. Mandler to return CarePoint-privileged communications when he left the organization in 2022.  *Id.* at 256 (privilege holders must take "measures … to preserve the confidentiality of its documents while they were still in its possession," such as "requiring the surrender of any documents obtained in the course of employment").  Failure to do so, and failure to take any action to rectify the disclosure for years after Mr. Mandler left CarePoint waives the privilege.  *Id.* at 257 (failure to require former employee to return privileged documents for over a year "is incompatible with plaintiff's obligation to 'jealously' protect any privilege in the documents"); *see also, e.g.*, *Apex Mun. Fund v. N-Group Sec.*, 841 F. Supp. 1423, 1433 (S.D. Tex. 1993) (privilege waived where company had not "attempted to retrieve the documents" from a former employee, finding the "documents were effectively abandoned"); *IMC Chems., Inc. v. Niro Inc.*, 2000 WL 1466495, *27

---

[2] CarePoint did not request that Barnabas return or sequester any of the documents on CarePoint's privilege log.  While this further supports a finding of waiver, Barnabas nonetheless wrote to CarePoint indicating that it believed no sequestration was required, but offered to meet and confer if CarePoint felt otherwise.  *See* Exs. 1-10.  CarePoint declined to respond.

[3] We do not attach the entire 60,000-entry log here, but provide a sample at Ex. 11.

**Proskauer»**

(D. Kan. 2000) (permitting privileged documents to remain with former employee "without any prohibition or limitation on their disclosure … is not how one protects privileged documents").

CarePoint should "not be relieved of the consequences of [its] carelessness" in abandoning any privileged communications to its former CEO and owner, Mr. Mandler. *Apex Mun. Fund*, 841 F. Supp. at 1434.

> **2.    CarePoint Failed to Rectify Disclosure By Failing to Timely Assert Privilege.**

Barnabas notified CarePoint that Mandler's production may contain potentially privileged information on April 9, 2024. Ex. 1. Yet CarePoint took no action for four months, despite its express obligations under the Protective Order to assert privilege within 14 days. ECF 73 ¶ 13.

CarePoint's delay constitutes waiver. *See SEC v. Liberty*, 2024 WL 2717717, *1 (3d Cir. 2024) ("In determining whether a party has waived the privilege through an inadvertent or involuntary disclosure, courts consider, among other factors, the steps taken by a party to remedy the disclosure and any delay in doing so."); *Shire LLC v. Amneal Pharms.*, 2014 WL 1509238, *4 (D.N.J. 2014) ("In this District, the question of inadvertent disclosure is resolved by an examination into the reasonableness of the steps taken to preserve the confidentiality of the privileged documents.").

The Third Circuit's decision in *In re Grand Jury*, 138 F.3d 978 (3d Cir. 1998), reaffirmed this year in *SEC v. Liberty*, 2024 WL 2717717 (3d Cir. 2024), is controlling. There, a criminal suspect left a privileged document in his office, and it was seized by federal agents. After the seizure, the suspect asserted privilege and requested the return of the document. The government rejected the privilege claim. After four months of unfruitful communications, the suspect finally filed a motion to compel return of the file. The motion was denied, and the Third Circuit affirmed.

The Third Circuit held that mere assertion of privilege to opposing counsel was insufficient to preserve the privilege. Where – as here – a privilege holder knows its adversary "has possession of the materials [and] can make use of them," "merely asserting the privilege to an adversary is not sufficient to protect the privilege." *In re Grand Jury*, 138 F.3d at 982. The rule in this Circuit is, "the party asserting the privilege must move expeditiously for relief particularly where, as here, the party asserting the privilege does not even claim that he had reason to believe that the adversarial party was not making use of the work product." *Id.* This is because, when an adversary is in possession of and using allegedly privileged material, "[j]udicial enforcement of the privilege [is] the only remedy." *Id.* "Without such judicial vindication," the adversary is "free to continue to utilize the documents, thereby negating their confidential character." *Id.* Thus, a party "act[s] unreasonably in waiting nearly four months to seek a judicial vindication of his assertion of the privilege." *Id.*

