UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAREPOINT HEALTH MANAGEMENT ASSOCIATES LLC, et al.,**<br><br>Plaintiffs,<br><br>RWJ BARNABAS HEALTH, INC.,<br><br>Defendant. | Civil Action No. 22-5421 (EP) (CLW)<br><br>*FILED UNDER SEAL*<br><br>OPINION AND ORDER |

## CATHY L. WALDOR, U.S.M.J.

This comes before the Court upon Plaintiffs' motion to disqualify Proskauer Rose LLP from serving as counsel for Defendant. (ECF No. 117). The Court conducted oral argument on this issue on November 20, 2024. (Tr. of Nov. 20, 2024 Hr'g, ECF No. 151). Upon careful consideration of the record for this matter, and for good cause shown, and for the reasons discussed herein, Plaintiffs' motion is **DENIED**.

I.   **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs commenced this matter on September 9, 2022, filing a Complaint alleging that Defendant RWJ Barnabas Health, Inc. engaged in "a years-long systematic effort . . . in conspiracy with others, to destroy competition and to monopolize the provision of general acute care hospital services and related health care services in northern New Jersey." (Compl. ¶ 1, ECF No. 1). Plaintiffs asserted claims against Defendant under the Sherman Act, 15 U.S.C. § 1, and the New Jersey Antitrust Act, N.J.S.A. 56:9-1, et seq., and seek both monetary and injunctive relief. (*Id.* ¶¶ 232-249).

Plaintiffs filed an Amended Complaint on September 14, 2022, (ECF No. 8), and the parties thereafter submitted a proposed briefing schedule on Defendant's anticipated motion to dismiss. That schedule, which the undersigned adopted, required Defendant to serve, but not file, any motion to dismiss on or before November 21, 2022. (Oct. 13, 2022 Order, ECF No. 13). The record reflects that Defendant did so. (Walsh Decl., Ex. 6, ECF No. 129-7). Plaintiffs ultimately amended their pleading twice more, (ECF Nos. 19, 24, 27), and Defendant moved to dismiss Plaintiffs' Third Amended Complaint in accordance with a Court-approved briefing schedule. (ECF Nos. 26, 28-30).

Once the parties finished briefing Defendant's motion, the undersigned set an initial scheduling conference, (May 18, 2023 Order, ECF No. 31), and the parties submitted both a Joint Proposed Discovery Plan and proposed scheduling order in advance. The undersigned denied Defendant's request to stay discovery pending resolution of its motion to dismiss and adopted the parties' discovery schedule. (June 21, 2023 Order, ECF No. 37). The parties thereafter proceeded with discovery in earnest.[1]

By letter dated August 8, 2024, Plaintiffs' counsel first advised the Court of their "concerns about a conflict involving Proskauer's prior representation of CarePoint", as well as their intention to file a motion to disqualify the Proskauer firm based on that alleged conflict. (Aug. 8, 2024 Letter, ECF No. 114).[2] Plaintiffs made that revelation in connection with Defendant's informal application to compel Plaintiffs to provide interrogatory responses,[3] noting that Proskauer's pursuit

---

[1] Defendant appealed the stay decision to the Hon. Evelyn Padin, U.S.D.J., who ultimately denied that application as moot after denying Defendant's motion to dismiss. (Nov. 17, 2023 Order, ECF No. 62). The parties nevertheless engaged in discovery while Defendant's appeal was pending.
[2] The record reflects that, while Plaintiffs first alerted the Court about the potential conflict issue on August 8, 2024, they previously raised the issue with defense counsel on July 12, 2024. (*Id.*).
[3] Defendant first made that application by letter dated May 10, 2024. (ECF No. 97).

of that discovery forced them to seek disqualification. (*Id.*). Plaintiffs filed their disqualification motion the following day, (ECF No. 117), and that application is fully briefed. (ECF Nos. 129, 132). With leave of Court, Plaintiffs and Proskauer each made ex parte submissions on August 30, 2024, consisting of privileged documents related to Proskauer's previous representation of CarePoint. The Court conducted oral argument on November 20, 2024, and Plaintiffs' motion is now ripe for resolution.

