

September 22, 2025

**Via ECF**

Hon Cari Fais
U.S. District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07101

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York  10019-6022
United States of America

Direct line +1 212 318 3060
robert.hirsh@nortonrosefulbright.com

Tel +1 212 318 3000
Fax +1 212 318 3400

Re:   *The CarePoint Litigation Trust v. RWJ Barnabas*, 22-cv-05421 (D.N.J.)—The Trust's Opposition to Barnabas' Request to Enforce Order Compelling Complete Interrogatory Responses [ECF 295]

Dear Judge Fais:

The CarePoint Litigation Trust (the "Trust")[1] files this Opposition to Barnabas' Request to Enforce Order Compelling Complete Interrogatory Responses [ECF 295] ("Letter Motion") and would respectfully show the Court as follows:

Without citation to a single case or procedural rule, Barnabas' Letter Motion asks this Court to "enforce" its December 31, 2024 Order (the "Order) compelling the Trust to provide "written responses" to Interrogatories Nos. 1–3 by making premature trial evidentiary rulings [ECF 167] and to preclude the Trust "from contradicting its interrogatory responses at trial." [ECF 295 at 2]. These sanctions requests are wholly unfounded for the reasons explained below.

**I.   CarePoint and the Trust, as CarePoint's successor, unequivocally complied with the Court's December 31, 2024 Order.**

The Order required CarePoint to provide "written responses" to Barnabas' interrogatories Nos. 1–3 by January 24, 2025. [ECF 167]. CarePoint complied with this order and served its amended interrogatory responses on January 24, 2025. Thus, there is no further relief for this Court to order.

As an initial point, it is important to clarify exactly what the Court did and did not order CarePoint to do, as Barnabas' Letter Motion includes a number of mischaracterizations of the Order. For instance, Barnabas contends that this Court's Order requires the Trust to:

> (i) identify all payments made to the Founders; (ii) describe all management services provided by the Founders; and (iii) detail any efforts to determine whether payments for those services reflected their "fair market value." *See* ECF 97, 167.

---

[1] The Trust did not appear in this case until June 11, 2025. Actions taken before that date were by CarePoint Health Systems, Inc. and its three hospitals. For ease of reference, we refer to all actions by either party as actions of the Trust.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com/legal-notices.

Hon Cari Fais
September 22, 2025
Page 2

**NORTON ROSE FULBRIGHT**

[ECF 295 at 2]. This is simply incorrect, and the Order includes no such requirement. All the Order requires is for the Trust to provide "written responses" to Barnabas' interrogatories Nos. 1–3 by January 24, 2025. [ECF 167]. It does not overrule (or even reference) any of the Trust's objections or privilege claims, which makes sense because Barnabas did not even actually ask the Court to make such rulings. [ECF 97]. Barnabas' attempt to read language into the Order that does not exist should be rejected.

Barnabas similarly mischaracterizes[2] the Trust's amended responses to Interrogatories Nos. 1-3, suggesting the Trust just re-served its original responses without providing any additional information. [ECF 295 at 2 n.2] (stating that "[t]he Court was not ordering CarePoint to simply re-issue its prior written response as a new response."). This is also untrue. The Trust served amended written responses to these requests with additional information, including additional information about payments made to various individuals and entities, as detailed below.

*Interrogatory No. 1*

The Trust initially responded to Interrogatory No. 1 by stating (subject to its objections) it was available to meet and confer. Ex. 1. After this Court's Order, the Trust amended its response to Interrogatory 1 to provide information about payments made (to the extent any exist) to **21 different individuals and/or entities**, as reflected in the chart appended to the Trust's amended response. [ECF 295-1 at 21]. Contrary to Barnabas' statement, the Trust did, in fact, provide Barnabas with the schedule of payments it referenced in its amended response. While Barnabas may claim not be satisfied with the payment information the Trust provided, it is simply untrue that the Trust failed to comply fully with the Order to provide a "written response" to Interrogatory No. 1. *See Boselli v. Se. Pennsylvania Transp. Auth.*, 108 F.R.D. 723, 725 (E.D. Pa. 1985) ("Defendant's inability to provide more detailed answers to these interrogatories cannot be held to be a failure to obey the Order compelling full and complete answers.").

