William T. Walsh
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3908
wwalsh@proskauer.com

*Attorney for RWJ Barnabas Health, Inc*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE CAREPOINT LITIGATION TRUST**. | ) ) ) |
| | ) 22-cv-05421-EP-CF |
| Plaintiff, | ) Hon. Evelyn Padin, USDJ |
| v. | ) Hon. Cari Fais, USMJ |
| **RWJ BARNABAS HEALTH, INC.,** | ) ) |
| Defendant. | ) ) |

## BARNABAS'S OPPOSITION TO CAREPOINT'S APPEAL OF THE JUNE 3, 2025 MANDLER WAIVER ORDER

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 6

    A.  The Mandler Subpoena Production and CarePoint's Privilege Waiver. ................ 6

    B.  The Mandler Privilege Dispute. ........................................................................... 8

    C.  The Stay Pending Confirmation of CarePoint's Bankruptcy Plan. ........................ 9

    D.  Lifting of the Stay and Rescheduling of Oral Argument. ..................................... 10

    E.  The June 3, 2025 Oral Argument and Mandler Waiver Order. ............................. 11

    F.  CarePoint's Substitution and Reconsideration Motions. ..................................... 12

    G.  The August 26, 2025 Hearing and Denial of Reconsideration. ........................... 12

III.  ARGUMENT .................................................................................................... 13

    A.  Judge Waldor Found Waiver Based on CarePoint's Reckless Conduct............... 14

    B.  CarePoint's Argument That CarePoint Took "Reasonable Steps" to Protect Disclosure and Rectify Error Under Rule 502(b) Fails. ....................................... 19

    C.  CarePoint's Argument That Privilege-Log Deficiencies Do Not Support Waiver Is Baseless. ............................................................................................. 25

    D.  CarePoint Fully Briefed and Argued Barnabas's Waiver Motion; the Trust Chose Not to Participate. ..................................................................................... 27

        1.  The CarePoint Trust's Claim that It Had "No Opportunity" Re-Argue Privilege Waiver is Incorrect and Irrelevant. ................................. 27

        2.  CarePoint Waived the Ability to Appeal the Mandler Waiver Order. ....... 31

IV.  CONCLUSION ................................................................................................. 33

# TABLE OF AUTHORITIES[1]

**Page(s)**

CASES

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*,
  240 F.R.D. 401 (N.D. Ill. 2007) ............................................................29

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985) ............................................................................13

*Apex Mun. Fund v. N-Group Sec.*,
  841 F. Supp. 1423 (S.D. Tex. 1993) ......................................................23

*Bowles v. Nat'l Ass'n of Home Builders*,
  224 F.R.D. 246 (D.D.C. 2004) ........................................................17, 23

*Cardona v. Gen. Motors Corp.*,
  942 F. Supp. 968 (D.N.J. 1996) ............................................................14

*Carlson v. Carmichael*,
  2013 WL 3778356 (E.D. Pa. 2013) .........................................................5

*Catholic Health Initiatives Physician Servs., LLC v. Medsynergies, LLC*,
  2019 WL 13089594 (D. Colo. 2019) ......................................................17

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*,
  183 F.R.D. 119 (D.N.J. 1998) ...............................................................33

*D'Ambly v. Exoo*,
  2024 WL 4880322 (D.N.J. 2024) ..........................................................26

*Depomed, Inc. v. Purdue Pharma L.P.*,
  2016 WL 6089699 (D.N.J. 2016) ..........................................................13

*First Mercury Ins. Co. v. Markowitz*,
  2015 WL 6164055 (D.N.J. 2015) ........................................................4, 22

*Froning's, Inc. v. Johnston Feed Serv., Inc.*,
  568 F.2d 108 (8th Cir. 1978) ................................................................28

---

[1] Unless otherwise noted, all emphasis added, all internal citations and quotation marks omitted, and capitalizations conformed without brackets. Citations to *In re CarePoint Health Systems, Inc.*, *et al.*, 24-12534 (Nov. 3, 2024 D. Del. Bankr.) are referred to as "Bkr. Dkt.".

*Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*,
  2011 WL 1792791 (D.N.J. 2011) ..................................................................................22

*IMC Chems., Inc. v. Niro Inc.*,
  2000 WL 1466495 (D. Kan. 2000) ................................................................................23

*In re Grand Jury (Impounded)*,
  138 F.3d 978 (3d Cir. 1998).............................................................................20, 21, 30

*In re Nat'l Collegiate Student Loan Trs.*,
  971 F.3d 433 (3d Cir. 2020)...........................................................................................32

*In re Sealed Case*,
  877 F.2d 976 (D.C. Cir. 1989) ......................................................................................16

*J.M. v. Summit Bd. of Educ.*,
  2025 WL 215938 (D.N.J. 2025) ....................................................................................32

*Korrow v. Aaron's Inc.*,
  2015 WL 7720491 (D.N.J. 2015) ..................................................................................32

*LabMD, Inc. v. Tiversa Holding Corp.*,
  2015 WL 1213043 (W.D. Pa. 2015) .........................................................................16, 23

*LifeBio, Inc. v. Eva Garland Consulting, LLC*,
  672 F. Supp. 3d 512 (S.D. Ohio 2023) ...............................................................15, 17, 24

*Lithuanian Com. Corp. v. Sara Lee Hosiery*,
  177 F.R.D. 205 (D.N.J. 1997) ...................................................................................13, 33

*Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*,
  13 F.3d 69 (3d Cir. 1993)...............................................................................................28

*Margulis v. Hertz Corp.*,
  2017 WL 772336 (D.N.J. 2017) ....................................................................................26

*Novartis Pharmaceuticals v. Abbott Laboratories*,
  203 F.R.D. 159 (D. Del. 2001) .......................................................................................21

*Peterson v. Bernardi*,
  262 F.R.D. 424 (D.N.J. 2009).........................................................................................15

*Ross v. Forster, Garbus & Garbus*,
  2023 WL 2625060 (D.N.J. 2023) ...................................................................................33

*Sabinsa Corp. v. HerbaKraft, Inc.*,
  2020 WL 1503061 (D.N.J. 2020) ...............................................................................13, 20

*Schaeffer v. Tracey*,
  2017 WL 465913 (D.N.J. 2017) ........................................................................25

*Torres v. Kuzniasz*,
  936 F. Supp. 1201 (D.N.J. 1996) .....................................................................25

*Toth v. Alice Pearl, Inc.*,
  158 F.R.D. 47 (D.N.J. 1994) .............................................................................14

*United Access Techs., LLC v. EarthLink, Inc.*,
  2012 WL 2175786 (D. Del. 2012) ...................................................................28

*United States v. Waterman*,
  755 F.3d 171 (3d Cir. 2014) ....................................................................13, 19

*United States v. Weinstein*,
  2025 WL 240928 (D.N.J. 2025) ......................................................................29

