*Via ECF*
Hon. Cari Fais, U.S.M.J.
U.S. District Court for the District of New Jersey

      Re:    *The CarePoint Litigation Trust v. Barnabas*, Case No. 22-cv-05421 (D.N.J.)

Dear Judge Fais:

The CarePoint Litigation Trust and RWJ Barnabas Health, Inc. submit this joint status report pursuant to the Court's September 11, 2025 Order (the "Order"). ECF 303.

## I.    FACTUAL BACKGROUND AND PROCEDURAL SUMMARY

### A.    *CarePoint's Statement.*

As an initial matter, while the CarePoint Litigation Trust (the "Trust") strongly disagrees with the argumentative statements by Barnabas[1] in its section of this joint report and believes they are inappropriate for this filing, the Trust has elected to limit its statements to the specific information requested by the Court in the Order. Pursuant to that Order, the Trust provides the following "brief factual and procedural summary of the case" [ECF 303]:

On September 6, 2022, CarePoint Health Systems, Inc., and three affiliated hospitals (collectively "CarePoint") sued Barnabas, a competitor hospital system, alleging that Barnabas has engaged in anticompetitive conduct in an attempt to monopolize the market for acute care in Hudson County, New Jersey, in violation of Section 2 of the Sherman Act. [ECF 27]. CarePoint also alleges that Barnabas conspired with third-parties, including, but not limited to, Horizon Blue Cross and Blue Shield ("Horizon"), to restrain trade in the market for acute care in Hudson County, New Jersey, in violation of Section 1 of the Sherman Act. *Id.*

More specifically, CarePoint alleges Barnabas engaged in a coordinated campaign to destabilize CarePoint's operations and drive it out of business, thereby securing near-total control over acute care in Hudson County, New Jersey, by (1) steering patients away from CarePoint to Barnabas' facilities (*id.* at 26-27, ¶¶ 65, 72); (2) poaching CarePoint physicians (*id.* at 8 n.2, ¶ 31); (3) colluding with Horizon to prevent CarePoint from being designated a Tier 1 Omnia provider (*id.* at ¶¶ 73-75); (4) colluding with entities that controlled the real estate under two CarePoint hospitals in Hudson County (*id.* at 29-34); (5) entering into an agreement to acquire CarePoint to obtain confidential information about its operations with no intent to actually go through with the transaction (*id.* at 10-12, ¶¶ 91-93, 97-98, 101, 104); and (6) seeking to sell CarePoint's hospitals without involving CarePoint's involvement in the negotiations (*id.* at 41-46, ¶¶ 29-30).

---

[1] Barnabas's statement below is suffused with bluster, adjectives, and name-calling. The Trust is not "HRH-controlled." It was established by order of the bankruptcy court and has a court-appointed and approved Trustee, whose specific purpose is to pursue the antitrust claims in this litigation for the benefit of creditors. And while Barnabas would like to change the subject and focus on allegations about CarePoint's management, it says not a word about the serious antitrust allegations in CarePoint's Complaint, which the district judge found to state valid, viable antitrust claims. [ECF 61]. The Trust remains confident that it will prove these entrusted claims at trial and refute the many baseless allegations Barnabas continues to sling.

CarePoint filed its operative complaint [ECF 27] on February 8, 2023, which Barnabas moved to dismiss. [ECF 28-1]. On November 17, 2023, the Court denied Barnabas' motion [ECF 61], and discovery commenced. On January 2, 2024, Barnabas filed its answer and asserted twelve affirmative defenses (ECF 71, at 73-83), including that CarePoint's own mismanagement and extraction of funds by CarePoint's founders contributed to its losses (*id.* at 79).

