## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE CAREPOINT LITIGATION TRUST, | Hon. Evelyn Padin, U.S.D.J |
| Plaintiff, | Hon. Cathy L. Waldor, U.S.M.J. |
| v. | Civil Action No. 2:22-cv-05421-EP-CLW |
| RWJ BARNABAS HEALTH, INC., | |
| Defendant. | |

## <u>THE CAREPOINT LITIGATION TRUST'S REPLY IN SUPPORT OF APPEAL OF MAGISTRATE JUDGE'S JUNE 3, 2025 PRIVILEGE WAIVER ORDER</u>

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ................................................................................................I

INTRODUCTION ..........................................................................................................1

ARGUMENT ..................................................................................................................3

    I.   **CarePoint Promptly Took Reasonable Steps to Rectify Mandler's Error. ...........3**

    II.  **CarePoint Was Not Required to Seek Judicial Relief to Rectify the Error...........6**

    III.**Rule 502(b)(2) Does Not Require Employers to Segregate Employees' Company Documents When an Employee Leaves the Company...........................................8**

    IV.**Barnabas's Argument that a Deficient Privilege Log Constitutes Waiver Has No Legal Support...................................................................................................11**

    V.  **The Litigation Trust Was, by June 3rd, the Owner of the Privilege. ..................12**

    VI.**The Filing of a Motion for Reconsideration Tolled the Litigation Trust's Time to Appeal the Waiver Order. ...............................................................................13**

    VII.**The Litigation Trust Has Not Waived any Arguments on Appeal. ..................14**

CONCLUSION ............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*,
  240 F.R.D. 401 (N.D. Ill. 2007) ...................................................................13

*American Alternative Insurance Corp. v. Ducas*,
  2:18-cv-02346, 2019 WL 13194014 (D. Nev. Oct. 28, 2019) ............................11

*Apex Mun. Fund v. N-Group Securities*,
  841 F.Supp. 1423 (S.D. Tex. 1993) ...............................................................9

*U.S. ex rel. Bagley v. TRW, Inc.*
  204 F.R.D. 170 (C.D. Cal. 2001)................................................................2, 8

*Boodram v. Coomes*,
  1:12–cv–00057, 2014 WL 12823642 (W.D. Ky. Nov. 19, 2014).........................9

*Bowles v. National Ass'n of Home Builders*,
  224 F.R.D. 246 (D.D.C. 2004) .....................................................................9

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005)......................................................................11

*Connecticut v. Sandoz, Inc.*,
  3:20-cv-00802-MPS, ECF 402 (D. Conn. Sept. 11, 2024)................................7

*In re Crescent Resources, LLC*,
  457 B.R. 506 (Bankr. W.D. Tex. 2011) ........................................................12

*Doe v. Schuylkill County Courthouse*,
  No. 3:21-cv-477, 2023 WL 2763960 (M.D. Pa. Apr. 3, 2023).........................4, 7

*First Technology Capital, Inc. v. JPMorgan Chase Bank, N.A.*,
  No. 5:12–cv–289, 2013 WL 7800409 (E.D. Ky. Dec. 10, 2013)....................9, 10

*Galena Street Fund v. Wells Fargo*,
  No. 12–cv–00587, 2014 WL 943115 (D. Colo. Mar. 10, 2014)............................5

*Georges v. Galdhi*,
  No. 23–cv–5168, 2025 WL 240873 (D.N.J. Jan. 16, 2025) (Padin, J.)..................6

*Graham v. City of New York*,
  No. 08–CV–3518, 2010 WL 3034618 (E.D.N.Y. Aug. 3, 2010).........................13

*In re Grand Jury (Impounded)*,
    138 F.3d 978 (3d Cir. 1998)..................................................................................7, 8

*Knights Armament Co. v. Optical Systems Tech*.,
    No. 6:07–cv–1323, 2009 WL 331608 (M.D. Fla. Feb. 10, 2009)........................................11

*LifeBio, Inc. v. Eva Garland Consulting, LLC*,
    672 F. Supp. 3d 512 (S.D. Ohio 2023) ............................................................6, 8

*Peterson v. Bernardi*,
    262 F.R.D. 424 (D.N.J. 2009)..................................................................................8

*In re Quorum Health Corporation, Civ.*
    No. 24-227, 2024 WL 2271892 (D. Del. May 20, 2024) ....................................................12

