# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE CAREPOINT LITIGATION TRUST, | Hon. Evelyn Padin, U.S.D.J |
| Plaintiff, | Hon. Cari Fais, U.S.M.J. |
| v. | Civil Action No. 2:22-cv-05421-EP-CF |
| RWJ BARNABAS HEALTH, INC., | |
| Defendant. | |

## THE TRUST'S OPPOSITION TO
## BARNABAS'S MOTION TO CONSOLIDATE RELATED CASES

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

FACTUAL BACKGROUND ................................................................................5

    **I.**  **The Trust's Lawsuit, Filed Years Ago, Focuses on Barnabas's Unlawful Anticompetitive Conduct** ........................................5

    **II.** **The Second Lawsuit Primarily Involves CarePoint's Bankruptcy Proceeding.** ...................................................................7

ARGUMENT AND AUTHORITIES ....................................................................9

    **I.**  **Standard of Review** ........................................................................9

    **II.** **The Instant Lawsuit and Second Lawsuit are Fundamentally Different.** .......................................................................10

        A.   Only One Party is Common to Both Actions................................10

        B.   The Questions of Fact and Law in The Two Actions are Fundamentally Different. ................................................11

        C.   The Only Arguably Common Questions are Ones Barnabas Improperly Seeks to Inject Into the Instant Lawsuit......................13

    **III.**.. **The Interests of Judicial Economy are Outweighed by the Potential for New Delays, Expense, Confusion, and Prejudice** .........................16

        A.   Barnabas Seeks to Use Consolidation to Run Roughshod Over The Burden it Must Clear for Amending Pleadings.............................16

        B.   Barnabas Apparently Seeks Strategic Litigation Advantage, Not Judicial Economy ........................................................18

        C.   The Two Actions Reflect Radically Different Procedural Postures ........................................................................21

        D.   Granting Barnabas's Motion for Consolidation Would Cause Delays, Prejudice, Expense, and Confusion ................................22

CONCLUSION ...................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Assn. of New Jersey Rifle & Pistol Clubs v. Platkin*,
Nos. 3:18-cv-10507, 1:22-cv-4360, 3:22-cv-4397, 2023 WL 1786167 (D.N.J. Feb. 6, 2023) ...........................................................................................................................10

*Barnabas v. NHMHMC, Inc. d/b/a Hudson Regional Hospital, et al.*,
No. 25-cv-17594 (Nov. 14, 2025 D.N.J) ................................................................................1

*Bernardi v. City of Scranton*,
101 F.R.D. 411 (M.D. Pa. 1983) ...........................................................................................24

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) ...............................................................................................................19

*In re Consolidated Parlodel Litig.*,
182 F.R.D. 441 (D.N.J. 1998) ...............................................................................................10

*Diehl v. Money Source*,
No. 17 –cv –0125, No. 18–cv–001, 2018 WL 2994381 (S.D. Ala. June 13, 2018) .....................................................................................................................................15

*Dietz v. Bouldin*,
579 U.S. 40 (2016) .................................................................................................................24

*Evraz Inc., N.A. v. Travelers Indem. Co.*,
No. 3:11–cv–00233, 2013 WL 6241984 (D. Or. Dec. 3, 2013) ...........................................19

*Ford Motor Credit Co. v. Chiorazzo*,
529 F. Supp. 2d 535 (D.N.J. 2008) ..................................................................................21, 22

*Jaye v. Oak Knoll Village Condo. Ass'n, Inc.*,
782 F. App'x 197, 200 (3d Cir. 2019) (per curiam) .............................................................11

*Jinwala v. Solaris Health Systems, Inc.*,
No. 11–cv–4005, 2012 WL 1135738 (D.N.J. Apr. 3, 2012) ...................................................4

*Kensu v. Rapelje*,
No. 12–11877, 2014 WL 1415180 (E.D. Mich. Apr. 14, 2014) ............................................12

*Kjaer v. Home Gambling Network, Inc.*,
Nos. S-06-00103, S-05-0610, 2009 WL 10710271 (D. Nev. Apr. 22, 2009) ........................13

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*,
2012 WL 2476371 (D.N.J. June 27, 2012) ...........................................................................22

*Lebanon v. Equifax Information Services, LLC*,
    No. 18–cv–1978, 2018 WL 4924170 (E.D. Pa. Oct. 10, 2018) ...........................................15

*Lehman Bros. Holdings v. Gateway Funding*,
    785 F.3d 96 (3d Cir. 2015)...........................................................................................10, 21

*Liberty Lincoln Mercury v. Ford Mktg. Corp.*,
    149 F.R.D. 65 (D.N.J. 1993)..................................................................................................10

*McGillvary v. Scutari*,
    No. 23-cv-22605, 2024 WL 3878749 (D.N.J. Aug. 20, 2024) ..................................3, 9, 10, 18

*Mullin v. Balicki*,
    875 F.3d 140 (3d Cir. 2017)...................................................................................................18

*New Jersey v. U.S. Department of Transportation*,
    2:23-cv-03885; 2:23-cv-21728, 2024 WL 493298 (D.N.J. Feb. 8, 2024) ...........................21

