William T. Walsh, Jr.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3908
wwalsh@proskauer.com

*Attorney for RWJ Barnabas Health, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **THE CAREPOINT LITIGATION TRUST,** | ) ) ) ) | Civil Action No. 22-cv-05421-EP-CF |
| Plaintiff, | ) ) | Hon. Evelyn Padin, USDJ |
| v. | ) ) | Hon. Cari Fais, USMJ |
| **RWJ BARNABAS HEALTH, INC.,** | ) ) ) | **Oral Argument Requested** |
| Defendant. | ) ) | |

## BARNABAS'S REPLY TO ITS MOTION TO AMEND

# **TABLE OF CONTENTS**

I. INTRODUCTION. ........................................................................................1

II. BARNABAS'S PROPOSED AMENDMENT IS NOT FUTILE...................1

    A.    Barnabas's Summary Judgment Motion Does Not Bar Amendment. ........................................................................................1

    B.    The Bankruptcy Proceedings Cannot Immunize CarePoint or HRH.................................................................................................3

    C.    Barnabas's Affirmative Defenses Are Not Futile. ...............................5

    D.    Barnabas's Sham Litigation Claims Are Not Futile. ...........................7

    E.    Barnabas's Unjust Enrichment Claim Is Not Futile...........................12

III. CAREPOINT'S PREJUDICE ARGUMENTS ARE FRIVOLOUS. ...........13

IV. CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES[*]

**Cases**

*Berger v. Edgewater Steel Co.*,
   911 F.2d 911 (3d Cir. 1990) ..................................................................................14

*Capital Builders, Inc. v. Twp. of Robinson*,
   2024 WL 1285776 (W.D. Pa. 2024)...............................................................9, 10

*Clark v, Township of Falls*,
   890 F.2d 611 (3d Cir. 1989) ..................................................................................14

*Cureton v. NCAA*,
   252 F.3d 267 (3d Cir. 2001) ..................................................................................14

*General Inv. Co. v. Lake Shore & M.S. Ry. Co.*,
   260 U.S. 261 (1922).................................................................................................4

*High 5 Games, LLC v. Marks*,
   2018 WL 2134038 (D.N.J. 2018) .........................................................................15

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012) ..............................................................................8

*In re L'Oreal Wrinkle Cream Mktg. Pracs. Litig.*,
   2015 WL 5770202 (D.N.J. 2015) .........................................................................14

*K.S.D. v. Ryan*,
   2024 WL 180798 (D.N.J. 2024) ...........................................................................14

*Medical Mut. Ohio, Inc. v. Braintree Labs.*,
   2011 WL 2708818 (D. Del. 2011).........................................................................11

*Mullin v. Balicki*,
   875 F.3d 140 (3d Cir. 2017) ...............................................................13, 14, 15

---

[*] Unless otherwise noted, all emphasis added, capitalizations conformed, and internal citations and quotation marks omitted. "B. Br." refers to Barnabas's Motion to Amend (ECF 323); "CP Br." refers to CarePoint's Opposition (ECF 344).

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006)..................................................................................6

*Odyssey Waste Servs., LLC v. BFI Waste Sys.*,
    2006 WL 2583591 (E.D. Pa. 2006) ....................................................................14

*Professional Real Estate Investors, Inc. v. Columbia Pictures, Indus., Inc.*,
    508 U.S. 49 (1993)................................................................................................7

*Pure Fishing, Inc. v. Normark Corp.*,
    2014 WL 223096 (D.S.C. 2014).......................................................................8, 9

**STATUTES**

28 U.S.C. § 1337(a) .........................................................................................................4

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................11

Fed. R. Civ. P. 9 ............................................................................................................11

Fed. R. Civ. P. 11 ............................................................................................................9

Fed. R. Civ. P. 15 ............................................................................................1, 2, 13, 15

