William T. Walsh
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3908
wwalsh@proskauer.com

*Attorney for RWJ Barnabas Health, Inc*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **THE CAREPOINT LITIGATION TRUST**. | ) ) ) ) ) | 22-cv-05421-EP-CF |
| Plaintiff, | ) ) | Hon. Evelyn Padin, USDJ |
| v. | ) ) | Hon. Cari Fais, USMJ |
| **RWJ BARNABAS HEALTH, INC.**, | ) ) | |
| Defendant. | ) ) | |

## BARNABAS'S OPPOSITION TO CAREPOINT'S
## MOTION TO SEAL ECF 341-1 AND 341-2

Barnabas opposes CarePoint's motion to seal the exhibits to its letter requesting that the Court maintain the Proposed Amendment under seal. *See* ECF 332, 335, 341-342.

Local Rule 5.3 is clear. A party seeking sealing must make a ***particularized*** showing that it would suffer a "***clearly defined and serious injury***" if the information becomes public. L. Civ. R. 5.3(c). But CarePoint does not claim *any* injury, let alone a "clearly defined and serious" injury.

Nor could it. CarePoint concedes that it is now just a litigation vehicle to monetize the CarePoint debtors' *past* damages claim for the benefit of HRH and *perhaps* other creditors. It repeatedly acknowledges that it does not operate in any relevant market and – to use its words – has "no skin in the emergency services game." ECF 344, at 39 ("The Trust is a legal entity that does not buy or sell anything and whose [only] mandate is pursue claims… It has no skin in the emergency services game.").

Even if CarePoint did have an ongoing business interest to protect a six-year-old document about the Founders' efforts to spin the SCI investigation, the information in it is not "competitively sensitive." That document was intended as talking points to manage the anticipated press inquiries once the SCI publicly reported that that Founders has systematically "siphoned" over $157 million in sham

2

management fees. How could the disclosure of these talking points possibly cause injury? It cannot.

Without any legitimate commercial interests, there is no basis to conduct these judicial proceedings in secret. CarePoint argues otherwise, relying on a *generalized* claim that sealing is necessary to "deter end-runs" around the Confidentiality Order. But that argument fails as a matter of law. Confidentiality Orders do not govern sealing. Even the Confidentiality Order's own terms make this clear. There can be no "end run" around a Confidentiality Order that expressly defines its own boundaries and *permits* the use of court records that do not satisfy Rule 5.3.

So, if CarePoint lacks any injury from disclosure and its "good Samaritan" argument – that it is just trying to give effect to the Confidentiality Order – lacks merit, why does CarePoint seek sealing? The answer is clear. It is strategic. It seeks to prevent Barnabas's Proposed Amendment from becoming public so as to delay Barnabas's ability to serve the unredacted HRH Complaint. *See* ECF 332, 335, 341. But as Barnabas already explained at length (ECF 342), allowing the public – including Barnabas – to use *public* information is perfectly legitimate. Feigning concerns about confidentiality to block the administration of justice is not.

**I.      CAREPOINT FAILS TO SATISFY LOCAL RULE 5.3.**

Local Rule 5.3 requires a party seeking to seal judicial materials to demonstrate that disclosure will cause a "clearly defined and serious injury." L. Civ.

3

R. 5.3(c)(2); *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). Conclusory assertions, speculative harm, or generalized concerns about misuse are insufficient.

CarePoint fails to make the requisite showing. It does not contend that either exhibit contains information of the type that "qualif[ies] as the type of information that is sealed in this district—*e.g.*, trade secrets, confidential research, development or commercial information, the disclosure of which could result in specific harm to the proponent's standing in its marketplace." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2010 WL 2710566, at *5 (D.N.J. 2010). Nor does CarePoint identify any reputational, commercial, or privacy interest that would be harmed by public access to the exhibits.

Far from involving competitively sensitive or protected material, the information in the single exhibit at issue[1] is stale and originates from a now-bankrupt entity that no longer operates in the marketplace. And CarePoint itself has expressly conceded that "the Trust does not operate in the market or carry on any business activities in the marketplace." ECF 344 at 32. Having disclaimed any ongoing market participation, CarePoint cannot plausibly argue that disclosure of historical materials would inflict competitive or commercial harm—let alone the "clearly defined and serious injury" required to justify sealing.

---

[1] ECF 341-1 is the only document produced in this action that CarePoint seeks to seal via this motion. ECF 341-2 is a copy of correspondence between the parties that quotes from ECF 341-1.

Instead of pointing to any injury of its own, CarePoint says sealing "is necessary to uphold the Court's Confidentiality Order, prevent collateral misuse of protected discovery, and deter end-runs around the Confidentiality Order." But it cites no case for the proposition that a court should seal judicial records just because information could be used after the unsealing in ways that would not be permitted prior to the unsealing. If that were the case, the Confidentiality Order would create not just a presumption of sealing, but a per se rule that all designated materials must be sealed. This argument is inconsistent with the First Amendment, the Local Rules, and the Confidentiality Order.

