# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE CAREPOINT LITIGATION
TRUST,

                              Plaintiff,

            v.

RWJ BARNABAS HEALTH, INC.,

                              Defendant.

Hon. Evelyn Padin, U.S.D.J

Hon. Cari Fais, U.S.M.J.

Civil Action No.
2:22-cv-05421-EP-CF

## THE CAREPOINT LITIGATION TRUST'S OPPOSITION TO MOTION TO AMEND CONFIDENTIALITY ORDER

## Table of Contents

**Page**

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

   I.   Barnabas Agreed To The DCO ................................................................... 3

   II.  Under the Protections of the Discovery Confidentiality Order, CarePoint and Numerous Third Parties Produced Voluminous Discovery................................... 4

   III. Barnabas Moved To Modify the DCO Following its Still-Pending Requests to Amend its Answer and Consolidate the Second Lawsuit into the Instant Lawsuit ........................................................................................................................ 5

ARGUMENT AND AUTHORITIES.................................................................... 7

   I.   Standard of Review ..................................................................................... 7

   II.  Barnabas's Purported Reason for Modifying the DCO Is Premature and Self-Contradictory ............................................................................................. 8

        A.   Barnabas's Attempt To Secure Relief in the Instant Lawsuit Solely To Benefit its Pursuit of the Second Lawsuit Should Be Rejected.................................... 8

        B.   Barnabas's Purported Reason for Modification Is Insufficient Because it Depends on This Court's Adjudication of its Motions for Leave To Amend and To Consolidate ............................................................................... 10

        C.   Barnabas's Purported Reason for Modification Cannot Be Squared with Its Conduct and Stated Strategy ............................................................... 12

   III. There Is Good Cause To Leave the DCO Unaltered ............................ 14

        A.   CarePoint and Third Parties Produced Over Three Million Documents in Reliance on the Confidentiality Order ............................................ 14

        B.   Combining Discovery in Two Fundamentally Different Cases Promotes Neither Fairness Nor Efficiency ..................................................... 16

        C.   Barnabas's Rushed Effort To Modify the Protective Order Reveals its Improper Attempt to Sweep Its Breach of the DCO Under the Rug ............. 18

CONCLUSION ....................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apeldyn Corp. v. AU Optronics Corp.*,
   No. 08–cv–568, 2012 WL 2368796 (D. Del. June 13, 2012) ..................................18

*Ashford v. Bartz*,
   1:04–cv–0643, 2007 WL 9761598 (M.D. Pa. Apr. 20, 2007) ................................18

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
   No. 08–cv–4168, 2012 WL 1299701, (D.N.J. Apr. 16, 2012). .............................15

*Everest Nat. Ins. Co. v. Sutton*,
   No. 07–cv–722, 2010 WL 4387522 (D.N.J. Oct. 28, 2010)....................................13

*In re Gabapentin Patent Litig.*,
   312 F.Supp.2d 653 (D.N.J. 2004) ..........................................................................15

*Glenmede v. Trust. Co. v. Thompson*,
   56 F.3d 476 (3d Cir. 1995)........................................................................................7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   05–md–1717, 2008 WL 4861544 (D. Del. Nov. 7, 2008) ......................................10

*Levine v. Voorhees Board of Ed.*
   No. 07–cv–1614, 2010 WL 11692457 (D.N.J. Apr. 28, 2010) .................................7

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994)............................................................................7, 10, 11

*Physician and Tactical Healthcare Services, LLC v. Inova Health Care Services*,
   1:20-cv-10808 (D.N.J. May 19, 2021)....................................................................19

*Shire LLC v. CorePharma, LLC*,
   14–cv–5694, 2015 WL 13842823 (D.N.J. May 27, 2015) .....................................19

*Smith v. Unilife Corp.*,
   No. 13–cv–5101, 2014 WL 6070697 (E.D. Pa. Nov. 13, 2014)..............................15

The CarePoint Litigation Trust (the "Trust") files this Opposition to RWJ Barnabas Health, Inc.'s ("Barnabas") Motion to Amend the Confidentiality Order in the CarePoint Action and for an Entry of a Confidentiality Order in the HRH Action [ECF 360–1] ("Motion") and would respectfully show as follows:

## INTRODUCTION

Barnabas's Motion, which seeks to modify the Discovery Confidentiality Order ("DCO" [ECF 73]) in this case so that Barnabas can use documents produced in this case by CarePoint and numerous third parties in a separate proceeding Barnabas filed, should be denied.

