**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE CAREPOINT LITIGATION TRUST, | |
| Plaintiff, | No. 22cv5421 (EP) (CF)[1] |
| v. | **OPINION** |
| RWJ BARNABAS HEALTH, INC., | |
| Defendant. | |

**PADIN, District Judge.**

This action arises from a suit by a group of entities referred to as CarePoint Health Systems Inc. ("CarePoint"), which alleged that Defendant RWJ Barnabas Health, Inc. ("Barnabas")—a competing healthcare system—conspired with a variety of actors in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C., to drive CarePoint out of business so that Barnabas could monopolize the general acute care hospital services market in Hudson County, New Jersey.[2]

Much has changed since this action was brought in 2022. For starters, CarePoint filed for bankruptcy in November 2024, and in April 2025, the Bankruptcy Court for the United States District for the District of Delaware confirmed CarePoint's proposed bankruptcy plan, which, among other things, established the CarePoint Litigation Trust (the "Trust"). The Trust has taken over prosecuting this action for the benefit of CarePoint's creditors under the authority of a litigation trustee.

---

[1] The Honorable Cari Fais, U.S.M.J., was assigned to this case on September 11, 2025, following the retirement of the Honorable Cathy L. Waldor, U.S.M.J. *See* Dkt.

[2] D.E. 27 ("Third Amended Complaint" or "TAC") ¶ 1.

The parties are currently in the throes of discovery.  Pending before the Court are several motions, including Barnabas's motion for summary judgment[3] and the New Jersey State Commission of Investigation's ("SCI") appeal[4] following:  (1) an order[5] from Judge Waldor that both denied the SCI's motion[6] for a protective order challenging the enforceability of a subpoena from Barnabas and granted Barnabas's cross-motion[7] to compel; and (2) a subsequent order[8] from Judge Waldor denying the SCI's motion[9] for her to reconsider the Subpoena Order.[10]

---

[3] D.E. 247-1 ("Summary Judgment Motion" or "MSJ").  The Notice of Motion is at D.E. 247.  The Summary Judgment Motion was a cross-motion for summary judgment as well as a brief in opposition to CarePoint's motion to substitute the Trust as the plaintiff in this action.  D.E. 238 ("Substitution Motion").  While Judge Waldor granted the Substitution Motion on July 23 2025, she deferred the decision on Barnabas's Summary Judgment Motion to the Undersigned.  *See* D.E. 259.

The Trust opposes the Summary Judgment Motion.  D.E. 261.  Barnabas replies.  D.E. 276.  The Trust then filed a motion for leave to file a sur-reply, D.E. 282 ("Sur-Reply Motion"), which Barnabas opposes, D.E. 284.

[4] D.E. 281-1 ("Appeal").  The Notice of Appeal is at D.E. 281.  Barnabas opposes the Appeal. D.E. 299 ("Opposition" or "Opp'n").  The SCI replies.  D.E. 301 ("Reply").

[5] D.E. 111 ("Subpoena Order").

[6] D.E. 99-2 ("Protective Order Motion").  The Notice of Motion is at D.E. 99.  As explained in more depth below, the SCI filed the Protective Order Motion given its view that its investigative files are absolutely privileged and therefore not subject to discovery by Barnabas.  In the Protective Order Motion, it asked Judge Waldor to recognize an absolute privilege for its files at the federal level, like the one it asserts is recognized at the State level.

[7] D.E. 105 ("Cross-Motion to Compel").  The SCI replied to the Cross-Motion to Compel.  D.E. 106 ("Protective Order Reply").

[8] D.E. 137 ("Reconsideration Order").

[9] D.E. 123-1 ("Reconsideration Motion" or "Reconsideration Mot.").  The Notice of Motion is at D.E. 123.  Barnabas opposed the Reconsideration Motion.  D.E. 136 ("Reconsideration Opposition" or "Reconsideration Opp'n").

[10] In addition to the two motions the Court decides today, the Court must also decide two other motions from Barnabas—(1) a motion to amend its answer and affirmative defenses and to file its

The Court now decides both the Appeal and Summary Judgment Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). Having considered the Appeal, the parties' submissions, and all relevant items on the docket, the Court concludes that the Reconsideration Order was not clearly erroneous, contrary to law, nor an abuse of discretion. Accordingly, the Court will **DENY** the Appeal and **AFFIRM** Judge Waldor's Reconsideration Order. In addition, for the reasons explained below, the Court will exercise its inherent authority to manage its docket and **ADMINISTRATIVELY TERMINATE** Barnabas's Summary Judgment Motion. In turn, the Court will **DENY** the Trust's Sur-Reply Motion as **MOOT**.

## I.    THE APPEAL

### A.    Background[11]

#### 1.    *The SCI and the SCI's 2019 report*

In 1968, the New Jersey Legislature created the SCI to serve as a watchdog agency and, in furtherance of that mission, directed the SCI to conduct investigations "in connection with the effective enforcement of the laws of the State of New Jersey, the conduct of public officers and employees, and any other matter concerning the public peace, safety, and justice" and publish reports with its findings. Protective Order Mot. at 8 (citing N.J. Stat. Ann. § 52:9M-2). The state legislature also gave the SCI the power to "subpoena documents and compel witness testimony, to seek contempt orders that may result in a recalcitrant witness being incarcerated, to grant immunity from prosecution, and to conduct witness interviews." *Id.* at 15 (citing N.J. Stat. Ann. § 52:9M-12). The SCI's enabling statute states that SCI employees who disclose privileged and confidential

---

counterclaim, D.E. 321; and (2) a motion to consolidate this action with *RWJ Barnabas Health, Inc. v. NHMHMC, Inc. d/b/a Hudson Regional Hospital, et al.*, No. 25-17594 (D.N.J), D.E. 324.

