# EXHIBIT 2

*Via ECF*

Hon. Cari Fais, U.S.M.J.
U.S. District Court for the District of New Jersey

> Re:   *The CarePoint Litigation Trust v. Barnabas,* Case No. 22-cv-05421 (D.N.J.)
> *Dispute Concerning Claw Back Documents.*

Dear Judge Fais:

Barnabas and The CarePoint Litigation Trust submit this joint letter to address a dispute concerning documents that are the subject of a claw back request.[1]

## I.   BARNABAS'S POSITION.[2]

In preparing the Joint Mandler Letter (ECF 350), Barnabas cited 33 documents that CarePoint *produced*, ***after conducting a privilege review***, from its own files or those of its outside counsel and business consultant, Louis Modugno. Barnabas received these documents almost a year ago, and CarePoint had expressly consented to their use, despite being informed that their production contained potentially privileged information.

Upon receiving Barnabas's draft of the Joint Mandler Letter on November 26, 2025, CarePoint objected to Barnabas's argument that CarePoint had committed a *second* waiver based on the CarePoint/Modugno Privilege Production. But it did not just object; it tried to prevent Barnabas from even making the argument. When it saw how Barnabas was using these 33 documents, CarePoint issued a claw back notice under Paragraph 13 of the Confidentiality Order (ECF 73).[3] In CarePoint's view, that notice automatically blocked Barnabas from *arguing* that CarePoint had committed a second waiver because Barnabas would no longer be able to support that claim with the documents it had cited. CarePoint also refused to delay submission of the Joint Mandler Letter until the claw back issue was resolved.

When Barnabas told CarePoint it planned to call the Court to prevent the strategic misuse of the Confidentiality Order, CarePoint relented, ***consenting to their use for purposes of that letter***. This was the second consent to the use of the CarePoint/Modugno documents, this time with the specific 33 Claw Back Documents at issue. But because CarePoint knew Barnabas planned to continue relying on these documents – both substantively for the remainder of the case and to support its argument that there was a broad subject matter waiver over the 50,000+

---

[1] Pursuant to L. Civ. R. 37.1, the parties certify that they met and conferred in good faith via Zoom and written correspondence, but have been unable to resolve their dispute.

[2] Unless otherwise noted, all emphasis added, all internal citations and quotation marks omitted, and capitalizations conformed without brackets. Pursuant to agreement of the parties, Barnabas is submitting the Claw Back Documents for *in camera* review. Barnabas will note its *in camera* submission via a separate docket entry, and will provide the documents to the Court on a flash drive.

[3] Ex. 1 (CarePoint's Claw Back Log for the CarePoint Documents) and Ex. 2 (CarePoint's Claw Back Log for the Modugno Documents).

Page 2

documents CarePoint continues to withhold – CarePoint otherwise maintained its claw back request.  Barnabas timely served notice of its intent to challenge the claw back.

As set forth below, CarePoint cannot show that its production of the Claw Back Documents was inadvertent, that it took reasonable steps to prevent the initial disclosure, and that it acted reasonably to correct the error once it was on notice of it.  These reasons – each independent of those at issue in the Mandler Appeal – provide a basis for a finding of waiver, and denying CarePoint's claw back request.  Each is fatal to its claw back demand.

### A.    CarePoint Waived Privilege Over the Claw Back Documents.

This letter concerns only the 33 documents CarePoint produced and now seeks to claw back.  In a separate letter, Barnabas is seeking to compel production, based on waiver, of the *additional* 50,000+ CarePoint/Modugno documents CarePoint is currently *withholding*.  Because two different standards govern these issues, Barnabas addresses only the former here.

Claw back is governed by Federal Rule of Evidence 502(b).  Under that rule, "the disclosure [of privileged information] does not operate as a waiver in a federal or state proceeding if:  (1) the disclosure is inadvertent; (2) the holder of the privilege … took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b).[4]  This is an ordinary negligence standard:  Did the claw back party act reasonably to stop the disclosure of privileged information in the first instance and in correcting the error when it was put on notice of it?  The burden is on the party claiming inadvertence to show that it met the requisite standard of care.  *Peterson*, 262 F.R.D. at 427 ("The disclosing party has the burden to prove that the elements of FRE 502(b) have been met."); *D'Onofrio v. Borough of Seaside Park*, 2012 WL 1949854, *7 (D.N.J. 2012) (same).

### 1.    CarePoint Consented to the Use of the Claw Back Documents; It Did Not "Inadvertently" Produce Them.

CarePoint has not and cannot show that its initial production of the 33 Claw Back Documents was inadvertent.  CarePoint affirmatively waived privilege for two separate reasons. *First*, it failed to timely assert privilege under Rule 26(b)(5).  *Second*, it affirmatively consented

---

[4] In determining whether these elements are met, courts often consider the following factors: "(1) the 'precautions taken to prevent inadvertent disclosure' given the extent of document production; (2) the quantity of inadvertent disclosures; (3) the 'extent' of the disclosure; (4) the extent of 'any delay' and 'measures taken to rectify the disclosure[;]' and (5) any 'overriding interests of justice.'" *Gloucester Twp. Hous. Auth. v. Franklin Square Assocs.*, 38 F. Supp. 3d 492, 497 (D.N.J. 2014); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 2587784, *14 (D.N.J. 2021) (same); *Peterson v. Bernardi*, 262 F.R.D. 424, 428 (D.N.J. 2009) (same; collecting cases).

