*Via ECF*

Hon. Cari Fais, U.S.M.J.
U.S. District Court for the District of New Jersey

> Re:    *The CarePoint Litigation Trust v. Barnabas,* Case No. 22-cv-05421 (D.N.J.)
> *Dispute Concerning CarePoint's Second Claw Back Request*

Dear Judge Fais:

Barnabas and The CarePoint Litigation Trust submit this joint letter to address a dispute concerning documents that are the subject of a claw back request.[1]

## I.    BARNABAS'S POSITION[2]

CarePoint again uses the Protective Order's claw back provision as sword and shield to prevent Barnabas from litigating the merits of CarePoint's privilege waiver. This follows CarePoint's prior effort to prevent Barnabas from raising a dispute with the Court by clawing back 33 documents cited in a draft joint letter on the waiver issue.

Now, CarePoint is using the same tactic to claw back the over 500 documents Barnabas cited in support of its joint letter asserting subject matter waiver (the "Joint Subject Matter Waiver Letter"). The tactic of clawing back documents once Barnabas seeks to affirmatively rely on them is improper and inconsistent with the claw back provision of Rule 502(b). CarePoint's claw back demand should be overruled.

For many months, the parties have conferred over whether CarePoint committed subject matter waiver by producing privileged information to Barnabas. After reaching impasse, on January 6, 2026, Barnabas served its portion of the Joint Subject Matter Waiver Letter on CarePoint. Barnabas supported its position by citing 500 produced privilege documents.

In an effort to pull the rug out from under Barnabas, before responding to the joint letter, CarePoint sent a one-sentence email, asserting it is "clawing back privileged documents that [Barnabas] identified on January 6, 2026." Barnabas timely challenged this request.

As with CarePoint's First Claw Back Request, ECF 381, CarePoint has not satisfied the pre-requisites for claw back under Rule 502(b). Barnabas has described CarePoint's failure in detail in the First Claw Back request, and will not repeat the facts here. In a nutshell, however, CarePoint has not shown that the initial production of documents was inadvertent; that it took

---

[1] Pursuant to L. Civ. R. 37.1, the parties certify that they met and conferred in good faith via Zoom and written correspondence, but have been unable to resolve their dispute.

[2] Unless otherwise noted, all emphasis added, all internal citations and quotation marks omitted, and capitalizations conformed without brackets.

Page 2

reasonable steps to prevent their initial production; or that it acted reasonably after being put on notice of its error.  CarePoint has not denied any of this.

Instead of defending its conduct on the merits, CarePoint argues – as it did before – that the dispute is "pre-mature" because of the Mandler Waiver Appeal.  But its prematurity objection is *not* a justification for failing to respond on the merits.  No aspect of the Mandler Waiver Appeal will supply the missing 502(b) facts CarePoint refuses to provide for these productions.  The documents at issue here concern materials produced from CarePoint's own files or Modugno's files *after conducting a privilege review*.  The focus of the Rule 502(b) inquiry is squarely on the reasonableness of its actions with respect to these documents—not CarePoint's failings regarding the Mandler documents.

Accordingly, the Court should reject CarePoint's attempt to claw back these documents.

## II.    THE CAREPOINT LITIGATION TRUST'S POSITION

This is the third joint letter in the last few months Barnabas has insisted on filing over issues this Court has stated should wait until adjudication of the Trust's Appeal of Judge Waldor's June 3, 2025 Privilege Waiver Order [ECF 302] (the "Mandler Waiver Appeal").  As with both prior letters—the Joint Subject Matter Waiver letter and the joint letter on the Trust's first claw back request [ECF 381] ("First Joint Letter")—the Trust objects to Barnabas prematurely raising these issues in contravention of the Court's instructions.[3]

The arguments Barnabas makes in this joint letter are a mirror image of those Barnabas raised in the First Joint Letter.  This specific dispute arises from Barnabas's insistence on citing and filing privileged documents in its Joint Subject Matter Letter.  While the Parties were exchanging drafts of the Joint Subject Matter Letter, Barnabas cited numerous documents in its portion that are subject to the Mandler Waiver Appeal.  The Trust, after reviewing the documents cited by Barnabas, exercised its rights under the Discovery Confidentiality Order [ECF 73] and served two privilege logs on Barnabas on January 20, 2026, clawing back those documents.  The seemingly never-ending nature of these Russian-doll like privilege disputes only highlights the inefficiencies caused by Barnabas's refusal to wait for resolution of the Mandler Waiver Appeal.

Barnabas's challenge to the Trust's January 20, 2026 claw back should be denied for the same reason that Barnabas's challenge to the Trust's December 10, 2025 claw back should be denied, which the Trust outlined in the First Joint Letter. [ECF 381 at 18 n.25].  As Your Honor stated during the January 15, 2026 status conference: "I am not inclined to permit motion practice on issues related to the privilege waiver while that appeal is pending with Judge Padin." [ECF 361 AT 6:15-23].  And again: "If there is a dispute that you're getting ready to raise that would be

---

[3] Despite this objection, the Trust participated in the writing of all three joint letters in the spirit of negotiation and open communication that this Court emphasized during the October 15, 2025 status conference.

Page 3

impacted [by] Judge Padin's ruling, then I would ask, for efficiency's sake, that you wait for the ruling." *Id*. at 14:18-21.

Like prior letters, Barnabas again questions whether the Trust can establish disclosure was inadvertent under Fed. R. Evid. 502(b). That issue is on appeal to Judge Padin as we speak in the Mandler Waiver Appeal. [ECF 302, 314, 316]. Thus, while the Trust reserves the right to litigate the dispute regarding its second clawback request if the Court denies the Mandler Waiver Appeal, it is undisputed that the resolution of the Mandler Waiver Appeal is "related to" and will "impact" the issues Barnabas seeks to raise here. [ECF 361 AT 6:15-23]. For these reasons and the reasons outlined in the First Joint Letter, Barnabas's challenge to the Trust's January 20, 2026 claw back should be denied.[4]

Respectfully submitted,

*/s/ William T. Walsh*

*Counsel for the CarePoint Litigation Trust*

*/s/ Robert M. Hirsch*

*Counsel for RWJ Barnabas Health Inc.*

---

[4] Even so, and as the Trust stated in its portion of the First Joint Letter [ECF 381 at 18 n.25], if the Court proceeds with briefing on this privilege issue before Judge Padin's ruling, the Trust will be pleased to address these issues in response to the motion Barnabas files. In addition to the arguments that the Trust outlined in the First Joint Letter, *see id.*, Barnabas's Rule 502(b) argument ignores the basic principle, recognized in this district, that deficiencies in a privilege log do not inherently result in a waiver of privilege. *See, e.g. Margulis v. Hertz Corp.*, No. 14-cv-1209, 2017 WL 772336, at *4 (D.N.J. Feb. 28, 2017) (holding service of deficient log is not waiver because, "given how important the privilege is, and how much time has already been spent on the issue, the Court [was] not convinced that such an approach would be in the interests of justice."); *D'Ambly v. Exoo*, No.20-cv-12880, 2024 WL 4880332, at *5 (D.N.J. Nov. 25, 2024) (quoting *Margulis*) (denying "wholesale production of Defendants' privileged documents based on an allegedly deficient privilege log" because the Court recognized "'how important the privilege is, and how much time has already been spent on the issue,' and 'is not convinced that waiver would be in the interests of justice.'"). A full and fair recitation of the facts and circumstances will show that the relief Barnabas seeks to overturn the clawback should be rejected.