***Via ECF***
Hon. Cari Fais, U.S.M.J.
U.S. District Court for the District of New Jersey

Re: *The CarePoint Litigation Trust v. Barnabas*, 22-cv-05421 (D.N.J.)
*Letter Concerning Withheld Non-Privileged Modugno Documents.*[1]

Dear Judge Fais:

Barnabas and The CarePoint Litigation Trust submit this joint letter to address a dispute concerning documents that CarePoint removed from its Amended Modugno Privilege Log.[2]

Respectfully submitted,

*/s/ Robert M. Hirsch*
*Counsel for the CarePoint Litigation Trust*

*/s/ William T. Walsh*
*Counsel for RWJ Barnabas Health Inc.*

[1] CarePoint disagrees with the subject line of this document as factually incorrect and misleading, but as the movant, Barnabas is entitled to style its motion as it deems appropriate.

[2] Pursuant to L. Civ. R. 37.1, the parties certify that they met and conferred in good faith via Zoom and written correspondence but have been unable to resolve their dispute.

## I. BARNABAS'S POSITION[3]

This letter concerns the Trust's intentional obstruction with Barnabas's validly-issued subpoena to a third-party, Louis Modugno. Specifically, Barnabas seeks an order compelling production of the 27,000 ***non-privileged*** documents that Modugno produced to CarePoint pursuant to a subpoena issued *by Barnabas*, which CarePoint now refuses to make available to Barnabas.[4]

***Procedural Background***. On April 19, 2024, Barnabas served a subpoena on Lou Modugno. Because Modugno "believed there may be certain documents … over which CarePoint may wish to assert privilege," Barnabas proposed that, "to allow CarePoint to review and assert privilege," Modugno would "produce his documents to CarePoint in the first instance, and within two weeks of that production, CarePoint [would then] assert any privilege it wishes to maintain … and produce the remaining documents to Barnabas." Ex. 2. That same day, CarePoint agreed, writing that "CarePoint is agreeable to having Lou produce his documents to CarePoint in the first instance, such that CarePoint can assert any privilege it wishes to maintain, pursuant to the Protective Order, and produce the ***remaining documents*** to Barnabas." Ex. 3.

On July 12, 2024, Lou Modugno produced his responsive documents to CarePoint. After a ***six-month*** review, CarePoint served a privilege log with 50,000 entries, which did not contain any privilege descriptions and included numerous non-privileged documents, including documents with third-parties. Ex. 4. On July 25, 2025 (after an interim stay was lifted), Barnabas informed CarePoint of the deficiencies in the Modugno log. Ex. 5.

For *seven* more months, CarePoint remained silent. Then, on February 11, 2026, CarePoint served an amended log with approximately 23,000 entries, omitting over 27,000 entries from the original log, claiming they were irrelevant or non-responsive. Ex. 6. ***CarePoint did not produce a single one of these documents.*** To prevent Barnabas from identifying the removed documents, CarePoint renumbered the log, deleted control numbers, and expressly ***refused*** to "correlate entries on the original log with the revised log." Ex. 7. In addition, CarePoint conceded that many of the removed documents were responsive but "determined not to be privileged." Ex. 8. The Trust did not produce these documents either, despite its promise to do so.

***CarePoint Has Violated the Parties' Agreement***. CarePoint's refusal to produce the non-privileged Modugno documents violates its agreement to "hav[e] Lou produce his documents to CarePoint in the first instance, such that CarePoint can assert any privilege it wishes to maintain … ***and produce the remaining documents to Barnabas***." Ex. 3. That is not ambiguous.[5] The

---

[3] Unless otherwise noted, all emphasis added, all internal citations and quotation marks are omitted, and capitalizations conformed without brackets. Relevant correspondence to this dispute is attached as exhibits to this letter.