There is no daylight between *Grand Jury* and this case. Barnabas informed CarePoint that the Mandler production may include potentially privileged information, and asked CarePoint to expeditiously make any privilege claims. When CarePoint refused to do so, it agreed that Barnabas was free to use the documents Mandler produced. And it then waited four months to assert any privilege. Under *Grand Jury*, that is unreasonable delay and waives the privilege. *See also, e.g.*, *Connecticut et al v. Sandoz, Inc. et. al.*, 20-cv-00802-MPS, ECF 402 (D. Conn. Sept. 11, 2024) (privilege waived where witness was relying on privileged documents, but counsel allowed a

**Proskauer»**

deposition to continue for "a few hours" "even after [being] told by a colleague that the documents were 'potentially privileged' and himself concluded that one of the documents 'looks like it's something that was written by an attorney,'"); *Liberty*, 2024 WL 2717717 (four-month delay in seeking judicial intervention constituted waiver); *Hache v. AIG Claims, Inc.*, 607 F. Supp. 3d 100, 116 (D. Mass. 2022) (finding privilege waived because "[e]ven after [plaintiff] informed the defendants … that he would not destroy the Privileged Documents and that he intended to use them in this case as well, the defendants took no immediate action to seek judicial intervention"). CarePoint's financial situation cannot excuse its failure to protect its privilege.

When Barnabas noted CarePoint's waiver in its April 22nd letter to the Court, ECF 87, CarePoint's only response was that it "cannot review for privilege at this moment because it is in the midst of outbound productions." ECF 91. But CarePoint's decision not to conduct an expeditious review – whether to save money or otherwise – is no excuse. Because "an attorney's responsibilities … do not take a holiday," it is CarePoint's responsibility to protect its own privilege. *Wise v. Wash. Cty.*, 2013 WL 4829227, *3 (W.D. Pa. 2013); *Carlson v. Carmichael*, 2013 WL 3778356, *3 (E.D. Pa. 2013) ("Arrival of replacement counsel cannot afford a party a 'Mulligan' or the unfettered benefit of a reset button … with respect to analyzing whether the party, as opposed to a specific lawyer, may claim the privileges' protections"). To allow CarePoint to put the cat back in the bag after agreeing to allow Barnabas access to and use of the Mandler documents – which Barnabas expended significant resources in doing so – would "bizarrely, reward" CarePoint's strategic decision to disregard its obligation to expeditiously review the Mandler documents. *Id.* "That can hardly be something to be encouraged for the fair and expeditious handling of cases." *Id.*[4]

### 3.    CarePoint's "Log" is Deficient.

CarePoint's failure to produce a complete privilege log independently serves as a basis for waiver. "The production of an inadequate privilege log … is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver to the privilege." *Schaeffer v. Tracey*, 2017 WL 465913, *3 (D.N.J. 2017) (finding privilege waived when a party fails to "describe the nature of the … communications … in a manner that … will enable other parties to assess the claim"); *see also Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996) (waiving privilege where log failed to include, among other things, the "subject of the document, and the privilege or privileges asserted").

CarePoint's "log" does not "set[] forth the basis for its withholding" as required by the Protective Order. ECF 73 ¶ 13. Nor does it "describe the nature of the documents … in a manner that … will enable other parties to assess the claim," as required by the Federal Rules. Fed. R.