## II. LEGAL DISCUSSION

### a. An Overview of the Parties' Arguments

Plaintiffs argue that Rule of Professional Conduct ("RPC") 1.9(a) bars Proskauer from representing Defendant in this matter and ask the Court to disqualify the firm on that basis. (*Generally* Pl. Br., ECF No. 117-1). Specifically, in April 2020, Vivek Garipalli, acting on behalf of CarePoint Health, retained Proskauer "to provide advice regarding [Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act")] relief eligibility, compliance and use of funds." (April 27, 2020 Engagement Letter at 1, ECF No. 117-3). Plaintiffs contend that while "the representation initially concerned CarePoint's eligibility for and spending of federal dollars from the [CARES Act], it grew beyond that . . . Proskauer would come to advise CarePoint regarding the permissibility of rent payments, loans, and related-party transactions in the midst of its financial troubles and receipt of federal dollars." (Pl. Br. at 1, ECF No. 117). Plaintiffs argue that this litigation is "substantially related" to that prior representation and that, because Plaintiffs did not provide informed consent for Proskauer's participation in this case, RPC 1.9(a) prohibits Proskauer from appearing on Defendant's behalf. (Pl. Br. at 7-11, ECF No. 117-1; Reply Br. at 3-12, ECF No. 132).

Defendant raises several points in its opposition. Most fundamentally, Defendant argues that this litigation is not "substantially related" to its previous work for CarePoint, and thus RPC 1.9(a) is inapplicable. (Opp. Br. at 29-38, ECF No. 130). Defendant further contends that CarePoint has waived any conflict – either expressly (through an "advance waiver" embedded in its retainer agreement with Proskauer or through separate consent that CarePoint provided at the outset of this matter) or equitably (by failing to timely raise the conflict issue). (*Id.* at 15-24).

b. **Legal Standards On a Motion for Disqualification Under RPC 1.9(a)**

The United States Court of Appeals has noted that "[a] court may use its inherent disciplinary power over the advocates appearing before it to disqualify an attorney." *In re Boy Scouts of Am.*, 35 F.4th 149, 159 (3d Cir. 2022) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984)). "Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "Even when an ethical conflict exists (or is assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy." *In re Boy Scouts of Am.*, 35 F.4th at 160. "Relevant factors depend on the specifics of the case, but generally include the ability of litigants to retain loyal counsel of their choice, the ability of attorneys to practice without undue restriction, preventing the use of disqualification as a litigation strategy, preserving the integrity of legal proceedings, and preventing unfair prejudice." *Id.* Thus, the Court must first determine whether counsel have run afoul of an ethical rule and, if so, consider whether disqualification would be an appropriate remedy under the relevant circumstances.

"The conduct of attorneys practicing in federal court is governed by the local rules of the court." *Id.* at 159. In the District of New Jersey, Local Civil Rule 103.1(a) addresses attorney

conduct and provides: "The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." Given this District's reliance on New Jersey's Rules of Professional Conduct, "'New Jersey courts are the primary authority when applying [those Rules] to controversies.'" *Shaikh v. Germadnig*, No. 22-cv-2053 (GC) (RLS), 2022 WL 16716116, at *2 (D.N.J. Nov. 4, 2022), *aff'd*, No. CV 22-2053 (RK) (JBD), 2023 WL 4534127 (D.N.J. July 13, 2023), *order aff'd, appeal dismissed*, No. 23-2301, 2024 WL 2861845 (3d Cir. June 6, 2024) (quoting *Chi Ming Yau v. He Cheng Rest. Corp.*, No. 12-cv-6754 (MCA), 2015 WL 3540596, at *4 (D.N.J. June 2, 2015)). The Superior Court of New Jersey, Appellate Division, has observed that "[r]equests to disqualify an opponent's attorney are generally viewed with disfavor given 'their potential abuse to secure tactical advantage.'" *State v. Habel*, No. A-4004-19T4, 2020 WL 7419067, at *2 (N.J. Super. Ct. App. Div. Dec. 18, 2020) (quoting *Escobar v. Mazie*, 460 N.J. Super. 520, 526 (App. Div. 2019)). Within this District, "it is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only 'when absolutely necessary.'" *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993)).