*Interrogatory No. 2*

Like Interrogatory No. 1, the Trust stated (subject to its objections) it was available to meet and confer. Ex. 2. Interrogatory No. 2 requested CarePoint to identify all services provided to CarePoint by the entities in which any Founder has an interest, including, among other things, the date the service was provided, a description of the service provided, the entity receiving the service, and the payments made for such services. After this Court's Order, the Trust amended

---

[2] Barnabas' Letter Motion contains a number of other mischaracterizations of the Trust's amended interrogatory responses and related correspondence. For instance, Barnabas argues "CarePoint . . . conced[ed] that the Founders were responsible for CarePoint's financial distress." [ECF 295 at 2]. Barnabas' position is nonsensical. Nowhere in the Trust's amended responses does the Trust admit to any such allegation. As another example, in connection with Interrogatory No. 2, Barnabas states that CarePoint asserted that it had "no duty to 'investigate'" payments to CarePoint's Founders and their affiliated entities and that "if it later wants to show that the services the Founder[s] provided were real, it can manufacture expert testimony for that purpose." [ECF 295 at 5 n. 5]. This assertion is patently false. In support, Barnabas cites Exhibit 4 to its Letter Motion, which is a discovery letter written by the Trust's counsel. Nowhere in this correspondence does the word "investigate" even appear. And the Trust certainly will not "manufacture expert testimony" related to Interrogatory No. 2. *Id.* Needless to say, Barnabas' inflammatory and erroneous misrepresentations should be rejected.

Hon Cari Fais
September 22, 2025
Page 3

NORTON ROSE FULBRIGHT

its response to Interrogatory No. 2 to explain that Barnabas' Interrogatory reflects a misunderstanding of the contractual relationship between the Founders[3] and CarePoint, such that the information Barnabas requested in the Interrogatory **does not exist** in the itemized form or fashion requested. CarePoint's healthcare management services agreements (which have been produced to Barnabas) encompass a suite of services that are not broken out separately and billed in the itemized fashion Barnabas' Interrogatory No. 2 wrongly presumes (or seeks to mischaracterize, given that Barnabas certainly understands that contractual billings for hospital management services are regularly structured such that charges are ***not*** on an individual service basis or broken down as suggested by Barnabas' interrogatory characterization, but rather are frequently charged on a percentage basis as in the contracts produced by the Trust). The Trust cannot manufacture and generate responsive information that does not exist, and the Court certainly did not order it to do so. *Danieli Corporation v. SMS Group*, 2023 WL 12040520, at *2 (W.D. Pa. Jun 13, 2020) (holding that response to interrogatory was sufficient because a party "cannot be made to give what it does not have.").

Moreover, Barnabas' arguments with respect to Interrogatory No. 2 are self-contradictory, and in the end, it appears Barnabas does not actually contend that the Trust has failed to comply with this Court's Order with respect to Interrogatory No. 2. Specifically, Barnabas states that the Trust's alleged "non-answer, answer confirms what CarePoint has already admitted…" [ECF 295 at 4]. Again, the Trust admitted nothing other than the information it provided in its specific responses to the Interrogatories. Further, whatever else it might seek to convey, Barnabas' statement only makes sense if Barnabas understands that the Trust did, in fact, provide information that responds as closely as possible to each category of information Barnabas requested in Interrogatory No. 2, including stating where and why the information was unavailable in the form requested given the actual nature of the underlying contractual relationship. [ECF 295-1 at 12–14].

### Interrogatory No. 3

Last, with respect to the Trust's amended response to Interrogatory No. 3, Barnabas has entirely mischaracterized the Trust's written response. The Trust has informed Barnabas that it has not identified any non-privileged responsive information to date, and Barnabas twists that statement to extrapolate that since "there is no evidence in the record that any payment reflected the fair market value of any service," then the Trust has somehow failed to comply with this Court's Order. This is a dramatic, unwarranted leap in logic and should be rejected. As the Trust informed Barnabas, if non-privileged responsive information is identified, then the Trust will further amend its interrogatory response. But a lack of responsive information, does not remotely equate to a violation of the Order, particularly given that the Order neither makes any ruling on the Trust's privilege claim, nor finds or even suggests that the Trust currently has responsive information to, what is essentially an expert inquiry, Interrogatory No. 3 as posed by Barnabas.

Moreover, a motion to "enforce" discovery responses is not an appropriate vehicle for what amounts to an attempt to obtain a partial summary judgment or evidentiary sanction on specific legal issues without citing any case law or submitting any substantive briefing to the Court. If, at some point, Barnabas wants to file a motion seeking an order that the Trust has no evidence of

---

[3] The Founder-related entity that is the party to the CarePoint management services agreements is CarePoint Health Management Associates, LLC.