*Wise v. Wash. Cty.*,
  2013 WL 4829227 (W.D. Pa. 2013) ................................................................19

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
  2003 WL 21911066 (N.D. Ill. 2003) ...............................................................29

**RULES**

Fed. R. Civ. P. 25 ..................................................................................10, 28

Fed. R. Civ. P. 26 .........................................................................................26

Fed. R. Civ. P. 37 .........................................................................................25

Fed. R. Civ. P. 72 .................................................................................. *passim*

Fed. R. Evid. 502 .................................................................................. *passim*

L. Civ. R. .......................................................................................................31

## I.     INTRODUCTION

This Appeal is CarePoint's attempt to escape the consequences of its repeated failures to protect its own privilege.[2] The dispute stems from a subpoena served on CarePoint founder and longtime executive Jeffrey Mandler, who produced roughly 150,000 documents in this matter.  When Barnabas identified to CarePoint—over a year-and-a-half ago—that the Mandler production may contain privileged documents, CarePoint refused to remedy any privilege disclosure and instead expressly permitted the documents to continue to be used in the case.  Months later, CarePoint claimed privilege over ***60,000*** of the Mandler documents.  Judge Waldor held CarePoint's delay waived the privilege.  It now tries again, seeking to claw back documents based on long-since waived privilege claims.

Privilege is a privilege; it is not a right.  The withholding of relevant evidence interferes with the Court's truth-seeking mission, and is only permitted if the privilege holder zealously guards it.  CarePoint did the opposite.  Even after CarePoint was told that the Mandler documents contained privileged information,

---

[2] CarePoint continually tries to draw separations between the CarePoint Litigation Trust and the CarePoint Debtors.  But CarePoint concedes that the Trust stepped into the shoes of the CarePoint Debtors the second Judge Waldor granted its Substitution Motion.  (ECF 260).  That is, the Trust does not get a do-over, but inherits the waiver that occurred over a year prior.  *See* Aug. 26, 2025 Hr'g. Tr. at 20 ("[Barnabas argues that CarePoint] waived it long before the Trust owned [the claims].  ***If there was a waiver, that's right.*** It happened before the Trust came in. ***The Trust takes the privilege with respect to all of its warts***.").  Accordingly, there is no relevant distinction between the CarePoint debtors and the CarePoint Trust, and, except where otherwise noted, we refer to both as "CarePoint."

CarePoint **told** Barnabas it could review those documents and make use of them because it did not want to spend the resources to review them.

Barnabas then proceeded to spend millions of dollars reviewing these documents, and incorporating them into its work product. Indeed, some of these allegedly "privileged" documents were central to Judge Waldor's orders on other discovery issues, including motions to compel the production of documents from other Founders. Here is just one example of these documents, which has sat on the public record—with CarePoint's **express consent**—for months:

> "Let's throw the big issue out there for comment – that is, should we assume that, starting July [2019], we will replace management fees with an equal income stream based on a 'profit distribution.'"

ECF 95, at 4. This document shows how – after the Founders agreed to terminate their contracts for bogus management services after the SCI's fraud investigation—they nonetheless kept the money flowing through fraudulent "tax" distributions. CarePoint now seeks to claw this, and 60,000 other documents, back.

But CarePoint did not protect its privilege. It did not secure Mandler's files when he left CarePoint in 2022; it raised no privilege objections when the Mandler production was shared in March 2024; *and* it **affirmatively authorized** Barnabas to continue reviewing and using the documents. Those were CarePoint's decisions, and it must live with the consequences. The consequence is waiver.

When Barnabas raised the matter with the Court, Judge Waldor reviewed the record, found CarePoint committed multiple privilege waivers, and entered the June 3, 2025 Mandler Waiver Order.  CarePoint now asks this Court to disregard the Federal Rules and the governing standard of review to undo a waiver that was entirely the product of CarePoint's choices.

CarePoint's Appeal is nothing more than buyer's remorse. It was assigned CarePoint's claims from CarePoint's beneficiaries, but with that came CarePoint's "sloppy"—Judge Waldor's word—record.  Rather than confront CarePoint's own negligence, CarePoint deflects, and tries to shift attention with claims that Barnabas might "leverage" the waiver ruling.  CarePoint can call it what it wants, but the consequences of its decisions are the consequences it must live with.

CarePoint lost its privilege because CarePoint repeatedly failed to protect it. Barnabas should not be punished for following the Rules and using evidence CarePoint gave express permission to use, and the Court deemed unprotected.  Rule 72(a) is clear: reversal is permitted only if a magistrate judge's order is "clearly erroneous or contrary to law."  Judge Waldor engaged with the facts, heard argument, applied the law, and made sound findings.  Those findings are entitled to substantial deference and should be upheld.  CarePoint cannot meet its heavy burden to show otherwise.

***First***, CarePoint mischaracterizes Judge Waldor's ruling by claiming waiver rested solely on Barnabas's review of the documents. In reality, the ruling was based on CarePoint's affirmative authorization for Barnabas to review and rely on the Mandler production and its belated attempt to reverse course. Judge Waldor rightly held that this was too little, too late.  Hr'g Tr. at 15-16, 20 (ECF 240).

***Second***, CarePoint argues that CarePoint took "reasonable steps" under Rule 502(b). The record shows otherwise: CarePoint did not secure Mandler's files, ignored the Protective Order's clawback procedures and its obligations under Rule 502, and expressly consented to Barnabas's review and use of the documents before reversing course months later.   Judge Waldor reasonably found these failures constituted waiver.

***Third***, CarePoint insists that privilege-log deficiencies cannot justify waiver. The law is otherwise.  But Judge Waldor did not need to reach that issue because waiver had already been established by CarePoint's prior failures. And even if she had, district courts have wide discretion to treat deficient logs as compounding a waiver, especially where, as here, they come on top of repeated lapses in protecting privilege.

***Finally,*** CarePoint's refrain that it had "no opportunity" to be heard on the Mandler Privilege Dispute is refuted by the record.   Before the Substitution, CarePoint briefed and argued the issue at the June 3rd Hearing.  The Trust had notice

of the hearing, filed a certification acknowledging its role, and yet chose not to participate. Judge Waldor correctly found there was no manifest injustice in proceeding on June 3rd with CarePoint's counsel of record present. After the Substitution, CarePoint has continued to litigate the issue. It has been afforded every opportunity to protect its privilege. Its failures to do so are what resulted in the waiver.

Equally fatal, CarePoint waived any right to challenge the Mandler Waiver Order by failing to timely appeal it by the June 17, 2025 deadline. CarePoint seeks to avoid its delay by pointing to Judge Waldor's separate ruling on a different issue—whether the June 3rd Argument should have proceeded as scheduled. But challenging that administrative order does not toll CarePoint's time to appeal the underlying merits.