On November 3, 2024, CarePoint was forced to file for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. *See In re CarePoint,* No. 24-12534 (JKS) (D. Del. 2024). As part of a mediated settlement in the bankruptcy proceedings, which was approved by Judge Stickles on April 17, 2025 [ECF 247-16], the Trust was to be formed and the "Litigation Trust Assets," including CarePoint's claims in this litigation, transferred to the Trust to be pursued for the benefit of CarePoint's unsecured creditors. [ECF 261-2 at 6-8]. The Trust was established on the Effective Date of the confirmed bankruptcy plan, which was May 22, 2025. The Trust moved on June 11, 2025, to substitute as Plaintiff in this litigation. [ECF 238]. Barnabas opposed the Trust's substitution and simultaneously filed a cross-motion for summary judgment [ECF 247]. The Court granted the Trust's substitution motion on July 23, 2025, and Barnabas' cross-motion for summary judgment is pending before the district court [ECF 259].

### B.   Barnabas's Statement.

CarePoint was the brainchild of a financial analyst, Vivek Garipalli, who saw an opportunity to buy three hospitals, sell off the land beneath them, and drain the hospitals of virtually every available cent until there was little left, at which point they made a hasty exit.

The scheme worked as intended. Garipalli and the two other Founders (James Lawler and Jeffrey Mander) extracted nearly a billion dollars for their personal benefit in just ten years. The scheme ended when New Jersey passed its Out-of-Network legislation that prevented the Founders from overcharging insurers and employers for emergency services, and the State Commission of Investigation – a government agency responsible for rooting out organized crime – investigated CarePoint and put an end to the Founders' unlawful extraction of bogus management fees. After the Founders exited, leaving the system for dead, ***CarePoint*** filed for bankruptcy, laying the blame at the Founders' feet. As it told the bankruptcy court, "the Prior Owners proceeded to extract tens of millions of dollars through numerous ***questionable transactions***…. [This] ***diversion of corporate assets to personal use*** [and their] ***systematic siphoning*** of [CarePoint's] assets … weakened [the hospitals] to the point they became virtually ***unviable as going concerns***." ECF 295-5 at 35-36.

But before CarePoint reorganized under Chapter 11, CarePoint looked for a scapegoat to conceal the Founders' fraudulent conduct. They set their sights upon Barnabas, ***HRH***, and several other third parties, suing them all for conspiring to interfere first with the Founders' cash extraction plans (via competition) and later their exit plans.[2] Within weeks of filing, CarePoint admitted that many of its allegations were – in CarePoint's CEO's own words – "***baseless and without merit***."[3]

---

[2] The Trust now omits HRH from its description of the alleged conspiracy, despite its prominence in the Complaint. While not a surprising omission, given that HRH controls the Trust, it speaks volumes as to the Trust's candor.

[3] https://newjerseyglobe.com/governor/hospital-boss-apologizes-to-murphy-staff-for-baseless-statements/.

CarePoint, nonetheless, continued to press the case, which proceeded in fits and starts purportedly due to CarePoint's financial difficulties. Ultimately, CarePoint decided to wipe out its debt through a pre-packaged bankruptcy. Under the plan, the CarePoint debtors settled their claims against one of the alleged conspirators – **HRH** – for over $100 million. In exchange, **HRH** received a release of claims, acquired control of the CarePoint hospitals, and became the majority owner of the CarePoint debtors' claims in this case through its controlling interest in the Trust.

When the HRH-Controlled Trust sought to be substituted as the named plaintiff, Barnabas moved for summary judgment because a wrongdoer is legally barred from using an "assignment" of claims to sue an alleged conspirator. *See* ECF 247. That motion remains pending before Judge Padin. The transfer of claims to the HRH-Controlled Trust also had other ancillary effects on this case. Because the pleadings (other than the caption) have not been conformed to reflect the changes in claim ownership, Judge Waldor ordered the parties to file any motions for leave to amend the pleadings (including any Amended Complaint, Answer, Affirmative Defenses, or Counterclaims) by November 14. ECF 297. Finally, to accommodate the Trust's claimed need for additional time to "get up to speed," Judge Waldor delayed the start of deposition discovery (which has now commenced) and extended the fact discovery deadline to March 13, 2026.