*Russo v. Thor Industries, Inc.*,
    No. 20-10062, 2020 WL 6585801 (D.N.J. Nov. 10, 2020)................................................15

*Warner v. Twp. of S. Harrison*,
    885 F. Supp. 2d 725 (D.N.J. 2012)......................................................................15

*Wier v. United Airlines, Inc.*,
    No. 19–cv–7000, 2021 WL 1517975 (N.D. Ill. Apr. 16, 2021)..........................................5

*Xu v. FibroGen, Inc.*,
    No. 21-cv-02623, 2023 WL 3475722 (N.D. Cal. May 15, 2023).....................................4, 5

*Zenith Elecs. Corp. v. WH-TV Broad Corp.*,
    No. 01 C 4366, 2003 WL 21911066 (N.D. Ill. 2003)........................................................12

The Litigation Trust[1] files this Reply in support of its Appeal of Magistrate Judge's June 3rd Order ("Appeal") [ECF 302] and would respectfully show as follows:

## INTRODUCTION

The Litigation Trust's position has been consistent since it appeared: this case, which involves serious allegations of antitrust violations that significantly impact health care for New Jersey residents, should be litigated on the merits. To the extent Barnabas takes issue with any specific assertion of the Litigation Trust's privilege, the Litigation Trust is available to meet and confer with Barnabas and defend its privilege assertions to this Court, if necessary.

But Barnabas does not challenge any specific assertion of privilege. Instead, Barnabas initiated what has turned into a protracted fight about how CarePoint purportedly waived privilege over 150,000 documents that were produced, not by the plaintiff,[2] but by a third party who was previously affiliated with CarePoint.

As the Litigation Trust has argued, the June 3rd Order appeared to rest on the legally dubious point that waiver inevitably followed from the fact that Barnabas had already reviewed the contents of privileged documents in the Mandler Production. But the Federal Rules of Evidence, the common law of privilege, and

---

[1] Defined terms in the Litigation Trust's opening brief on appeal are incorporated herein.

[2] The Litigation Trust has not "drawn separations between the . . . Litigation Trust and the CarePoint Debtors." [ECF 314 at 1 n.2]. The Litigation Trust became effective on May 22, 2025. "CarePoint" no longer exists as such and is not a party to this litigation. [ECF 238].

the Protective Order all contemplate situations where litigants learn what is contained in privileged documents, but nonetheless must return them. [ECF 302 at 3, 12–17]. Barnabas's Opposition to the Litigation Trust's Appeal [ECF 314] ("Response" or "Opp.") sidesteps this fundamental problem with the reasoning underlying the Magistrate Judge's ruling. Nor does Barnabas address the prompt and reasonable steps that CarePoint took to rectify Mandler's inadvertent disclosure.

Instead, Barnabas makes up a series of rules regarding CarePoint's alleged obligations under Rule 502(b) to justify the June 3rd Order: for instance, that CarePoint, after learning of Mandler's inadvertent disclosure, was required to seek judicial relief; or that CarePoint was required to have Mandler return or segregate company documents when he left the company in 2022. But Rule 502(b) only required CarePoint to act reasonably under the circumstances, which it did.[3]

Barnabas's other arguments fail too. Its response to the fact that the Litigation Trust had no opportunity to defend its right to assert privilege is that attorney-client privilege is not a freely transferrable asset. That is clearly incorrect as applied here. And Barnabas' argument that the Litigation Trust's appeal is time-barred relies on a mischaracterization of the Litigation Trust's Motion for Reconsideration.

---

[3] Barnabas's assertion that the documents involve core issues is irrelevant. Opp. at 18. "The potential value of the inadvertently-produced privileged documents to the receiving party is beside the point." *U.S. ex rel. Bagley v. TRW, Inc*. 204 F.R.D. 170, 183 (C.D. Cal. 2001). The Litigation Trust rejects Barnabas's conclusory assertions about what specific documents un the Mandler Production "show" as an attempt to use privileged documents for an improper purpose. Opp. at 2.

As such, the Litigation Trust respectfully requests that this Court reverse the June 3rd Order.