*Schoendorf v. Toyota of Orlando*,
    No. 6:08–cv–767, 2009 WL 536550 (M.D. Fla. Mar. 3, 2009)................................................13

*Sprint Communications Co., L.P. v. APCC Services, Inc.*,
    554 U.S. 269 (Breyer, J.) ......................................................................................................20

**Statutes**

FED. R. CIV. P. 42(a)............................................................................................... *passim*

FED. R. CIV. P. 15(a).......................................................................................................4

**Other Authorities**

R. Nagareda, et al., THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE
    LITIGATION (3d ed. 2020)........................................................................................20

The CarePoint Litigation Trust (the "Trust") files this Opposition to RWJ Barnabas Health, Inc.'s ("Barnabas") Motion to Consolidate Related Cases [ECF 324–1] ("Motion to Consolidate") and would respectfully show as follows:

## **INTRODUCTION**

On November 14, 2025, Barnabas filed a Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim [ECF 321] ("Motion for Leave to Amend") which, if granted, would add six new entities (the "HRH Entities") and three new causes of action to this proceeding, which has already been pending for more than three years.  That same day Barnabas filed an identical complaint against the same HRH Entities in a separate lawsuit under a new docket number: *Barnabas v. NHMHMC, Inc. d/b/a Hudson Regional Hospital, et al.,* No. 25-cv-17594 (Nov. 14, 2025 D.N.J).

The third-party complaint against the HRH Entities Barnabas seeks to add to this proceeding (the "Proposed Third-Party Complaint") and its separate lawsuit against the HRH Entities (the "Second Lawsuit") are identical.  They arise from an alleged conspiracy between the HRH Entities, Avery Eisenreich, CarePoint, and, later, the Trust, which Barnabas claims hijacked a Chapter 11 bankruptcy proceeding with the intent of monopolizing the market for general acute care services in the City of Bayonne, New Jersey.

Barnabas seeks to consolidate its Second Lawsuit into this proceeding under Federal Rule 42(a), which is an aggregating device that promotes judicial economy by permitting consolidation of cases that involve "a common question of fact or law." FED. R. CIV. P. 42(a). As pled in the parties' live pleadings,[1] the two actions Barnabas seeks to consolidate do not meet this standard. The conspiracy at issue in this proceeding involves Barnabas's efforts to cripple CarePoint by, among other things, patient-steering, physician-poaching and, ultimately, making it impossible to sell the CarePoint hospitals. The alleged conspiracy in the Second Lawsuit involves (1) different parties; (2) different alleged monopolists; (3) different geographic markets; (4) different kinds of conspiracies; (5) different unnamed coconspirators; (6) different anticompetitive effects; and (7) different alleged actions taken at different times than the conspiracy Barnabas and the Trust (and its predecessor CarePoint) have been litigating for more than three years.

Barnabas's focus on its defense to the Trust's claims and similarities between the Second Lawsuit and its Proposed Third-Party Complaint put the cart before the horse. Barnabas's Motion for Leave to Amend, which the Trust opposes, has not been granted and its "Proposed Third-Party Complaint" is not a live pleading in this

---

[1] The live pleadings in this action are the Trust's Third Amended Complaint [ECF 27], filed on February 8, 2023, and Barnabas's Answer and Affirmative Defenses to the Third Amended Complaint [ECF 71], filed on January 2, 2024. The only live pleadings in the Second Lawsuit are Barnabas's Complaint, filed on November 14, 2025.

case.  If and when the Court denies the Motion for Leave to Amend, any similarities between the Proposed Third-Party Complaint and the Second Lawsuit would be entirely irrelevant for purposes of Rule 42(a) consolidation.  If, on the other hand, the Court granted leave to amend, the Second Lawsuit and proposed consolidation would serve no purpose.  Either way, consolidation should be denied.

The procedural morass Barnabas has created with its duplicative filings and any resulting inefficiencies are entirely of Barnabas's own creation and, thus, do not support Barnabas's request for consolidation.  When considering a motion to consolidate: "[t]he ultimate determinant is whether an order to consolidate would 'advance the administration of justice and avoid unnecessary costs or delay.'" *McGillvary v. Scutari*, No. 23-cv-22605, 2024 WL 3878749 at *4 (D.N.J. Aug. 20, 2024) (quoting *Assn. of New Jersey Rifle & Pistol Clubs v. Platkin*, Nos. 3:18-cv-10507, 1:22-cv-4360, 3:22-cv-4397, 2023 WL 1786167 (D.N.J. Feb. 6, 2023)). Barnabas's Motion to Consolidate must be denied because it would allow Barnabas to do the opposite: manipulate the Federal Rules of Civil Procedure to get the result it wants.