**I.     INTRODUCTION.**

CarePoint asks this Court to use Rule 15 to extinguish Barnabas's affirmative defenses and claims. It urges the Court to decide the merits at the pleading stage by inventing a new species of "issue preclusion" to prevent Barnabas from pleading defenses asserted on summary judgment. It seeks immunity for CarePoint's own conduct in deference to the bankruptcy proceedings, where none of these issues were – or could have been – raised. It crafts a new rule that post-filing fraud on the Court can never constitute sham litigation. It pursues a ruling that HRH paid nothing to acquire an interest in this lawsuit. And it claims prejudice if required to defend *valid* claims filed within the deadline set by the Court. None of these arguments has merit. Nor are they consistent with Rule 15's liberal amendment standard.

**II.    BARNABAS'S PROPOSED AMENDMENT IS NOT FUTILE.**

   **A.     *Barnabas's Summary Judgment Motion Does Not Bar Amendment.***

CarePoint argues that its summary judgment opposition "forecloses" the Proposed Amendment. But this is not summary judgment. The sole question is whether Barnabas has a right to *plead* its new claims and defenses. It does.

CarePoint's argument is thrice flawed. *First*, CarePoint's summary judgment opposition addresses only Barnabas's affirmative defenses. Although arising from the same operative facts, only the counterclaims and third-party claims involve sham litigation. Unrelated summary judgment *arguments* cannot foreclose these claims.

*Second*, as to the affirmative defenses, the Proposed Amendment merely

1

conforms the pleadings to the evidence raised on summary judgment, as expressly permitted under Rule 15(b). CarePoint offers no reason why Barnabas's *in pari delicto*, unclean hands, and standing defenses asserted on summary judgment should not also be reflected in the operative Answer.

*Third*, a summary judgment denial cannot bar the affirmative defenses. They will live on, as CarePoint did not cross-move for judgment. While CarePoint invokes some amorphous form of implied issue preclusion where rejection of "Barnabas's arguments … likewise forecloses the Proposed Amendment," *see* CP Br. 1-2, now is not the time to prognosticate about the preclusive effect of a hypothetical summary judgment ruling at a trial on the affirmative defenses.

Even CarePoint concedes that issue preclusion does not apply "if the Court were to deny the motion for summary judgment [because] there were material facts in dispute." CP Br. 18 & n.4. This concession drives a truck through its argument. To salvage it, CarePoint now says that "most of the arguments opposing Barnabas's motion for summary judgment are legal in nature, based on **undisputed facts**." *Id.*

And there you have it. CarePoint finally comes clean. It abandons its earlier argument that Barnabas's summary judgment motion was "based on … ***vigorously*** disputed … ***factual*** … premises." ECF 261 at 2. It now concedes its prior factual quibbles are either immaterial or not genuine. That is a reason to **grant** – not deny – Barnabas's summary judgment motion *and* its motion to amend.

2

To distract, CarePoint accuses Barnabas of "repeatedly and radically" mischaracterizing the bankruptcy. CP Br. 5. But which party's *characterizations* are more accurate is irrelevant. What matters are the *facts*—not labels, not rhetoric. Barnabas set forth the facts in its largely uncontested statement of undisputed facts and repeated them in the Proposed Amendment. If those facts are undisputed, as CarePoint concedes, its alternative characterization is irrelevant. If they are disputed, the Court must accept Barnabas's version at the pleading stage. CarePoint does not argue otherwise, invoke *Twombly*, or assert that any allegation is conclusory or implausible. That kills its effort to put a positive spin on what happened.

### B.  *The Bankruptcy Proceedings Cannot Immunize CarePoint or HRH.*

CarePoint reprises its argument that the bankruptcy court has exclusive authority over any conduct touching the settlement, release, and transfer of claims to HRH. But the bankruptcy court did not rule on ***any*** of the issues raised by the Proposed Amendment. Nor, as Barnabas previously explained, does any case "support the idea" that the Bankruptcy Code divests this Court of jurisdiction to consider standing, the Contribution Bar, unclean hands, or in *pari dilecto*. ECF 276 at 8-9. CarePoint offers no authority now, or even contests jurisdiction.