CarePoint's reliance on *Capital Health Sys., Inc. v. Veznedaroglu*, 2020 WL 13551440 (D.N.J. 2020), is misplaced. That decision was an *uncontested*, run-of-the-mill sealing motion. The Court merely protected competitively sensitive employment information and non-party medical records protected by HIPAA. *Id*. at *1–2. It does not stand for the proposition that judicial records must be sealed, even without a showing of a clearly defined and serious injury, to deter "end runs" around Confidentiality Orders or prevent downstream uses a party disfavors.

## II.   CAREPOINT'S BASELESS ALLEGATION OF MISUSE IN THE HRH LITIGATION DOES NOT PROVIDE A BASIS FOR SEALING.

Without attempting to satisfy Rule 5.3, CarePoint nonetheless argues that sealing is needed to prevent Barnabas from *using* information that has been designated as confidential once that information becomes public. But Courts do not

5

erect a rule that public documents can be used by anyone in the world accept a litigant. And they do not prevent a litigant from seeking to unseal a document that it wishes to use once it becomes public. Barnabas has every right – just like any member of the public does – to use information in aid of the administration of justice. CarePoint's only protection against public use of relevant documents is to demonstrate a 'clearly defined and serious injury,' not to merely invoke the 'spirit' of the Confidentiality Order.

Courts *uniformly* reject attempts to seal judicial filings based solely on an alleged violation of a confidentiality or protective order. *See First State Ins. Co. v. Nat'l Cas. Co.*, 2013 WL 8675930, at *1 (S.D.N.Y. 2013) (denying motion to seal documents submitted in connection with a petition to confirm an arbitration award, because "[t]he assertion that disclosure violates a separate confidentiality order is insufficient").

*Thomas v. ConAgra Foods, Inc.*, 2023 WL 11984926 (W.D.N.Y. 2023), is instructive. There, the court refused to seal exhibits on the ground that their use might violate protective orders entered in other litigations. *Id.* at *1. The court rejected that argument, holding "confidentiality agreements alone are not an adequate basis for sealing" because that does "not overcome the presumption of public access once [the document] becomes a judicial document." *Id*. The court declined to address whether the plaintiff's use of the materials violated any

6

protective order, explaining that such questions were distinct from—and could not justify—sealing judicial filings. *Id*. at *2 n.1.

The same is true here. Rather than trying to show that disclosure of these two exhibits would cause it injury, it says that sealing is needed as a "remedy" for an imagined violation of Confidentiality Order. But Barnabas already explained why CarePoint's disguised sanctions motion lacks merits. ECF 344. CarePoint has yet to respond. If CarePoint actually believes there has been a violation of the Confidentiality Order, it should make that claim expressly via proper motion. But throwing mud at Barnabas in the guise of seeking to seal six-year-old public relations document about SCI Investigative Report is not the proper way.

**III.   CAREPOINT HAS NOT ESTABLISHED GOOD CAUSE TO EXTEND THE 14 DAY TEMPORARY SEALING PERIOD.**

As a fallback, CarePoint asks the Court to seal these materials "for at least the time-being," while CarePoint "investigates" whether the Proposed Amendment contains *other* information – not at issue on *this* motion – that it might want to seal in the future. CarePoint has long ago waived any argument that the Proposed Amendment contains information that warrants sealing, and there is no basis for continued sealing while it decides if it wants to make a belated sealing request. But even if there were grounds for it, Local Rule 5.3 does not authorize temporary sealing in aid of further investigation about whether to seek sealing. Rather, the Rule specifies a 14-day deadline to make a sealing motion. CarePoint has blown

7

that deadline, and it doesn't get an indeterminate, retroactive extension. If CarePoint wanted an extension of the deadline, it should have filed a motion requesting it, and should have presented good cause for it. It did not.

## IV. CONCLUSION.

Because CarePoint has failed to demonstrate any clearly defined and serious injury from public disclosure, its Motion to Seal ECF Nos. 341-1 and 341-2 should be denied.

| | |
|---|---|
| Dated: December 29, 2025 | Respectfully Submitted, |
| | /s/ *William T. Walsh* |
| | William T. Walsh |
| | David A. Munkittrick* |
| | PROSKAUER ROSE LLP |
| | Eleven Times Square New York, NY 10036 |
| | (212) 969-3000 |
| | wwalsh@proskauer.com |
| | dmunkittrick@proskauer.com |
| | |
| | Colin R. Kass* |
| | Erica T. Jones* |
| | PROSKAUER ROSE LLP |
| | 1001 Pennsylvania Ave, N.W. |
| | Washington, D.C. 20004 |
| | (202)416-6800 |
| | ckass@proskauer.com |
| | ejones@proskauer.com |
| | |
| | *Attorneys for Defendant RWJ Barnabas Health, Inc.* |
| | |
| | *Admitted Pro Hac Vice |