As the Court will recall, on November 14, 2025, Barnabas filed a Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim [ECF 321] ("Motion for Leave to Amend") which, if granted, would add six new entities (the "HRH Entities") and three new causes of action to this proceeding (the "Instant Lawsuit"). That same day Barnabas filed a separate complaint against the same HRH Entities in a separate lawsuit under a new docket number, *Barnabas v. NHMHMC, Inc. d/b/a Hudson Regional Hospital, et al*., No. 25-cv-17594 (Nov. 14, 2025 D.N.J) (the "Second Lawsuit"). The Second Lawsuit is identical to the third-party complaint against the HRH Entities that Barnabas seeks leave to add to the Instant Lawsuit (the "Proposed Third-Party Complaint"). Barnabas also moved to

1

consolidate the Second Lawsuit into the Instant Lawsuit under Federal Rule 42(a). [ECF 324–1].

Those motions are fully briefed and remain pending.  Yet, before the Court has ruled, Barnabas seeks to modify the DCO in this case.  Currently, the DCO provides that: "[a]ll material produced in this action shall be used by the receiving party solely for purposes of the prosecution or defense of this action[.]" [ECF 73 ¶3].  Barnabas re-writes this provision so that "[m]aterials produced in [the Instant Lawsuit] shall be deemed produced in the [Second Lawsuit], and vice versa[.]" [ECF 360–2 ¶17].

Whether this relief is moot, or potentially somehow needed, or even remotely appropriate, of course, turns on how the Court rules on the pending motions.  In effect, Barnabas asks the Court to endorse its backup plan in the event it loses its pending motions to amend and to consolidate.  Moreover, it does so by filing a motion that seeks relief entirely irrelevant to ***this case***, but instead calculated solely to achieve a result in the Second Lawsuit—a lawsuit, it should be noted, as to which the Trust is not even a party.

Barnabas offers no plausible reason why a modification of the DCO in this case is necessary or appropriate now, before the Court has ruled on the pending motions.  Just a little scrutiny, however, suggests that the manufactured urgency has nothing to do with the efficient management of litigation, and everything to do with

retroactively curing Barnabas's breach of the DCO when it improperly used documents produced in the Instant Lawsuit in the Second Lawsuit. Barnabas's missteps are not grounds for modifying the DCO. And the obvious fact that the pending rulings on the proposed amendment and consolidation will impact whether a modification is even needed makes clear that the Motion should be denied.

## FACTUAL BACKGROUND

### I.    Barnabas Agreed To The DCO

On January 5, 2024, Barnabas and CarePoint, the Trust's predecessor-in-interest, jointly filed a letter to this Court stating that:

> Following the Court's ruling during the December 13, 2023 conference, the parties have conferred and now submit the enclosed agreed-upon Discovery Confidentiality Order. If this meets the Court's approval, the parties respectfully request that it be so ordered by the Court.

[ECF 72]. The parties appended the proposed discovery confidentiality order to the joint letter. [ECF 72–1]. This Court entered the agreed-upon DCO on January 8, 2024, just three days later. [ECF 73].

Among its material terms, the DCO includes the following paragraph:

> 3. *Use of Discovery Material.* All material produced in this action ("Discovery Material") shall be used by the receiving party *solely* for purposes of prosecution or defense of *this action*, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth below in Paragraphs 7 and 8, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court.

[ECF 73 ¶3 (emphasis added)].  Paragraph 3, and the DCO in its entirety, is binding on the Trust and Barnabas.