[11] The Court assumes the parties' familiarity with the background of this case. Therefore, this Section is limited to facts relevant to the Appeal.

information may be subject to criminal charges and/or loss of employment.  *See* N.J. Stat. Ann. § 52:9M-15(a).

In 2016, the SCI launched an investigation into the New Jersey Department of Health's ("DOH") oversight over hospitals, including emergency room utilization, billing practices, and the funding and regulatory oversight of hospitals in the State.  Protective Order Mot. at 8-9 (citing Ex. A at 30)[12] & Ex. B ("SCI Report") at 36.[13]

In 2019, the SCI released its report.  SCI Report.  Chief among the issues identified were payments of around $157 million in management fees and allocations by the three hospitals operating under CarePoint to "related-parties" in exchange for purported management services provided to CarePoint from 2016 to 2019.  *Id.* at 37.  Despite these large fees paid to the related-parties, the SCI Report found that "these related-party management entities have no employees and only limited operating expenses which, in combination with other information, raises questions about the nature of their operations."  *Id.* at 34.  The SCI Report was developed from a variety of resources, including "a review of financial disclosures and other materials pertaining to [CarePoint]," and the sworn testimony of CarePoint's three founders (herein, the "Founders").  *Id.* at 36; *see id.* at 39-40.  The SCI concluded that one of the Founders provided "inconsistent" testimony regarding these related party transactions, and that while all three Founders testified that they provided services to CarePoint, "the extent of the services leading to more than $157 million in management fees and allocations . . . [was] unclear."  *Id.* at 39.

On September 6, 2022, CarePoint initiated this action, alleging that Barnabas's anticompetitive conduct—including opening a competing emergency facility in Hudson County,

---

[12] Because the exhibit has no page numbers, the Court uses the page numbers generated by CM/ECF.

[13] The Court uses the page numbers generated by CM/ECF for this exhibit as well.

4

New Jersey—was behind CarePoint's financial struggles. *See generally* TAC. Barnabas's position is that the Founders are responsible for CarePoint's demise, based on the conduct identified in the SCI Report. Cross-Motion to Compel at 5.

    2.  *The Protective Order Motion and the Cross-Motion to Compel*

  Barnabas seeks discovery to prove its theory that the Founders were behind CarePoint's demise. To that end, it sent the SCI a subpoena to produce documents underlying the SCI Report. Protective Order Mot. at 9. Barnabas specifically sought "documents [the SCI] had collected, analyzed, and synthesized during its three-year investigation, including witness testimony; underlying business records, financial reports, and other factual documents; internal analyses, assessments and summaries; and other submissions from CarePoint, the Founders, or others." Cross-Motion to Compel at 7; *see also* Protective Order Mot., Ex. C ("Subpoena").

  After the Subpoena issued, the SCI and Barnabas exchanged letters and calls in which the SCI asked (and Barnabas declined) to withdraw it. Protective Order Mot. at 9-10. Consequently, the SCI filed the Protective Order Motion. Barnabas's Cross-Motion to Compel came next, followed by a reply from the SCI.

  The SCI argued that it should not be required to disclose the documents that Barnabas requested because the materials were confidential and privileged. Protective Order Mot. at 13. It asserted that New Jersey state courts have held that the confidentiality provisions in the SCI's enabling statute provide an absolute privilege for its investigatory files. *Id.* (citing *In re Resolution of State Comm'n of Investigation*, 108 N.J. 35, 43 (1987) (herein, "*In re Resolution*")). However, the SCI acknowledged that because this case involves federal claims—and under Federal Rule of Evidence 501 ("Rule 501") "any claim of privilege in a case involving federal claims is to be governed by the common law as interpreted by the federal courts"—any privilege afforded to the

SCI at the state level did not automatically apply in federal court. *Id.* at 11 (citing *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982)). It therefore asked Judge Waldor to "recognize a new evidentiary privilege" at the federal level like the one recognized by New Jersey courts that provides the SCI with absolute privilege for its investigatory files, and accordingly, enter a protective order on its behalf. *Id.* at 12; *see also id.* at 12-13.

Barnabas, in response, rejected the SCI's initial premise that New Jersey state law provides for an absolute privilege of the SCI's investigatory files, and contended that even if it did, this Court should decline the opportunity to create a new federal privilege. *See* Cross-Motion to Compel at 18-19 ("But the fact that the New Jersey legislature saw fit to create a zone of privacy for SCI's investigations does not mean that it should be 'absorbed' into the federal common law of privilege."). Barnabas further argued that Rule 501 "preempts state confidentiality laws in federal question cases,"[14] and therefore, "[t]o the extent a privilege is needed to protect the integrity of agency investigations, that privilege already exists under federal law"[15]: the federal law enforcement privilege. As Barnabas explained, the federal law enforcement privilege is a "qualified privilege designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Id.* at 21 (quoting *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209 (D.N.J. 1996)). Barnabas further argued the SCI could not satisfy the requirements to qualify for the privilege, and in fact, the SCI did not even raise the qualified privilege in the Protective Order Motion. *Id.* at 21-23.

On July 31, 2024, Judge Waldor held a hearing to address the parties' cross-motions. D.E. 112 ("Protective Order Hearing" or "Protective Order Hr'g"). The SCI's then-counsel confirmed

---

[14] *Id.* at 19.