Page 3

to Barnabas's review and use of the produced documents knowing – with certainty – that they contained privileged information.[5]

*CarePoint's Non-Compliance with Rule 26(b)(5) Constitutes Affirmative Waiver.* CarePoint waived privilege over the 33 Claw Back Documents by failing to timely assert the privilege. Under Rule 26(b)(5), a party asserting privilege "***must*** … expressly make the claim; and describe the nature of the documents … in a manner that … will enable the other party to assess the claim." That is, it must log the information, not secretly assert privilege. And it must assert that privilege in a timely manner.

The ***knowing*** failure to comply with Rule 26(b)(5) constitutes an intentional waiver of privilege. *See, e.g.*, *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 106 (D.N.J. 2006) (a privilege log must be provided within a sufficient time after requests to preserve privilege); *Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, *38 (S.D. Ohio 2012) (failure to assert privilege in a "timely manner amounts to a waiver of that protection"); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (finding waiver of privilege where log was not filed until five months after the document request); *Get-A-Grip, II, Inc. v. Hornell Brewing Co.*, 2000 WL 1201385 (E.D. Pa. 2000) (finding waiver where the privilege log was approximately two months late); *Gloucester*, 38 F. Supp. 3d at 498 (failure to produce a privilege log factor in finding waiver over produced documents).

Here, CarePoint knowingly disregarded the requirements of Rule 26(b)(5). CarePoint produced the bulk of the CarePoint documents (and all but four of the CarePoint Claw Back documents) 24 months ago, in March 2024, pursuant to a Court-ordered deadline (ECF 79). It did not produce a privilege log at that time. Between July 2024 and October 2025, Barnabas requested that CarePoint produce a log no fewer than six times. To this day, CarePoint has not produced any privilege log concerning these productions.[6] Instead, CarePoint waited until Barnabas cited the Claw Back documents in the Joint Mandler Letter to serve a privilege log limited to those 33

---

[5] This letter is brought pursuant to Rule 502(b), which applies a simple negligence standard to the production of privileged material. But because these documents are also relevant to Barnabas's separate letter concerning subject matter waiver under Rule 502(a), Barnabas also explains how the higher "intentional waiver" standard is also met. It is important to note, however, that for purposes of this letter, Barnabas only needs to show simple negligence.

[6] In January 2025, CarePoint made a supplemental production of documents for two agreed-upon custodians from whom it failed to collect by the Court-ordered deadline. Eleven months later, on November 5, 2025, CarePoint produced a log for these two custodians, which it amended on November 10, 2025 (this log only covers 3.5 years of the decade-long relevant period). Ex. 3. CarePoint still has not produced a log for the other 27 custodians from whom it collected documents. As to the two late custodians, Barnabas believes that the log is both untimely and deficient. In any event, as reflected in the chart below, of the four Claw Back documents from these two custodians, three are identical to a ***Mandler Waiver Document***; and all four have been produced by multiple custodians ***without any Claw Back Request***.

Page 4

produced documents.  Since that belated log cannot cure CarePoint's *intentional* failure to comply with Rule 26(b)(5), it cannot claim inadvertence.[7]

Similarly, Mr. Modugno produced his documents to CarePoint in or around July 2024, pursuant to an agreement in which CarePoint would first conduct a privilege review of these documents, produce the non-privileged documents to Barnabas, and provide a log for any withheld documents within 14 days of receipt.  CarePoint expressly agreed to this process.  The deadline for CarePoint's log expired by August 6, 2024.  For over **five months**, CarePoint continued to refuse to produce the Modugno documents or provide any privilege log.  This failure is a waiver.[8]

Nor was that waiver cured when it finally served a computer-generated log in January 2025.  That log did not "describe the nature of the documents" in any meaningful way.  Specifically, the Modugno log contains the filename of the document (or subject line of the email) – such as "re: Letter" – where available.  *See* Ex. 24 (R00001386).  But it provided no indication of the legal advice that may have been sought or provided.  *U.S. v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464,

---

[7] *Relevant CarePoint Document Correspondence*.  The events relating to CarePoint Privilege Documents are reflected in the following correspondence:  Ex. 4 (7/8/24 Ltr. requesting data for exchange of priv. logs, putting CarePoint on notice that the CarePoint production contains "documents from the custodial files of [its] former general counsel," and requesting "confirmation that the process we agreed to with respect to Mandler also applies to CarePoint's own production," that Barnabas was under no further obligation to provide notice under Paragraph 13 of the Protective Order); Ex. 5 (7/19/24 Ltr. to CP, memorializing meet and confer providing confirmation); Ex. 6 (8/6/24 Ltr. to CP, requesting priv. log); Ex. 7 (1/7/25 Ltr. to CP, same); Ex. 8 (7/28/25 Ltr. to CP, same); Ex. 9 (8/12/25 Ltr. to CP, same); Ex. 10 (9/17/25 Ltr. to CP, same, and reiterating waiver); Ex. 11 (9/23/25 Ltr. from CP, noting that it devoted over 4,000 attorney hours to reviewing CP's production for privilege); Ex. 12 (10/15/25 Ltr. to CP, noting continued failure to produce log and re-iterating waiver); Ex. 13 (10/24/25 Ltr. from CP, promising log).