[4] CarePoint attempts to recast the requested relief as re-reviewing and re-logging. Untrue. It has reviewed the documents on multiple occasions, placed them on a privilege log, then chose to remove them. The time for review and logging has passed. It is time for production, as CarePoint has no valid ground to continue withholding them. It made the decision to omit the documents from its privilege log, has waived any remaining privilege (*see* ECF 408), and has no right to withhold third-party documents on relevance grounds.

[5] *See also* Ex. 9 ("CarePoint agreed that it would endeavor to review Mr. Modugno's production of documents to CarePoint **for privilege**…."); Ex. 10 (CarePoint "will be forced to cease its review of all other documents to turn

Trust's breach of this agreement is impermissible. *See* Fed. R. Civ. P. 29(b) ("parties may stipulate that … other procedures governing or limiting discovery be modified").

In response, the Trust argues that CarePoint said "only that the 'production is under review and will be passed along as soon as practicable,'" and that this language only "addresses the mechanics of document transfer, not the scope of any ultimate production." ***Untrue***. CarePoint made this statement in response to a different discovery dispute, namely, CarePoint's failure to abide by the agreed-upon timeline for CarePoint to assert privilege and produce the non-privileged documents. But it is not the parties' agreement as to the Modugno documents, which is binding. That is dispositive, and as such, CarePoint should produce the documents.

***The Rules Do Not Permit a Party to Conduct a Shadow Responsiveness Review of Third-Party Documents***. Additionally, the Rules do not give a party the right to conduct a responsiveness review of third-party productions. *See, e.g.*, *Buckhead Meat Co. v. AEBB of Greenwich Corp.*, 2022 WL 16708988, *2 (D.N.J. 2022) ("Defendants do not have standing to challenge the subpoenas on the grounds of relevancy."); *Jones v. Crisis Intervention Servs.*, 239 F. Supp. 3d 795, 801 (D. Del.), *aff'd,* 686 F. App'x 81 (3d Cir. 2017) ("Defendants … lack standing to challenge the subpoenas."); Wright & Miller § 2459 (3d ed.) (same).

CarePoint cites *no case* affording a party the right to conduct a shadow responsiveness review, even when a subpoena is issued to a former attorney. When a party subpoenas a business consultant of an adverse party, the adverse party cannot conduct a responsiveness review. That does not change when the consultant is a lawyer. Indeed, allowing a party to do so would interfere with one of the purposes of engaging in third-party discovery, which is to discover documents that a party may either not have or may be improperly withholding.

CarePoint apparently recognizes this by arguing either that all 27,000 documents are privileged but it is excused from logging them, or that it is excused from determining whether they are privileged. Neither argument has merit. Rule 26(b)(5) requires a person asserting privilege to "expressly make the claim" by logging the documents. CarePoint concedes it has not done this, arguing instead that it is too burdensome to log privileged documents. That is no basis for interfering with Barnabas's subpoena to Modugno. The Rule of Proportionality does not pre-empt Rule 26(b)(5) or the logging requirement. Moreover, CarePoint has already reviewed these 27,000 documents, so it knows which ones are privileged and which are not. There is no burden of producing the non-privileged documents.

***The Documents Are Not "Non-Responsive" or "Irrelevant."*** CarePoint has also not sustained its burden to show that *any* of the documents Modugno produced *as responsive* to the subpoena fall outside the scope of Rule 26(b)(1).

As noted, the Trust intentionally prevented Barnabas from determining which Modugno documents from the original log are being unilaterally withheld, by deleting the control numbers from the original log, deleting the subject matter or title field, and refusing to provide an index to

---

exclusively to reviewing Mr. Modugno's production … until **such privilege review** is complete."); Ex. 11 ("Mr. Modugno produced 91,022 documents to us. They are in process of being **reviewed for privilege**.")

"correlate entries on the original log with the revised log." Ex. 7. Barnabas has nevertheless identified several withheld documents that appear relevant, noted with asterisks on Exhibit 1. This includes emails involving MPT, default notices, and payments—topics explored during MPT's deposition and part of CarePoint's conspiracy allegations. CarePoint also seeks to withhold every email related to payments to the Founder's management company, daily settlement amounts, and cash requirements for the hospitals.[6] There can be no credible argument that these are not relevant.