---

[4] In addition to CarePoint's failure to take precautions against disclosure and delay in asserting any privilege, additional factors support waiver, including the "quantity" and "extent" of disclosure. CarePoint knew the size of Mandler's production, yet let it sit unreviewed for months, while it expressly permitted Barnabas to review and make use of the production to defend the case. The "interests of fairness and justice," also support waiver. *See In re New Eng. Compounding Pharm., Inc. Prods. Liab. Litig.*, 2016 WL 6883215 (D. Mass. 2016) ("A determination of the overreaching issue of fairness involving the protection of an attorney-client privileged communication, must be judged against the [degree to] which the privilege is guarded with care and diligence or negligence and indifference."). There is "nothing unfair about a party losing its privilege when it has taken insufficient steps to protect the confidentiality of its documents." *IMC*, 2000 WL 1466495, at *27; *see also Shire*, 2014 WL 1509238, at *6 (D.N.J. 2014) ("[I]n light of the fact that this inadvertent disclosure was the result of a failure to review, … the Court finds that justice is served by a finding of waiver in this instance.").

**Proskauer》**

Civ. P. 26(b)(5). Not a single one of CarePoint's 60,080 entries either identifies the privilege it is asserting (Attorney-Client, Work Product, or some other privilege), or provides *any* description or explanation of the basis for privilege. 25,695 of the 60,080 documents (over 40%) include no information in the To, From, or CC fields.

Even a cursory review of the "log" reveals fundamental deficiencies. The very first entry does not include any recipient who is clearly acting as counsel at the time. Over 7,000 emails appear to be sent to or from third-parties outside CarePoint, which would break any possible privilege. Many of these documents involve communications with key third-parties, including Avery Eisenreich, Medical Properties Trust, the New Jersey Department of Health, Horizon Blue Cross, Atlantic, Barnabas, Citi Bank, and others. For example, CarePoint's log seeks to claw back a draft letter to then-Governor Christie asking for Charity Care funding, with no indication of any attorney involvement or the provision of legal advice.

Many of the non-privileged documents CarePoint seeks to claw back involve core issues in the case, such as the Founders' cash extractions and their efforts to sell their defunct hospitals to unsuspecting buyers. Ex. 12 (including admissions by Vivek Garipalli that "we have MASSIVE issues," "I'm beyond pessimistic we will find a buyer given the Hospitals are losing anywhere from $36mm to $60mm on a consolidated basis. *But we could get lucky and one of the buyers may not realize that during due diligence and move forward anyway*."); Ex. 13 (email from James Lawler regarding the "management fees to sequoia"; "[T]hey will then ask how the debt got created and what it is used for. I would tell them nothing. If we can get away with it"). None of these documents appear facially, or otherwise, to contain privileged information.

Indeed, the slipshod nature of the privilege log shows that the documents were likely never reviewed by CarePoint or its Counsel prior to asserting privilege. CarePoint's log includes at least 3,876 documents that CarePoint itself *has already produced*. CarePoint certainly cannot claim that the same document is privileged when Mandler produces it, but not when CarePoint does. CarePoint's log also includes 41 documents from wjhandcustomhomes@gmail.com, which appears to be associated with a luxury home builder. 18 documents are from anitalockhart@homesinpa.com, a Pennsylvania-based realtor. 24 documents are "LinkedIn Updates." 1,090 documents are from Wendy Voshell, who appears to be related to Mandler and work for the Mandler Family Trust, and whose emails include discussions of pricing for walk-in tubs and move-in dates for New Jersey residences.

We do not know the process by which CarePoint created its privilege log. But it appears that it simply did a search of the metadata for documents mentioning Louis Modugno and Leslie Prizant, who provided both business and legal advice to CarePoint. CarePoint recalled all of these documents without regard to the nature of the communication. Modugno was centrally involved in establishing the Founders' ownership structure and management fee kickback scheme. In a separate litigation, Modugno described the nature of the advice he provided CarePoint as "a mixed bag," and that "[i]t's hard to split the issues in two…working in my capacity as a lawyer for the law firm and a consulting arrangement." Indiscriminate assertion of privilege is improper.

So, while we do not know for certain what CarePoint did to generate its request to clawback these 60,000 documents, it is clear that it did not conduct an actual privilege review and did not comply with Rule 26(b)(5)'s privilege log requirements. That is all the more reason to find any privilege waived.



Respectfully submitted,

*/s/ William T. Walsh*