Plaintiffs seek disqualification under RPC 1.9(a), which provides: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." N.J. Rules Prof'l Conduct R. 1.9(a). In *City of Atl. City v. Trupos*, the Supreme Court of New Jersey explained

5

that RPC 1.9(a)'s "prohibition is triggered when two factors coalesce: the matters between the present and former clients must be 'the same or ... substantially related,' and the interests of the present and former clients must be 'materially adverse.'" 992 A.2d 762, 771 (N.J. 2010). "RPC 1.10 imputes an attorney's conflict of interest under RPC 1.9 onto other lawyers in his or her firm." *Matter of Est. of Krivulka*, No. A-0803-21, 2022 WL 3693103, at *8 (N.J. Super. Ct. App. Div. Aug. 26, 2022).

The *Trupos* court also clarified the procedure applicable when a litigant seeks disqualification under RPC 1.9(a):

> In the process, the initial burden of production—that the lawyer(s) for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former client—must be borne by the party seeking disqualification . . . If that burden of production or of going-forward is met, the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought. That said, the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it "bears the burden of proving that disqualification is justified."

992 A.2d at 771 (internal citation omitted). Given the disfavored nature of disqualification, that burden is a "heavy" one. *Rohm & Haas Co.*, 187 F. Supp. 2d at 226-27 ("A party seeking disqualification must meet a 'heavy burden' of proof before a court will disqualify an attorney or law firm.") (citations omitted).

While most of the elements of RPC 1.9(a) are straightforward and require little interpretation (i.e., whether a lawyer previously represented a client, whether a current representation is "materially adverse" to that former client's interest, and whether the representations involve the "same" matter), the question of whether two matters are "substantially

related" is more complex. In *Trupos*, the New Jersey Supreme Court provided guidance by "distill[ing]" the relevant case law into the following "workable standard":

> [F]or purposes of RPC 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

992 A.2d at 774. The *Trupos* court further explained that it adopted that standard "because it protects otherwise privileged communications . . . while also requiring a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a former client." *Id.*

### c. Plaintiffs Have Not Established That Proskauer's Representation of Defendant in this Matter Violates RPC 1.9(a)

As an initial matter, the Court finds that both sides have met their respective burdens of production. First, Plaintiffs have demonstrated, through certifications and exhibits, that Proskauer previously represented CarePoint Health. (*E.g.,* Cert. of William Pelino ¶¶ 3-4, ECF No. 132-1). Second, Defendant's role in this litigation is unquestionably adverse to CarePoint's interests. Neither point is in legitimate dispute. The burden of production thus shifts to Defendant to show that this litigation is neither "the same" nor "substantially related" to Proskauer's prior work for CarePoint. It has met that burden through the submission of exhibits and arguments demonstrating the differences between that prior work and this case. (*See, e.g.*, Decl. of David Manko*,* ECF No. 130-2; Decl. of William Walsh, Ex. 2, ECF No. 129-3; Opp. Br. at 4-8, 30-32, ECF No. 130). The Court must now move to the final stage of the inquiry and determine whether Plaintiffs have carried their burden of persuasion in proving that disqualification would be appropriate under RPC 1.9(a). *Trupos*, 992 A.2d at 771. The Court finds they have not done so.