Hon Cari Fais
September 22, 2025
Page 4

**NORTON ROSE FULBRIGHT**

fair market value for the Founders' services based on the information it has provided in discovery or through expert testimony, then it can make an appropriate motion (assuming such a motion would even be relevant to whether Barnabas committed antitrust violations caused damages to CarePoint as a result) supported by case law (if it has any) on how fair market value is determined, and whether the information purportedly sought in these Interrogatories is the only way of demonstrating fair market value based on the underlying contractual arrangements. But Barnabas has not done so, and its legally and factually unsupported *ipse dixit* is wholly insufficient at this stage, many months before the discovery cut-off in this case.

At bottom, the Trust has complied with the Court's Order to provide "written responses" to Barnabas' Interrogatories Nos. 1–3, and it has done so with substantive responses addressing the specific requests as phrased (or mis-phrased) based on the information it has compiled to date. Barnabas' Letter Motion seeking to enforce this Court's December 31, 2024 Order is entirely without merit.

**II.     Barnabas' attempt to seek premature evidentiary rulings is improper.**

Without citation to any case or procedural rule, Barnabas' Letter Motion requests the extraordinary relief of seeking premature evidentiary—effectively sanctions—rulings when there are six months left in discovery and no trial date is even set.

Incredibly, Barnabas claims in its Letter Motion (without explanation) that "[t]he time has come to solidify the record regarding the Founders' cash extractions and their phantom management services" and thus the Trust should be precluded "from contradicting its interrogatory responses at trial." Specifically, Barnabas seeks an order precluding the Trust from "(i) presenting at trial any evidence that the extractions exceeded $63 million; and (ii) disputing that CarePoint ***represented to this Court*** that the cash extractions were limited to this amount." [ECF 295 at 4] (emphasis in original).

This is a ***de facto*** request for discovery sanctions against the Trust, although Barnabas does not purportedly seek relief under FED. R. CIV. P. 37. As an initial point, Barnabas' request should be summarily rejected because Barnabas' request for relief hinges on the premise that the Trust has failed to comply with the Order. But as detailed in the proceeding section, the Trust has complied with the Order, and Barnabas' request for ***de facto*** discovery sanctions is entirely meritless. *See Coleman v. Blockbuster, Inc.*, 2007 WL 4084281, at *1 (E.D. Pa. Nov. 15, 2007) (holding that party had "substantially complied" with a Court order compelling discovery and therefore "sanctions are not warranted."); *see also IQVIA, Inc. v. Veeva Systems, Inc.*, 2020 WL 14024241, at *4 (D.N.J. Mar. 5, 2020) ("A responding party generally is not required to conduct extensive research to answer an interrogatory, but must make a reasonable effort to respond.").

Barnabas' unfounded request for this Court to issue an order precluding the admission of certain evidence at trial at this stage of discovery, when ***no*** depositions have occurred and ***no*** experts have even been designated, still less, deposed, is wholly improper. As other courts in this District have recognized, "[a]ny application to exclude evidence at trial should be made via a motion in limine at the appropriate time." *Lexon Insurance Company v. Borough of Union Beach*, 2024 WL 4111716, at *6 (D.N.J. Sept. 6, 2024).

Hon Cari Fais
September 22, 2025
Page 5

NORTON ROSE FULBRIGHT

Barnabas' requested relief also seeks to override the Federal Rules of Civil Procedure by precluding the Trust from supplementing or amending its interrogatory responses, as FED. R. CIV. P. 26(e) specifically permits. Rule 26(e) provides that the Trust can supplement its interrogatory responses in a timely manner. Since it appeared, the Trust has been investigating this case and any additional information potentially responsive to Barnabas' interrogatories (and without waiving its objections to those interrogatories). Indeed, the Trust specifically advised Barnabas in its August 19 correspondence that it would supplement its responses if it identified additional responsive information as it was getting up to speed and discovery continued, just as the Federal Rules contemplate. *See* [ECF 295-4]. But Barnabas ignores the Rules and that statement entirely. The Trust has recently identified documents reflecting certain individual payments made to the individuals and entities at issue in Interrogatory No. 1 and will supplement its responses as appropriate. This process is the reason for supplementation under the Federal Rules, and Barnaba's attempt to short-circuit that process and gain a trial advantage when there are still many months left in discovery should be rejected.

CarePoint (and the Trust, as CarePoint's successor) complied with the Court's Order, and there is nothing to enforce. Barnabas' Letter Motion should be denied, and the parties should proceed with discovery in the normal course under the Federal Rules.

Sincerely,

*/s/ Robert M. Hirsh*
Robert M. Hirsh