In short, the Trust is trying to undo what CarePoint already lost. But "arrival of replacement counsel cannot afford a party a 'Mulligan' or the unfettered benefit of a reset button … with respect to analyzing whether the party … may claim the privileges' protections." *Carlson v. Carmichael*, 2013 WL 3778356, *3 (E.D. Pa. 2013). Rule 72(a) does not allow a successor to erase the past or punish its adversary for relying on a waiver already fixed by the Court. The Mandler Waiver Order was carefully considered, grounded in the record, and should be affirmed.

## II.    FACTUAL BACKGROUND

### A.    *The Mandler Subpoena Production and CarePoint's Privilege Waiver.*

On October 16, 2023, Barnabas subpoenaed CarePoint founder Jeffrey Mandler for documents concerning his role at CarePoint. ECF 142. CarePoint received notice of Barnabas' subpoena, but raised no privilege concerns or sought to prevent production of Mandler's documents. *Id.* After the Court enforced nearly identical subpoenas on CarePoint's other founders, Mandler produced roughly 150,000 documents, which Barnabas shared with CarePoint on March 27, 2024. *Id.* CarePoint again failed to assert privilege after receipt of the Mandler production. *Id.*

Upon review of Mandler's production, Barnabas identified potentially privileged communications therein. *Id.* On April 9, 2024, Barnabas notified CarePoint and requested it assert privilege as to any documents within the Mandler production within two weeks, consistent with the Protective Order.[3] ECF 142, Ex. 1. In response, CarePoint refused to conduct a privilege review, first asking Barnabas to do so on its behalf and then demanding a blanket clawback of the entire production. ECF 142, Exs. 2-4. After Barnabas objected, CarePoint, on April 23, 2024, instead authorized Barnabas to continue reviewing and using the Mandler

---

[3] Paragraph 13 of the Protective Order required CarePoint "[***to*** ***provide the basis for the privilege*** ***claim within fourteen (14) days of the … notification of the inadvertent production***, and produce to the party possessing the inadvertent production [i.e., Barnabas] a privilege log identifying the inadvertently disclosed information and setting forth the basis for its withholding." ECF 73.

documents, while withdrawing its demand that Barnabas sequester the Mandler documents:

> "CarePoint just reserves its rights based upon Barnabas's representation that Barnabas believes some documents may be privileged to assert such privilege, ***but is not asking Barnabas "to incur costs of sequestering the documents," and certainly does not seek to interfere or "prevent Barnabas from preparing its defense based on information it subpoenaed from third-parties."*** The demand to claw back/sequester was based upon the language in your previous letter and deadline set out therein. ***So there is no confusion on your part, CarePoint withdraws its sequestering demand.*** "

ECF 142, Ex. 6.  On May 15, 2024, after Barnabas noted that CarePoint still failed to assert any privilege over the Mandler documents, CarePoint again confirmed that "***Barnabas has no further obligation under Paragraph 13 of the Protective Order to provide any further notice to CarePoint with respect to any document in Mandler's production it uncovers that may be privileged***." ECF 142, Ex. 8.

Over four months later, on August 14, 2024, CarePoint backtracked and attempted to claw back more than 60,000 documents from the Mandler production by serving a "privilege log." ECF 142 at Ex. 9. The log was untimely and facially deficient, listing little more than Bates numbers and sender/recipient information, with many fields blank, and worst of all, no description of the documents or basis for privilege. ECF 142. By that point, CarePoint had long since waived any privilege through its multiple failures to take immediate preventive measures, even when on

notice, and its express acquiescence for Barnabas to continue to review and use the Mandler production. *Id.* So, Barnabas sought relief from the Court.

### B.    The Mandler Privilege Dispute.

Barnabas raised the Mandler privilege dispute with the Court on October 31, 2024, seeking an order deeming any privilege over the documents waived because CarePoint had repeatedly failed to protect it. ECF 142.

Those failures were substantial. First, CarePoint took no reasonable steps to prevent disclosure when Mandler departed the company in 2022 with CarePoint's files.  ECF 142 at 3-4. Second, when Barnabas provided CarePoint with nearly 150,000 of Mandler's documents in March 2024, CarePoint identified no privilege concerns. *Id.* at 3-5. Third, when Barnabas advised in April 2024 that privileged communications appeared in the production, CarePoint refused to conduct a review and expressly permitted Barnabas to continue reviewing and using the entire set. *Id.* Fourth, CarePoint failed to act promptly and instead waited months before serving a purported privilege log in August 2024. *Id.* at 5-6. Fifth, because that log was both untimely and facially deficient, it constituted a separate waiver of privilege. *Id.*

Rather than timely oppose Barnabas's motion, however, CarePoint spent November 2024 attempting to stay this litigation based on its bankruptcy filing of November 3, 2024. ECF 140, 144, 145, 149.  On December 5, 2024, the Court denied that request, directing that "discovery shall proceed in the ordinary course." ECF

155. On December 26, 2024—nearly two months after Barnabas raised the Mandler Privilege Dispute—Barnabas requested that the Court find CarePoint also waived its right to oppose. ECF 161. On December 31, 2024, the Court extended CarePoint's opposition deadline to January 14, 2025, while also scheduling Oral Argument on January 27, 2025. ECF 167. Barnabas replied to CarePoint's opposition on January 20, 2025, ECF 176, making the Mandler Privilege Dispute fully briefed and ripe for resolution.

### C.    *The Stay Pending Confirmation of CarePoint's Bankruptcy Plan.*

Before the scheduled hearing, however, CarePoint again sought to halt discovery, this time citing its forthcoming Bankruptcy Plan and proposed transfer of claims to the CarePoint Litigation Trust. ECF 171, 175. On January 28, 2025, the Court granted a limited stay through March 12, 2025, one day after CarePoint's bankruptcy plan confirmation hearing. ECF 182. In granting the stay, the Court emphasized its intent to keep the case moving: "I don't want to stop the movement of the case completely. That's my intention … I do want to move the case." Hrg. Tr. 21-22 (ECF 185). Three weeks before the stay was to lift, Paul Navid, on February 20, 2025, was formally identified as the Litigation Trustee for the CarePoint Litigation Trust. Bkr. Dkt. 730-1.

**D.      *Lifting of the Stay and Rescheduling of Oral Argument.***

Confirmation of CarePoint's bankruptcy plan was delayed, and the stay was extended.  CarePoint's bankruptcy plan was ultimately confirmed on April 17, 2025. Bkr. Dkt. 1168. Shortly thereafter, at an April 23 status conference, the Court declared: "Discovery is no longer stayed. It's in full force ... Let's get things rolling." Hr'g. Tr. 4-5 (ECF 223).  On April 24, 2025, Barnabas asked that Oral Argument on the Mandler privilege dispute be rescheduled. *Id*. On April 25, 2025, the Court set argument on the Mandler privilege dispute for June 3, 2025. ECF 214. Neither CarePoint nor the Trust sought reconsideration of that order within the fourteen-day deadline of May 9, 2025.