## II.     STATUS OF DISCOVERY

### A.     *The Trust's Statement.*

The Trust provides the following information on "the status of discovery" pursuant to the Order. [ECF 303]. To date, the parties have exchanged written discovery, have produced millions of documents, and deposition discovery is underway. Both the Trust and Barnabas have served and responded to requests for production and interrogatories. The Trust has produced more than 2.9 million documents, while Barnabas has produced over 700,000 documents. At least twelve third parties have collectively produced more than 250,000 documents in response to third-party subpoenas. The Trust has recently raised a number of document discovery deficiencies with Barnabas's responses (or lack thereof), which it intends to raise with the Court if unresolved through meet and confer efforts. While CarePoint vehemently disagrees with Barnabas's characterization of the below discovery disputes, CarePoint will address these issues, if needed, when they are ripe for court resolution.

Depositions are also actively progressing. The parties have completed two third-party depositions and are coordinating schedules for three additional depositions to be conducted as soon as practicable. The parties anticipate requesting and coordinating additional third-party and party depositions in the coming months.

### B.     *Barnabas's Position.*

Discovery in this case has proceeded in fits and starts. For its part, Barnabas complied with its document discovery obligations over a year-and-a-half ago. Until yesterday, there were no pending or outstanding discovery disputes concerning discovery directed to Barnabas.[4]

---

[4] After receiving Barnabas's draft of this joint report on Monday, CarePoint tried to delete this sentence, and then manufactured new discovery issues raised for the first time at 4:30 pm yesterday.

Discovery as to CarePoint and the Founders, however, has not proceeded as smoothly. CarePoint's refusal to comply with its discovery obligations resulted in several orders of Compulsion and a wholesale waiver of privilege. (ECF 155, 211, 221, 230, 231). The Founders' stonewalling also resulting in orders of compulsion. (ECF 102, 190, 221). Additionally, the following outstanding discovery issues may require Court resolution:

- ***Interrogatory Dispute.*** On August 25, 2025, Barnabas moved for an order enforcing Judge Waldor's Order compelling responses to Barnabas's Interrogatories. *See* ECF 295 (motion); ECF 167 (Compulsion Order). Pursuant to this Court's directive (ECF 311), the parties are preparing a joint letter to renew the motion.

- ***The SCI Appeal***. The SCI has appealed Judge Waldor's Order granting Barnabas's motion to compel SCI's investigative file, and denying its motion for a protective order. <span style="color:red">**Barnabas believes that resolution of this appeal is the single biggest obstacle to timely completing discovery because this information is critical for Founder and other depositions.**</span>

- ***CarePoint's Privilege Dispute***. CarePoint is withholding tens of thousands documents based on privilege claims that have been waived. CarePoint has promised to produce a log on November 1st. Barnabas will move on this issue shortly thereafter.

- ***Modugno Privilege Dispute***. CarePoint is withholding over 50,500 documents produced by Louis Modugno based on waived and deficiently asserted privilege claims. Barnabas will raise this issue when it raises the CarePoint privilege wavier issue.

- ***Founder and Third-Party Discovery.*** Barnabas is working through significant deficiencies with Founder and third party productions, which it will raise as appropriate.

### III.   PENDING MOTIONS

There are currently four motions pending before Judge Padin: **(**1) Barnabas's Motion for Summary Judgment (ECF 247); (2) the Trust's motion for leave to file a sur-reply addressing alleged case authority first raised in Barnabas's summary judgment reply and claimed therein to be "dispositive" (ECF 282); (3) SCI's appeal of Judge Waldor's compulsion order (ECF 281); and (4) the Trust's appeal of the Court's Order deeming privilege waived over the Jeffrey Mandler production (ECF 302).

### IV.   STATUS OF SETTLEMENT EFFORTS

The parties engaged in mediation in March 2024. The Trust is open to exploring settlement and believes a settlement conference following the completion of fact discovery would be fruitful. Barnabas does not believe mediation would be fruitful at this time.

Respectfully submitted,

| | |
|---|---|
| */s/ Robert M. Hirsh* | */s/ William T. Walsh, Jr.* |
| *Counsel for the CarePoint Litigation Trust* | *Counsel for RWJ Barnabas Health Inc.* |