## **ARGUMENT**

### I.    **CarePoint Promptly Took Reasonable Steps to Rectify Mandler's Error.**

Judge Waldor's June 3rd Order granted Barnabas's request to deem CarePoint's privilege waived because Plaintiffs, in the Magistrate Judge's view, "failed to . . . promptly rectify the error after being made aware of" Mandler's inadvertent disclosure. [ECF 233]. Barnabas spends much of its Response attempting to give substance to the Order by falsely asserting that CarePoint, after learning of Mandler's error, waited four months to assert privilege. Opp. at 7, 16, 17, 21]. Barnabas claims that CarePoint "laid idly by" and "laid in wait," only to "backtrack . . . four months later." *Id*. But that argument ignores the prompt actions CarePoint took during that time period.

From the beginning, Barnabas was determined to manufacture an unjustified privilege "waiver" argument to extract tactical advantage against CarePoint based on a flawed third-party production. In its letter identifying five potentially privileged documents, Barnabas claimed that the Protective Order required CarePoint to review all 150,000+ documents produced by Mandler and identify privileged documents on a document-by-document basis within two weeks, or else all privileged were waived. [ECF 142–1]. Just four business days later, CarePoint sent Barnabas a letter

correcting Barnabas's misreading of the Protective Order.  [ECF 142–2].  Roughly a week after that, to attempt to avoid any waiver issue altogether, CarePoint made a clawback request as to the entirety of the Mandler Production, such that it could then determine what documents, if any, were privileged and then re-produce remainder. [ECF 142–4].  Barnabas objected to this plan, however.  [ECF 142–5].  So, CarePoint proposed another cure.  On July 8, CarePoint told Barnabas that it would be serving a privilege log.  [ECF 302–4 at 2].  Barnabas acknowledged the new plan on at least three occasions during the same four month period that it now says that CarePoint "laid idly by."  [ECF 302 at 8–9].  This sequence is tellingly absent from Barnabas's Response.  Opp. at 7, 14–25.  But these steps were both prompt and reasonable, which is all that is required after an inadvertent disclosure.  Fed. R. Evid. 502(b)(3).

Rule 502(b)(3) means what it says.  "[A] party seeking to claw back records must show that they acted reasonably and in this regard: 'As soon as reasonably possible simply means within a reasonable time under all of the circumstances.'" *Doe v. Schuylkill County Courthouse*, No. 3:21-cv-477, 2023 WL 2763960, at *3 (M.D. Pa. Apr. 3, 2023), quoting *Rice v. Electrolux Home Products, Inc.*, No. 4:15-cv-00371, 2017 WL 83320, at *1 (M.D. Pa. Jan. 10, 2017).  The "waiver analysis is not mechanical; rather, it considers the entire circumstances surrounding the inadvertent disclosure." *Xu v. FibroGen, Inc.*, No. 21-cv-02623, 2023 WL 3475722, at *3 (N.D. Cal. May 15, 2023).

For example, in *In re Blue Cross Blue Shield Antitrust Litig*, the Court rejected the argument that the privilege holder waived privilege by waiting too long to make a clawback request after learning of the inadvertent disclosure because of, *inter alia,* the sheer volume of documents produced in the case. No. 2:13-cv-20000, 2017 WL 9807442, at *6 (N.D. Ala. Aug. 31, 2017). "The Court would be remiss if it ignored the overwhelming volume of document production in this case. . . . Therefore, the delay in making the clawback request does not operate as a waiver[.]" *Id*; *see Galena Street Fund v. Wells Fargo*, No. 12–cv–00587, 2014 WL 943115, at *10 (D. Colo. Mar. 10, 2014) (holding Rule 502(b)(3) requirement met because "[i]n view of the scope of the production—208,000 documents consisting of over 2.2 million pages—Wells Fargo acted with reasonable promptness" despite taking a month to make a clawback request). Courts "[do] not consider the time period in a vacuum" when construing Rule 502(b)(3). *Wier v. United Airlines, Inc.*, No. 19–cv–7000, 2021 WL 1517975, at *15 (N.D. Ill. Apr. 16, 2021).