Barnabas claims it filed a separate lawsuit against the HRH Entities not because it actually intends to pursue that case but to provide a way for the HRH Entities to "respond" to Barnabas's Motion for Leave to Amend.  But the HRH Entities are not parties to this action.  There are no live claims to which the HRH

3

Entities need to respond.  That, after all, is why Barnabas has filed its Motion for Leave to Amend, which the Trust opposes.  Barnabas cannot use a separate lawsuit and a purported Rule 42(a) consolidation to bunny-hop over the burden it must clear to add its Proposed Third-Party Complaint to this action.[2]

Allowing the consolidation of this proceeding and the Second Lawsuit would also lead to significant additional costs and delay, as it would add six new parties and three new causes of action to this proceeding arising from a different alleged conspiracy than the conspiracy Barnabas and the Trust (and its predecessor CarePoint) have been litigating for more than three years.  It should go without saying that adding these new claims and parties will increase discovery costs and necessitate a new case schedule as the HRH Entities are strangers to this proceeding and will undoubtedly need time to get up to speed, review the millions of pages of documents produced in this case, and conduct their own document discovery—all before they can reasonably be asked to participate in deposition discovery, which Barnabas and the Trust have already begun.

---

[2] "An applicant seeking leave to amend a pleading has the burden of showing that justice requires the amendment." *Jinwala v. Solaris Health Systems, Inc*., No. 11–cv–4005, 2012 WL 1135738, at *2 (D.N.J. Apr. 3, 2012) (Waldor, J.) (quoting *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 497 (E.D. Pa. 2001)).  This Court may grant a motion for leave to amend pleadings only "when justice so requires." FED. R. CIV. P. 15(a)(2).  For the reasons outlined in its Opposition to Barnabas's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim, the Trust believes that Barnabas's Motion for Leave to Amend should be denied.

For the reasons outlined herein, Barnabas's Motion to Consolidate should be denied.

## FACTUAL BACKGROUND

On November 14, 2025, Barnabas made three different filings in the U.S. District Court for the District of New Jersey:

1. a Motion for Leave to Amend in the above-captioned action which, among other things, sought to bring the Proposed Third Party Complaint against the HRH Entities for claims of unjust enrichment and federal antitrust violations;

2. the Second Lawsuit under a new docket number (No. 25–cv–17594) against the same six HRH Entities asserting the same claims in the Proposed Third-Party Complaint; and

3. a Motion to Consolidate asking this Court to consolidate the Second Lawsuit under this docket number (No. 22–cv–05421).

## I.    The Trust's Lawsuit, Filed Years Ago, Focuses on Barnabas's Unlawful Anticompetitive Conduct

The above-captioned action (the "Instant Lawsuit") and the Second Lawsuit differ in several key aspects: each involves (1) different parties; (2) different alleged monopolists; (3) different geographic markets; (4) different kinds of conspiracies; (5) different unnamed coconspirators; (6) different anticompetitive effects; and (7) different alleged actions taken at different times.

As an initial matter, it is important to clarify the live pleadings in this case, which are the Trust's Third Amended Complaint [ECF 27] and Barnabas's Answer and Defenses to the Third Amended Complaint [ECF 71]. While Barnabas filed a Motion for Leave to Amend in the Instant Lawsuit seeking to file its Proposed Third-

Party Complaint against the HRH Entities, the Trust opposes that requested relief, which is pending before this Court. Stated differently, Barnabas's Proposed Third-Party Complaint, which is identical to the Second Lawsuit, is not a live pleading in this case.

Indeed, the Instant Lawsuit has only two parties: the Trust (Plaintiff) and Barnabas (Defendant). [ECF 27 ¶¶ 35–42]. As outlined in the Trust's Third Amended Complaint, which has been on file for over thirty-four months, the Trust alleges that Barnabas engaged in a coordinated effort to take over the market for general acute care services in Hudson County by driving the three CarePoint hospitals into bankruptcy. *See, e.g. id*. ¶¶ 2, 3, 5, 7, 12, 21–32 Among other things, the Trust alleges that Barnabas: established a Satellite Emergency Department in Bayonne to steer patients away from a CarePoint hospital, *id*. ¶¶ 59–71; induced physicians that regularly referred patients to CarePoint specialists and facilities to instead refer patients to Barnabas specialists and facilities, *id*. ¶¶ 72–76; used its influence to receive higher rates from Horizon Blue Cross-Blue Shield, despite CarePoint being in Horizon's network and CarePoint's record of "superior outcomes, regional partnerships, and national accolades," *id*. ¶¶ 59–71; and, ultimately, made it impossible for CarePoint to sell the three distressed CarePoint hospitals. *Id*. ¶¶ 77–148. The key allegations described in the Third Amended Complaint occurred between 2015 and 2022.

6

## II.    The Second Lawsuit Primarily Involves CarePoint's Bankruptcy Proceeding.

In the Second Lawsuit, Barnabas is the plaintiff.  Second Lawsuit [ECF 1 ¶ 20].  The HRH Entities are the Defendants.  *Id*. ¶¶ 21 –27.  And the Trust is not a party.  *Id*. ¶¶ 20 –28.  The Second Lawsuit arises from what Barnabas characterizes as the HRH Entities' alleged attempt to obtain a dominant position in the market for emergency care in the City of Bayonne, New Jersey and settle their own antitrust liability with CarePoint for free.  *See, e.g., id*. ¶¶ 1–19, 87–184.  The HRH Entities allegedly accomplished this feat by taking over operations of Bayonne Medical Center and allegedly commandeering CarePoint's antitrust claims against Barnabas. *Id*.