Instead, CarePoint argues comity. It would be "unseemly," it says, for this Court to address issues that were ***never*** presented to – much less decided by – the bankruptcy court. *See* CP Br. 22. The "unseemliness" supposedly arises because

3

CarePoint thinks Barnabas should have intervened in the bankruptcy, even though it was not a creditor and had no standing to do so. Nothing required Barnabas to inject itself into those proceedings just to prematurely raise hypothetical disputes about actions the Trust had not yet taken. The Trust did not even exist, and the new claims and defenses had not yet accrued. And had Barnabas objected, it surely would have been accused of continuing to interfere with the CarePoint Debtors' sales process.

Even if Barnabas were willing to incur that risk, its complaints would have fallen on deaf ears, since Barnabas's welfare was of no concern to the bankruptcy court. The bankruptcy court's role is to protect creditors—not litigation adversaries. It *lacks* the jurisdiction to regulate the Trust's or HRH's conduct in *this* litigation. That is for *this* Court to do.

Nor could the bankruptcy court have heard Barnabas's Sherman Act or unjust enrichment claims. Sherman Act jurisdiction lies *exclusively* in the United States District Courts. *See* 28 U.S.C. § 1337(a); *General Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287 (1922). The unjust enrichment claims, in turn, rest on supplemental jurisdiction based on the Sherman Act claims. A bankruptcy court is not an Article III court, however, and so lacks jurisdiction over either claim.

The jurisdictional defect is compounded by timing. The alleged conduct – asserting or maintaining false allegations in *this* Court – occurred post-bankruptcy. The bankruptcy court could not have adjudicated it. Finally, the Proposed

Amendment asserts claims against HRH, a non-debtor third-party. The Bankruptcy Code does not authorize one third party (Barnabas) to bring a claim against another third party (HRH) in a bankruptcy court to which neither is a party.

### C. *Barnabas's Affirmative Defenses Are Not Futile.*

Recycling its summary judgment arguments, CarePoint argues each new affirmative defense is futile. Its arguments lack merit.

*First*, CarePoint argues that the Fourth Affirmative Defense – Contribution Bar – is futile because HRH never made a "settlement payment" for the release of liability. CP Br. 31. But on summary judgment, CarePoint argued that "there is a heavily disputed fact issue on whether there was any settlement payment." *See* ECF 261 at 17. That defeats futility. Moreover, CarePoint's argument – that it obtained a release and an interest in this suit for "free" and without consideration – is both legally flawed and inconsistent with the allegations and undisputed record.

*Second*, CarePoint argues that Barnabas's Fifteenth Affirmative Defense – the One Satisfaction Rule – is futile because, absent a settlement payment, "no settlement payment would need to be subtracted from any future judgment." *See* CP Br. 31. But CarePoint elsewhere conceded that "if there were a settlement and release," it would "result in a settlement credit to be applied to offset any damages awarded." *Id*. at 19 n.5; ECF 261 at 16-17 & n.2. That too defeats futility.

*Third*, CarePoint argues that Barnabas's Fifth and Sixth Affirmative Defenses

5

– Unclean Hands and *In Pari Dilecto* – are futile because CarePoint's claims do not "belong to HRH" and HRH does not "control the Trust." *See* CP Br. 31-32. But CarePoint admits that HRH is the Trust's largest beneficiary and has veto rights over every decision concerning this suit. Its argument that HRH has not *exercised* the control it bargained for is legally irrelevant and factually disputed.