## II.    Under the Protections of the Discovery Confidentiality Order, CarePoint and Numerous Third Parties Produced Voluminous Discovery

Following entry of the DCO, and in reliance on its terms, the parties engaged in voluminous document discovery.  CarePoint produced nearly 3 million documents.  Barnabas produced more than 700,000 documents.

And it was not just the parties themselves.  Well over 250,000 documents were also produced by *nearly twenty* third parties to date, including, among others: the three former owners of the CarePoint system (Vivek Garipalli, James Lawler, and Jeffrey Mandler); a counsel and advisor for CarePoint (Lou Modugno); and the former owner of the real estate leased by Bayonne Medical Center, seventy percent of the real estate leased by Hoboken University Medical Center, and twenty-five percent of Hoboken University Medical Center's operating company (Medical Properties Trust).  They did so with the understanding that the DCO would protect their disclosure of documents.  *See, e.g.*, Exhibit A (Subpoena to Lou Modugno, attaching copy of DCO).

All told, nearly four million documents have been produced in this litigation, all under the express protections of the DCO that Barnabas now seeks to modify.

### III. Barnabas Moved To Modify the DCO Following its Still-Pending Requests to Amend its Answer and Consolidate the Second Lawsuit into the Instant Lawsuit

Barnabas seeks to modify the DCO not to cure any expressed concerns about how the DCO impacts this case, but instead as a contingency plan, apparently to circumvent some anticipated negative rulings from the Court on other pending motions it has filed. As the Court is aware, on November 14, 2025, Barnabas filed a motion for leave to amend the Instant Lawsuit, pursuant to which, among other things, it sought to add a Third Party Complaint against the HRH Entities for claims of unjust enrichment and federal antitrust violations. On the same day, in case its motion for leave to amend was denied, it also filed the Second Lawsuit under a new docket number (No. 25–cv–17594) against the same six HRH Entities asserting the same claims as are found in the Proposed Third-Party Complaint. It also filed a motion to consolidate the Second Lawsuit into the Instant Lawsuit under this docket number (No. 22–cv–05421)—which would have the effect of giving it the benefit of its proposed amendment, even if the Court denied leave to amend.

All along, Barnabas has made clear that its calculus is not to litigate the suits separately, but to have them combined in the Instant Lawsuit in some form or fashion. As Barnabas explained in a December 12, 2025 letter, "that is precisely what Barnabas informed you and the Court on the day of filing by simultaneously filing a motion to consolidate, so that everything would be 'under this docket' . . .

5

That Barnabas filed the Proposed Amended Answer in one docket and the Complaint in another, is just an *interim* procedural vehicle . . ." [ECF 341–3 at 4].

The instant Motion, however, is premised on the opposite. It presumes that the Second Lawsuit will proceed independently, rather than "under this docket." Among other things, Barnabas seeks to add the following paragraph to the DCO:

> **17. Coordination of All Discovery.** Materials produced in this Action shall be deemed produced in the matter captioned *RWJ Barnabas Health, Inc. v. NJMHMC LLC, et al.*, Case No. 2:25-cv-17594-EP-CF (the "HRH Action"), and vice versa. A Receiving Party in either action may make such materials available to the Parties in the other Action without further order of the Court. To the extent the terms of the Confidentiality Order in this Action and the *HRH* Action differ, the terms of the *CarePoint* Action Confidentiality Order shall govern.

[ECF 360–2 ¶17]  Put differently, Barnabas seeks a modification that, if granted, "deems" all documents produced by CarePoint and the nearly twenty third parties in the Instant Lawsuit as if they had also been produced in the Second Lawsuit. And going forward, the modification would treat documents produced in the Second Lawsuit—a lawsuit in which the Trust is not even a party—as if they had also been produced in the Instant Lawsuit.[1]

---

[1] The concept of Barnabas being able to produce documents in another lawsuit, but previously not produced in this action, could not possibly be more fraught with peril to the Trust, to Barnabas's original production and supplementation obligations, and to the discovery schedule in a case where the Court has already recognized the discovery schedule will have to be delayed as a result of Barnabas's myriad procedural filings. Transcript of January 15, 2026 Status Conference at pg. 6.