[15] *Id.* at 21.

that the SCI was asking Judge Waldor to "invent a privilege." *Id.* at 4:8-11; *see also* Protective Order Reply at 3 ("The SCI is requesting that the Court, based on the SCI's legitimate interests in the confidentiality of its investigations, find that this state privilege extends federally before this Court and grant the SCI's Motion for a Protective Order as [Barnabas's] requests fall outside of the scope of discovery" (citing Fed. R. Civ. P. 26(b)(1))).

After the parties argued their respective positions, Judge Waldor "den[ied] the motion for a protective order, completely," explaining that she "[would] not invent a federal privilege" as "there [was] nothing before [her] that suggest[ed] that should take place, the qualified privilege."[16] *Id.* at 15:19-22.  Judge Waldor also noted that the fact this discovery would be produced for attorneys' eyes only took "some of the firing power out of [the SCI's] guns" regarding their assertions of the dangers if they are required to comply with the subpoena. *Id.* at 9:1-4.  That same day, Judge Waldor entered the Subpoena Order.

---

[16] Based on the ambiguity in the Protective Order Hearing transcript, the parties dispute exactly what Judge Waldor held.  According to the SCI, Judge Waldor denied the Protective Order Motion "on the basis that the Court would not recognize a [new] federal privilege and there was nothing before the Court suggesting that a qualified privilege should apply."  Reconsideration Mot. at 5 (citing Protective Order Hr'g at 15:19-22) (citation modified).  Barnabas suggests the Judge Waldor meant that there is nothing before [her] "that suggests that *[a new privilege]* should take *[the]* place, *[of]* the qualified privilege."  Reconsideration Opp'n at 4 & n.2 (citation modified and emphasis added to Barnabas's suggested modifications).

The SCI did not brief the qualified privilege issue in either the Protective Order Motion or the Protective Order Reply.  Therefore, the Court sees little to no reason for Judge Waldor to have held it did not apply.  The Court, like Barnabas, understands Judge Waldor's holding to mean that she would not invent a new federal privilege because, as Barnabas persuasively argued at the Protective Order Hearing, the SCI *could* have asserted the (available) qualified investigative privilege applied, but did not, given the SCI's position that it was entitled to an *absolute* privilege. *See* Protective Order Hr'g at 10:9-11:16.

### 3.    *The SCI asks Judge Waldor to reconsider*

On August 14, 2024, current counsel for the SCI appeared in this action and moved for Judge Waldor to reconsider the Subpoena Order.  D.E. 122; Reconsideration Mot.  Notably, the SCI did not argue that Judge Waldor erred by deciding not to invent a new federal privilege, the heart of its Protective Order Motion.  *See* Reconsideration Mot. at 7-8.  Rather, the SCI asserted reconsideration of the Subpoena Order was appropriate and necessary because:

> (i) [N.J. Stat. Ann. § 52-9M-15], the New Jersey statute that vests SCI proceedings and materials with confidentiality protections that both the New Jersey Supreme Court and the New Jersey Attorney General's Office have described as equivalent to grand jury proceedings, was misinterpreted, and the Court should correct the legal error underlying its disposition of the motion;
>
> (ii) the Court failed to balance the interests of SCI and [Barnabas] in adjudicating the motion, as SCI argued it should, and account for SCI's function within New Jersey's law enforcement apparatus – which [Barnabas] mischaracterized as a "legislative research agency" in its briefing – including but not limited to SCI's power to subpoena records and witness testimony and immunize witnesses, its authority to share intelligence with State and Federal law enforcement, its exemption from state public records laws, and overall role as an entity authorized to investigate public corruption in society and across State government;
>
> (iii) the Court overlooked the interests of third parties, including witnesses subpoenaed by the SCI to provide documents and testimony in confidential executive sessions; and
>
> (iv) failed to appreciate the strong public interest in maintaining the confidentiality of SCI's investigative files.

*Id.* at 2.  In response, Barnabas contended that the SCI was seeking a second bite at the apple by raising arguments on reconsideration it did not bring in its Protective Order Motion—namely, that Judge Waldor committed a clear error of law and caused manifest injustice by overlooking the SCI's arguments that she was required to apply a balancing test under Federal Rule of Civil Procedure 26 ("Rule 26") as well as a balancing test under Federal Rule of Criminal Procedure

6(e) given the SCI's view that its files are entitled to grand jury level secrecy.  Reconsideration Opp'n at 5-6, 11-12.

Judge Waldor held a hearing on the Reconsideration Motion as well, where she told the SCI that it was putting forth "a lot of new arguments and discussions that were not . . . in the prior argument or in briefing[.]"  D.E. 38 ("Reconsideration Hearing" or "Reconsideration Hr'g") at 24:22-24.  While the SCI acknowledged this, it maintained that "the magnitude of some of the governmental administration issues for the SCI and third-party interests" and the fact prior counsel did not make what current counsel viewed as the "right arguments" should not stand in the way of Judge Waldor correcting a clear error of law.  *Id.* at 34:20-25.

Nevertheless, Judge Waldor denied the Reconsideration Motion on both procedural and merits grounds.  In her view, the Reconsideration Motion "procedurally" was not a motion for reconsideration brought under Local Civil Rule 7.1.  *Id.* at 35: 20-23.  She also stated that she did not believe that she committed a clear error of law or that she misinterpreted the relevant statutory scheme.  *Id.* at 25:23-25.  In addition, Judge Waldor noted that the SCI was now asking her to apply a balancing test that governs the disclosure of grand jury material in response to a subpoena issued in a federal civil case, but agreed with Barnabas that "the grand jury balancing test is inapplicable," and in fact was "not on point at all."  *Id.* at 36:1-3.  Accordingly, she entered the Reconsideration Order.  This Appeal followed.