[8] *Relevant Modugno Document Correspondence*.  The events relating to Modugno Privilege Documents are reflected in the following correspondence:  Ex. 14 (5/15/24 Ltr. from CP, agreeing to "having Lou produce his documents to CarePoint" for a privilege review); Ex. 15 (5/17/24 Ltr. to CP, confirming that CarePoint "expressed a general willingness to comply with [the] process" that Lou produce his documents to CarePoint within two weeks, and within two weeks of production, CarePoint review for privilege and produce the remainder to Barnabas along with a privilege log pursuant to the Protective Order"); Ex. 4 (7/8/24 Ltr. to CP, seeking confirmation post-stay that CarePoint will have "14 days to make any privilege designation."); Ex. 5 (7/19/24 Ltr. to CP, memorializing confirmation); Ex. 6 (8/6/24 Ltr. to CP, noting expiry of agreed-upon deadline and asserting waiver over all Modugno documents); Ex. 16 (8/14/24 Ltr. from CP, referring to 14 day review deadline but declining to comply); Ex. 17 (8/28/24 Ltr. to CP, noting CP's failure to produce documents or logs); Ex. 18 (12/10/24 Ltr. to CP, noting continued failure to assert privilege); Ex. 7 (1/7/25 Ltr. to CP, same); Ex. 19 (1/23/25 email from CP, forwarding Modugno log); Ex. 20 (7/25/25 Ltr. to CP, detailing deficiencies in log and noting, pursuant to Paragraph 13 of the Confidentiality Order, that the production contains privileged documents); Ex. 21 (7/30/25 email from CP, failing to claw back documents or address the deficiencies in the Modugno log); Ex. 22 (8/12/25 Ltr. to CP, noting continued failure to claw back or address log deficiencies); Ex. 23 (9/17/25 Ltr. to CP, re-asserting waiver).

Page 5

474 (2d Cir. 1996) (providing examples where waiver is found based on log "descriptions and comments [that] simply do not provide enough information to support the privilege claim.").

After the bankruptcy-related stay lifted, Barnabas detailed the deficiencies in the log, noted that the production contained privileged documents, and re-asserted waiver. It wasn't until Barnabas began this joint-letter writing process that CarePoint attempted to cure the deficiencies with a revised privilege log, on February 11, 2026.[9] But CarePoint cannot cure its delay, nor can it undo an already-effectuated waiver. *See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (finding waiver when "Plaintiff's amended privilege log is essentially a concession that the initial privilege log was inadequate, and Plaintiff has not made any arguments to this court as to why the original privilege log was adequate."); *see also, e.g.*, *Murphy v. Twp. of Millstone*, 2022 WL 2118185, \*15 (D.N.J. 2022) (rejecting claw back where producing party's log "fails to meet the standard of a proper privilege log.").

*CarePoint's Consent to the Use of Privileged Documents Is an Affirmative Waiver*. Even aside from CarePoint's non-compliance with Rule 26(b)(5), CarePoint knowingly made available privileged documents by *consenting* to their use.

**The CarePoint Document Consent**. In July 2024, Barnabas put CarePoint on notice that its production contained privileged information, including "documents from the custodial files of [its] former general counsel." Ex. 4. The parties agreed during the July 8, 2024 meet and confer that the same process applicable to the Mandler documents would apply; namely, that Barnabas was free to review and use all produced documents and was under no further obligation under the Confidentiality Order to provide notice about specific privileged information in the production.[10] *See* Ex. 5. Over the next sixteen months, CarePoint did not conduct any privilege review of these

---

[9] An earlier draft of this letter noted that "To this day, CarePoint still has not responded or taken any corrective measures to produce a log that complies with Rule 26(b)(5)."

[10] *Relevant Mandler Document Correspondence*. With respect to the Mandler documents, CarePoint agreed on April 23, 2024 that Barnabas may review and use the documents, and it confirmed that Barnabas has no further obligation under Paragraph 13 of the Protective Order to provide any further notice to CarePoint with respect to any document in the Mandler production. *See* Ex. 25 (4/9/24 Ltr. to CP providing notice of privilege); Ex. 26 (4/17/24 Ltr. to CP putting CP on notice of intent to assert both waiver under 502(b) over non-clawed back documents and subject matter "as to any document that falls within the scope of 502(a)); Ex. 27 (4/23/24 Ltr. from CP, "withdraw[ing] its sequestering demand," and noting that it does not "seek to interfere or prevent Barnabas from preparing its defense based on information it subpoenaed from third-party" while it undertakes its own privilege review); Ex. 28 (5/15/24 Ltr. to CP, requesting confirmation that "Barnabas has no further obligation under Paragraph 13 of the Protective Order"); Ex. 29 (5/15/24 Ltr. from CP, confirming); Ex. 30 (7/8/24 Ltr. to CP reminding CP of its duty to conduct a privilege review); Ex. 31 (8/14/24 Ltr. from CP, providing priv. log); Ex. 32 (8/15/24 Ltr. to CP, confirming no obligation to sequester documents on the Mandler priv. log).

Page 6

documents, and did not claw any back, including those Barnabas specifically identified as privileged.

This is the *same* agreement the Court previously found constituted a waiver of privilege, extended to cover the CarePoint production in addition to the Mandler production. As Judge Waldor explained in rejecting CarePoint's claw back request for the Mandler documents:

> "Frankly, I don't think [CarePoint] would ever lay back on litigating a claw back if it was sufficiently important, not just to rely on giving your adversary all your documents and say, 'Okay. You look at them, and we'll assert privilege when we feel like.' It's kind of bizarre….
>
> I just can't understand how you sort of lie – or lay in wait for your adversary to inspect your insides and then decide to assert something when you're ready to do it….
>
> [T]here's no clawback at this point…. [T]he way this case has been litigated by CarePoint has been sloppy, at best…. I do consider you've waived your right to assert privilege over any of these documents. ***And they can use them***."

*See* June 3, 2025 Hrg. Tr. 15-16, 20. While CarePoint appealed that Order to Judge Padin, it remains binding and effective and should be enforced unless and until overturned. And because the same agreement applies to the CarePoint Claw Back Documents, this Court should similarly find that CarePoint has waived privilege. Put simply, unless this Court reverses Judge Waldor's ruling that the production was not inadvertent for purposes of Rule 502(b)(1), it would have to similarly find that the CarePoint-produced Claw Back Documents have been waived.