Indeed, even CarePoint's own characterization of relevance is suspect. In prior drafts of this letter, it argued that "a cursory review of the email subject lines from the original privilege log shows an overinclusion of non-relevant, non-responsive documents." The argument is specious for several reasons. *First*, the full content of an email is seldom reflected in the subject line. *Second*, CarePoint claimed that seven documents removed from the log (R30929, R31604, R1502-04, R1670, and R38824) are irrelevant. That still leaves over 27,000 documents on the original log where CarePoint makes no showing of non-discoverability.

*Third*, CarePoint's own characterization of relevance has shifted over the course of the drafting of this letter. When this process began, CarePoint cherry-picked 42 supposedly non-responsive documents. It withdrew its claim of non-responsiveness for 37 of them, or almost 85%. Yet, CarePoint still has not produced a single one.

It then swapped out a couple, leaving seven documents. But even these documents are relevant. For example, CarePoint initially asserted that R1502-04 concerned an "abatement letter." But the actual title of this document is "Response to Abbate letter.msg." This is a response to a letter from HRH's counsel, Thomas Abbate. It is not an abbreviated and misspelled reference to "abatement." After realizing its mistake, it tried to salvage its argument by claiming that the substance of the letter concerns "certificate withdrawal for nonrelevant entity." But it cannot be a non-relevant entity. It is a letter from *HRH's* attorney to *CarePoint* in connection with the sales process that forms the heart of CarePoint's claim. Similarly, R31604 involves an arbitration with FAIR Health Inc.—the nonprofit that maintains the national database used as the benchmark in out-of-network reimbursement disputes. New Jersey's Out-of-Network Act, which CarePoint failed to prevent and which effectively ended CarePoint's exorbitant out-of-network billing schemes, instituted binding arbitration for such disputes. And R1670 and R30929, which CarePoint dismisses as merely concerning "property taxes," are sandwiched between documents relating to the sales process, "draws" of money by Founders, and conversion of hospitals to "non-profits"—all involving the same participants on the same day. The use of CarePoint funds and whether such funds were legitimate or illegitimate is a hotly contested issue.

Now, it makes no attempt to make any document-specific relevance showing.

For the foregoing reasons, the Court should compel the Trust to produce the non-privileged documents Barnabas subpoenaed from Modugno.

---

[6] CarePoint asks the Court to disregard these 100 examples because Barnabas identified them in this letter and did not provide them to the Trust. But these 100 examples are documents the Trust not only has, it is affirmatively ***withholding.*** Its argument that a party has to possess a document before it can seek to compel production is nonsense.

## II. THE CAREPOINT LITIGATION TRUST'S POSITION

Barnabas demands that the Trust review and log for privilege thousands of documents that are not relevant to the claims or defenses of any party in this litigation and then produce any of the irrelevant documents that are not also privileged. This is make work, designed to impose burdensome and substantial discovery costs on the Trust with no conceivable benefit to this litigation. It is the type of discovery abuse that the Federal Rules, in particular the proportionality requirements, were crafted to prevent. Barnabas' request should be denied.