7

RPC 1.9(a) prohibits Proskauer from participating in a subsequent, adverse representation that is either "the same" or "substantially related" to the work it performed for CarePoint. Plaintiffs do not contend that the matters in question are "the same", nor would the record support such a finding. The Court therefore focuses its analysis on whether the matters are "substantially related" as the New Jersey Supreme Court defined that phrase in *Trupos*. 992 A.2d at 774. Thus, the Court must determine whether Plaintiffs have proven *either* that (1) Proskauer received confidential information from CarePoint that it can use against CarePoint in this litigation; *or* (2) facts relevant to Proskauer's prior representation of CarePoint are both relevant and material to this litigation. *Id.*

As to the former point, Plaintiffs have not established that CarePoint provided Proskauer with "confidential information" that the firm might use against Plaintiffs in this case. Plaintiffs did not address the issue in their moving brief, opting instead to wait for Defendant to meet its burden of production. (*Generally* Pl. Br., ECF No. 117-1). In their reply brief, Plaintiffs simply assume that Proskauer obtained such information, (Rep. Br. at 11, ECF No. 132) ("It is nonetheless inconceivable that Proskauer would not have been privy to client confidences and confidential information."), without identifying any,[4] let alone describing how Proskauer might use it against CarePoint here. Indeed, Plaintiffs argued that they have no obligation to do so, given the disjunctive nature of the *Trupos* court's "substantially related" test. (*Id.* at 9-11). This is particularly significant given the Court's understanding that the New Jersey State Commission of Investigation conducted a years-long investigation into CarePoint's dealings, including its financial circumstances, and that the investigation culminated in the creation of a publicly

---

[4] Plaintiffs certainly know what CarePoint gave to Proskauer, having themselves provided the Court with a voluminous collection of such materials for in camera review.

available report.  As Plaintiffs have not met their burden of persuasion regarding Proskauer's receipt of confidential information, the Court moves to the *Trupos* court's second substantial relationship test:  whether facts relevant to Proskauer's prior representation are both relevant and material in this case.

Plaintiffs contend that, because Proskauer previously provided CarePoint with legal advice regarding certain related-party transactions, and because Defendant has now (1) raised such transactions as part of its defense against Plaintiffs' claims in this case; and (2) sought extensive discovery on those transactions, the concept of related-party transactions is relevant and material to both representations.  (Pl. Br. at 3, ECF No. 117-1) ("CarePoint counsel determined that responses to Proskauer's discovery demands directly implicate Proskauer's prior representation of CarePoint"); (*id.* at 5) ("By pursuing their strategy of blaming CarePoint's Founders, several of whom Proskauer apparently had attorney-client communications [with] . . . Proskauer has now caused this litigation to be substantially related to Proskauer's prior representation of CarePoint."); (Pl. Reply at 8, ECF No. 132) ("Here, Proskauer had attorney-client communications with two Founders and it exchanged information and advice with CarePoint regarding related-party transactions.  Proskauer's primary defense of Barnabas now centers around an obsession over the minutiae of Founder related-party payments at CarePoint.  That is a congruity of facts.").  Plaintiffs further represented that they would "be able to make a straightforward evidentiary case that disqualification is required" on these grounds by submitting "documentary evidence to the Court for *in camera* review".  (Pl. Reply at 2, ECF No. 132).

The Court has now reviewed the parties' ex parte submissions, which are composed of correspondence and other documents regarding, among other things, the related-party transactions at issue in Plaintiffs' argument.  After careful consideration of those materials, the Court finds that

9

Plaintiffs have not established that the information in question is relevant and material to Proskauer's current representation of Defendant. Specifically, while Plaintiffs suggest that Proskauer provided advice to CarePoint regarding the propriety of making related-party transactions, generally, (Pl. Br. at 1-2, ECF No. 117-1; Pl. Reply at 3, 8, ECF No. 132), their *in camera* submission belies that idea. Rather, Proskauer provided forward-looking advice about whether the use of specific government funds for a small number of hypothetical transactions would pass muster under the relevant rules and regulations. It appears that the only "related-party" involved was a single hospital's landlord. As one Proskauer attorney involved in the prior representation described the firm's involvement: "Proskauer only provided advice concerning the permissibility of Christ Hospital making rent payments to a related party, and the implications of repaying a loan, using CARES Act funds." (Decl. of David A. Manko, ¶ 7, ECF No. 130-2). Having reviewed the parties' full *in camera* submissions in detail, the Court finds that summary to be accurate.