On May 22, 2025, CarePoint's Bankruptcy Plan became effective, formally creating the CarePoint Litigation Trust.  Bkr. Dkt. 1285. Yet five days later, on May 27, CarePoint sought to adjourn the June 3 hearing, citing the Trust's lack of counsel. ECF 227. Barnabas opposed, emphasizing that CarePoint remained the plaintiff of record under Rule 25(c) and in any event, the Trustee had been identified months earlier and had ample time to prepare for the resumption of this case. ECF 228. On May 29, 2025, the Court rejected CarePoint's adjournment request, holding that "consistent with the Court's intentions to progress discovery ***and for lack of good cause shown***, the 6/3/25 Oral Argument will proceed as Ordered." ECF 230. The next day, the Trustee filed a certification acknowledging he had not yet retained

counsel for this matter. ECF 232.  He never sought adjournment of the June 3rd Oral Argument.

### E.    The June 3, 2025 Oral Argument and Mandler Waiver Order.

At the June 3rd hearing, the Trust did not appear, but CarePoint's counsel of record did.  The Court held argument, and granted Barnabas's motion, finding that CarePoint waived privilege over the Mandler documents because it "knowingly failed to take reasonable steps to prevent the disclosure and promptly rectify the error after being made aware of it."  ECF 233.  In reaching its decision, Court explained that CarePoint offered "nothing" to support its contention that it was somehow permitted to "reserve[e the] right to assert privilege over a document a year later." The Court found it "bizarre" that CarePoint would "lay in wait" to "assert privilege when [it felt] like it."  Hr'g Tr. at 15-16, 20 (ECF 240). Judge Waldor underscored that "the way this case has been litigated by CarePoint has been sloppy, at best" and that it "wouldn't have mattered" if counsel for CarePoint appeared to at the hearing because the grounds for waiver were strong. *Id*. at 20. The waiver ruling rested entirely on CarePoint's undisputed conduct, all of which occurred before CarePoint's Bankruptcy Plan's effective date—and indeed before CarePoint's bankruptcy was filed. ECF 230.

**F.    *CarePoint's Substitution and Reconsideration Motions.***

On June 4, 2025, CarePoint moved informally for reconsideration, not disputing the merits of the Mandler Waiver Order, but simply objecting to proceeding with the June 3rd Argument without the Trust appearing. ECF 235. For the first time, CarePoint invoked a clause in its Bankruptcy Plan that apparently transferred any privilege claim CarePoint had over the Mandler documents to the Trust, and argued that by holding the hearing, the Court violated both the Bankruptcy Plan and CarePoint's due process rights. *Id*. On June 9, 2025, Barnabas opposed, explaining that while CarePoint's new argument was procedurally improper, it also failed given any later transfer of privilege could not cure CarePoint's prior waiver. ECF 236.  Barnabas also pointed out that the Trust had every opportunity to appear but chose not to. *Id.*

On June 11, 2025, CarePoint moved to substitute the Trust as Plaintiff. ECF 238. On June 30, 2025, the Trust filed its own reconsideration motion.  ECF 248. Like the prior reconsideration motion, it did not contest the merits of the waiver finding, but argued only that the June 3rd Hearing should not have proceeded. *Id.*

**G.    *The August 26, 2025 Hearing and Denial of Reconsideration.***

On August 26, 2025, the Court heard argument on CarePoint's reconsideration motion. ECF 296. CarePoint confirmed the narrow scope of its request: "All the Trust wants to do is to have the opportunity to be substantively heard on the privilege

waiver. ***And if at that point, it's determined that there has been a waiver, then there's been a waiver.***" Hr'g Tr. 23 (ECF 306). Judge Waldor denied the motion, finding no injustice and explaining that CarePoint's waiver could not be cured by any actions or argument after the fact. *Id*. at 26. Nonetheless, CarePoint now seeks to Appeal the underlying merits of the Mandler Waiver Order.

## III.   ARGUMENT

Under Rule 72(a), a magistrate judge's order on a non-dispositive pretrial matter may be overturned only if it is "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a). That is highly deferential. *Depomed, Inc. v. Purdue Pharma L.P.*, 2016 WL 6089699, at *3 (D.N.J. 2016) (emphasizing that deference is especially appropriate because "the magistrate judge is fully involved with the facts and record of the case"). A factual finding may be set aside only when the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). And where there are two permissible views of the evidence, "the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014). Discovery rulings, such as the Mandler Waiver Order, are reversed only for abuse of discretion. *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997); *Sabinsa Corp. v. HerbaKraft, Inc*., 2020 WL 1503061, at *4 (D.N.J. 2020). That does not permit reversal simply because another court might

have decided the issue differently. *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J. 1994).

It is CarePoint's burden to demonstrate that the Mandler Waiver Order was clearly erroneous or contrary to law. *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996). Judge Waldor presided over the privilege dispute from start to finish, reviewed full briefing, heard oral argument, and found CarePoint failed to preserve privilege or timely rectify its waiver. ECF 233; Hr'g Tr. 20 (ECF 240). As shown below, CarePoint's challenges—including its mischaracterization of Judge Waldor's reasoning, its failure to show error in the Rule 502(b) analysis, its reliance on a nonexistent lack of opportunity to be heard, and its forfeiture of any timely merits objections—fall short of the demanding standard of review. There is no basis for reversal.

### A. *Judge Waldor Found Waiver Based on CarePoint's Reckless Conduct.*

CarePoint first argues that the Mandler Waiver Order "contravenes settled law" because it was "grounded" in the fact that Barnabas already viewed the Mandler documents and therefore could not "unlearn" their contents. CP Br. 12-17. In support, CarePoint relies on the notion of inadvertent disclosure and the possibility of avoiding waiver here if an inadvertent disclosure is promptly remedied. *Id.*

The argument fails. First, CarePoint is wrong that Judge Waldor found a waiver merely because Barnabas had already viewed inadvertently disclosed,

potentially privileged documents. Judge Waldor found CarePoint waived privilege because it expressly permitted Barnabas to review and rely on Mandler's documents, only to attempt to rescind that agreement months later.  Hr'g Tr. 20 (ECF 240); ECF 233. Such disclosure is not only ***not*** inadvertent, it does not reasonably protect any privilege.   When CarePoint tried to undo its consent, Judge Waldor correctly concluded it was too little, too late. *Id*. There is nothing "odd" about holding a litigant to its strategic choices in discovery—particularly when that litigant brought the claims and bore the responsibility to protect its own privilege. CarePoint was careless in safeguarding privilege, and that carelessness caused waiver. Parties must "recognize that there are potentially harmful consequences if they do not take minimal precautions to prevent against the disclosure of privileged documents." *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009).