When viewed under the standard that Rule 502(b)(3) explicitly sets out, the steps that CarePoint took were prompt and reasonable. CarePoint acted immediately upon learning of the error: first by correcting Barnabas's misreading of the Protective Order and then by making two separate clawback demands. Barnabas knew that a privilege log was forthcoming and asked about its progress. This Court

too "would be remiss if it ignored the overwhelming volume of document production in this case:"

Considering all of the circumstances surrounding the inadvertent disclosure also means recognizing that, at the precise moment that Barnabas was demanding a 150,000 document privilege review of a third party production, CarePoint was on the verge of bankruptcy. Barnabas certainly was aware of this, which likely explains its demand that CarePoint complete a review and privilege designations in two weeks or face waiver of privilege. Even then, CarePoint communicated its plans to produce a privilege log, and then did just that. In this context, even if one could criticize some of the steps taken, that does not preclude reversal of the Magistrate Judge's order. As this Court has recognized, a magistrate judge's order can be "clearly erroneous" even when "there may be some evidence to support it[.]" *Georges v. Galdhi*, No. 23–cv–5168, 2025 WL 240873, at *2 (D.N.J. Jan. 16, 2025) (Padin, J.). Rule 502(b)(3) sets a flexible standard, which CarePoint met.[4]

## II.    CarePoint Was Not Required to Seek Judicial Relief to Rectify the Error.

Barnabas also errs in suggesting there is some rule requiring a privilege holder to seek judicial relief once it knows that the opposing party is using the privileged

---

[4] Barnabas falsely accuses the Litigation Trust of using the Protective Order to excuse the steps CarePoint took to rectify the error and cites *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512 (S.D. Ohio 2023) for the non-controversial point that courts regularly enforce protective orders. Opp. at 24–25. But the Protective Order is not applicable. [ECF 302 at 6–7]. And Plaintiff has advanced this position since April 2024 [ECF 142–2], despite Barnabas's insinuation that the Litigation Trust is just "now" raising this argument. Opp. at 24.

material.  As in its briefing before the Magistrate Judge, Barnabas's Response leans heavily on *In re Grand Jury (Impounded)*, and states that "[t]here is no daylight between *Grand Jury* and this case."  Opp. at 21.  At the outset, Rule 502(b)(3)'s reasonableness standard precludes such hard and fast rules.  *Schuylkill*, 2023 WL 2763960, at *3 ("On this score, the parties have each urged us to consider what they describe as analogous cases.  However, given the very fact-specific nature of th[e] reasonableness inquiry [under Rule 502(b)(3)] . . . these competing cases have only limited probative value in assessing this particular clawback dispute.").[5]

Even on its own terms,  these facts are unlike those of *Grand Jury* because, in that case, the party to whom the documents were inadvertently disclosed repeatedly denied that they were subject to work-product protection.  138 F.3d  978, 980 (3d Cir. 1998).  Judicial vindication was necessary in part to determine whether work-product protection applied.  *Id*. at 982.  Here, Barnabas's acknowledgment that the Mandler Production may contain privileged documents is precisely what fueled this discovery dispute.  [ECF 142–1 at 1].  Judicial vindication was unnecessary.  The issue, instead, was negotiating an outcome that accommodated CarePoint's interest in protecting its privilege and Barnabas's interest in reviewing the Mandler

---

[5] Thus, Barnabas's reliance on *Connecticut v. Sandoz, Inc.*, 3:20-cv-00802-MPS, ECF 402 (D. Conn. Sept. 11, 2024) is also misguided.  Opp. at 21–22.  There, waiver was granted because the privilege holder allowed a deposition to continue after learning that the documents were potentially privileged.  *Id*.  Attempting to stop or pause a deposition is fundamentally different than addressing an inadvertent disclosure in a 150,000 document production.

Production.  Far from "lying in wait," CarePoint got to work, managing these competing interests by allowing Barnabas to review the documents even as it reserved the right to assert privilege, which it then did when it served its privilege log on August 14.  *Grand Jury* is inapposite.[6]

## III.    Rule 502(b)(2) Does Not Require Employers to Segregate Employees' Company Documents When an Employee Leaves the Company.