The primary allegations at issue in the Second Lawsuit allegedly occurred during and after CarePoint's bankruptcy proceeding, which was initiated on November 3, 2024, several years after CarePoint filed the Instant Lawsuit over Barnabas's antitrust violations.  In the Second Lawsuit, Barnabas alleges one count of unjust enrichment, *id*. ¶¶ 138–58 , a cause of action not pled in the Instant Lawsuit. And Barnabas alleges that the HRH Entities violated Sections 1 and 2 of the Sherman Act by engaging in sham litigation: the theory being that, because the HRH Entities are unnamed coconspirators with respect to one of the claims in the Trust's suit against Barnabas, and the HRH Entities allegedly commandeered the Trust's suit against Barnabas, the HRH Entities are pursuing claims that they "know to be false."

*Id.* ¶¶ 159–84. Like unjust enrichment, sham litigation is not a live claim in the Instant Lawsuit.

A chart illustrating the differences between the live claims in the Instant Lawsuit and Second Lawsuit is below for ease of reference:

| Issue | Instant Lawsuit | Second Lawsuit |
|---|---|---|
| **Different Parties** | Trust; Barnabas [ECF 27 ¶¶ 35–42] | Barnabas; HRH Entities [ECF 1 20–28] |
| **Different Alleged Coconspirators** | MPT, Horizon [ECF 27 ¶¶ 11, 15–16, 60–68, 78–79, 87, 92] | The Trust, CarePoint, Vivek Garipalli, Jeffrey Mandler, James Lawler, Lou Modugno, Dr. Achintya Moulik [ECF 1 ¶¶ 29–34] |
| **Different Alleged Monopolist** | Barnabas [ECF 27 ¶ 42] | HRH Entities [ECF 1 ¶¶ 21–28] |
| **Different Alleged Conduct** | Among other things, patient steering, physician-poaching, spreading rumors about CarePoint hospitals' imminent closure, entering contracts with insurance providers that deliberately targeted CarePoint and, ultimately, making it impossible for CarePoint to sell its distressed hospital assets. [ECF 27 ¶¶ 25, 31, 59–76] | Commandeering the Trust to prosecute a lawsuit with allegations that the HRH entities "know to be false" [ECF 1 ¶¶ 109–137, 165, 177] |
| **Different Causes of Action** | Sherman Act violations [ECF 27 152–190] | Unjust Enrichment in Addition to Sherman Act violations [ECF 1 ¶¶ 159–184] |

| Different Relevant Time Periods | Key facts described in the live complaint occurred between 2015-2022 [ECF 27 ¶¶ 27, 64, 70] | Key alleged facts occurred between 2020 and 2025 [ECF 1 109–137] |
|---|---|---|
| Different Relevant Geographic Area | Hudson County, New Jersey [ECF 27 ¶¶ 157-163] | City of Bayonne [ECF 1 ¶ 133] |

Immediately after filing its Motion for Leave to Amend in the Instant Lawsuit and its Second Lawsuit, Barnabas moved to consolidate the two actions. Barnabas calls its decision to file a Second Lawsuit an "elegant solution" to what it views as a "problem:" that the Trust will be briefing its opposition to Barnabas's Motion for Leave to Amend at roughly the same time as the HRH Entities are briefing their motion to dismiss the Second Lawsuit and that the HRH Entities will be unable to participate in the briefing on Barnabas's Motion for Leave to Amend. [ECF 342 at 3]. But Barnabas's so-called "solution" is in search of a problem. And far from "elegant," it has created a procedural morass. As a result, Barnabas's Motion to Consolidate should be denied.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

It is Barnabas, not the Trust, that shoulders the burden of proof when moving to consolidate. *McGillvary*, 2024 WL 3878749 at *4. A court may consolidate two separate actions only when "they involve a common question of law or fact[.]" FED. R. CIV. P. 42(a)(2). Indeed, "a common question of law or fact shared by all of the

cases is a prerequisite for consolidation." *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998).

But "the mere existence of common issues . . . does not require consolidation." *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993). The decision to consolidate is within the "sound discretion of the district court" even after it is found that the two actions involve common issues. *In re Consolidated Parlodel Litig.*, 182 F.R.D at 444; *see also Lehman Bros. Holdings v. Gateway Funding*, 785 F.3d 96, 102 (3d Cir. 2015). "In exercising its discretion, a court should weigh 'the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice.'" *Id.* (quoting *Easton & Co. v. Mutual Ben. Life. Ins. Co.*, Nos. 91–cv–4012, 92–cv–209, 1992 WL 448794, *4 (D.N.J. Nov. 4, 1992). At bottom, what's at stake is whether consolidation would "advance the administration of justice and avoid unnecessary costs or delay." *Assn. of New Jersey Rifle & Pistol Clubs v. Platkin*, Nos. 3:18-cv-10507, 1:22-cv-4360, 3:22-cv-4397, 2023 WL 1786167 (D.N.J. Feb. 6, 2023); *McGillvary*, 2024 WL