Also unavailing is CarePoint's argument that HRH's interest is only indirect. It does not dispute that HRH is a legal or beneficial owner of an interest in this suit. Either suffices. As the First Circuit explained, a "litigation trust" – formed out of *bankruptcy* – that has some beneficiaries "with unclean hands" "who were themselves complicit with the fraud" and would "profit equally with the innocents" is a reason **not** to "suspend the operation of the *in pari delicto* defense." *Nisselson v. Lernout*, 469 F.3d 143, 158 (1st Cir. 2006).[1]

*Fourth*, CarePoint argues that Barnabas's Third and Seventh Affirmative Defenses – Mootness and Antitrust Injury/Standing – are futile because an assignee need not participate in the market to have standing. *See* CP Br. 32-33. That is untrue for injunctive relief. CarePoint concedes that it "does not buy, sell, or produce anything and, as such, is not in any product … market." *Id*. at 28. That defeats standing because the Trust is not a private attorney general and injunctive relief will

---

[1] CarePoint does not address *Nisselson* even though Barnabas cited it in its Motion to Amend and CarePoint itself previously sought leave (ECF 282) to file a sur-reply *specifically* to address it.

6

not redress any future injury of the Trust. As to damages, CarePoint misconstrues Barnabas's argument. We did not argue that assignees are *per se* too remote. We explained, "while assignees may *ordinarily* have the same standing as the assignor, HRH's involvement fundamentally changes the analysis" because HRH *caused* the injury. ECF 276 at 14. Certainly, no interest Congress sought to vindicate is furthered by allowing HRH to recoup the money it spent to inflict the injury.

### D.     *Barnabas's Sham Litigation Claims Are Not Futile.*

CarePoint acknowledges that sham litigation constitutes cognizable anticompetitive conduct under the Sherman Act and supports unjust enrichment claims under state law. It does not dispute that Barnabas has alleged a relevant market, monopoly power in that market, and anticompetitive effects within that market. Nor does it dispute that, under *Professional Real Estate Investors, Inc. v. Columbia Pictures, Indus., Inc. ("PRE")*, 508 U.S. 49 (1993), a sham litigation claim has just *two* elements: "objective" and "subjective" baselessness. CP Br. 24. CarePoint also accepts the plausibility of Barnabas's central factual allegation—that CarePoint's suit ***falsely*** alleges a conspiracy between HRH and Barnabas.

CarePoint instead argues futility based on timing. The conspiracy allegation, it says, is not "objectively baseless" because the CarePoint *Debtors* did not know *with certainty* that it was false when they filed suit, and it did not later become "subjectively baseless" once the Trust was substituted because HRH supposedly

7

didn't tell the Trust of the lie.  CP Br. 29.  Neither defense is a defense.

***Barnabas Plausibly Pled "Objective Baselessness."*** CarePoint seeks a free pass because the CarePoint *Debtors* supposedly did not know of the falsity.  But Barnabas's sham litigation claims are against the Trust and HRH, not the Debtors.  The relevant conduct is the Trust's decision to take over the case, HRH's approval of those actions, and the continued prosecution of the claim despite knowing that the HRH/Barnabas conspiracy allegations are false.  So CarePoint cannot hide behind the Debtors' lack of perfect knowledge in 2022.[2]

CarePoint's argument – that *Noerr-Pennington* immunizes all post-filing litigation conduct, no matter how egregious – also has no support under *PRE*.  The Supreme Court did not freeze the "objective baselessness" inquiry at a moment in time.  It asks whether a litigant's conduct was objectively baseless when undertaken.  As the Federal Circuit explained, it is "***not correct***" that the "objective reasonableness standard applies only … to the initial filing" and not to the "continued litigation of baseless claims."  *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 (Fed. Cir. 2012); *Pure Fishing, Inc. v. Normark Corp.*, 2014 WL 223096, *3 (D.S.C. 2014) ("a finding of objective baselessness may

---

[2] Even if the CarePoint Debtors' knowledge were relevant, Barnabas alleges that they "knew this imaginary conspiracy was a sham," "***publicly admit[ed] [their allegations] were 'baseless and without merit***,'" and pursued the litigation, not to prevail, but to use the lawsuit as leverage "to force Barnabas to acquire the [CarePoint] hospitals." B.Br. 10-11 (quoting CC ¶¶ 9, 104.).