## <u>ARGUMENT AND AUTHORITIES</u>

### I.    Standard of Review

"[M]odifying a confidentiality order is a two step process." *Levine v. Voorhees Board of Ed*. No. 07–cv–1614, 2010 WL 11692457, at \*3 (D.N.J. Apr. 28, 2010). The Third Circuit explained this process in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994).

**First**: "[t]he party seeking to modify the order of confidentiality must come forward with a reason to modify the order." *Pansy*, 23 F.3d at 790.

**Second**: "[o]nce that is done, the court should then balance the interests" to determine whether "good cause" still exists to leave the confidentiality order undisturbed. *Id*. In evaluating good cause, courts are instructed to: "use the same balancing test that is used in determining whether to grant such orders in the first instance[,]" *id*. which considers:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Glenmede v. Trust. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Additionally, courts also must consider "the reliance by the original parties on the confidentiality order." *Pansy*, 23 F.3d at 790.

7

## II.    Barnabas's Purported Reason for Modifying the DCO Is Premature and Self-Contradictory

As a threshold matter, Barnabas cannot "come forward with a reason to modify" the DCO—at least, not one that has been recognized as valid in this circuit. According to Barnabas, it seeks modification "to ensure that all litigants have access to discoverable materials needed to litigate their claims and defenses." [ECF 360–1 at 1].  But Barnabas proffers no reason at all why its proposed modification is necessary for the prosecution or defense of the claims in the Instant Lawsuit; its proposed relief is directed entirely at a different lawsuit.  Even taken on its own terms, the Motion is premature and a waste of judicial resources because it is contingent on, and may well be mooted by, the resolution of the pending motions to amend and to consolidate.  Lastly, its purported rationale to (supposedly) facilitate discovery in both actions as they proceed separately is at war with Barnabas's oft-repeated statements that it does not want to litigate both actions separately in the first place.

### A.    Barnabas's Attempt To Secure Relief in the Instant Lawsuit Solely To Benefit its Pursuit of the Second Lawsuit Should Be Rejected

As a threshold matter, it should be made clear what Barnabas is asking this Court to do.  Barnabas does not contend there is any unanticipated problem with the DCO that impacts its ability to defend against the Trust's claims in the Instant

Lawsuit.  From the beginning, it has had and continues to have full access to all documents produced in the Instant Lawsuit.

What has changed is its willingness to abide by its initial agreement, pursuant to which it promised it would use the discovery in this case "***solely***" to prosecute the claims in the Instant Lawsuit.  Now, it has decided that it would like to use those documents (and indeed has already used those documents) in an entirely separate lawsuit, its newly-filed suit against HRH.  And so Barnabas is asking the Court to grant it permission to do what it specifically agreed not to do at the outset.

That demand is as unworkable as it is egregious.  After all, the Trust is not a party to the Second Lawsuit.  It will not get notice of, or served with, discovery requests or subpoenas to third parties in the Second Lawsuit.  Yet, under Barnabas's plan, any documents produced in the Second Lawsuit will be "deemed" to have been produced in the Instant Lawsuit.  The Trust will have no way of knowing what universe of documents might be "deemed" part of the Instant Lawsuit that might be used against it in depositions, on summary judgment, or at trial.  Moreover, the nearly twenty third parties that made productions in the Instant Lawsuit will suddenly have their documents "deemed" to have been produced to the HRH Entities in the Second Lawsuit.  It does not appear, from the face of the Motion, that Barnabas has inquired of any of those third-parties as to whether they have any concerns about

9

their confidential documents being shared with non-parties to the Instant Lawsuit, contrary to the terms of the DCO at the time they made their productions.