### B.    Legal Standard

"A United States [m]agistrate [j]udge 'may hear and determine any [non-dispositive] pretrial matter pending before the [C]ourt."  *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).  "On appeal from such an order, the scope of this Court's review is narrow."  *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022).  A district court may only "modify or set aside any

part of the [non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to findings of fact, while the "contrary to law" standard applies to matters of law. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *Easterday v. USPack Logistics LLC*, No. 15-7559, 2022 WL 855583, at *5 (D.N.J. Mar. 23, 2022) ("A magistrate judge's legal conclusions are subject to *de novo* review under the 'contrary to law' standard" (quoting *id.*)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "A ruling is 'contrary to law' if the magistrate judge has misinterpreted or misapplied applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (internal quotation marks added). "The burden of demonstrating that [an] order [is] clearly erroneous or contrary to law falls on the party who has filed the notice of appeal." *Champion Painting Specialty Servs. Corp. v. Del. River Port Auth.*, 658 F. Supp. 3d 241, 247 (D.N.J. 2023) (citing *Travelers Indem. Co. v. Dammann & Co., Inc.*, 529 F. Supp. 2d 752, 758-59 (D.N.J. 2008)).

"Particular deference is accorded to magistrate judges on discovery issues." *Costa v. Cnty. of Burlington*, 584 F. Supp. 2d 681, 684 n.2 (D.N.J. 2008). "Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006). This deferential standard is "especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1525, 1547 (D.N.J. 1993), *aff'd in part on other grounds and rev'd in part on other grounds*, 50 F.3d 1239 (3d Cir. 1995). An abuse of discretion occurs

"when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the . . . court." *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976).

Moreover, when presented with appeals of magistrate judge decisions, courts in this Circuit consistently hold that when a party "had ample opportunity to raise [arguments] before [the magistrate judge] but chose not to do so[,]" that party's "failure to present these [arguments] to the magistrate judge constitutes a waiver of its rights to assert them on appeal" in front of the district court. *See, e.g.*, *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997); *Amersham Biosciences v. PerkinElmer, Inc.*, No. 03-4901, 2005 WL 8179738, at *3 (D.N.J. Apr. 14, 2005) ("Accordingly, it is evident that in this district, a party must raise all arguments to the magistrate judge before a district court can consider the issue on appeal. Failure to do so precludes the district court from hearing the issue."); *Palomino Master Ltd. v. Credit Suisse Grp. AG*, No. 24-05539, 2025 WL 2621865, at *5 (D.N.J. Sept. 10, 2025) ("Defendants contend [p]laintiffs waived this argument because they failed to raise it before [the magistrate judge]. The Court agrees."). The Third Circuit has explained that, in the waiver context, "a passing reference to an issue . . . will not suffice to bring that issue before [a] court." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (citation modified). Nor are "conclusory assertions" sufficient to raise an issue. *See Com. of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (finding an issue waived whether party made just "conclusory assertions" rather than a "substantial argument").

### C.    Analysis

On Appeal, the SCI challenges Judge Waldor's Reconsideration Order because Third Circuit law required her to follow the New Jersey Supreme Court's interpretation of New Jersey law—which, if Judge Waldor had done, would have led her to conclude that the SCI's investigative files are entitled to grand jury-level secrecy.  Appeal at 1-2, 6-9.  Then, the SCI argues, that had Judge Waldor applied the Rule 6(e) balancing test (given Barnabas was seeking the equivalent of grand jury materials), Judge Waldor would have held that the SCI's interests in maintaining the secrecy of its files outweighs Barnabas's need for the discovery.  *Id.* at 9-12.

As explained in more depth below, the SCI has not met its burden of demonstrating that Judge Waldor's Reconsideration Order is clearly erroneous, contrary to law, or an abuse of discretion because:  (1) Judge Waldor correctly determined that federal privilege rules govern this action and that the SCI did not make the requisite showing for the Court to invent a new federal privilege; (2) the SCI waived any argument that the qualified privilege applies by failing to raise that argument in its Protective Order Motion; (3) contrary to its assertions, the SCI did not argue in its Protective Order Motion that, in the alternative of recognizing a new absolute privilege, Judge Waldor should enter a protective order under a Rule 26(c) balancing test; and (4) the SCI waived any argument that the grand jury balancing test under Federal Rule of Criminal Procedure 6(e) applies because it did not ask Judge Waldor to find that its investigative files are entitled to grand jury level secrecy in its Protective Order Motion, and, relatedly, Judge Waldor correctly determined on the facts of this case to that the principles underlying the grand jury balancing test as articulated in *In re Resolution* did not warrant applying the test.