**The Modugno Document Consent**. The court should similarly find that there has been no inadvertent production of the Modugno documents based on *implied* consent and its gross negligence. For these documents, CarePoint conducted a privilege review before they were produced to Barnabas.

CarePoint understood the significance of the Modugno production. It knew Modugno was the lead outside lawyer for CarePoint, and was involved in many of the central strategic business decisions relating to this case. It took CarePoint five months to review Modugno's production. In January 2025, it then produced a log withholding 50,000 documents from Barnabas. CarePoint made an intentional decision about which documents reflected business advice and which involved legal advice.

After CarePoint produced the documents, Barnabas notified CarePoint that the production contained potentially privileged information. On July 25, 2025, Barnabas wrote to CarePoint:

Page 7

> "We…note that the Modugno production appears to contain some documents that arguably contain privileged information.  *See* CP_MODUGNO_00255627.
>
> We do not know why CarePoint chose to assert privilege over some but not all such documents in the Modugno production, but we believe this also constitutes waiver, particularly as the Court has already found CarePoint has been delinquent in protecting its privilege….
>
> Nonetheless, we will sequester this document for two weeks, pursuant to Paragraph 13 of the Protective Order (ECF 73)."  Ex. 20.

CarePoint did not issue a claw back request, either as to the specific identified documents or more generally.  Instead, it continued to allow Barnabas to review and use the documents, and – as with the CarePoint and Mandler documents – asserted it might address the issue at some point in the future.  It never did.  After following up several times, Barnabas re-asserted waiver on September 17, 2025, 13 months after CarePoint's initial failure to comply with Rule 26(b)(5), and two months after being put on notice of the production of privileged information.  *D'Onofrio*, 2012 WL 1949854, at \*12 (finding waiver because Rule 502(b) "'require[s] the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.'") (*quoting* Fed. R. Evid. 502(b), Explanatory Note).

During this time, Barnabas continued to use these documents, including in filings with the Court.  On November 14, 2025, Barnabas filed its Proposed Answer, Counterclaim, and Third-Party Complaint, *quoting* a Modugno document in which the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 322-1, 323-1, ¶ 51 (quoting CP_Modugno_00066403).  CarePoint received this unredacted Proposed Answer, and did not even seek to seal it, let alone attempt to claw back the "Not Fraud" document until Barnabas used it again in the Joint Mandler Letter.

This conduct constitutes knowing disclosure of privileged information.  It certainly constitutes "gross negligence."  *Ciba–Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 411 (D.N.J. 1995) ("while an inadvertent disclosure is, by definition, an unintentional act, if such a disclosure results from gross negligence, ... the disclosure [will be deemed] to be **intentional**, thus constituting a waiver of the privilege.");  *Bensel v. Air Line Pilots Ass'n*, 248 F.R.D. 177, 180 (D.N.J. 2008) (same); *Crothall v. Mancini Custom Homes*, 2008 WL 11383736, \*2 (D.N.J. 2008) (same); *Maldonado v. New Jersey*, 225 F.R.D. 120, 128 (D.N.J. 2004) (same).

Page 8

### 2.    *CarePoint Failed to Take "Reasonable Steps" to Prevent Disclosure of Privileged Information.*

Even if CarePoint's production of the Claw Back Documents was "inadvertent," it must still show that it took reasonable steps prior to disclosure to prevent it.  That is, it must show that each of these documents slipped through the cracks despite having exercised due care.  CarePoint cannot do this.  *Peterson*, 262 F.R.D. at 429 ("Parties must recognize that there are potentially harmful consequences if they do not take minimal precautions to prevent against the disclosure of privileged documents.").

With respect to the CarePoint documents, CarePoint has yet to explain what process, if any, it used to search for or withhold privileged documents.  The fact that CarePoint has yet to produce any privilege log for at least 10 years of the relevant period or for 27 of its 29 custodians suggests that it did not undertake a reasonable search for privilege.  Indeed, for well over a year, CarePoint repeatedly emphasized that it would not put resources towards conducting *any* privilege review.[11]  Even today, it still has not submitted any affidavit or declaration, or even described, its privilege review process.  The absence of such evidence means that it cannot satisfy its burden of showing that it took reasonable steps to prevent disclosure.  *Wise v. Washington Cnty.*, 2013 WL 4829227, *2 (W.D. Pa. 2013) ("Defendants have presented little evidence about the precautions taken to prevent the inadvertent disclosure"); *Gloucester*, 38 F. Supp. 3d at 498 (same; collecting cases).

Indeed, even a cursory review of the CarePoint Claw Back Documents shows that they would have been captured by any reasonable screening process.  These documents reflect communications directly with Modugno; with CarePoint's general counsel; and/or prominent national and regional law firms, such as Wilson Sonsini; Patterson Bellnap; Archer Law; Trif Law; and Chiesa Shahinian & Giantomassi.[12]  All these people and firms appear on the Modugno privilege log, meaning that the reviewers knew who they were and that they were involved with privileged communications.  The collection also includes extensive legal memoranda from outside counsel; counsels' thoughts on the opposing party's legal briefs; and other requests for advice from

---

[11] *See, e.g.*, Ex. 27 (4/23/24 Second Ltr. from CP, noting "it is not possible for CarePoint to review Mr. Mandler's production at this time.").

[12] *See, e.g.*, Ex. 1 PrivLog_015055 (CP_0006478473); PrivLog_015055 (CP_0006478478); PrivLog_015054 (CP_0006478495); PrivLog_015053 (CP_0006484776); PrivLog_015057 (CP_0006485130); PrivLog_015046 (CP_0006681523); PrivLog_015041 (CP_0006681528); PrivLog_015040 (CP_0006981211); PrivLog_015045 (CP_0007166957); PrivLog_015043 (CP_0007210316); PrivLog_015044 (CP_0007210317); PrivLog_015052 (CP_11260586).