The dispute stems from documents that CarePoint's former attorney, Lou Modugno, identified in response to Barnabas's subpoena by running broad search terms. Mr. Modugno did not independently assess whether the documents were responsive, or relevant, or privileged. He turned the documents over to CarePoint, which identified 50,000 as potentially privileged, using privilege search terms. After the Trust substituted into the case, and in response to Barnabas's complaints about the 50,000 document log, the Trust conducted a thorough, good-faith review of CarePoint's former attorney's files, resulting in a comprehensive privilege log of approximately 23,000 documents—the same log, in the same order, with email subjects and file names intact, with only the 27,000 non-relevant, non-responsive documents removed. Contrary to Barnabas's insinuation, the Trust did not reorder or otherwise attempt to obscure the amended log; it simply incorporated the clawback logs and removed the irrelevant documents. Had Barnabas conferred with the Trust on the issue before this letter—as required—this would have been readily apparent. Many of these removed documents are absolutely privileged (as one would expect, given that they originated from an attorney's files). Compelling the Trust to re-review and log irrelevant privileged documents would be a complete waste of time and resources, and would compound an already disproportionate burden for no legitimate benefit. Barnabas does not identify any way in which logging or production of non-responsive, irrelevant documents will advance this litigation. Barnabas's position rests on a bad faith reframing of discussions with CarePoint's prior counsel, inapposite standing cases, and a strained reading of Rule 26—none of which supports compelling production or logging of irrelevant materials. The Federal Rules impose no obligation—none—to produce or log documents that fall outside the permissible scope of discovery. The Court should deny relief.

### *A. Barnabas Misrepresents Prior Counsel's Agreement*

Barnabas's primary argument is that the Trust should log irrelevant privileged documents and produce any remaining irrelevant, non-privileged documents because it reached an agreement with prior counsel for CarePoint to do so, which the Court should enforce regardless of whether the sought after documents have any connection to the claims or defenses in this case. No such agreement exists. When Barnabas proposed on May 15, 2024 that Mr. Modugno produce his files to CarePoint for privilege review, prior counsel's response did not accept those terms wholesale. It stated only that the "production is under review and will be passed along as soon as practicable." That language addresses the mechanics of document transfer, not the scope of any ultimate production obligation. More significantly, that same letter expressly reserved CarePoint's rights, stating that "no privilege is or was waived by CarePoint's failure to adhere to your self-made and arbitrary deadline." An express reservation of rights is categorically inconsistent with the sweeping, open-ended waiver Barnabas now asks this Court to impose.

Agreeing to conduct a necessary privilege review of its former attorney's files cannot be construed as an agreement to abandon CarePoint's right to a relevance review—particularly when the documents at issue are CarePoint's own documents that were in the possession of its attorney. Barnabas's characterization of the Trust's good-faith reading as "a lie" is unsupported and unwarranted. Mr. Modugno did not conduct a granular, document-by-document responsiveness analysis—he simply ran a set of broad search terms and provided the "hits" to CarePoint for its review. The responsibility for determining the proper scope of production, including relevance, remained with CarePoint, as one would expect when a party's attorney is subpoenaed, and CarePoint properly discharged that responsibility. The appropriate mechanism for addressing that overinclusion is precisely the review process the Trust undertook—not the wholesale production of every document in its former attorney's possession that a search term happened to capture.

***B. CarePoint Has the Right and the Obligation to Conduct A Relevance Review***

Barnabas's standing cases address the narrow question of whether a party may quash a third-party subpoena—an entirely different question from whether a party may conduct a relevance review of its own former attorney's files. CarePoint did not challenge the Modugno subpoena—it facilitated Mr. Modugno's production, reviewed his files, and served a detailed privilege log. The only question before this Court is whether the Trust must produce and/or log documents that fall outside the permissible scope of Rule 26 discovery. The answer is clearly no.

Barnabas argues that Rule 26(b)(5) requires the Trust to log each withheld document, but Rule 26(b)(5) applies only to documents that are "otherwise discoverable." Documents that are irrelevant and fail Rule 26(b)(1)'s proportionality requirement are not "otherwise discoverable." *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

None of Barnabas's standing cases involved attorney-client privilege. Three of the cases concerned subpoenas to wholly independent third parties—none of which was a party's former attorney or was challenged on privilege grounds. *See, e.g.*, *Buckhead Meat Co. v. AEBB of Greenwich Corp.*, 2022 WL 16708988, *2 (D.N.J. Feb. 10, 2022) (subpoena to accountant, no claimed privilege); *Jones v. Crisis Interv. Servs.*, 239 F. Supp. 3d 795, 801 (D. Del. 2017) (subpoenas to physicians, no claimed privilege); *In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993) (subpoenas to investment banks, no claimed privilege). The last case concerned various corporate associates and a former attorney who was subpoenaed based on an affirmative factual statement he made in an arbitration about the entities' ability to pay. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (subpoenas to individuals and entities associated with the defendant, no claimed privilege).