Plaintiffs have not established how the specific, hypothetical related-party transaction at issue in Proskauer's prior representation of CarePoint is relevant and material to this case. Rather, it seems that Plaintiffs suggest that Proskauer may be extrapolating that CarePoint engaged in *other* related-party transactions (i.e., a CarePoint hospital had a related-party landlord, so CarePoint may have engaged in other related-party transactions). Stretched supposition is not fact, however, and a congruency of *facts* is necessary to trigger RPC 1.9(a)'s restrictions on legal representation. The same is true for Plaintiffs' reference to Proskauer's involvement with a specific loan forbearance agreement. (Tr. of Nov. 20, 2024 Hr'g at 20:20-25, ECF No. 151). In sum, the Court finds that Plaintiffs have not shown that this case is substantially related to Proskauer's previous

10

representation of CarePoint. Plaintiffs have therefore not met their "heavy" burden of proving that Proskauer's representation of Defendant runs afoul of RPC 1.9(a).

### d. <u>Even If a Conflict Existed, Plaintiffs Have Waived It Through Their Delay</u>

Even if the Court were to assume, without deciding, and for the sake of this motion only, that Proskauer's participation in this case violates RPC 1.9(a), disqualification would be inappropriate as Plaintiffs have waived the issue. While the Court notes that Defendant has raised three distinct waiver arguments, *see* discussion supra Section II(a), it will focus first on Defendant's argument for implicit or equitable waiver based on Plaintiffs' delay in seeking disqualification. Given their prolonged delay, the Court finds that Plaintiffs have waived the right to seek such relief.

The Court begins by noting that the parties disagree on the applicable legal standard. Defendant argues that the Court should apply the five-factor test that Judge Lechner described in *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099 (D.N.J. 1993). That test is as follows:

> In determining whether the moving party has waived its right to object to the opposing party's counsel, consideration must be given to (1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the non-moving party.

(*Id.* at 1115). Judges in this District have routinely applied the *Alexander* factors when evaluating whether a party has waived the right to seek disqualification. *E.g.*, *Dill v. Yellin*, No.22-cv-6116 (SRC), 2024 WL 1928359, at *2 (D.N.J. May 2, 2024) (Judge Chesler); *Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019) (Judge Quraishi); *Residences at Bay Point Condo. Assoc., Inc. v. Chernoff Diamond & Co., LLC*, No. 16-cv-5190 (MCA), 2017 WL 3531683, at *12 (D.N.J. Aug. 17, 2017) (Judge Hammer); *Chi Ming Yau v. He Cheng Rest. Corp.*, No. 12-cv-6754 (MCA),

2015 WL 3540596, at *6 (D.N.J. June 2, 2015) (Judge Dickson). Plaintiffs contend that both the New Jersey Supreme Court and Appellate Division have rejected the *Alexander* test, finding instead that waiver is only appropriate in "extraordinary circumstances". (Reply Br. at 15, ECF No. 132) (citing *Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 44 A.3d 592, 600, n.6 (N.J. 2012); *Matter of Est. of Krivulka*, No. A-0803-21, 2022 WL 3693103, at *12 (N.J. Super. Ct. App. Div. Aug. 26, 2022)).