That same conduct also demonstrates why CarePoint cannot satisfy Rule 502(b), which places the burden on the privilege holder to show both reasonable preventive measures and prompt corrective action. "Under Rule 502(b), an unintentional disclosure constitutes a waiver ***unless all three sub-elements are met***." *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512, 518 (S.D. Ohio 2023). Subsections (2) and (3) required CarePoint to establish that it took reasonable steps to prevent disclosure of the Mandler documents and promptly took reasonable steps to rectify the error after Barnabas received them. Fed. R. Evid. 502(b). Judge

Waldor appropriately found CarePoint failed both prongs: it affirmatively allowed Barnabas to review and rely on the documents; it did not act when Mandler departed in 2022 with company files; and it unreasonably delayed even after Barnabas notified CarePoint in April 2024 that it possessed potentially privileged materials.

Even CarePoint's own authority underscores this conclusion. In *U.S. ex rel. Bagley v. TRW, Inc*., the court found that the producing party's "delay in completing its follow-up review of its production to ensure that other privileged documents also had not been produced inadvertently" weighed in favor of waiver. 204 F.R.D. 170, 180 (C.D. Cal. 2001). *Bagley* also rejects CarePoint's refrain that Barnabas cannot rely on "fairness" to sustain CarePoint's waiver, explaining that fairness does favor a receiving party where "the producing party ***waited so long*** to address the problem after having been informed of it that the receiving party reasonably changed its position in reliance upon their continued availability." *Id*. at 182. That is exactly what happened here: Barnabas relied on CarePoint's consent to use the Mandler documents, while CarePoint laid in wait.  That is not how one protects privilege. "[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels." *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, *7 (W.D. Pa. 2015) (quoting *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)). "Accordingly, the confidentiality of communications covered by a privilege must be jealously guarded by the holder of

the privilege lest it be waived," and the privilege holder "tak[e] ***all reasonable steps*** to prevent … disclosure." *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C. 2004). CarePoint failed to do this.  Instead, it sat idly by while Barnabas utilized documents it now seeks to claw back.  As *Bagley* observed, the fact that documents "ha[ve] been woven into the fabric of the case … weigh[s] in favor of a finding of waiver." *Id.* at 182.[4]

That is true here. The Mandler documents were not only reviewed by Barnabas but also became embedded in the record. For example, in moving to compel production from CarePoint's other founders, Barnabas cited an email Mandler sent to the other Founders and their counsel, in which he candidly acknowledged that the Founders' scheme of extracting money from CarePoint would continue under the guise of "profit distribution[s]." ECF 95 at 4 (Mandler0347948). Neither CarePoint nor the Founders objected, asserted privilege, or even sought to seal Barnabas's filing.[5] After the Court directed CarePoint or any third party to move

---

[4] Other district courts have found privilege waivers after the documents in question have been used while publicly litigating the case and the privilege holder failed to take prompt action to address their use. *See, e.g.*, in *LifeBio, Inc*., 672 F. Supp. 3d at 523  (Finding waiver, in part, because the opposing part waited nearly a year after the privileged material was cited in a summary judgment motion to seek a clawback); *Catholic Health Initiatives Physician Servs., LLC v. Medsynergies, LLC*, 2019 WL 13089594, at *7 (D. Colo. 2019) (Finding the producing party's delay in seeking clawback rendered waiver inevitable, explaining: "The contents of the report were used in [plaintiff's] mediation statement, and they have had the document for more than a year. I cannot envision a more clear instance in which ***the cat is out of the bag*** and getting it back in would be a monumental task.").

[5] Barnabas initially filed this letter under seal due to its designation as "Highly Confidential" under the Protective Order.

17

to seal by a date certain, both CarePoint and Mandler declined, and the submission was unsealed. ECF 183. As a result, the document remains publicly available on the Court's docket, proof that CarePoint's privilege claim was waived.

Many of the documents CarePoint seeks to claw back involve core issues in the case, such as the Founders' cash extractions and their efforts to sell their defunct hospitals to unsuspecting buyers. ECF 142, Ex. 12 (including admissions by Vivek Garipalli that "we have MASSIVE issues," "I'm beyond pessimistic we will find a buyer given the Hospitals are losing anywhere from $36mm to $60mm on a consolidated basis. ***But we could get lucky and one of the buyers may not realize that during due diligence and move forward anyway***."); ECF 142, Ex. 13 (email from James Lawler regarding the "management fees to sequoia"; "[T]hey will then ask how the debt got created and what it is used for. I would tell them nothing. If we can get away with it"). And many involve communications with key third-parties, including Avery Eisenreich, Medical Properties Trust, the New Jersey Department of Health, Horizon Blue Cross, Atlantic, Barnabas, Citi Bank, and others.

The Mandler Waiver Order does not rest on the mere fact that Barnabas had "seen" the Mandler documents. It rests on CarePoint's affirmative decision to allow its adversary to review and use them in litigation, coupled with CarePoint's failure to take timely and reasonable steps to reclaim any privilege. Under Rule 502(b), that is a waiver. CarePoint's attempt to recast Judge Waldor's reasoning as an

18

impermissible "cat out of the bag" analysis misconstrues the Court's ruling and ignores the record.

### B.    CarePoint's Argument That CarePoint Took "Reasonable Steps" to Protect Disclosure and Rectify Error Under Rule 502(b) Fails.

Next, CarePoint contends that the Mandler Waiver Order was erroneous because CarePoint supposedly did take "reasonable steps" to preserve its privilege. CP Br. 17-21. But CarePoint simply rehashes the arguments already made before Judge Waldor.  It claims its decision to allow Barnabas to review and rely on the documents, only to attempt a clawback four months later, was "reasonable" because CarePoint was "within six months" of bankruptcy and lacked the "capacity" to review the Mandler documents within the time prescribed by the Protective Order. *Id*. at 19-21.  But "an attorney's responsibilities … do not take a holiday." *Wise v. Wash. Cty.*, 2013 WL 4829227, *3 (W.D. Pa. 2013).  Accordingly, these arguments fail, for multiple reasons.

First, Judge Waldor's finding that CarePoint failed to take reasonable steps under Rule 502(b) was a factual determination entitled to significant deference. Where there are two permissible views of the evidence, "the factfinder's choice between them cannot be clearly erroneous." *Waterman*, 755 F.3d at 174. And because the finding at issue arises from a discovery dispute entrusted to the magistrate judge's discretion, the applicable standard of review is even more

deferential: abuse of discretion. *Sabinsa Corp.*, 2020 WL 1503061, at *4; *In re Grand Jury (Impounded)*, 138 F.3d 978, 980 (3d Cir. 1998).

While CarePoint again dubs its own conduct as "reasonable," it does not address the real question on appeal: whether Judge Waldor reasonably concluded that CarePoint's conduct fell short of Rule 502(b)'s requirements. She did. That ends the inquiry.