Barnabas's response also makes clear that the Magistrate Judge clearly erred in holding that CarePoint "knowingly failed to take reasonable steps to prevent the disclosure" by Mandler.  [ECF 233].  Once again, Barnabas's defense of this portion of the June 3rd Order relies on a nonexistent rule.  According to Barnabas, this failure occurred several years before Mandler even made the production at issue, when he left CarePoint.  Opp. at 23.  At that time, Barnabas argues, CarePoint did not take reasonable steps to prevent disclosure because it never required him to return or segregate company documents.  *Id*.  Of course, Barnabas provides no evidence for

---

[6] As is *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009), which Barnabas cites for the general point that failure to take precautions against disclosure has consequences.  Opp. at 15.  *Bernardi* is distinguishable because, in *Bernardi*, the privilege holder's efforts to rectify the error did not cut for or against waiver.  *Id*. at 429.  Here, by contrast, CarePoint's efforts to rectify the error cut strongly in its favor.  Similarly, Barnabas cites *Bagley* and *LifeBio* for the assertion that fairness to the party to whom documents have been inadvertently produced might militate toward waiver if the privilege holder fails to take prompt action.  Opp. at 17.  But *Bagley* specifies that this **exception** to the general rule that "[a] party to whom privileged documents are produced inadvertently, by contrast, has no inherent 'fairness' interest in keeping them" applies only when "the producing party waited so long to address the problem after having been informed of it that the receiving party reasonably changed its position . . ."  *Bagley* at 182.  And in *LifeBio*, the privilege holder waited nearly a year to seek a clawback.  *LifeBio*, 672 F. Supp. 3d at 352.  The Litigation Trust, by contrast, immediately acted upon learning of the error.

what CarePoint did or did not do when Mandler left in 2022. *See id.* More fundamentally, Barnabas overstates what Rule 502(b)(2). requires.

An inadvertent disclosure does not operate as a waiver when "the holder of the privilege or protection took reasonable steps to prevent disclosure." FED. R. EVID. 502(b)(2). As with Rule 502(b)(3), "[w]hether a party has taken 'reasonable steps to prevent disclosure' is determined on a 'case-specific and flexible assessment of the holder's conduct.'" *Boodram v. Coomes*, 1:12–cv–00057, 2014 WL 12823642, at *4 (W.D. Ky. Nov. 19, 2014) (quoting *First Technology Capital, Inc. v. JPMorgan Chase Bank, N.A.*, No. 5:12–cv–289, 2013 WL 7800409, at *3 (E.D. Ky. Dec. 10, 2013)). This is the case with Rule 502(b)(2), as it is the case for "any standard measured by what is 'reasonable.'" *First Technology*, 2013 WL 7800409, at *3. Doing what is reasonable is a far cry from requiring employees to return or segregate company documents.[7] The Rule's plain text contemplates a case-by-case analysis.

---

[7] As the Litigation Trust argued in its opening brief, the out-of-circuit authority that Barnabas cites does not create such a rule either because each of these cases is intensely fact-bound. *Apex Mun. Fund v. N-Group Securities*, 841 F.Supp. 1423 (S.D. Tex. 1993), involved documents that were quite literally "abandoned" with a former employee in the sense that the company declared bankruptcy, dissolved, and told a former employee to close the office down without telling him what to do with company documents. *Id.* at 1432. *See* Opp. at 23 & n.7. Moreover, Barnabas misconstrues a key distinction that the Litigation Trust draws between the facts in *Bowles v. National Ass'n of Home Builders*, 224 F.R.D. 246, 251–52 (D.D.C. 2004) and those of this case. In *Bowles*, after the company learned that the former employee had retained privileged documents, and a few initial letters were exchanged, the company did not bring up the issue for another calendar year. *Id.* at 250 ("[T]he issue of the retained documents laid dormant for more than a year."). CarePoint did not allow the issue to lay "dormant," but acted immediately upon learning of the privileged documents.

9

Here, the issue is what CarePoint did to prevent disclosure of privileged documents in response to Barnabas's subpoena, not what steps were taken years ago at the time of Mandler's departure. And in that regard, the evidence is clear and undisputed that, upon learning that Mandler's production included privileged documents, CarePoint immediately advised Barnabas it was asserting the privilege and sought to come up with a plan to identify and retrieve the privileged documents. Instructive in this regard is *Shareholder Representative Services LLC v. National Union Fire Insurance Co. of Pittsburgh*, where privileged documents were inadvertently produced to the opposing side, and the privilege holder "failed to provide any information regarding the steps it took to prevent disclosure[.]" No. 16-2886, 2019 WL 4410039, at *4 (D.N.J. Sept. 16, 2019). But the Court still held that the privilege holder had not waived privilege because it promptly took reasonable steps to rectify the problem under Rule 502(b)(3). *Id*. at *4. Here too, CarePoint promptly took reasonable steps to rectify the problem after it learned of the issue.