## II. The Instant Lawsuit and Second Lawsuit are Fundamentally Different.

### A. Only One Party is Common to Both Actions

Besides Barnabas, the two lawsuits share no named parties; the Trust, the only named plaintiff in the Instant Lawsuit, is not a named party in the Second Lawsuit. The six defendants in the Second Lawsuit, NJMHMC, LLC, NJBMCH, Inc., 29 E

29 Street Holdings, LLC, Bayonne Medical Center Opco, LLC. Hudson Regional Management, LLC, and Hudson Regional Hospitals, LLC are not parties in the Instant Lawsuit.  Courts have denied motions to consolidate when the actions share only one named party.  For instance, in *Jaye v. Oak Knoll Village Condo. Ass'n, Inc.*, the Third Circuit affirmed Judge Kugler's (D.N.J.) summary denial of plaintiff's motion to consolidate four cases because, while they each had the same plaintiff, "when [plaintiff] filed the consolidation motion . . . in large part, those cases involved different parties."  782 F. App'x 197, 200 (3d Cir. 2019) (per curiam).  As in *Oak Knoll Village*, Barnabas is the only party common to the two actions.

Furthermore, the parties in the Instant Lawsuit and Second Lawsuit are not similarly situated.  The Trust was created through the CarePoint bankruptcy proceedings to prosecute litigation claims for the benefit of CarePoint's creditors, while the HRH Entities are allegedly "part of a comprehensive corporate structure that controls and operates . . . hospitals located in Hudson County[.]"  Thus, consolidation should be denied.

## B.   The Questions of Fact and Law in The Two Actions are Fundamentally Different.

As demonstrated in the above chart, *see supra* at 8–9, in addition to the parties, the questions of fact and law that will need to be answered in the Instant Lawsuit and the Second Lawsuit are fundamentally different.  The lawsuits allege different monopolists and; the question of whether Barnabas has market/monopoly power is,

11

of course, different from whether the HRH Entities have market/monopoly power. *Compare* ECF 27 ¶ 42 *with* Second Lawsuit, ECF 1 ¶¶ 21–28. The alleged anticompetitive conduct is also different. The Trust has alleged that Barnabas engaged in a coordinated effort to take over the market for general acute care services in Hudson County by, among other things, patient-steering, physician-poaching, spreading rumors about CarePoint hospitals' imminent closure, entering contracts with insurance providers that deliberately targeted CarePoint and, ultimately, making it impossible for CarePoint to sell its distressed hospital assets. ECF 27 ¶¶ 25, 31, 59–76. By contrast, the Second Lawsuit involves HRH's alleged hijacking of the CarePoint bankruptcy proceeding to dominate the acute care market in the City of Bayonne by engaging in sham litigation. Second Lawsuit, ECF 1 ¶¶ 109–137, 165, 177; *see Kensu v. Rapelje*, No. 12–11877, 2014 WL 1415180, at *2 (E.D. Mich. Apr. 14, 2014) ("a common cause of action is not a common question of law. For example, two cases involving a common question of law could arise where the parties dispute the interpretation of statutory language. Consolidation may be appropriate in that instance because once the court decides how the statute should be interpreted that decision would resolve the issue for both cases."). In any event, the Second Lawsuit pleads unjust enrichment, a cause of action that does not appear in the Instant Lawsuit.

Additionally, the key facts described in the Instant Lawsuit's live complaint occurred between 2015 and 2022. Meanwhile, the gravamen of Barnabas's complaint in the Second Lawsuit is Barnabas's assertions regarding HRH's attempt to leverage the CarePoint bankruptcy proceedings—proceedings that occurred two years after the filing date of the Trust's operative complaint. The Instant Lawsuit and the Second Lawsuit include different unnamed coconspirators. And different geographic markets are pled.

Even if Barnabas can identify some commonalities between the live pleadings in the Instant Lawsuit and the Second Lawsuit, federal courts generally deny motions for consolidation when there are only a handful of common issues. *Schoendorf v. Toyota of Orlando*, No. 6:08–cv–767, 2009 WL 536550, at *1 (M.D. Fla. Mar. 3, 2009) (denying consolidation because, *inter alia*, movant "specifies only one common issue of law or fact"); *Kjaer v. Home Gambling Network, Inc.*, Nos. S-06-00103, S-05-0610, 2009 WL 10710271, at *5 (D. Nev. Apr. 22, 2009) (denying motion to consolidate "[b]ecause there are few common questions of law or fact"). Thus, Barnabas's Motion to Consolidate should be denied.

### C. The Only Arguably Common Questions are Ones Barnabas Improperly Seeks to Inject Into the Instant Lawsuit.

Barnabas's assertion that the two cases "involve the same alleged conspiracy between HRH, Eisenreich, CarePoint, and the Trust" [ECF 324–1 at 2] relies on questions of fact and law Barnabas improperly seeks to inject into this action, as

13

outlined further in the Trust's Opposition to Barnabas's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim.