8

be made even where a case did not appear baseless at the time filed").[3]

Seeking a new rule that would *expand* immunity to cover all post-filing conduct on policy grounds, *even as against new parties*, CarePoint argues policy. If post-filing conduct could be challenged, it says, sham litigation claims would become a "moving target." CP Br. 26 n.9. But the fact that liability turns on the facts does not mean the courthouse doors should be locked. *Capital Builders, Inc. v. Twp. of Robinson*, 2024 WL 1285776, *10 (W.D. Pa. 2024) ("whether a petition is a sham is generally a question of fact for the jury").

Nor does it matter that the Complaint survived a motion to dismiss. Dismissal at the pleading stage may be *evidence* of frivolous litigation, but it is not the sole litmus test. Nor is it an element of the claim. *PRE* establishes a two-part test—not *three*. Of course, an initially plausible claim may later become untenable, through adverse legal rulings or discovery revelations. Assuming compliance with Rule 11, such developments do not turn a case into a sham. But *knowingly making material false statements* – the equivalent of a fraud on the court – is different and is not immune. *Capital Builders*, 2024 WL 1285776, at *10 ("The Third Circuit has …

---

[3] Nor do any of CarePoint's cases address situations – like here – where a new party enters the case and **knowingly** asserts ***false*** factual allegations. CarePoint takes *PRE's* and *Wellbutrin's* invocation of the "probable cause" standard at "the time of filing" out of context. That discussion concerned challenges to the initial filing, and whether the litigant's beliefs about the likelihood of success should be evaluated with the benefit of hindsight. Those cases did not speak to what post-filing misconduct constitutes a sham.

recognized that a party's knowing fraud or intentional misrepresentation may be sufficient to trigger the sham exception.").

Taking a different tack, CarePoint argues that the HRH/Barnabas allegations are immaterial because the Complaint alleges a smorgasbord of conduct. But *materiality* of a false statement is also a fact question. So CarePoint tries to recast the Complaint, not as a single claim – what this Court referred to as a "monopoly broth"– but as a collection of individual "claims," one for each alleged overt act. But that is not what was pled or what survived the motion to dismiss. CarePoint pled an "overall, coherent scheme" (ECF 29 at 3), the central ingredient – the *coup de grâce* – of which was the alleged HRH-Barnabas conspiracy to disrupt the CarePoint Debtors' sales process and drive it into bankruptcy. Without that, there is only harm to a competitor, not injury to competition.[4] Omitting that allegation is not like leaving the salt out of the soup, it is like taking the chicken out of the chicken soup. That may or may not be a meal, but it is not the one on the menu.

**Barnabas Plausibly Pled "Subjective Baselessness."** CarePoint fares no better on the "subjective baselessness" element. It does not dispute that knowingly making false statements to a court is subjectively baseless—no different than fraud on the Patent Office, lying to the police, or submitting false claims on government

---

[4] CarePoint's Opposition to the Motion to Dismiss referenced HRH *eighteen times*, and asserted that "it is the *inextricable connection* between RWJ's conduct … in collaboration *with others* which makes that conduct anticompetitive and which creates an antitrust injury." ECF 29 at 4.

10

contracts. Fraud on the court is not *Noerr-Pennington* protected.

Recognizing this, CarePoint tries to evade responsibility by trying to distance itself from HRH, its controlling beneficiary. It says it does not "know with 100 percent certainty" that the conspiracy allegation is false, and HRH's perfect knowledge should not be imputed to it. *See* CP Br. 29. But intent only needs to be averred generally at this stage. *See* Fed. R. Civ. P. 8(a), 9(b). What CarePoint knew, when it knew it, and how it acquired that knowledge are matters for discovery.[5]

For pleading purposes, it is enough that Barnabas plausibly alleges the requisite *mens rea*. Given HRH's control over all decisions relating to this litigation, it is more than plausible that CarePoint and HRH discussed the conspiracy prior to substitution, and it would be incredulous if they hadn't done so after being accused of unclean hands. That CarePoint nowhere denies that the HRH/Barnabas conspiracy allegations are false alone supports an inference that it knew their falsity.