### B. Barnabas's Purported Reason for Modification Is Insufficient Because it Depends on This Court's Adjudication of its Motions for Leave To Amend and To Consolidate

The Motion is also improper because it is inextricably bound up with and contingent upon the resolution of the motion to amend and the motion to consolidate, which are currently pending before the Court.

In *In re Intel Corp. Microprocessor Antitrust Litig.*, the U.S. District Court for the District of Delaware recognized that modifications to protective orders should be denied when the reason proffered for modification is contingent upon some as-yet-to-occur event. 2008 WL 4861544, at *19 (D. Del. Nov. 7, 2008). There, the movant sought to modify a protective order so that it could access documents and deposition testimony under 28 U.S.C. § 1782, under which district courts can order persons to give discovery for use in a foreign proceeding. *Id.* at *1 (citing 28 U.S.C. § 1782). But because the "reason" for modifying the protective order depended on it first being granted separate relief pursuant to 28 U.S.C. § 1782, the movant could not state a "reason" for modification under the Third Circuit's decision in *Pansy*. *Id.* "Having concluded that [movant] does not have a reason to

modify the Protective Order if its § 1782 Application is denied, the Special Master concludes that it is unnecessary to balance the *Pansy* factors." *Id*.[2]

This analysis carries special force in the context of the Motion here. Barnabas has asked the Court for leave to amend its answer in the Instant Lawsuit to add the Proposed Third Party Complaint. If Barnabas's request were granted (over the Trust's objections), there would be no separate action and no reason to modify the DCO. Similarly, Barnabas filed a motion to consolidate the Second Lawsuit into the Instant Lawsuit, as a backup plan in case its motion for leave to amend were denied. Here, too, if Barnabas's request were granted (over the Trust's objections), there would be no separate action and no reason to modify the DCO.

In this context, the Motion is best understood as Barnabas putting forward a backup plan to its backup plan. If the motion to amend is denied (as it should be), and the motion to consolidate is denied (as it should be), then Barnabas asks the Court to modify the DCO so it can achieve *de facto* the same result by treating the cases as interchangeable for discovery purposes, notwithstanding the different parties and claims—and notwithstanding the denial of those other motions.

Even here, however, Barnabas cannot avoid the contingent nature of its Motion. If the motion to amend is denied because the Proposed Third Party

---

[2] Thus, Barnabas's assertion that "a prematurity objection is not a valid objection to entry of a Confidentiality Order or a provision that would provide a different party – HRH – access to information," [ECF 360–1 at 8], misstates the relevant standard.

Complaint is futile, for example, the Second Lawsuit would inexorably fall as a result, once again resulting in no reason to modify the DCO in the Instant Lawsuit. On top of that, if the two cases do ultimately wind up proceeding in parallel, that will also affect the viability if the proposed modification that Barnabas seeks.  As the Trust's Opposition to Barnabas's Motion to Consolidate Related Cases outlines in greater detail, the live pleadings in the Instant Lawsuit (without the proposed amendment) are fundamentally different from those of the Second Lawsuit.  Thus, a blanket ruling that all documents in one suit are "deemed" shared in the other suit would be wholly inappropriate.  The HRH Entities and Barnabas do not need the vast majority of materials that have been produced in the Instant Lawsuit (having nothing to do with the HRH Entities) to litigate their claims and defenses in the Second Lawsuit.

Thus, Barnabas's proffered "reason" for modification utterly depends on relief that has not yet been granted and, as such, is wholly premature.  Barnabas's Motion to Amend the Confidentiality Order should be denied.

## C.    Barnabas's Purported Reason for Modification Cannot Be Squared with Its Conduct and Stated Strategy

In any event, Barnabas's purported reason for modification is belied by the litigation strategy it has expressly articulated for nearly three months.  The entire premise of the Motion is to share discovery in two separately prosecuted actions. But Barnabas has stated, repeatedly, that it does not wish to separately litigate against

12

the HRH Entities.  Immediately after filing the Second Lawsuit, Barnabas moved to consolidate that case into this one.  Barnabas characterized the Second Lawsuit as an "interim procedural vehicle "so that everything would be 'under this docket.'" Barnabas has twice stated that, if this Court were to grant its Motion for Leave to Amend, it would administratively terminate the Second Lawsuit.  [ECF 327 at 2; ECF 328 at 2].