### 1.    The analytical framework

Both parties cite *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) as guiding Third Circuit

precedent on the scope of allowable discovery in this Court.  *Pearson* explains that:

> [t]he general framework for determining the scope of allowable discovery for cases
> in federal courts is provided by Federal Rule of Civil Procedure 26, which provides
> that "parties may obtain discovery regarding any matter, not privileged, which is
> relevant to the subject matter involved in the pending action."  Fed. R. Civ. P.
> 26(b)(1).  As an initial matter, therefore, all relevant material is discoverable unless
> an applicable evidentiary privilege is asserted.  The presumption that such matter
> is discoverable, however, is defeasible.  Rule 26(c) grants federal judges the
> discretion to issue protective orders that impose restrictions on the extent and
> manner of discovery where necessary "to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).
>
> Rule 26 thus allows for two approaches to seeking the protection of sensitive—but
> relevant—information, like that at issue here. A party seeking to protect the
> confidentiality of such information may argue . . . that the information is protected
> by an evidentiary privilege.  Any material covered by a properly asserted privilege
> would necessarily be protected from discovery, pursuant to Rule 26(b)(1).  Where
> such a privilege is not available, a party may petition the court for a protective order
> that limits discovery in accordance with Rule 26(c).  The court, in its discretion, is
> authorized by this subsection to fashion a set of limitations that allows as much
> relevant material to be discovered as possible, while preventing unnecessary
> intrusions into the legitimate interests—including privacy and other confidentiality
> interests—that might be harmed by the release of the material sought.

*Id.* at 65.

Under this framework, the first question for Judge Waldor was whether an evidentiary

privilege exists to protect the requested information from being produced.  To answer that question,

she was required to make a preliminary determination whether state or federal privilege law

governs.  Both sides correctly noted when briefing the first round of motions that because this case

involves federal questions, federal common law of privilege applies.  *See* Protective Order Mot. at

13

11 & Protective Order Opp'n at 18 (both citing *Wm. T. Thompson Co.*, 671 F.2d at 104). Thus, Judge Waldor considered whether there was any federal privilege available for the SCI.[17]

### a.    Whether a federal evidentiary privilege applies

*Pearson* goes on to explain that evidentiary privileges asserted in federal court are governed by Rule 501. 211 F.3d at 65. That rule provides that "the common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: (1) the United States Constitution; (2) a federal statute; or (3) rules prescribed by the Supreme Court. But in a civil case, state law governs privilege

---

[17] Below, the Court addresses the parties' arguments as to whether Judge Waldor was required to treat the SCI's files like grand jury materials and apply the balancing test under Rule 6(e) given language from the New Jersey Supreme Court in *In re Resolution*. Although it is not entirely clear to the Court, it appears the parties may also dispute whether the New Jersey Supreme Court's interpretation of the degree of protection afforded to the SCI's investigative materials binds this Court when deciding whether to recognize a new privilege under federal privilege law. *See, e.g.*, Opp'n at 15-17. For the avoidance of doubt, it does not.

The question before Judge Waldor was whether—in a case involving federal claims under *federal* privilege law—the SCI's investigatory files are privileged. While *In re Resolution* addresses the scope of protection SCI files receive in state court, it does not answer the question before Judge Waldor. Had this action involved solely questions of state law, like *Hahnemann University Hospital v. Edgar*, 73 F.3d 456, 465 (3d Cir. 1996), Judge Waldor would have been bound to follow *In re Resolution*. But it does not. To the extent the SCI relies on *Hahnemann* to suggest that *In re Resolution* required Judge Waldor to invent a new federal privilege, that argument is misplaced. *See* Appeal at 7-8.

The SCI's citing of *Euster v. Eagle Downs Racing Association*, 677 F.2d 992, 994 n. 4 (3d Cir. 1982) for the proposition that a state's highest court is the ultimate interpreter of a state statute is also of no moment for this question. While the SCI is correct that both *Euster* and this action involve federal antitrust claims, *Euster* did not address a privilege issue or hold that this Court must wholesale adopt any privilege identified by a state's highest court. When a federal court decides whether to create a new federal privilege, it considers a variety of factors, including if "the information sought is protected by a state privilege." *Pearson*, 211 F.3d at 67. The SCI's position—that Judge Waldor committed a clear error of law by not following *In re Resolution*—would render that one factor the *only* factor in the Court's inquiry, which *Pearson* makes clear is not the case.

regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501 (citation modified).

In addition to the privileges expressly delineated under Rule 501, a federal court can recognize new federal privileges. *Pearson*, 211 F.3d at 66. "The general test to be applied in assessing privilege candidates is whether such a privilege 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Id.* at 67 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). While federal courts *can*, "with very limited exceptions, federal courts have generally declined to grant requests for new privileges." *Id.* (citations omitted). The Third Circuit has made clear that "privileges are disfavored." *Id.* (quoting *In re Grand Jury*, 103 F.3d 1140, 1149 (3d Cir. 1997)). That sentiment follows the Supreme Court's direction that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

There is no question that the SCI sought—and Judge Waldor rejected its request—to recognize a new federal privilege. Nor is there any dispute that the SCI has not appealed that decision. In fact, the SCI did not ask Judge Waldor to reconsider that holding either. *See* Reconsideration Mot. The Court therefore agrees with Barnabas that the SCI has not brought that issue before the Court. Opp'n at 17 n.8.

Furthermore, the SCI did not argue in its Protective Order Motion that the qualified law enforcement privilege applies; it mentions the potential applicability of that privilege for the first time in its Reconsideration Motion. *See* Reconsideration Mot. at 14-15. However, the SCI had "ample opportunity" to raise that argument before Judge Waldor in its Protective Order Motion,

"but chose not to do so."[18]  *Lithuanian Com. Corp.*, 177 F.R.D. at 213.  Its failure to do so constitutes a waiver of its right to assert that argument on Appeal.[19]  *Id.*  Accordingly, the Court finds that the SCI has not established that either of these federal privileges applies.