Page 9

"litigation counsel" or discussions of "legal points."[13]  They contain draft discovery requests, including Requests for Production, Requests for Admissions, and draft contention interrogatories.[14]

No reasonable privilege review process would have allowed these documents through without a lawyer's determination that they ought to be produced.  *See Peterson*, 262 F.R.D. at 429 (finding waiver where the documents "are exchanges between plaintiff and his counsel," which "warranted a significant level of scrutiny."); *D'Onofrio*, 2012 WL 1949854, at *12 (same); *Murphy*, 2022 WL 2118185, at *16 (same); *Gloucester*, 38 F. Supp. 3d at 498 (same).

The same applies to the Modugno Documents.  Again, CarePoint has not described its privilege review process.[15]  All we know is that CarePoint created a computer-generated privilege log to withhold 50,000 documents, in what appears to have been a search term – not human – review process, and reflects only meta data.[16]

Indeed, the first Modugno Claw Back Document is an email among no fewer than four different outside law firms:  Modugno; Wilson Sonsini; Dilworth Paxon; and Richards, Layton & Finger, ████████████████████████████████████████.[17]  Other documents show additional outside firms, like Fox Rothschild; K&L Gates; and Okin Holliander.[18]

---

[13]  *See, e.g.*, PrivLog_015 (CP_0006484776); PrivLog_015 (CP_0006681528); PrivLog_015 (CP_0007210317); PrivLog_015 (CP_11260586).

[14]  PrivLog_015055 (CP_0006478478); PrivLog_015054 (CP_0006478495); PrivLog_015057 (CP_0006485130).

[15]  That CarePoint conducted a privilege review does not show that the review process was reasonable, and thus, does not satisfy Rule 502(b)(2).  *Peterson*, 262 F.R.D. at 429 n.4 ("the Court is ruling that a general statement that a privilege review was done, without any supporting details, is not informative and is entitled to little weight"); *Murphy*, 2022 WL 2118185, at *15 (that party "spent an exorbitant amount of time reviewing its production is **not telling** of [its] effort to prevent a disclosure"); *see also Gilson v. Pa. State Police*, 2015 WL 403181, *3 (W.D. Pa. 2015) (finding insufficient representation that the producing party "reviewed the documents … 'page by page'").

[16]  The only column in the Modugno log that does not reflect meta data is the "PrivReason_edit" column.  But that column only contains three descriptions, identifying the party asserting the privilege (*i.e.*, CarePoint, using the designation, "Atty Privileged Communication;" Mandler, using the designation, "Privilege Asserted by Counsel for Mandler;" and Garipalli or Lawler, using the designation "Garipalli/Lawler Assertion.").  These designations do not disclose the nature or type of the privilege claim, and are not tailored to the content of the document.

[17]  Ex. 2 Modugno_PrivLog_000001 (CP_Modugno_00020117).

[18]  Modugno_PrivLog_000002 (CP_Modugno_00066081); Modugno_PrivLog_000003 (CP_Modugno_00066101); Modugno_PrivLog_000004 (CP_Modugno_00066181); Modugno_PrivLog_000006 (CP_Modugno_00142872); Modugno_PrivLog_000007 (CP_Modugno_00143669); Modugno_PrivLog_000009 (CP_Modugno_00226994); Modugno_PrivLog_000010 (CP_Modugno_00226998); Modugno_PrivLog_000011 (CP_Modugno_00234180);

Page 10

Another series of documents – marked "Attorney Client Privileged" – shows how Garipalli chastised his general counsel and outside counsel because he is ███████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████.[19] Other documents talk about ██████████████████████ █████████████████████████████.[20] Another document – involving two of CarePoint's outside law firms – contained a detailed "Attorney Client Privileged"/"Work Product" memo and subsequent email addressing a ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████[21] Again, any reasonable review process would have prevented their disclosure.

### 3. *CarePoint Did Not Take Reasonable Steps to Rectify the Error After Being Put on Notice of It.*

CarePoint similarly cannot prove that it took "reasonable steps" to rectify the errors of its review, if indeed, they were errors. *D'Onofrio*, 2012 WL 1949854, at *12 (finding waiver where defendants "did not take reasonable steps to remedy their error").

Since July 2024, CarePoint has been on notice that its production of the CarePoint Claw Back documents contained privileged information. And since July 2025, it was on notice that its production of the Modugno documents contained privileged information. In neither case did CarePoint claw back the specific documents Barnabas highlighted or take any steps *whatsoever* to investigate the reason for the error or cure it. It did exactly what Judge Waldor said CarePoint was not permitted to do: "lay in wait" until Barnabas sought to use the document against it.

That is not a reasonable rectifying action. *Id*. at *12 (defendants "should have been aware that something was amiss with their document production long before Plaintiff relied on three privileged documents as part of his reply brief."); *Murphy*, 2022 WL 2118185, at *16 ("delay and efforts taken to rectify the disclosure, also weigh in favor of a waiver."); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F.Supp. 1172, 1178 (E.D. Pa. 1996) (failure to provide notice

---

Modugno_PrivLog_000012 (CP_Modugno_00234184); Modugno_PrivLog_000013 (CP_Modugno_00271521); Modugno_PrivLog_000015 (CP_Modugno_00336192).

[19] Modugno_PrivLog_000005 (CP_Modugno_00066403).

[20] Modugno_PrivLog_000006 (CP_Modugno_00142872); Modugno_PrivLog_000007 (CP_Modugno_00143669).