Mr. Modugno represented CarePoint on legal matters for years, many of which had absolutely nothing to do with this lawsuit or Barnabas but remain privileged. CarePoint (and now the Trust) is the privilege holder over communications with its own counsel. *See In re Impounded Case*, 879 F.2d 1211, 1213 (3d Cir. 1989) ("[T]he attorney-client privilege belongs solely to the client."). When a party's former attorney is subpoenaed, the party has an affirmative obligation to identify and protect privileged communications. The cases Barnabas cites do not address that situation, and they provide no support for its position here.

### *C. Barnabas's Waiver Argument Is Internally Contradictory and Without Merit*

Barnabas cannot simultaneously maintain that CarePoint lacks standing to challenge the Modugno subpoena on relevance grounds and that CarePoint waived its rights by failing to do so. A party cannot waive a right it does not possess. Rule 45's waiver doctrine addresses the obligations of the subpoenaed party—Mr. Modugno—not the rights of the party conducting a privilege review of its own attorney's documents. CarePoint's right to conduct a relevance review of its former attorney's files derives from Rule 26 and the attorney-client privilege, not from Rule 45. CarePoint is not "objecting" to the subpoena—it is simply exercising its well-established right under Rule 26 not to produce documents outside the permissible scope of discovery.

### *D. Compelling Production Would Be Disproportionate and Contrary to Rule 26*

Compelling the production and/or logging of 27,000 irrelevant documents is fundamentally incompatible with Rule 26(b)(1)'s proportionality requirement, which directs courts to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." CarePoint and the Trust have already expended significant resources reviewing the Modugno files—first when CarePoint generated the original privilege log in January 2025, and again when the Trust conducted the comprehensive review that led to the Amended Modugno Log on February 11, 2026. If compelled to produce or log the 27,000 removed documents, CarePoint would be required to undertake yet another privilege pass over materials it has already determined to fall outside the scope of this litigation—precisely the make-work Rule 26 is designed to prevent.[7]

Barnabas's identification of approximately 100 documents from a log of over 50,000 entries—less than 0.2% of the materials reviewed—confirms that the overwhelming majority Mr. Modugno's production is precisely what the Trust has maintained: irrelevant and non-responsive. The mere presences of buzz words like "MPT" and "default notice" in a subject line does not magically transform an irrelevant document into a discoverable one.[8] Barnabas never raised these 100 documents with the Trust before dropping them into this joint letter, rendering this document-specific dispute procedurally improper under Local Civil Rule 37.1.[9] Any production would require an additional privilege review, bates-stamping, and processing—a burden the Federal Rules do not permit Barnabas to impose for documents with no demonstrated relevance.

For these reasons, the Court should deny Barnabas's request to compel production and/or logging of the approximately 27,000 documents removed from the original January 2025 Modugno Privilege Log.

---

[7] Barnabas states on several occasions that the documents are not privileged because they were removed from the log, but that is incorrect. Many of these documents are privileged attorney-client communications, but they are communications having nothing to do with the subpoena or the claims in this lawsuit, so do not need to be logged.

[8] Barnabas's claim that the Trust "withdrew its claim of non-responsiveness" for 37 documents is incorrect. The Trust simply revised various documents cited to address Barnabas's ever-changing positions. The Trust has not withdrawn any determination of non-responsiveness.

[9] The Trust reserves all rights to contest the relevance, responsiveness, and privilege of any document identified in Exhibit 1 on a document-by-document basis if and when such disputes are properly presented to this Court following the required meet-and-confer.