In light of the parties' disagreement, the Court makes several observations. First, while the District of New Jersey certainly looks to New Jersey state court decisions for guidance in interpreting and applying the Rules of Professional Conduct, it is not bound by them. *Fragoso*, 433 F. Supp. 3d at 627 (citing *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996); L. Civ. R. 103.1 (specifying that while New Jersey's RPC apply to attorneys practicing in this District, those Rules are "subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or *decision of law*.") (emphasis added). Second, in this instance the Court is neither interpreting nor applying the Rules; that phase is over. The Court has assumed for the sake of argument that Proskauer's conduct violates RPC 1.9(a) and is now addressing the distinct issue of whether Plaintiffs have, through their delay, implicitly waived the right to seek disqualification. The Court is not persuaded that the state courts have any special expertise on such matters. Third, given the specific circumstances of this case, in which Defendant's waiver argument is based on Plaintiffs' nearly twenty-month delay in seeking disqualification, the distinction appears to be semantic. The Appellate Division has recognized that "[r]ather than applying the five *Alexander* factors, New Jersey published opinions have recognized that undue delay may amount to 'extraordinary circumstances' justifying permitting a conflicted firm to continue representation." *Matter of Est. of Krivulka*, 2022 WL 3693103, at *13.

12

Thus delay, if sufficiently egregious, can serve as a basis for waiver under either approach. In any event, this Court finds that an application of the *Alexander* factors, which examine the length of and reasons for a delay, as well as the prejudicial effect on the nonmoving party, strikes the most appropriate balance.

The first two *Alexander* factors, which require the Court to determine when the moving party learned of a conflict and the length of that party's delay in seeking disqualification, are related and the Court will consider them together. Plaintiffs argue that Defendant's April 2024 discovery requests, which sought "voluminous and granular" information regarding Plaintiffs' related-party transactions, first gave them reason to believe that Proskauer was weaponizing information it obtained while representing CarePoint. (Reply Br. at 17, ECF No. 132). Specifically, Plaintiffs contend that their "investigation into Proskauer's everything quest for 'the Founders' fraud, mismanagement, and cash extractions' . . . ultimately led back to Proskauer." (*Id.*). Describing the alleged conflict more generally, Plaintiffs argue: "[a]gainst its former client, Proskauer explicitly aims to prove that Barnabas's anti-competitive conduct did not cause harm to CarePoint by trying to uncover evidence that CarePoint and its Founders were separately misusing its funds." (Pl. Br. at 3, ECF No. 117-1). The record reflects, however, that Plaintiffs have been on notice of Defendant's "founder fraud" argument since November 21, 2022, when Defendant served its original motion to dismiss. In the brief in support of that motion, Defendant argued, in relevant part: "[CarePoint's] difficult times were caused by the Founders' extraction of case from their hospitals. According to a report by the New Jersey Commission of Investigation, CarePoint hospitals paid the Founders over $157 million in 'questionable management fees and allocations' that 'dwarfed' the hospitals' own 'operating margins.'" (Walsh Decl., Ex. 6 at 6-7, ECF No. 129-7). Defendant restated that point in the parties' June 13, 2023 Joint Proposed Discovery Plan,

13

(Walsh Decl., Ex. 7, ECF No. 129-8), and explicitly sought discovery regarding payments Plaintiffs made to the Founders and other related-parties ("any entity in which the Founders have a direct or indirect financial interest") in its First Set of Document Requests dated June 24, 2023. (Walsh Decl., Ex. 8, ECF No. 129-9). Given that Plaintiffs have been on notice of Defendant's "founder fraud" argument since November 2022, received multiple confirmations of that strategy in June 2023, and yet first raised the issue in July 2024 – a delay of well over a year, by any metric – the Court finds that the first and second *Alexander* factors favor waiver.