As Barnabas noted below, the Third Circuit's decision in *In re Grand Jury*, 138 F.3d 978 (3d Cir. 1998) is controlling. There, federal agents seized a privileged document left in a criminal suspect's office. After the seizure, the suspect asserted privilege and requested the return of the document. The government rejected the claim. After four months of unfruitful communications, the suspect finally filed a motion to return the file. The motion was denied, and the Third Circuit affirmed.

The Third Circuit held that mere assertion of privilege to opposing counsel was insufficient to preserve the privilege. Where—as here—a privilege holder knows its adversary "has possession of the materials [and] can make use of them," "merely asserting the privilege to an adversary is not sufficient to protect the privilege." *In re Grand Jury*, 138 F.3d at 982. The rule is, "the party asserting the privilege must move expeditiously for relief particularly where, as here, the party asserting the privilege does not even claim that he had reason to believe that the adversarial party was not making use of the work product." *Id.* This is because, when

an adversary is in possession of and using allegedly privileged material, "[j]udicial enforcement of the privilege [is] the only remedy." *Id.* "Without such judicial vindication," the adversary is "free to continue to utilize the documents, thereby negating their confidential character." *Id.* Thus, a party "act[s] unreasonably in waiting nearly four months to seek a judicial vindication of his assertion of the privilege." *Id.*

There is no daylight between *Grand Jury* and this case.[6] Barnabas informed CarePoint that the Mandler production may include potentially privileged information, and asked CarePoint to expeditiously make any privilege claims. When CarePoint refused to do so, it agreed that Barnabas was free to use the documents. It then waited four months to assert any privilege. Under *Grand Jury*, that is unreasonable delay and waives the privilege. *See also, e.g.*, *Connecticut et al v. Sandoz, Inc. et al.*, 20-cv-00802-MPS, ECF 402 (D. Conn. Sept. 11, 2024) (privilege waived where witness was relying on privileged documents, but counsel allowed a deposition to continue for "a few hours" "even after [being] told by a colleague that

---

[6] CarePoint's attempt to distinguish *In re Grand Jury*, 138 F.3d 978, fails. CP Br. 20-21. The fact that the case involved work-product protection rather than attorney-client privilege is irrelevant; the Third Circuit's holding was that once a party learns of inadvertent disclosure, it must act promptly and decisively to protect its interest. *In re Grand Jury*, 138 F.3d 978 at 981-82. Four months is not prompt. CarePoint's cite to *Novartis Pharmaceuticals v. Abbott Laboratories*, 203 F.R.D. 159, 165 (D. Del. 2001), is inapposite. There, the producing party "***immediately*** asserted the work product protection and demanded return of the document." CarePoint, in contrast, waited four months. Under *Grand Jury*, that is waiver.

the documents were 'potentially privileged' and himself concluded that one of the documents 'looks like it's something that was written by an attorney,'"); *Liberty*, 2024 WL 2717717 (four-month delay constituted waiver).

Judge Waldor's decision was thus on firm footing. Indeed, In *First Mercury Ins. Co. v. Markowitz*, 2015 WL 6164055, at *3 (D.N.J. 2015), she also found waiver, in part, based on the defendant authorizing his attorney to permit disclosure of a privileged document to his adversary, only to seek to belatedly attempt to claw it back under the common interest doctrine. On appeal, the District Court affirmed Judge Waldor's waiver finding. *Id.* The Court should follow suit here.

Second, it was not error for Judge Waldor to conclude that CarePoint failed to meet its burden to show non-waiver. *Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, 2011 WL 1792791, at *10 (D.N.J. 2011) ("The party resisting disclosure must show the privilege has not been waived.") CarePoint was on notice of Barnabas's subpoena to Mandler and could have taken proactive measures to protect its interests. It could have served its own subpoena or contacted Mandler's counsel to request an opportunity to review his production for privilege before it was made— just as CarePoint has done with other subpoenas in this case. Or it could have simply adhered to the applicable provisions of the Confidentiality Order it stipulated to. Yet it did nothing.

Even earlier, when Mandler departed CarePoint in 2022, CarePoint never required him to return or segregate company documents, despite knowing he used personal accounts for business that contained potentially privileged communications. Courts have routinely found such failures sufficient to support waiver. *See Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253 (D.D.C. 2004); *Apex Mun. Fund v. N-Group Sec.*, 841 F. Supp. 1423, 1433 (S.D. Tex. 1993); *IMC Chems., Inc. v. Niro Inc.*, 2000 WL 1466495, at *27 (D. Kan. 2000).[7] Nor does CarePoint's "zone of privilege" theory change that outcome. The bottom line is that once Mandler left, CarePoint still had an obligation to zealously protect its privileged communications. *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, *7 (W.D. Pa. 2015). It could not rely on a former employee to safeguard privilege on its behalf.

Third, CarePoint also failed to take reasonable steps to rectify the disclosure once Barnabas obtained the Mandler documents. Rather than promptly claw back or maintain its demand that Barnabas sequester the documents, CarePoint affirmatively

---

[7] CarePoint's attempt to distinguish these cases on their facts, CP Br. at 18 n.3, falls short given it still cannot overcome the general proposition they stand for: a failure by an employer to require a departing employee to return privilege information upon departure from the company supports a waiver finding. For instance, CarePoint argues *Bowles* is inapplicable because "the employee who left the company with privileged documents was already adverse to the company," and the "company did not bring up the issue for another calendar year, when the former employee filed suit." CP Br. at 18 n.3. Those are the facts here. In 2021, Mandler, through his company "Strategic Ventures" sued the other two CarePoint owners regarding their plan to convert CarePoint to a non-profit entity. Still, CarePoint did nothing to secure its privileged documents in Mandler's possession.

permitted Barnabas to review and rely on them. Hr'g Tr. 20 (ECF 240). CarePoint now invokes its own reading of the Confidentiality Order to excuse this conduct, but that argument collapses under the Order's plain text. The Confidentiality Order required CarePoint, within fourteen days of notice, to provide a privilege log identifying the inadvertently disclosed information and the basis for withholding it. ECF 73, ¶ 13. CarePoint could not discard those terms simply because impending bankruptcy or other business concerns made compliance inconvenient. Nor did it seek any relief from those requirements.  As Judge Waldor aptly put it: "[i]f you can't engage in litigation, you shouldn't file a complaint." Hr'g Tr. 16 (ECF 240).

This is not an abstract point. Courts regularly enforce confidentiality orders with clawback provisions, and find that a refusal to comply results in waiver. In *LifeBio, Inc.*, the court held that a producing party's failure to follow the plain terms of its clawback agreement—including the requirement to produce a privilege log within the required ten days—resulted in waiver. 672 F. Supp. 3d at 519-22. The court emphasized that the producing party could not "unilaterally and retroactively alter the terms of its agreement … long after disclosure, and long after waiver." *Id.* at 521. The same reasoning applies here. CarePoint agreed to the Confidentiality Order, failed to follow its requirements, and thereby forfeited its privilege. And because the Order expressly applies to both parties and non-parties, ECF 73 ¶¶ 1, 2,

6, CarePoint's suggestion that Mandler's status as a third-party excused CarePoint's noncompliance is meritless.