Barnabas's argument that CarePoint "could have" issued a subpoena or contacted Mandler's lawyer to review the Mandler Production before it was made is similarly irrelevant. Opp. at 22. Rule 502(b)(2) requires only what is reasonable. As Barnabas has recognized, CarePoint did not have an opportunity to review the documents for privilege prior to their production. [ECF 142–1 at 1].

10

## IV.    Barnabas's Argument that a Deficient Privilege Log Constitutes Waiver Has No Legal Support.

Barnabas's argument for waiver based on the supposed inadequacies of CarePoint's privilege log likewise fails to support the extreme sanction of waiver that Barnabas demands.

As the Litigation Trust has argued, deficiencies in a privilege log do not result in a privilege waiver per se.  [ECF 302 at 22–23].[8]  The Ninth Circuit, for example, has instructed district courts to conduct a "holistic reasonableness analysis." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,* 408 F.3d 1142, 1147 (9th Cir. 2005).  Tellingly, Barnabas no longer seems to dispute this point.  It cites no cases to the contrary, and now seems to claim that unrelated alleged problems with the steps taken under 502(b)(2) and (b)(3) means that serving a deficient privilege log constitutes waiver.  Opp. at 26.  But this revised theory is likewise unsupported by case law.  The question of waiver under Rule 502 is distinct from the question of waiver based on the sufficiency of the privilege log, and in this case, there is no waiver on either ground.

---

[8] In addition to the cases cited in its opening brief, *see Knights Armament Co. v. Optical Systems Tech.*, No. 6:07–cv–1323, 2009 WL 331608, at *7 (M.D. Fla. Feb. 10, 2009) (no waiver because "finding that a party has forfeited or waived privileges and protections is an extreme sanction"); *American Alternative Insurance Corp. v. Ducas*, 2:18-cv-02346, 2019 WL 13194014, at *2 (D. Nev. Oct. 28, 2019) (even though "plaintiff's log is plainly deficient . . . the Court finds that waiver is not warranted. Instead, the better approach is the production of a better log.").

## V.    The Litigation Trust Was, by June 3rd, the Owner of the Privilege.

Barnabas dodges the Litigation Trust's argument that it was never allowed to defend its right to assert privilege by arguing that the Bankruptcy Court had no authority to order the transfer of CarePoint's privileges to vest in the Litigation Trustee.  Opp. at 28–29.  As the theory goes, the transfer is void as against the "fundamental principle" that "privilege is not a freely transferable asset." *Id*.

Barnabas's purported "principle" is at odds with numerous federal court decisions that have enforced Litigation Trust Agreements that vest privilege in the Litigation Trust.  *In re Quorum Health Corporation, Civ.* No. 24-227, 2024 WL 2271892, at (D. Del. May 20, 2024) (finding that attorney-client privilege previously owned by debtor could vest in Chapter 11 litigation trust under plain terms of litigation trust agreement and Defendants' failure to cite authority to support proposition that a debtor cannot assign its causes of action and privileges to a litigation trust.[9]  The two cases that Barnabas  cites merely stand for the proposition that agreements purportedly transferring attorney-client privilege may be unenforceable when control of the corporation is not also transferred. *Zenith Elecs. Corp. v. WH-TV Broad Corp.*, No. 01 C 4366, 2003 WL 21911066, at *1 (N.D. Ill.

---

[9] *See also In re Crescent Resources, LLC*, 457 B.R. 506, 511, 525 (Bankr. W.D. Tex. 2011) (enforcing litigation trust agreement that "transferred from the Reorganized Debtor to the Litigation Trust all rights and interests to any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications associated with the Litigation Trust claims" and finding that "the privilege . . . passed to the Litigation Trust by operation of the plan of reorganization).

2003); *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 407 (N.D. Ill. 2007).  Neither case involves a Litigation Trust, an entity whose raison d'être is the prosecution of litigation claims.

## VI.    The Filing of a Motion for Reconsideration Tolled the Litigation Trust's Time to Appeal the Waiver Order.

Barnabas's argument that the Appeal is time-barred is based on a profound mischaracterization of the Litigation Trust's Motion for Reconsideration.  [ECF 248].