Consolidation is proper only when "actions before the court involve a common question of law or fact[.]" FED. R. CIV. P. 42(a). Questions of law or fact implicated by Barnabas's Proposed Third-Party Complaint or the defenses it seeks to amend through its Motion for Leave to Amend are irrelevant for purposes of determining whether the Instant Lawsuit and the Second Lawsuit should be consolidated because Barnabas's Proposed Third-Party Complaint does not constitute "questions of fact or law" "before the Court" within the meaning of Rule 42(a) because these questions *are not actually before this Court.* They are proposed amended pleadings, not live claims and allegations. Barnabas needs leave of court to bring them "before the court." Such leave has not been granted yet. Nor should it be, for the reasons outlined in the Trust's Opposition to Barnabas's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim.

At best, the Second Lawsuit shares common questions of law and fact with defenses that Barnabas raised in its Cross-Motion for Summary Judgment. [ECF 247]. Indeed, the Second Lawsuit is a procedural remix of the legal argument it made on summary judgment, which is fully briefed and pending before this Court. But Barnabas points to no law, decisional or otherwise, that grounds a Rule 42(a) consolidation on commonalities between allegations made in one action and an

14

errant legal defense made in a motion for summary judgment in another action. *See Diehl v. Money Source*, No. 17 –cv –0125, No. 18–cv–001, 2018 WL 2994381, at *7 (S.D. Ala. June 13, 2018) (denying renewed motion to consolidate based on commonalities between pleadings in one case and summary judgment motion in the other). Barnabas's Cross-Motion for Summary Judgment is just that: a defense. It contains no "allegations" asserted by Barnabas that would create common questions of law or fact between the two actions. Moreover, if the Court determines as a matter of law that the summary judgment relies on legally untenable theories, as the Trust outlined in its opposition, that ruling would foreclose any supposed commonalities on this ground as well. In any event, litigants are not permitted to make allegations in motions for summary judgment. And if they do, those allegations must be discounted. *See Lebanon v. Equifax Information Services, LLC*, No. 18–cv–1978, 2018 WL 4924170, at *2 n.1 (E.D. Pa. Oct. 10, 2018) ("[Plaintiff] raises new allegations in his motion for summary judgment filed on July 15, 2018. . . . The Court does not consider these allegations here because they are not included in [Plaintiff's] complaint."). Barnabas's assertion that its complaint "*flows* directly from the claims . . . the Trust ha[s] decided to maintain against it" [ECF 324–1 at 2] (emphasis in original) confuses "claims"—and the questions of fact and law that must be addressed to prove such claims—with a putative defense asserted in a pending summary judgment motion.

15

At bottom, the Instant Case and the Second Lawsuit involve fundamentally different questions of law and fact, and Barnabas's Motion to Consolidate should be denied.

## III.    The Interests of Judicial Economy are Outweighed by the Potential for New Delays, Expense, Confusion, and Prejudice

Even if two actions share common questions of fact or law, the Court must balance the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice before granting a motion for consolidation. Barnabas's Motion to Consolidate should be denied because: (a) Barnabas seeks to use consolidation to side-step the burden it must clear for amending pleadings; (b) what Barnabas seeks is not judicial economy, but tactical litigation advantage; (c) the Instant Lawsuit and Second Lawsuit reflect wildly different procedural postures; and (d) consolidation would cause significant delay, expense, and confusion.

### A.    Barnabas Seeks to Use Consolidation to Run Roughshod Over The Burden it Must Clear for Amending Pleadings

Far from promoting judicial economy, Barnabas appears to be seeking consolidation so that it can avoid the *six* factors that courts in this Circuit use to determine when to grant leave to amend pleadings.  Barnabas states that consolidation will "allow HRH a full and fair opportunity to respond to Barnabas's claims."  [ECF 324–1 at 1].  But, as of now, there are no "claims" in the Instant

Lawsuit that require or even permit a response from the HRH Entities because leave has not been obtained to actually file the Proposed Third Party Complaint. Thus, what consolidation would actually do is allow Barnabas to obtain its proposed amendment, without having to satisfy the test for allowing an amendment under the Federal Rules—a test it cannot meet, as explained in the Trust's opposition to the Motion for Leave to Amend.

The HRH Entities can respond to Barnabas's claims in the Second Lawsuit. It is Barnabas that chose to file the Second Lawsuit at the same time it sought to file the Proposed Third-Party Complaint without waiting for a ruling on its Motion for Leave to Amend. Indeed, the HRH Entities have already entered appearances and made several filings in the Second Lawsuit. A Stipulation and Order Extending the Time to Answer Or Respond to the Complaint was entered on December 12, 2025.