Nor is there merit to CarePoint's lawyerly argument that it lacks the *capacity* for ill intent because it has no competitors and just wants to monetize this suit. *First*, the knowing commission of a fraud is subjectively baseless because any recovery is, by definition, not based on a good faith belief to entitlement. Were it otherwise, slip-and-fall con artists would be immune because their only goal is to extract

---

[5] CarePoint's "burden of proof" argument misplaces reliance on *Med. Mut. of Ohio, Inc. v. Braintree Labs.*, 2011 WL 2708818 (D. Del. 2011), which involved findings "**after a bench trial**."

11

settlements and judgments based on their lies. This is no different.

*Second*, Barnabas alleges a conspiracy between HRH and CarePoint, the plausibility of which CarePoint does not contest. To be liable, not every conspirator must share the same motive. It is enough that each knowingly joins the conspiracy. Barnabas alleges the Trust knowingly joined a conspiracy with HRH to interfere with Barnabas's business relationships and to recoup the costs of the scheme. Barnabas also alleges the Trust is doing HRH's bidding through pursuit of injunctive relief without any interest of its own to protect. Both motivations are improper. Any remaining questions about the Trust's subjective intent are for discovery and trial.

E.     *Barnabas's Unjust Enrichment Claim Is Not Futile.*

CarePoint's attack on Barnabas's unjust enrichment claim fails because CarePoint does not refute the two core inequities at issue: (i) that HRH – acting with unclean hands and in concert with the Trust – seeks to recover the costs of driving CarePoint into bankruptcy; and (ii) that HRH and the Trust pursued that scheme by engaging in sham litigation. Each is an independent ground for unjust enrichment.

As to the former, CarePoint argues that, setting aside the false claims, "any settlement or judgment the Trust receives [would] reflect the value of its claims." CP Br. 30. That misses the point. Barnabas's unjust enrichment claim is not about abstract claim valuation. It is about the inequitable flow of funds. The allegation – that HRH and the Trust conspired to wrongfully channel money from Barnabas into

12

HRH's pockets – constitutes unjust enrichment. CarePoint does not dispute this. Instead, it reprises its argument that "HRH will not benefit" because HRH did not pay anything for its interest in this suit. But as noted, that is legally and factually wrong—HRH paid $130 million for these and other rights, making it a legal or beneficial owner of the suit's proceeds. That is unjust enrichment.

CarePoint's attack on the sham-litigation-based unjust enrichment claim fares no better. It does not dispute that making knowingly false claims constitutes unjust enrichment. Instead, it again protests that "Barnabas does not plead why … the Trust allegedly know[s] that these allegations are false." CP Br. 31. But as explained, Barnabas plausibly pled intent. That defeats futility.

### III.  CAREPOINT'S PREJUDICE ARGUMENTS ARE FRIVOLOUS.

CarePoint argues that the Proposed Amendment should be denied because, "putting aside" its *validity*, CarePoint would be prejudiced by delay. Nonsense.

Leave to amend is to be "freely" granted under Rule 15(a). CarePoint never mentions this liberal standard. Nor does it dispute that the Proposed Amendment concerns recent events and is thus subject to Rule 15(d)'s even more permissive "supplemental pleading" standard. Instead, it says amendment should be denied "at this late stage" because Barnabas should have sought leave "six months ago." *See* CP Br. 34-36. But there was no "*undue*" delay. *Mullin v. Balicki*, 875 F.3d 140, 153 (3d Cir. 2017) (abuse of discretion to deny leave where delay was not "undue.").