In this context, Barnabas cannot credibly ask this Court to modify the DCO so as to facilitate discovery in a case it has stated repeatedly it does not want to prosecute and would terminate if successful at amending.  *See Everest Nat. Ins. Co. v. Sutton*, No. 07–cv–722, 2010 WL 4387522, at *6 (D.N.J. Oct. 28, 2010) (noting that "the Court is not overly impressed with the reasons put forth by the [movant] to modify the Discovery Confidentiality Order" when, "in one breath" the movant states one reason and, "in the next," states a contradictory reason).

On November 14, 2025, Barnabas made the wholly unconventional and disingenuous decision to: (1) ask for leave of court to file, *inter alia*, a third-party complaint against the HRH Entities; (2) separately file an identical complaint against the HRH Entities the same day; and (3) move to consolidate the two actions under the same docket number.  Barnabas spent the next two-and-a-half months explaining that its intention in filing the Second Lawsuit was merely to bring the HRH Entities into the Instant Lawsuit.  Barnabas cannot, in the same breath, state that it wants to

13

facilitate discovery in the Second Lawsuit.  Because Barnabas cannot come forward with a reason to modify the Order, its Motion should be denied.

## III.    There Is Good Cause To Leave the DCO Unaltered

Even if this Court finds that Barnabas has come forward with a valid reason to modify the Order, Barnabas's Motion to Amend should be denied because there is "good cause" to leave the DCO unaltered.  None of the factors courts consider support modifying the DCO, and three of the factors weigh particularly strongly against the proposed modification.  First, CarePoint and more than a dozen third parties relied on the terms of the DCO in producing millions of documents.  Second, the fundamental differences between the Second Lawsuit and the Instant Lawsuit mean that Barnabas's proposed modification is neither efficient nor fair.  Third, Barnabas's attempt to modify the DCO, especially at this premature stage, is rooted in the improper purpose of sweeping its existing breach of the DCO under the rug.

### A.    CarePoint and Third Parties Produced Over Three Million Documents in Reliance on the Confidentiality Order

Between the entry of the DCO on January 8, 2024 and today, the Trust's predecessor in this case has produced nearly three million documents—a voluminous amount of document discovery, even for an antitrust case.  Equally significant, this case involves a substantial amount of discovery conducted by subpoenas to third-parties.  Third parties have produced approximately 250,000 documents.  CarePoint and these third parties produced these documents in reliance

14

on Barnabas's agreement that "[a]ll material produced in this action . . . shall be used by the receiving party solely for the purposes of the prosecution or defense of this action[.]" [ECF 73 ¶3].

Courts in this Circuit routinely deny requests to modify confidentiality orders because non-movants acted in reliance on them.  In *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, this Court denied the movant's application to modify a confidentiality order "particularly since Defendants, Pfizer and GSK have all proceeded in reliance on the existing Confidentiality Order." No. 08–cv–4168, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012). *See also Smith v. Unilife Corp.*, No. 13–cv–5101, 2014 WL 6070697, at *12 (E.D. Pa. Nov. 13, 2014) (denying movant's application to modify the confidentiality order when non-movant argued that it had "produced thousands of pages of documents in reliance on the Protective Order[.]"); *In re Gabapentin Patent Litig.*, 312 F.Supp.2d 653, 666–67 (D.N.J. 2004) (affirming magistrate judge's decision to deny application to amend confidentiality order because, *inter alia*, the reliance of the parties on the previously-entered order).