### b.    Rule 26(c) balancing

Another dispute between the parties is whether Judge Waldor sufficiently balanced the parties' competing interests and/or was required to decide whether Barnaba's subpoena should be quashed under Rule 26(c).  In the SCI's view, Judge Waldor overlooked its ask in the Protective Motion to—in the alternative of inventing a new privilege—consider, under Rule 26(c), "fashion[ing] a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought."  *Pearson*, 211 F.3d at 65; *see* Reconsideration Mot. at 10 ("The Court was required to then address SCI's alternative argument by applying a balancing test to the classes of documents subpoenaed by [Barnabas], weigh the interests, and determine whether production was warranted.").  Barnabas, on the other hand, avers that the SCI made no alternative argument for Judge Waldor to balance interests under Rule 26(c), and that any reference to an amorphous balancing test was done in furtherance of the SCI's ask for Judge Waldor to balance competing interests when deciding whether to invent a new privilege, a question she decidedly answered.  *See* Reconsideration Opp'n

---

[18] The Court further agrees with Barnabas that the SCI made clear at the Protective Order Hearing that it was asking for Judge Waldor to recognize an *absolute* privilege on the federal level. Reconsideration Opp'n at 13-14; Protective Order Hr'g at 10:9-11:16, 14:23-15:9.  Therefore, the qualified privilege could logically have not be within in the ambit of its ask to her.

[19] And, even if the Court were to consider applying the qualified privilege, the SCI still has not demonstrated why that privilege should apply to the facts of this case, something Barnabas has argued since the first round of briefing.  *See* Cross-Motion to Compel at 21-22.

at 6 n.3 ("In SCI's prior briefs, it argued that the Court should balance interests in deciding whether to create a new federal privilege. The Court did this when it concluded the qualified privilege appropriately weighs investigative and judicial interests. [The] SCI's motion for reconsideration is different: it seeks to invoke Rule 26's balancing test for confidentiality, *independent of privilege*. That argument was not previously raised and is waived.").

After considering the parties' arguments in their briefs and at the Protective Order Hearing, the Court agrees with Barnabas. The SCI's counsel evinced at the Protective Order Hearing that it was not asking Judge Waldor to conduct a Rule 26(c) balancing in the alternative, but rather, for her to balance the parties' competing interests when deciding whether to recognize a new, absolute privilege for the SCI's files like the one recognized in New Jersey state courts:

> What we are asking you to do here is, right – and in federal court, clearly there's an on-point privilege relating to the SCI of any interpretation of our statute relating to privilege and confidentiality and producing documents and whether these are files are, in fact, privileged.
>
> So we're asking you to enter this protective order and find that that privilege does exist and it does exist federally. You know, the balancing test, as I understand it, is the need for the evidence versus the important of the interests that will be protected by the privilege. The case for recognizing a federal privilege is stronger when there is a state privilege on point, which is from the *Pearson* case.
>
> It's a case-by-case basis for courts to look at this. So we're asking Your Honor to take a look and extend this state – privilege federally.

Protective Order Hr'g at 5:3-18. By sandwiching its only mention of a balancing test at the Protective Order Hearing within two sentences requesting Judge Waldor recognize a new federal privilege, then-counsel for SCI could not have been clearer that any balancing of interests be done in furtherance of that endeavor. This reading also aligns with the SCI's Protective Order Motion, which frames its only mention of Rule 26(c) within its argument that the Court can enter a

protective order on its behalf if it recognizes a new federal privilege.  *See* Protective Order Mot. at 10-13.

The SCI maintains that Judge Waldor failed to conduct the "requisite balancing test." Appeal at 7.  Initially, the Court notes that Judge Waldor did not overlook a balancing of interests. At the Protective Order Hearing, she told the SCI that the fact that discovery would be produced under the protective order in this action (*i.e.*, under the attorneys' eyes only designation) took "some of the firing power out of [the SCI's] guns."  Protective Order Hr'g at 9:1-4.  She then reiterated this point at the Reconsideration Hearing:  "What I will do is say that this is – this was a 2016 – I am not sure when it ended – but the report went public in 2019.  I don't see any reason with attorneys' eyes only considerations that these materials should not be turned over." Reconsideration Hr'g at 36:4-8.  Nevertheless, given the SCI's position on reconsideration that Judge Waldor was required to address its "unresolved argument" that she grant a protective order under Rule 26(c),[20] the Court expected the SCI to have argued on Appeal that the "requisite" balancing test was the Rule 26(c) balancing test as explained in *Pearson*.  But Rule 26 makes no appearance in the SCI's Appeal.  *See* Appeal at iii (Rules under the Table of Authorities).  It seems that the only balancing test that the SCI now asserts Judge Waldor should have applied was the one under Rule 6(e).  Accordingly, the Court moves on to consider whether Judge Waldor committed clear error by not applying that balancing test.

### c.    Rule 6(e) balancing

To obtain grand jury materials under Rule 6(e), a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only

---

[20] Reconsideration Mot. at 10.

material so needed." *Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). A party "must also demonstrate a 'particularized need'" for the disclosure. *United States v. Salerno*, Crim. No. 10-301, 2011 WL 6141017, at *10 (M.D. Pa. Dec. 9, 2011) (first quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958); then citing *In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir. 1982)).

On Appeal, the SCI argues that Judge Waldor committed clear error because she did not follow the New Jersey Supreme Court's holding in *In re Resolution*, which, in its view, finds that the SCI's investigative files are entitled to grand jury-level protection, and therefore, Judge Waldor was required to apply the balancing test as articulated in *Douglas Oil* when deciding whether to grant its Protective Order Motion. Appeal at 10-12.