[21] Modugno_PrivLog_000009 (CP_Modugno_00226994); Modugno_PrivLog_000010 (CP_Modugno_00226998); Modugno_PrivLog_000011 (CP_Modugno_00234180).

Page 11

of inadvertent disclosures for one year and three months constituted a waiver of privilege); *Wise*, 2013 WL 4829227, at *3 (same).

The fact that CarePoint's Claw Back Documents are limited to those that Barnabas sought to use – and did use in a procedure CarePoint consented to – demonstrates that CarePoint has not taken reasonable steps to cure the error. If CarePoint took any steps to investigate how these clearly privileged documents escaped the supposedly rigorous privilege review process CarePoint used, it certainly did not disclose it or attempt to fix any problems.

The strategic use of claw back is also apparent because CarePoint did not bother to look to see whether identical versions of these Claw Back Documents, or branches of the same email string exist. This is something any e-discovery vendor could check at the press of a button. That it did not take this step, let alone try to find other privileged documents on the same subject matter, shows its claw back was purely a litigation-driven strategic decision. Indeed, as shown in the chart below, 20 of the 33 Claw Back Documents are identical or nearly identical to a document that has been produced *without* a claim of privilege.[22]

| No. | *Claw Back Log Entry* | *Claw Back Document* | *Identical or Near Identical Document* |
|---|---|---|---|
| 1. | PrivLog_015047 | CP_0005570697 | ***Eight Similar Documents*** CP_0006560880; CP_0006593074; CP_0006619922 CP_0008315702; CP_0008330360; Lawler_02749; Lawler_07208; Mandler0338365 |
| 2. | PrivLog_015048 | CP_0005570701 | ***Eight Similar Documents*** CP_0006560884; CP_0006593078; CP_0006619926; CP_0008315706; CP_0008330364; Lawler_02753; Lawler_07209; Mandler0338369 |
| 3. | PrivLog_015055 | CP_0006478473 | ***Seven Similar Documents*** CP_0006478517; CP_0006478561; CP_0006478568; CP_10632618; CP_10632624; CP_11295057; CP_11296470 |

---

[22] In clawing back these documents, CarePoint did not disclose whether the Court had already found that CarePoint had waived privilege over these documents because they were identical to a Mandler Waiver Document. As shown in red in the following chart, at least 7 of the 33 Claw Back Documents are already subject to the Waiver Order. As to these seven documents, CarePoint's claw back notice constitutes circumvention of this Court's Order.

Page 12

| No. | Claw Back Log Entry | Claw Back Document | Identical or Near Identical Document |
|---|---|---|---|
| 4. | PrivLog_015056 | CP_0006478478 | **One Similar Document** CP_0006478522 |
| 5. | PrivLog_015054 | CP_0006478495 | **One Similar Document** CP_0006578539 |
| 6. | PrivLog_015053 | CP_0006484776 | **Six Similar Documents** CP_0006484935; CP_0006485003; CP_10673978; CP_11374203; CP_11549545; CP_11550239 |
| 7. | PrivLog_015057 | CP_0006485130 | **One Similar Document** CP_11549672 |
| 8. | PrivLog_015046 | CP_0006681523 | |
| 9. | PrivLog_015041 | CP_0006681528 | **One Similar Document** CP_0006681498; CP_000668112 |
| 10. | PrivLog_015040 | CP_0006981211 | |
| 11. | PrivLog_015045 | CP_0007166957 | **Fifteen Similar Documents** CP_0007166969; GARIPALLI-RWJB-0005688; Mandler0180137; Mandler0180238; Mandler0180297; Mandler0180310; Mandler0180324; Mandler0180370; Mandler0180495; Mandler0180879; Mandler0180905; Mandler0180937; Mandler0181038; Mandler0181053; Mandler0181071 |
| 12. | PrivLog_015043 | CP_0007210316 | **Seven Similar Documents** CP_0007209973; CP_0007210306; CP_0007210307; CP_0007210308; CP_0007210310; CP_0007210312; CP_0007210314 |
| 13. | PrivLog_015044 | CP_0007210317 | **One Similar Document** CP_0007209974 |
| 14. | PrivLog_015042 | CP_0008327350 | **Six Similar Documents** CP_0006591954; Mandler0291334; CP_0006591986; CP_0008326772; Mandler0293530 |
| 15. | PrivLog_015049 | CP_10086892 | **One Similar Document** Mandler0384666 |

Page 13

| No. | Claw Back Log Entry | Claw Back Document | Identical or Near Identical Document |
|---|---|---|---|
| 16. | PrivLog_015050 | CP_10099853 | *Five Similar Documents* GARIPALLI-RWJB-0004094; Mandler0384877; CP_11134322; GARIPALLI-RWJB-0007033; Mandler0385001 |
| 17. | PrivLog_015051 | CP_11135925 | *Three Similar Documents* CP_11134322; GARIPALLI-RWJB-0007033; Mandler0385001 |
| 18. | PrivLog_015052 | CP_11260586 | *Three Similar Documents* CP_0006598110; CP_0008328934; CP_10707256 |
| 19. | Modugno_PrivLog_000001 | CP_Modugno_00020117 | |
| 20. | Modugno_PrivLog_000002 | CP_Modugno_00066081 | *One Similar Document* CP_Modugno_00066174 |
| 21. | Modugno_PrivLog_000003 | CP_Modugno_00066101 | |
| 22. | Modugno_PrivLog_000004 | CP_Modugno_00066181 | |
| 23. | Modugno_PrivLog_000005 | CP_Modugno_00066403 | |
| 24. | Modugno_PrivLog_000006 | CP_Modugno_00142872 | |
| 25. | Modugno_PrivLog_000007 | CP_Modugno_00143669 | |
| 26. | Modugno_PrivLog_000008 | CP_Modugno_00143672 | |
| 27. | Modugno_PrivLog_000009 | CP_Modugno_00226994 | |
| 28. | Modugno_PrivLog_000010 | CP_Modugno_00226998 | *Three Similar Documents* CP_Modugno_00178695; CP_Modugno_00212398; CP_Modugno_00213637 |