Turning to the third factor, Dilworth Paxson LLP has served as Plaintiffs' counsel at all times relevant to the disqualification issue. Plaintiffs' counsel has also been aware of Proskauer's prior representation of CarePoint throughout that period. As for the fourth factor, the Court must examine the reason for the movant's delay in seeking disqualification. *Alexander,* 822 F. Supp. at 1115. Given that the Court does not find Plaintiffs' explanation regarding the timing of their motion (i.e., that they only learned of the potential conflict after reviewing Defendant's April 2024 discovery requests) to be credible in light of the motion record, the timing of Plaintiffs' motion, made in close correlation with Plaintiffs' recent decision to resume litigating this case aggressively after months of financial-related delay, strongly suggests that Plaintiffs' application may be an attempt to secure a litigation advantage. *Rohm & Haas Co.*, 187 F. Supp. 2d at 229-30 ("The essence of this analysis is whether the party seeking disqualification as a tactical maneuver."). Both the third and fourth *Alexander* factors therefore weigh in favor of waiver.

Finally, the Court must examine whether Proskauer's disqualification would result in prejudice to Defendant. *Alexander,* 822 F. Supp. at 1115. The Court finds that it would, and that such prejudice would be significant. Proskauer has represented Defendant in this litigation for over two years, and counsel represents that Defendant has "invested thousands of hours in

Proskauer". (Def. Br. at 25, ECF No. 130). That investment, of course, continued for more than a year *after* Plaintiffs first received the sort of information that they now contend put them on notice of Proskauer's conflict. Defendant has made an incredible investment of both time and money that would be wasted if the Court were to grant disqualification at this juncture. Defendant would have to start from scratch with any new counsel, and devote the extensive time and financial resources necessary to bring those attorneys up to speed. This factor therefore weighs in favor of waiver. *Rohm & Haas Co.*, 187 F. Supp. 2d at 231 (finding prejudice where "[i]t would require a substantial effort and a tremendous expenditure of legal fees to prepare a new law firm to litigate this matter at this late stage of litigation").

Each of the *Alexander* factors favors waiver here. Moreover, the Court finds that Plaintiffs' delay in raising the disqualification issue – between 13 and 19 months, depending on whether the Court uses Defendant's original motion to dismiss or its June 2023 discovery requests as the triggering event – is consistent with the period that Courts have found sufficient for waiver purposes. *See id.* (collecting cases and noting delays of between thirteen months and nearly three years). The Court therefore finds that, even if Proskauer's participation in this case amounts to a violation of RPC 1.9(a), Plaintiffs have waived the right to seek disqualification here. In light of this determination, the Court need not, and does not, reach Defendant's other waiver arguments (i.e., "advance" waiver pursuant to the retainer agreement between CarePoint and Proskauer, or "express waiver" pursuant to the October 2021 e-mail exchange between Proskauer and counsel for CarePoint).

### III. CONCLUSION

Based on the foregoing, it is on this 27th day of November, 2024,

**ORDERED** that Plaintiffs' motion for disqualification, (ECF No. 117), is **DENIED**; and it is further

**ORDERED** that the stay of the deadlines for appealing this Court's rulings regarding the New Jersey State Commission of Investigation's motion for a protective order, (ECF No. 99), Defendant's cross-motion to compel, (ECF No. 105), and the Commission of Investigation's motion for reconsideration, (ECF No. 137), is hereby lifted.  The period for appeal shall begin running as of the date of this Order; and it is further

**ORDERED** that the New Jersey State Commission of Investigation's deadline for responding to the subpoena at issue in the aforementioned motions shall remain stayed pending resolution of any appeal to the District Court.  In the event that no party timely appeals, the New Jersey State Commission of Investigation shall respond to that subpoena **on or before January 10, 2025**; and it is further

**ORDERED** that, as the Court has referred herein to information that one or more parties have submitted either *in camera* or under seal, the Clerk of the Court shall file this Opinion and Order under temporary seal.  If a party seeks to maintain any portion of this Opinion and Order under seal, that party shall file a motion complies with the requirements of Local Civil Rule 5.3 **on or before December 13, 2024**.  Any such motion must include a proposed redacted version of the Opinion and Order.

s/ Cathy L. Waldor  
**Hon. Cathy L. Waldor, U.S.M.J.**