CarePoint's failure to secure Mandler's documents when he left the company, its failure to act before or during Mandler's subpoena response, its express authorization for Barnabas to review the production, its four-plus-month delay in asserting privilege, and its disregard of the Confidentiality Order all confirm Judge Waldor's waiver finding that CarePoint did not take "reasonable steps" to protect its privilege and rectify its inadvertent disclosure under Rule 502(b).

### C.    CarePoint's Argument That Privilege-Log Deficiencies Do Not Support Waiver Is Baseless.

CarePoint does not deny its log was deficient and insufficient.  Its argument nonetheless that privilege-log deficiencies cannot justify waiver misses the mark. "The production of an inadequate privilege log … is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver to the privilege." *Schaeffer v. Tracey*, 2017 WL 465913, *3 (D.N.J. 2017) (finding privilege waived when a party fails to "describe the nature of the … communications … in a manner that … will enable other parties to assess the claim"); *see also Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208 (D.N.J. 1996) (waiving privilege where log failed to include, among other things, the "subject of the document, and the privilege or privileges asserted").

Judge Waldor did not need to reach CarePoint's deficient privilege log,[8] because CarePoint had already waived any privilege by failing to take reasonable steps to protect its privilege. But even if relevant, CarePoint's cases recognize that deficient logs may warrant waiver. *See D'Ambly v. Exoo*, 2024 WL 4880322, at *4 (D.N.J. 2024) (acknowledging that "a deficient privilege log can result in waiver"); *Margulis v. Hertz Corp.*, 2017 WL 772336, at *4 (D.N.J. 2017) (same). And unlike those cases, this is not a situation where the only shortcoming was a deficient log. CarePoint also failed to secure Mandler's files, affirmatively permitted Barnabas to review them, and ignored the procedures set out in the Confidentiality Order related to curing inadvertent disclosures. As Judge Waldor explained when denying CarePoint's Reconsideration Motion, CarePoint's prior waivers "have to take precedence" over "amending or changing the privilege log." Hr'g Tr. at 26 (ECF 306).

---

[8] Barnabas detailed the deficiencies – which CarePoint does not contest – at ECF 142 at 5-6. For example, the log does not "set[] forth the basis for its withholding" as required by the Protective Order. ECF 73 ¶ 13. Nor does it "describe the nature of the documents … in a manner that … will enable other parties to assess the claim," as required by the Federal Rules. Fed. R. Civ. P. 26(b)(5). Not a single one of CarePoint's 60,080 entries either identifies the privilege it is asserting (Attorney-Client, Work Product, or some other privilege) or provides ***any*** description or explanation of the basis for privilege. 25,695 of the 60,080 documents (over 40%) include no information in the To, From, or CC fields. Over 7,000 emails appear to be sent to or from third-parties outside CarePoint, which would break any possible privilege. CarePoint's log includes at least 3,876 documents that CarePoint itself ***has already produced***. CarePoint certainly cannot claim that the same document is privileged when Mandler produces it, but not when CarePoint does.

### D. CarePoint Fully Briefed and Argued Barnabas's Waiver Motion; the Trust Chose Not to Participate.

CarePoint's Appeal fails for two additional, independent reasons. First, its claim that it was denied an opportunity to be heard is belied by the record. CarePoint fully briefed and argued the Motion.  The Trust, for its part, had notice and opportunity to participate at the June 3rd hearing if it wished, but declined to do so. That failure aside, the Trust's participation at the hearing would not have mattered given CarePoint had no valid privilege to defend. Second, CarePoint waived any challenge to the Mandler Waiver Order by failing to timely appeal it. It cannot now cure its forfeiture by conflating the Mandler Waiver Order with Judge Waldor's separate rulings to proceed with resolving the underlying Mandler Privilege Dispute.

### 1. The CarePoint Trust's Claim that It Had "No Opportunity" Re-Argue Privilege Waiver is Incorrect and Irrelevant.

CarePoint's final argument is its familiar refrain that it was "never given the opportunity" to be heard on the Mandler Privilege Dispute. This argument, already rejected by Judge Waldor, is wrong on both the facts and the law.

The Trust was fully formed by May 23, 2025, more than a week before the June 3 hearing. ECF 227. It indisputably had notice of that hearing. Indeed, it submitted a certification to the Court acknowledging the upcoming hearing. ECF 232. What it did not do was file a motion to substitute, a motion to intervene, its own request to adjourn, or simply show up at the June 3 hearing and assert whatever

rights it believed it had. Instead, the Trust made a choice to sit on its hands while CarePoint's counsel—who had litigated the Mandler privilege dispute from the start —appeared and argued the motion. Courts hold that when a non-party fails to take the procedural steps required to participate, it cannot later complain that it was denied an opportunity to be heard. *See Froning's, Inc. v. Johnston Feed Serv., Inc.*, 568 F.2d 108, 110 (8th Cir. 1978) ("In the absence of such a motion [to substitute], it is not error to continue the action in the name of the original parties.").

The privilege dispute was also fully briefed months before CarePoint even came into being. ECF 142, 170, 176. It therefore was not an "error" for Judge Waldor to proceed with resolution of a long-pending motion in the absence of the Trust. Rule 25(c) specifically exists to prevent this kind of disruption: it permits a case to continue "seamlessly" with the original party until substitution is ordered. *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993) (Rule 25(c) rule "permits automatic continuation of a lawsuit [by or] against an original corporate party, although the outcome will bind the successor corporation[.]"); *United Access Techs., LLC v. EarthLink, Inc.*, 2012 WL 2175786, *4 (D. Del. 2012) ("The rule is designed to allow an action to continue unabated when an interest in a lawsuit changes hands.")

More fundamentally, there was no protectable "interest" for the Trust to defend in CarePoint's place. Corporate privilege is not a freely transferrable asset

that can be assigned by contract. Courts have repeatedly held that the right to assert or waive a corporation's attorney-client privilege follows corporate control, not the transfer of specific claims or litigation rights. *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc*., 240 F.R.D. 401, 406-07 (N.D. Ill. 2007); *Zenith Elecs. Corp. v. WH-TV Broad. Corp*., 2003 WL 21911066, at *1 (N.D. Ill. 2003). Consistent with that principle, Judge Waldor expressly recognized at the June 3rd hearing that any privilege would have belonged to CarePoint, not the Trust: "it's CarePoint's privilege, and, no, nothing was done to litigate this." Hr'g Tr. 10 (ECF 240).