When a litigant files a motion to reconsider a magistrate judge's non-dispositive order, that tolls the normal 14-day period for appealing the magistrate judge's non-dispositive order to the district court.  *See Graham v. City of New York*, No. 08–CV–3518, 2010 WL 3034618, at *1 n.1 (E.D.N.Y. Aug. 3, 2010) ("While neither the Federal nor the Local rules expressly address this issue, courts in the Southern District . . . have found that 'during the pendency of a motion for reconsideration before a magistrate judge, the time for filing an objection to the District Court is tolled.'").  Absent the Motion for Reconsideration, the Litigation Trust had until June 30 to appeal the June 3rd Order, under the parties' agreement to extend the deadline for Federal Rule 72(a) appeals of the June 3rd Order.  [ECF 246]. But because the deadline for filing an objection or appeal to the district court was tolled during the pendency of the Motion for Reconsideration, the 14-day period under the rules began to run on August 27, when the Magistrate Judge denied

reconsideration.  [ECF 296].  It is undisputed that the Litigation Trust filed this Appeal fourteen days later.

Barnabas attempts to get around this by recasting the Motion for Reconsideration as a procedural objection to the June 3rd Order, such that the period for appealing the merits of the June 3rd Order is not tolled.  Opp. at 5, 31–32.  Not so.  The Motion for Reconsideration argued that it was manifestly unjust to bind the Litigation Trust to an order deeming privilege waived when the undisputed privilege holder was not provided an opportunity to defend itself.  The Litigation Trust's absence at the June 3rd hearing was a threshold problem that infected the June 3rd Order.  Moreover,  the relief requested was reconsideration of the whole order.  [ECF 248 at 15].  The Litigation Trust specifically cited the rule governing reconsideration and the standard applicable to motions for reconsideration in its briefing.  *Id.* at 9.

## VII.  The Litigation Trust Has Not Waived any Arguments on Appeal.

Barnabas's final argument is that the Litigation Trust has waived its right to "challenge the merits" of the June 3rd Order on appeal because it has not raise these arguments before the Magistrate Judge.  Barnabas misconstrues the docket and the standard of review in a Motion for Reconsideration.

As Barnabas notes, "parties who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal."  Opp. at 32–33, quoting *Ross v.*

*Forster, Garbus & Garbus*, 2023 WL 2625060, at *5 (D.N.J. 2023). CarePoint, the Litigation Trust's predecessor in interest, did just that, arguing the "merits" of the application for waiver at the June 3rd hearing. And the Magistrate Judge ruled on these arguments in her order. That preserved the arguments the Litigation Trust made in its Appeal of Magistrate Judge's June 3rd Order.

Indeed, it would have been improper for the Litigation Trust to reargue what Barnabas describes as the "merits" of the June 3rd Order in its Motion for Reconsideration. "Mere disagreement with a court's decision is not an appropriate basis upon which to bring a motion for reconsideration as such disagreement should 'be raised through the appellate process.'" *Russo v. Thor Industries, Inc.*, No. 20-10062, 2020 WL 6585801, at *1 (D.N.J. Nov. 10, 2020). Rather, reconsideration is proper when the movant can show "the need to correct a clear error of law or fact" presented but not considered by the court. *Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 747 (D.N.J. 2012). The Rule 502(b) arguments were already considered at the June 3rd Hearing.

## CONCLUSION

For all these reasons, the Litigation Trust respectfully requests that the Court grant its appeal and reverse the June 3rd Order. The Litigation Trust requests all other relief to which it is justly entitled.

Dated:  October 20, 2025          Respectfully submitted,

By: /s/*Robert M. Hirsh*
Robert M. Hirsh
New Jersey Bar No. 018901998
robert.hirsh@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3060
Facsimile: (212) 318-3400

Michael A. Swartzendruber*
Texas Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8067
Facsimile: (214) 855-8200

Darryl W. Anderson*
Texas Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
Kate Ergenbright*
Texas Bar No. 24097660
kate.ergenbright@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for The CarePoint Litigation Trust*

*Admitted pro hac vice

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 20, 2025, a true and correct copy of the foregoing  was served electronically via the Court's ECF system on all counsel of record.

*/s/<u>Robert M. Hirsh</u>*
Robert M. Hirsh