Barnabas's explanation—that it filed a separate complaint and then moved to consolidate because this Court's adjudication of Barnabas's Motion for Leave to Amend will effectively determine whether Barnabas has stated a claim against the HRH Entities—downplays the many deficiencies in the proposed amendment. As this Court has already recognized in this proceeding, futility is just one of six factors that this Court looks to when determining whether to grant a motion for leave to amend. [ECF 24 at 2] (explaining that a motion for leave to amend pleadings must be denied when the non-movant can show that there has been "undue delay, bad

faith, or dilatory motive on movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party by virtue of allowance of amendment, or futility of amendment."). And it is not futility, but "prejudice to the non-moving party [that] is the touchstone for the denial of an amendment." [ECF 24 at 3]. *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (same). Each of these considerations supports denying the Motion for Leave to Amend, separate and apart from the proposed amendment's futility.

In any event, when considering a motion to consolidate: "[t]he ultimate determinant is whether an order to consolidate would 'advance the administration of justice and avoid unnecessary costs or delay.'" *McGillvary*, 2024 WL 3878749 at *4 (quoting *Rifle & Pistol Clubs*, 2023 WL 1786167. On its face, then, Barnabas's stated intention for moving to consolidate—to give the HRH Entities a "full and fair opportunity" to respond to Barnabas's claims—is misplaced. Here, there can be no doubt that consolidation would impose significant unnecessary costs or delay in the Instant Proceeding.

### B. Barnabas Apparently Seeks Strategic Litigation Advantage, Not Judicial Economy

Far from seeking judicial economy, Barnabas's multiple filings seem designed to either: (a) shirk the burden it must clear for this Court to grant its Motion for Leave to Amend or (b) bring the HRH Entities into this litigation through a

backdoor, such that, if Barnabas's Motion for Leave to Amend is denied, Barnabas can still litigate against the HRH Entities in the Instant Lawsuit.

After all, if there are concerns over judicial economy and duplicative proceedings, as Barnabas asserts, [ECF 324–1 at 1,3], these problems are the result of Barnabas's decision to file the Second Lawsuit, when it could have waited to file to see if its Motion for Leave to Amend would be granted. It is Barnabas's own strategic decisions that lead to the HRH Entities presumably filing a motion to dismiss the Second Lawsuit at the same time that the Trust is filing an opposition to Barnabas's Motion for Leave to Amend. "A plaintiff is the master of its complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 388–89 (1987). Barnabas has intentionally created the perceived inefficiency it seeks to remedy. Resultant concerns over "judicial economy" should be discounted.

Further, any Barnabas concern over "inconsistent rulings" seems unlikely, given the fact that both actions have been assigned to the same Article III and Magistrate Judges. *See Dep't. of Trans.*, 2024 WL 493298, at *2 ("The movant's concern regarding 'divergent outcomes' with respect to similar claims . . . alleviated in light of the assignment of both actions to the undersigned."); *Evraz Inc., N.A. v. Travelers Indem. Co.*, No. 3:11–cv–00233, 2013 WL 6241984, at *3 (D. Or. Dec. 3, 2013) ("Because [movant's] concerns of judicial economy and the threat of

inconsistent results at this time are remedied by assignment of both cases to the same judge, the court will not consolidate the [two actions] at this time.").

Federal Rule 42(a) is an instrument to streamline complex litigation through aggregation. *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 290 (Breyer, J.) (Rule 42 is "one of several methods for bringing about aggregation of claims[.]"); R. Nagareda, et al., THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION (3d ed. 2020) ("It is quite common to think about the different forms of aggregate litigation as though they line up along a spectrum. The typical spectrum puts the individual suit with an attorney hired by a single client at one end, and the class action at the other.  Consolidation and multidistrict litigation are somewhere in between . . ."). It is not a means for cleaning up inefficiencies that litigants, like Barnabas, manufacture so as to trigger the need for consolidation.  It is also not a means for jumping over the requirements that must be met for a motion for leave to amend under Rule 15.  And it is not a means to ensure that the HRH Entities have the right to be heard in an action to which they are not yet parties, however "elegant" those means allegedly are.  [ECF 342 at 3].[3]  Because judicial

---

[3] Barnabas's decision to leverage the Trust's reasonable request for an extension on the briefing schedule on Barnabas's Motion for Leave to Amend and Motion to Consolidate into a near-two week campaign to pressure the Trust to simply consent to Barnabas's Motion for Leave to Amend is further evidence of Barnabas's gamesmanship.  [ECF 328 at 2].

economy is not served by granting consolidation, Barnabas's Motion to Consolidate should be denied.

### C.    The Two Actions Reflect Radically Different Procedural Postures

The Third Circuit has instructed lower courts to deny motions to consolidate when the cases, such as these, are in wildly different procedural postures. In *Lehman Bros.*, for instance, the Third Circuit affirmed the lower court's denial of a motion to consolidate "in light of the vastly different stages of the cases[.]" *Lehman Bros.*, 785 F.3d at 102.  In one of the two cases, the complaint had just been filed.  *Id*.  In the other, discovery had already closed. *Id.*

Indeed, this case is near-identical to *New Jersey v. U.S. Department of Transportation*, 2:23-cv-03885; 2:23-cv-21728, 2024 WL 493298 (D.N.J. Feb. 8, 2024), where the motion to consolidate was denied because "the actions . . . reflect[ed] different procedural postures."  *Id*. at *2. Specifically, in one of the two cases, briefing on cross-motions for summary judgment had concluded.  *Id*. at *1–2. In the other case, the defendant had yet to file its motion to dismiss the plaintiff's complaint.  *Id.*    Here too, Barnabas's cross-motion for summary judgment is pending, and the HRH Entities have yet to file their motion to dismiss the Second Lawsuit.