13

In June, the new claims and defenses had not yet accrued because the Trust had not yet been substituted.  When that happened on July 23rd, the Court directed the parties to confer over the schedule.  ECF 259.  In August, after CarePoint *refused* its consent, the Court set a November 14th deadline for Barnabas to amend the pleadings to add new parties and "to assert any affirmative defenses or counterclaims that may stem from the Trust's (or HRH's) involvement in this case … that were not previously available to it."  ECF 293 at 2-3, 297 §§ 2-3.  Because CarePoint did not appeal that order, its timeliness objection is waived.

In any event, an amendment filed by a court-ordered deadline is, by definition, timely.  *K.S.D. v. Ryan*, 2024 WL 180798, *4 (D.N.J. 2024) (no "inherent bad faith or dilatory motive" where amendment is "made within the time constraints imposed by the Court.").[6]  It would be manifestly unfair to tell Barnabas it had until November 14th to amend, only to conclude that Barnabas was too late when that day arrives.  The Court is not Lucy with the football, and Barnabas is not Charlie Brown.

Nor does CarePoint show prejudice.  The focus is on the "delay in seeking to

---

[6] CarePoint's cases undermine its position.  *See Mullin*, 875 F.3d at 152 (it is an **abuse of discretion to deny amendment**, even where the delay was due to counsel error and the amendment was sought after dismissal); *In re L'Oreal Wrinkle Cream Mktg. Pracs. Litig.*, 2015 WL 5770202 (D.N.J. 2015) (**granting amendment**); *Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990) (plaintiff waited two months **after the close of discovery** to assert claims based on **old** evidence); *Odyssey Waste Servs., LLC v. BFI Waste Sys.*, 2006 WL 2583591 (E.D. Pa. 2006) (**post-close-of-discovery** motion was untimely because plaintiff had the information "at the time it filed its original complaint"); *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989) (no abuse of discretion where court admitted the evidence at trial and the proposed amendment was immaterial); *Cureton v. NCAA*, 252 F.3d 267 (3d Cir. 2001) (plaintiff waited years to file a **post-appeal** amendment).

14

amend" after the new claims arise, not the age of the "litigation as a whole." *Mullin*, 875 F.3d at 155-56. Here, the relevant period is July 23rd to November 14th. CarePoint cites no meaningful litigation activity or prejudice during that time.

Even looking back to day one, "the progress of the case does not match [its] age." *High 5 Games, LLC v. Marks*, 2018 WL 2134038, *3 (D.N.J. 2018). We are not far from "square one," *see id.*, given the repeated stays and delays caused by the CarePoint Debtors' financial condition, the bankruptcy, appeals of discovery orders, privilege disputes, and the extended period the Trust needed to "get up to speed."

Nor is there prejudice just because litigating the Proposed Amendment might require some work. Rule 15 is not a device to extinguish valid claims or defenses. If the effort needed to litigate a claim or defense was prejudicial, every amendment would be denied. That CarePoint must defend the Proposed Amendment stems from its own alleged wrongdoing, not Barnabas's exercise of its right to seek court relief.

Finally, discovery is far from over. Only two depositions have occurred. And because the Proposed Amendment and CarePoint's original claims have a common nucleus of operative fact, any additional discovery will be limited. So CarePoint's complaint – that four million documents have already been produced – cuts against finding prejudice because the need for *supplementation* will be narrower as a result.

## IV.   CONCLUSION

For these reasons, the Court should grant Barnabas's motion to amend.

15

Dated: December 29, 2025

Respectfully submitted,

*/s/ William T. Walsh, Jr.*
William T. Walsh, Jr.
David A. Munkittrick*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
wwalsh@proskauer.com
dmunkittrick@proskauer.com

Colin R. Kass*
Erica T. Jones*
PROSKAUER ROSE LLP
1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
(202) 416-6800
rblaney@proskauer.com
ckass@proskauer.com
ejones@proskauer.com

*Attorneys for Defendant
RWJ Barnabas Health, Inc.*

\* *Admitted Pro Hac Vice*

16