Barnabas argues that the Trust purportedly has no "property," "confidentiality," or "business" interests to protect because it is a "litigation shell," [ECF 360–1 at 7], but that misses the point.  Paragraph 3, which Barnabas's proposed modification would displace, is not a confidentiality provision; it applies to ***all*** documents produced in the case, whether confidential or not.  The provision reflects

15

the fundamental premise that the discovery process should be used for litigating the dispute at hand, not as a vehicle for facilitating other business or other litigation interests.  The Trust has just as much of an interest in preserving an agreement to limit the use of discovery to the Instant Lawsuit as anyone would.  And of course, Barnabas's efforts to focus on the Trust's status simply ignores the productions by third-parties.  These multiple individuals and entities surely have their own interests in how their documents are used.  Yet, from all appearances, Barnabas has not consulted them on its proposed modification and has no basis to claim that they did not rely on the terms of the DCO in making their productions.

CarePoint, the Trust's predecessor-in-interest, produced nearly three million documents in this litigation with the understanding that the documents would be used in this litigation only.  So did numerous third parties not before the Court.  Thus, the reliance factor strongly supports denying Barnabas's request to modify the DCO.

**B.    Combining Discovery in Two Fundamentally Different Cases Promotes Neither Fairness Nor Efficiency**

As the Instant Lawsuit and the Second Lawsuit are fundamentally different cases, sharing discovery between the two cases will promote neither fairness nor efficiency.  The vast majority of the materials produced in the Instant Lawsuit are likely irrelevant to the Second Lawsuit.  Conversely, materials that might be produced in the Second Lawsuit are likely irrelevant to the Instant Lawsuit.

16

As the Trust's Opposition to Barnabas's Motion to Consolidate Related Cases outlines in greater detail [ECF 343], the Instant Lawsuit and the Second Lawsuit are different in many fundamental respects.  In the Instant Lawsuit, the Trust alleges that Barnabas engaged in a coordinated effort to take over the market for general acute care services in and around Hudson County by anticompetitive conduct that caused substantial damages to the three CarePoint hospitals. [ECF 27 ¶¶ 2, 3, 5, 7, 12, 21–32].  The key allegations described occurred between 2015 and 2022.  By contrast, in the Second Lawsuit, Barnabas, not the Trust, is the plaintiff, and the HRH Entities are the Defendants. Second Lawsuit [ECF 1 ¶¶ 20, 21 –27].  The Trust is not even a party. *Id.* ¶¶ 20 –28. The Second Lawsuit arises from what Barnabas characterizes as the HRH Entities' alleged attempt to obtain a dominant position in the market for emergency care in the City of Bayonne, New Jersey and purportedly settle their own antitrust liability with CarePoint for free. *See, e.g., id.* ¶¶ 1–19, 87–184. The primary allegations at issue in the Second Lawsuit allegedly occurred during and after CarePoint's bankruptcy proceeding, several years after CarePoint filed the Instant Lawsuit over Barnabas's antitrust violations.  Barnabas's attempt to argue that the Instant Lawsuit (as it exists now) and the Second Lawsuit are basically parallel cases with largely similar claims ignores these vast differences.

Properly understood, then, this is not a case where litigants would have to "reinvent the wheel." [ECF 360–1 at 1, 6].  There is little about Barnabas's

coordinated effort to take over the market for general acute care services in and around Hudson County that will bear out Barnabas's implausible allegations regarding the HRH entities' supposed attempt to obtain a dominant position in the market for emergency care in Bayonne by commandeering CarePoint's post-bankruptcy antitrust claims. *See Ashford v. Bartz*, 1:04–cv–0643, 2007 WL 9761598 (M.D. Pa. Apr. 20, 2007) (sharing documents from a prior lawsuit containing allegations that a former police officer had falsified truck inspection reports would not promote fairness and efficiency in the instant case alleging that the same former police officer had assaulted the plaintiff); *Apeldyn Corp. v. AU Optronics Corp.*, No. 08–cv–568, 2012 WL 2368796, at *5 (D. Del. June 13, 2012) (denying motion to modify protective order to allow plaintiff's corporate representative to have access to "attorneys eyes only" documents as not promoting fair and efficient litigation).