Barnabas makes several arguments in Opposition, but the Court need only address one: Judge Waldor's holding at the Reconsideration Hearing that the grand jury balancing test was not applicable—a mixed holding of law and fact[21]—was correctly decided. Opp'n at 14. As noted above, a magistrate judge's factual findings are reviewed under a "clearly erroneous" standard and a magistrate's legal determinations are reviewed under the "contrary to law" standard. Accordingly, this Court will consider whether it was: (1) clearly erroneous for Judge Waldor to conclude the SCI was not functioning as a grand jury; and (2) contrary to law to not apply the grand jury balancing test.

It was not clearly erroneous for Judge Waldor to conclude that the SCI was not operating as a grand jury because the SCI waived any argument that it was. In the Protective Order Motion,

---

[21] Judge Waldor stated that she "agree[d] [with Barnabas] that the grand jury balancing test is inapplicable in this case" and was "not on point at all, as far as [she was] concerned." Protective Order Hr'g at 36:1-3. Embedded in this statement are multiple findings: (1) the SCI was not a grand jury; (2) the principles underlying grand jury secrecy as explained in *In re Resolution* are not relevant in this case; and (3) consequently, the Rule 6(e) balancing test was not applicable.

the SCI relied on *In re Resolution* for the proposition that New Jersey's "interest in the secrecy of SCI investigations is *manifestly analogous* to the State's interest in Grand Jury secrecy." Protective Order Mot. at 19 (citing *In re Resolution*, 108 N.J. at 43) (emphasis added). Then, after drawing that comparison to show the SCI and a grand jury have analogous interests in maintaining secrecy, the SCI argued that Barnabas's needs for the discovery did not outweigh its need for continued secrecy. *Id.* at 22-24 (citing 441 U.S. at 222). However, the Court agrees with Barnabas that the SCI's argument in the Protective Order Motion was "distinct from a request for a finding that SCI is a grand jury to which the grand jury privilege applies." Opp'n at 13 n.5.

The SCI attempts to side-step this issue by asserting that there was no waiver because it "expressly argued, on multiple occasions, that its grand jury secrecy protection needed to be heavily weighed against Barnabas'[s] purported discovery need." Appeal at 8 n.2 (citations omitted). But the SCI's invocation of the *Douglas Oil* test in the Protective Order Motion does not change the fact that it did not argue that its files are entitled to grand jury level protection in this case, or that the Court should look to Rule 6(e) in its inquiry. Notably, the SCI does not reference Rule 6(e) in its Protective Order Motion, nor does the SCI make the explicit leap that it does in its subsequent briefs that because its investigatory files are "entitled to grand jury level protection," Judge Waldor was required to apply the Rule 6(e) framework to her analysis. Appeal at 7. Indeed, counsel for the SCI confirmed at the Protective Order Hearing its position was that the SCI had an "absolute privilege" on the state level, and that it sought to have that same privilege recognized in federal court. Protective Order Hr'g at 15:8. The SCI did not argue that it is entitled to grand jury level secrecy in federal court or that Rule 6(e) applied to the Subpoena. For these reasons, the Court concludes that the SCI's utilization of the grand jury analogy in the Protective

Order Motion was in furtherance of its efforts to have an absolute privilege recognized in federal court.

But, even if the SCI had not waived the argument that it was entitled to grand jury level protection, Judge Waldor did not err when determining that the grand jury balancing test was not on point. In *In re Resolution*, the New Jersey Supreme Court articulated that the "same principles underlie the statutory provision for confidentiality in SCI investigations" and grand jury proceedings—those principles are:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom . . . in . . . deliberations, and to prevent persons subject to indictment or their friends from importuning [those who are engaged in deliberations] . . . ; (3) to prevent subornation of perjury or tampering with the witnesses who may testify [both at the investigatory stage and later during a prosecution]; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation . . . .

*In re Resolution*, 108 N.J. at 43. After enumerating those principles, the *In re Resolution* court went on to hold that in the "context" of that action, the "State's interest in the unobstructed functioning of the SCI [was] of overwhelming primacy." *Id.* Thus, what *In re Resolution* stands for is the notion that a court should consider the principles underlying both grand jury proceedings and SCI investigations and determine whether, in the specific context of that case, the Court should proceed to consider whether: (1) the discovery sought is needed to avoid a possible injustice in another judicial proceeding; (2) the need to disclose is greater than the need for continued secrecy; and (3) the request is structured to cover only material so needed. *See Douglas Oil*, 441 U.S. at 222.[22]

_____

[22] The Court disagrees with the SCI's interpretation that the "core holding of [*In Re Resolution*] applies across the board: New Jersey's 'interest in the unobstructed functioning of the SCI is of

As Barnabas argued at the Reconsideration Hearing:

[E]ven if we applied some kind of grand jury balancing, even – this case, it just doesn't work. This is, as we've all now acknowledged, a very old investigation. It's not a criminal investigation. It's a civil investigation. It was subject to a public report. Most of the information is already public. And the list of documents that comes from SCI, just went through, are the kinds of records, business records and underlying evidence that are routinely produced in antitrust cases and all kinds of cases and subject to protective orders, just like the one we have here.

It wasn't a criminal investigation. If there was any need for secrecy, it's not now.

The grand jury factors, as stated in SCI's brief, include things like protecting against an indicted person from escaping. You don't have to worry about that.

Protecting against deliberations of the jury itself. We don't have to protect that.