Page 14

| No. | Claw Back Log Entry | Claw Back Document | Identical or Near Identical Document |
|-----|--------------------|--------------------|--------------------------------------|
| 29. | Modugno_PrivLog_000011 | CP_Modugno_00234180 | **Thirteen Similar Documents** CP_Modugno_00234065; CP_Modugno_00234071; CP_Modugno_00234077; CP_Modugno_00234083; CP_Modugno_00234088; CP_Modugno_00234167; <span style="color:red">Mandler0385439; Mandler0385453; Mandler0385457; Mandler0385462; Mandler0385467; Mandler0385482; Mandler0385486</span> |
| 30. | Modugno_PrivLog_000012 | CP_Modugno_00234184 | |
| 31. | Modugno_PrivLog_000013 | CP_Modugno_00271521 | |
| 32. | Modugno_PrivLog_000014 | CP_Modugno_00336190 | |
| 33. | Modugno_PrivLog_000015 | CP_Modugno_00336192 | **Seven Similar Documents** CP_0006582409; CP_0006584851; CP_10492605; CP_10551027; CP_10854842; CP_10855050; <span style="color:red">Mandler0361512</span> |

**B.      The Mandler Waiver Appeal Does Not Moot or Warrant Delay of This Claw Back Dispute.**

CarePoint asks this Court to enforce its claw back request because it is "premature" to address privilege issues until Judge Padin rules on its appeal of the Mandler Waiver Order. But CarePoint's prematurity objection does not relieve CarePoint of its burden under Rule 502(b).[23]

CarePoint's claw back request does not concern the Mandler documents; it concerns documents produced from its own files and those of its outside counsel after a privilege review. CarePoint must, therefore, independently show that its production of *these* documents was

---

[23] CarePoint also cites the Court's suggestion at the January 15th status conference that the parties wait to file a dispute that may be impacted by Judge Padin's ruling. But absent an Order staying Barnabas's obligation to timely raise disputes, CarePoint could still claim waiver from delay. Moreover, as Barnabas noted at the status conference, this dispute also raises issues not impacted by the Mandler Waiver dispute.

Page 15

inadvertent, that it acted reasonably to protect privilege in the first instance, and that it took appropriate steps to rectify the error.

The Mandler appeal does not speak to CarePoint's process in reviewing the Claw back Documents, or its decision to lie-in-wait until after Barnabas relied on them before clawing them back.  For these reasons, even a *reversal* of the Mandler Waiver Order would not moot this claw back dispute.

In contrast, deferring ruling on CarePoint's claw back request prejudices Barnabas. Pursuant to the Protective Order, Barnabas has sequestered these documents, making them unavailable for further use – in a motion, deposition, or any other dispute – until there is a ruling. Delayed justice is denied justice.  And so, we ask that the Court rule on CarePoint's claw back request.

*      *      *

For these reasons, CarePoint's claw back request should be denied.

## II.    THE CAREPOINT LITIGATION TRUST'S POSITION

Over the Trust's objection, and contrary to the Court's clear instructions at the last status conference, Barnabas has insisted on filing this joint letter raising a privilege dispute that directly implicates the pending privilege appeal before Judge Padin.  Neither the parties nor the Court should spend time or money briefing complex privilege issues that will inevitably be significantly impacted by Judge Padin's decision.  Barnabas's request to file a motion challenging the Trust's assertion of privilege, which relies on the same arguments for privilege waiver that are currently before Judge Padin, should be denied as premature until after Judge Padin rules.

The specific issue Barnabas seeks to raise in *this* letter directly stems from the joint letter the parties *previously* submitted on the Mandler privilege waiver, and the use of documents that were subject to the Trust's pending privilege appeal at a deposition of Mr. Mandler.  (ECF 350, "Mandler Joint Letter").  While the Parties were exchanging drafts of that letter, Barnabas cited numerous documents in its portion that are subject to the Mandler Privilege Appeal as well as 33 documents produced by CarePoint and third-party Lou Modugno. The Trust, after reviewing the documents cited by Barnabas, exercised its rights under the Discovery Confidentiality Order and served a privilege log on Barnabas on December 10, 2025, clawing back those 33 documents. Barnabas seeks to challenge the Trust's clawback[24] of documents that are privileged and were

---

[24] Similarly, Barnabas is also arguing in a separate joint letter that there has been a broad subject matter waiver of privilege. The Trust also believes that the issue of subject matter waiver is premature at this juncture.

Page 16

inadvertently produced by CarePoint, the Trust's predecessor in this litigation. Barnabas's challenge is premature at this juncture and its request should be denied.

Barnabas's challenge of the Trust's clawback is premature because of the pending Mandler Privilege Appeal. In fact, this Court acknowledged as much during the recent January 15, 2026, status conference. During that Conference, the Court made a ruling on the Mandler Joint Letter and also stated:

> "I don't find any prejudice in holding off on Mr. Mandler's deposition until Judge Padin has decided the relevant appeal. But *I am not inclined to permit motion practice on issues related to the privilege waiver while that appeal is pending with Judge Padin. It's a moving target*… because Judge Padin's decision could either moot or modify the issues that the parties would seek to have this Court consider."