At most, CarePoint's Bankruptcy Plan may have transferred privileged documents directly relating to CarePoint's assigned claims against Barnabas. But those are not the documents at issue here. The Mandler production does not contain communications about CarePoint's litigation strategy in this lawsuit against Barnabas. Rather, it consists of CarePoint's business records and internal communications, some of which may have touched on attorney-client issues, but that Barnabas has had for over a year and relied upon in this case—including at least one "smoking gun" Mandler email already on the public docket. ECF 95 at 4, 6; ECF 102; ECF 183. "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *United States v. Weinstein*, 2025 WL 240928, at *3 (D.N.J. 2025).  That reality underscores that the Trust had no genuine privilege interest to protect at the June 3rd hearing.

29

And even if privilege could be transferred by contract, there was nothing left to transfer. Judge Waldor found that CarePoint had already waived privilege over the Mandler documents in multiple ways: by failing to secure Mandler's files when he departed, by authorizing Barnabas to review and rely on the Mandler production, and by disregarding its obligations under the Confidentiality Order. ECF 233; Hr'g Tr. 20 (ECF 240). Because waiver occurs at the time of the privilege holder's acts, not at the time of judicial confirmation, the alleged privilege was extinguished before the Trust ever came into being. The Trust could not have inherited or defended a privilege that no longer existed.

In any event and as explained in greater detail below, CarePoint's "opportunity to be heard" argument is the only appealable issue CarePoint has given the narrow scope of its reconsideration motion, which sought only to vacate the Mandler Waiver Order so that the Trust could re-do the briefing and argument. Judge Waldor, however, expressly found there was no manifest injustice in proceeding with the June 3rd hearing. Hr'g Tr. 26 (ECF 306). That ruling, like Judge Waldor's decision to move forward with the June 3rd hearing in the first place, is entitled to substantial deference. *See In re Grand Jury*, 138 F.3d at 980. CarePoint has not carried its burden to show that Judge Waldor's decision was clearly erroneous.

## 2.    CarePoint Waived the Ability to Appeal the Mandler Waiver Order.

Even if CarePoint could complain that Judge Waldor's resolution of the Mandler Privilege Dispute despite the Trust's decision not to attend the June 3rd hearing was improper, it has no right to appeal the Mandler Waiver Order now. Under Rule 72(a) and Local Civil Rule 72.1(c)(1)(A), objections to a non-dispositive order must be filed within 14 days—here, by June 17, 2025. Barnabas agreed to extend that deadline to June 30. ECF 246. CarePoint did not seek reconsideration of or appeal the Mandler Waiver Order by that date.

Instead, on June 30, the Trust filed a reconsideration motion concerning the Court's decision to proceed with the Mandler Privilege Dispute despite the Trust's decision not to attend the June 3rd hearing, and requested do-over briefing and argument on Barnabas's original motion. ECF 248. Both its reconsideration briefing (ECF 248-1[9]; 265[10]) and its statements at oral argument[11] confirm the limited scope of its request. On August 26, Judge Waldor denied CarePoint's Reconsideration

---

[9] CarePoint's Opening Brief specifically "requests that the Order be vacated **and [that it] be provided the opportunity to be heard and to file a full opposition to Barnabas's waiver request**." ECF 248-1 at 2.

[10] CarePoint's Reply brief states: "[The] Court need not wrestle with [] substantive arguments [concerning the merits of CarePoint's waiver] at this juncture; **as all that needs to be decided now is whether [CarePoint] should be provided the opportunity to protect its privilege by granting reconsideration of the Order**." ECF 265 at 5.

[11] "Again, CarePoint is going to have to defend the position as to whether there was a waiver [by CarePoint] a year ago. We have no beef with that. **We're going to have to deal with that on the briefing, and we were fully prepared to do it.**" Hr'g Tr. at 23 (ECF 306).

Motion, finding that no manifest injustice resulted from resolving the Mandler Privilege Dispute upon briefing and argument of CarePoint's counsel at the June 3 hearing.   In any event, CarePoint's waiver could not be undone by any new arguments new counsel planned to advance. Hr'g Tr. at 26 (ECF 306).

CarePoint now conflates the Mandler Waiver Order with Judge Waldor's separate rulings to proceed with the hearing. On May 29, 2025, Judge Waldor denied CarePoint's request to adjourn, finding "for lack of good cause shown, the 6/3/25 Oral Argument will proceed as Ordered." ECF 230. And on June 3, she held Oral Argument as planned. Hr'g Tr. at 10 (ECF 240). Those were case-management rulings that CarePoint sought reconsideration of, and they are distinct from the Mandler Waiver Order itself. CarePoint never appealed the Mandler Waiver Order within the Rule 72(a) deadline, even after Barnabas agreed to extend it.  It cannot cure that failure by relying on a motion for reconsideration regarding a separate scheduling order to toll the operative deadline to appeal another order.

"[A] party who fails to object before the district court to a magistrate judge's ruling on a non-dispositive pretrial matter waives that objection on appeal." *J.M. v. Summit Bd. of Educ*., 2025 WL 215938, at *4 n.4 (D.N.J. 2025).[12] Likewise, "parties

---

[12] *See also In re Nat'l Collegiate Student Loan Trs*., 971 F.3d 433, 444 (3d Cir. 2020) ("Arguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived."); *Korrow v. Aaron's Inc.,* 2015 WL 7720491, at *7 (D.N.J. 2015) ("Defendant does not offer any explanation, let alone good cause, for failing to raise the argument before the Magistrate Judge. Accordingly, the Court finds that this argument was

who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal." *Ross v. Forster, Garbus & Garbus*, 2023 WL 2625060, at *5 (D.N.J. 2023); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan,* 183 F.R.D. 119, 130 (D.N.J. 1998) (Party who failed to offer an argument in opposition to finding of work product waiver before magistrate judge was precluded from advancing that argument on appeal before the district court.)

CarePoint never presented arguments to Judge Waldor challenging the merits of the Mandler Waiver Order, and otherwise failed to timely Appeal that Order. This requires dismissal of CarePoint's Appeal.

## IV.    CONCLUSION

For the foregoing reasons, Barnabas respectfully requests that the Court deny CarePoint's Appeal of the Mandler Privilege Order.

---

waived."); *Lithuanian Com. Corp.* 177 F.R.D. at 211 (Refusing to "consider any arguments which [plaintiff] did not present to [the] Magistrate Judge ... in the first instance").

Dated: October 6, 2025

Respectfully Submitted,

*/s/ William T. Walsh*
William T. Walsh
David A. Munkittrick*
PROSKAUER ROSE LLP
Eleven Times Square New
York, NY 10036
(212) 969-3000
wwalsh@proskauer.com
dmunkittrick@proskauer.com

Colin R. Kass*
Erica T. Jones*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
(202)416-6800
ckass@proskauer.com
ejones@proskauer.com

*Attorneys for Defendant*
*RWJ Barnabas Health, Inc.*

*Admitted Pro Hac Vice