This case is also near-identical to *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535 (D.N.J. 2008).  Even though the Court found that the two "actions

contain some factual overlap," the Court denied the motion to consolidate because of, *inter alia*, "the disparities in their procedural postures[.]" In one of the two cases, summary judgment motions were pending. *Id*. But the other was in its preliminary stages. *See also Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 2012 WL 2476371 (D.N.J. June 27, 2012) ("The choice of law issue and its disparate effect on the procedural postures of the cases militates against consolidation.").

The live complaint in the Instant Lawsuit was filed nearly three years before the Second Lawsuit. Paper discovery in the Instant Lawsuit has largely concluded. And fact discovery is set to close in less than three months. A motion for summary judgment is pending before this Court. As are multiple discovery disputes. In short, the litigants are deeply enmeshed in a hard-fought and complex dispute that has been pending for well over three years. By contrast, the Second Lawsuit was filed a month ago. Defendants have not yet filed a motion to dismiss or an answer. Discovery has not yet begun. Because the cases reflect wildly different procedural postures, Barnabas's Motion to Consolidate should be denied.

### D. Granting Barnabas's Motion for Consolidation Would Cause Delays, Prejudice, Expense, and Confusion

*Delay:* As it stands, fact discovery in this case is set to end on March 13, 2026. Consolidating the Second Lawsuit with the Instant Lawsuit, which would require the addition of six parties and three new causes of action, would necessitate pushing the fact discovery deadline back months, if not longer. The HRH Entities will need to

be provided with the millions of documents produced in this litigation, as well as be provided with time to review these documents before they can realistically participate in depositions.  The HRH Entities may also want to conduct their own discovery.  And given the kinds of allegations made in the Second Lawsuit, which is grounded in an entirely separate bankruptcy proceeding with thousands of stakeholders, existing parties may also need to conduct additional discovery regarding the new claims.

*Expense*: Consolidating the two actions will create new costs on the Trust, as it will have to participate in discovery and litigate over new claims that relate to new parties.

*Prejudice:* Consolidating the two actions will significantly prejudice the Trust by delaying indefinitely the resolution of its claims against Barnabas.  Barnabas may proclaim that discovery should simply continue, but how could that possibly work?  The newly added HRH Entities would certainly be entitled to participate in depositions, and would certainly want time to review the documents before doing so.  Any witnesses deposed before the HRH Entities could do so would undoubtedly be subjecting themselves to multiple depositions in the same case.  There is no realistic scenario where the case could proceed apace following the consolidation Barnabas proposes.

***Confusion:*** Granting Barnabas's Motion to Consolidate would also create substantive and procedural confusion.  Bringing an entirely new dispute, based on a new set of facts and new legal theories, into this litigation could confuse the fact-finder. *Bernardi v. City of Scranton*, 101 F.R.D. 411, 414 (M.D. Pa. 1983) (quoting *Arroyo v. Chardon*, 90 F.R.D. 603, 605 (D.P.R. 1981) ("Because of the discrete factual backgrounds with respect to each plaintiff, and the additional legal theories set forth by plaintiff . . ., the likelihood of confusion in the minds of the jurors 'outweighs the benefit of any possible convenience or economy to be obtained from consolidation.'")).

Ultimately, it is this Court, and not Barnabas, that has the inherent power to manage its docket. *Dietz v. Bouldin*, 579 U.S. 40, 41 (2016).  This Court should reject Barnabas's attempt to "fix" a self-imposed inefficiency with a cure that allows it to circumvent its burdens under the Federal Rules and impose delay and prejudice on the Trust's ability to prosecute its claims in the Instant Proceeding.

## CONCLUSION

For all these reasons, the Trust respectfully requests that the Court deny Barnabas's Motion to Consolidate.

Dated:  December 22, 2025     Respectfully submitted,

By: /s/*Robert M. Hirsh*
Robert M. Hirsh
New Jersey Bar No. 018901998
robert.hirsh@nortonrosefulbright.com
Dewey J. Gonsoulin III*
Texas Bar No. 24131337
New York Bar No. 6168660
dewey.gonsoulin@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3060
Facsimile: (212) 318-3400

Michael A. Swartzendruber*
Texas Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8067
Facsimile: (214) 855-8200

Darryl W. Anderson*
Texas Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
Joshua H. Bucheister*
Texas Bar No. 24145029
joshua.bucheister@nortonrosefulbright.com
Kate Ergenbright*
Texas Bar No. 24097660
kate.ergenbright@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for The CarePoint Litigation Trust*

*Admitted pro hac vice

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 22, 2025, a true and correct copy of the foregoing  was served electronically via the Court's ECF system on all counsel of record.

*/s/<u>Robert M. Hirsh</u>*
Robert M. Hirsh