### C.    Barnabas's Rushed Effort To Modify the Protective Order Reveals its Improper Attempt to Sweep Its Breach of the DCO Under the Rug

Finally, Barnabas's Motion to Amend the Confidentiality Order should be denied as an improper attempt to sweep its breach of the DCO under the rug.  As such, "the information is being sought is [not] for a legitimate purpose," but rather, "for an improper purpose," and that factor supports denying modification.

As has been detailed to the Court in prior filings, Barnabas has acknowledged that it is already in breach of the provision of the DCO that it now seeks to modify.

18

The DCO prohibits use of discovery material in the Instant Lawsuit in any other proceeding.  [ECF 73 ¶3].  Yet, following inquiry by the Trust, Barnabas has admitted that it used material produced in this action in its separate action against the HRH entities.  In a footnote to a December 12, 2025 letter to the Trust, Barnabas noted that: "[t]he information cited in Paragraphs 61 and 62 [of the complaint against the HRH Entities] was derived from CP_0001208884"—that is, a document produced by CarePoint "in this action."  [ECF 341–3 at 3 n.4].

In previous correspondence, Barnabas has attempted to explain away its conduct by arguing that the phrase "this action," as it is used in the DCO, is not specifically defined, and thus must be read to encompass Barnabas's complaint against the HRH Entities.  *Id*. at 2–4.  But as this Court has stated when asked to construe a near-identical line in a discovery confidentiality order: "The Court finds that the phrase 'this action' in paragraph 3 of the DCO means exactly what it says." *Shire LLC v. CorePharma, LLC*, 14–cv–5694, 2015 WL 13842823, at *2 (D.N.J. May 27, 2015) (construing discovery confidentiality order providing that "All Confidential material shall be used by the receiving party solely for purposes of the prosecution or defense of this action")  *See also Physician and Tactical Healthcare Services, LLC v. Inova Health Care Services*, 1:20-cv-10808, at *8 (D.N.J. May 19, 2021) (adopting Black's Law Dictionary's definition of "action").  Of course,

19

Barnabas knows that these are separate actions. *See, e.g.* [ECF 348 at 2, 3, 6, 8] (Barnabas referring to the "two actions").

The Motion to modify the DCO, then, is best understood as a retroactive attempt to cure Barnabas' existing breach of that order. There is obviously no reason to take up this type of motion until after the pending motions to amend and to consolidate are addressed. The proposed modification could become entirely moot—that is, except for the fact that it would hand Barnabas an argument to claim that its existing breach of the DCO should be ignored.

Thus, it seems apparent that Barnabas seeks to share discovery between the two cases at this early stage not for reasons related to proper discovery management and coordination among the cases, but for a wholly improper use to unwind its violation of the DCO currently in effect. This, too, provides good cause not to modify the current DCO in the Instant Lawsuit.

## **CONCLUSION**

For all these reasons, the Trust respectfully requests that the Court deny Barnabas's Motion to Amend the Confidentiality Order.

Dated:  February 3, 2026          Respectfully submitted,

By: /s/*Robert M. Hirsh*
Robert M. Hirsh
New Jersey Bar No. 018901998
robert.hirsh@nortonrosefulbright.com
Dewey J. Gonsoulin III*
Texas Bar No. 24131337
New York Bar No. 6168660
dewey.gonsoulin@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3060
Facsimile: (212) 318-3400

Michael A. Swartzendruber*
Texas Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8067
Facsimile: (214) 855-8200

Darryl W. Anderson*
Texas Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
Joshua H. Bucheister*
Texas Bar No. 24145029
joshua.bucheister@nortonrosefulbright.com
Kate Ergenbright*
Texas Bar No. 24097660
kate.ergenbright@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for The CarePoint Litigation Trust*

*Admitted pro hac vice

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 3, 2025, a true and correct copy of the foregoing  was served electronically via the Court's ECF system on all counsel of record.

*/s/<u>Robert M. Hirsh</u>*
Robert M. Hirsh

22