Protecting witness testimony from perjury or tampering. This testimony was long ago completed. We don't have to protect against that.

None of the factors against grand jury protection and secrecy apply here.

Protective Order Hr'g at 29:21-30:18. Considering the principles articulated in *In re Resolution* within the context of this case, the Court concludes that it was not a clear error of law for Judge Waldor to hold that the grand jury balancing test was not on point. Given Judge Waldor's finding the grand jury balancing test was not relevant to the facts of this case as the principles underlying grand jury secrecy were not germane to this action, it was in turn not contrary to law for her to decline to balance Barnabas's need for the discovery versus the SCI's need for continued secrecy.

---

*overwhelming primacy*' and controls." Appeal at 9 (quoting 108 N.J. at 43). As the New Jersey Supreme Court explicitly stated in *In re Resolution*, it reached its conclusion that the SCI's interest was of "overwhelming primacy" within the "context" of that case. 108 N.J. at 43. When the holding in *In re Resolution* is placed in its proper context, it is clear that, contrary to the SCI's assertions, Judge Waldor did not "disregard" the New Jersey Supreme Court's holding in *In re Resolution*. Appeal at 8-9.

22

In sum, the Court finds that Judge Waldor's Reconsider Order was neither clearly erroneous nor contrary to law. The Court will therefore **DENY** the SCI's Appeal and **AFFIRM** Judge Waldor's Reconsideration Order.

## II.    SUMMARY JUDGMENT MOTION

As noted above, the parties are currently deep in discovery. *See* D.E. 297. While fact discovery is scheduled to conclude by March 13, 2026, that deadline will inevitably be extended.[23] For one, there are still several depositions to be conducted by the Trust. And the Court's determination today to deny the SCI's Appeal will require the SCI to produce its files and then for Barnabas to review them, which will undoubtedly enlarge the scope of discovery. In addition to the Appeal resolved today, there is a pending appeal before the Court concerning Judge Waldor's determination that CarePoint waived any privilege claim within a 150,000 document production made by CarePoint's founder. D.E. 302. Beyond these two appeals before the Undersigned, based on recent filings, the Court anticipates numerous additional discovery motions to be made before Judge Fais. In the interim, the Court must also decide two other motions filed by Barnabas—(1) a motion to amend its answer and affirmative defenses and to file its counterclaim; and (2) a motion to consolidate this action with *RWJ Barnabas Health, Inc. v. NHMHMC, Inc. et al.*, No. 25-17594 (D.N.J)—which may significantly change the scope and tenor of this case. Suffice it to say, the docket reflects that this action is far from over, and, in light of the uncertainty of how this action will proceed, given, among other things, the issues raised above, the Court is of the view that

---

[23] Indeed, the parties and Judge Fais recognized this as recently as January 2026. *See* D.E. 361 at 6:7-11 ("The practical reality here is that the pretrial scheduling order is going to need to be amended. Right? As the parties noted – I believe it was [Barnabas] who flagged this for the Court last time . . . the discovery deadlines are going to be impacted by the pending appeals.").

Barnabas's Summary Judgment Motion would be best decided after all the above issues are resolved.

It is well established that the Court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we have often said, matters of docket control and discovery are committed to [the] broad discretion of the district court"); *Discover Bank v. Greenwood House Home for the Jewish Aged*, No. 18-16020, 2021 WL 11695985, at *1 (D.N.J. Jan. 15, 2021) ("[T]he Court has broad discretion to manage discovery, control its docket and make case management decisions." (citing *Washington*, 869 F.3d 193, 220)). How to best manage a case "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. 248, 254-55 (citations omitted).

Under its case management authority, courts should "ensure[] that motion practice proceeds in an efficient manner by, among other things, avoiding piecemeal, redundant, premature and/or unnecessary motion practice." *Koger, Inc. v. Polak*, No. 09-4677, 2009 WL 4250057, at *2 n.2 (D.N.J. Nov. 25, 2009). To that end, the Court, in exercising its discretion to manage its docket and do so in a manner it sees as most efficient for itself and the parties, intends to address all summary judgment motions following the completion of fact discovery. At that time, all parties will have the facts before them to move for summary judgment and to dispute any factual issues in competing summary judgment motions. *See Figueroa v. Bonneville Cont. & Tech. Grp., Inc.*, No. 14-78, 2015 WL 4978454, at *2 (D.V.I. Aug. 20, 2015) ("The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.") (citing *Celotex*, 477 U.S. at 322). Therefore, the Court will **ADMINISTRATIVELY TERMINATE** Barnabas's

Summary Judgment Motion.[24]  In turn, the Court will **DENY** the Trust's Sur-Reply Motion as **MOOT**.

### III.    CONCLUSION

For the reasons explained above, the Court will **DENY** the Appeal, **AFFIRM** Judge Waldor's Reconsideration Order, **ADMINISTRATIVELY TERMINATE** Barnabas's Summary Judgement Motion, and **DENY** the Trust's Sur-Reply Motion as **MOOT**.  An appropriate Order accompanies this Opinion.

Dated: February 5, 2026

Evelyn Padin, U.S.D.J.

---

[24] For the avoidance of doubt, the Court's decision to administratively terminative the Summary Judgment Motion is not a ruling on the merits.  *Lettieri v. TD Bank*, No. 24-832, 2025 WL 3268285, at *3 (D.N.J. Nov. 24, 2025); *see also Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 275 (3d Cir. 2013) (administrative termination is "a practical tool used by courts" to effectively manage their dockets).