ECF 361 at 6:15-23 (emphasis added). Barnabas then specifically raised this proposed joint letter that it had in the works, as well as its proposed joint letter regarding subject matter waiver, and this Court stated "if there is a dispute that you're getting ready to raise that would be impacted [by] Judge Padin's ruling, then *I would ask, for efficiency's sake, that you wait for the ruling*." *Id.* at 14:18-21 (emphasis added).

It is obvious and undeniable that the Mandler Privilege Appeal bears directly on the Trust's December 10, 2025 clawback that Barnabas now seeks leave to challenge. In Barnabas's section of this joint letter, it repeatedly references and relies on the same arguments that it made in connection with the finding of waiver related to the Mandler documents, which are before Judge Padin. For example:

- Barnabas argues that CarePoint "consented" to Barnabas's use of its privileged documents because, it claims, "The parties agreed that the same process applicable to the Mandler documents would also apply to the CarePoint produced documents. . . ." *See supra* at 5. If Judge Padin finds that that "process" did not constitute a waiver as to the Mandler documents, then it follows it cannot be a waiver here, either. But we cannot know that until Judge Padin rules.

- Barnabas argues that "This is the *same* agreement that the Court has already found constituted a waiver of privilege, only extended to cover the CarePoint production in addition to the Mandler production." *See supra* at 6. Whether that "extension" is warranted inevitably turns on what Judge Padin rules.

- Barnabas quotes extensively from Judge Waldor's waiver finding and asks this Court to apply that finding to the clawback documents without waiting for Judge Padin's ruling: "While [the Trust] appealed that Order to Judge Padin, it remains binding and effective and

Page 17

should be enforced unless and until overturned." *See supra* at 6. But that is exactly contrary to what this Court ruled at the January 15 status conference, when the Court instructed the parties not to raise disputes that were impacted by Judge Padin's ruling at this time, for efficiency reasons.

- Barnabas argues that CarePoint should be found to have not taken reasonable steps to protect the privilege as to the documents subject to the clawback because, according to Barnabas, "It did exactly what Judge Waldor said CarePoint was not permitted to do. . . ." *See supra* at 10. Yet again, whether Judge Waldor's conclusions in support of her waiver finding were proper is precisely what is at issue before Judge Padin.

- Barnabas includes a chart purporting to compare the clawed back documents to other similar documents, which it claims supports its waiver argument, highlighting in red Mandler documents that were found subject to waiver, and which are now subject to the Mandler Privilege Appeal. *See supra* at 12-13. Whether the similarity of those documents supports waiver, of course, turns on whether Judge Padin agrees that privilege was waived as to those documents; if she rejects that claim, these privileged documents actually refute Barnabas' arguments.

Notwithstanding this obvious and extensive overlap with the issues before Judge Padin—none of which Barnabas contests—Barnabas claims that the ruling by Judge Padin on the Mandler appeal will not necessarily moot the relief they seek here as to the clawed back documents. But that is mere supposition; the legal analysis that Judge Padin applies to privilege waiver issues with respect to the Mandler documents will obviously impact how this Court should analyze privilege waiver issues as to other sets of documents that Barnabas seeks to challenge. Until Judge Padin rules, that governing analysis is, as this Court recognized, "a moving target." ECF 361 at 6:20. Neither the Parties, nor the Court, should engage in a guessing game about where the "target" will actually "move" until the ruling is issued.

More broadly, it is plain that Barnabas's strategy is to manufacture and instigate privilege waiver arguments rather than litigate this case on the merits. Whatever one thinks of that distract-and-avoid strategy, there is no doubt that the Court and the parties will be better positioned to efficiently address these arguments once they have the benefit of Judge Padin's ruling. Litigating these disputes through an unending string of (lengthy) letter briefs, before Judge Padin has ruled, all but guarantees that they will have to be ***relitigated*** a second time ***after*** that ruling. The privilege issues that Barnabas raises in this case are intimately tied with the Mandler Privilege Appeal, and Barnabas's request to raise related issues is both premature and a blatant attempt to circumvent Judge Padin. Nor is there any harm to Barnabas in doing so. While Barnabas perfunctorily claims it would be prejudiced by waiting for Judge Padin's ruling, it cannot identify any such harm. The best it can do is argue by aphorism that "Delayed justice is denied justice." *See* supra at 15. Here, however, the "justice" that Barnabas (and the Trust) is entitled to is dependent on Judge Padin's

Page 18

ruling.  Moreover, this Court has already made clear that the schedule in this case will be extended, so it is not surprising Barnabas could not identify any actual injury.

For these reasons, Barnabas's challenge to the Trust's December 10, 2025, clawback should be denied.[25]

Respectfully submitted,

/s/ Robert M. Hirsh                              /s/ William T. Walsh

Counsel for the CarePoint Litigation Trust       Counsel for RWJ Barnabas Health Inc.

---

[25] If the Court decides it wishes to proceed with briefing on this issue even before Judge Padin's ruling, the Trust will be pleased to address the issues in response to the motion Barnabas files.  Suffice it to say that the Trust vigorously disagrees with the legal and factual characterization set forth in Barnabas's section of the joint letter above.  The story Barnabas tells is woefully incomplete.  Among other things, it ignores the significant efforts that CarePoint undertook, even as it teetered on the edge of bankruptcy, to make reasonable privilege determinations and work with Barnabas to come up with a process that would allow CarePoint to preserve its privilege claims.  Over and over again, Barnabas rejected compromises and made premature and unreasonable claims of waiver.  Barnabas also ignores the lengthy period during which discovery in this case was stayed.  And Barnabas fails to acknowledge CarePoint's repeated assertions of privilege, even as it attempted to work with Barnabas to address disputed privilege issues.  A full and fair recitation of the facts and circumstances will show that the relief Barnabas seeks to overturn the clawback should be rejected.